**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JAYLA ALLEN, DAMON JOHNSON, JOSHUA MUHAMMAD, RAUL SANCHEZ, and TREASURE SMITH,<br><br>*Plaintiffs*,<br><br>v.<br><br>WALLER COUNTY, TEXAS; THE WALLER COUNTY COMMISSIONERS COURT; JUDGE CARBETT "TREY" J. DUHON III, in his official capacity as the Waller County Judge; CHRISTY A. EASON, in her official capacity as the Waller County Elections Administrator,<br><br>*Defendants*. | Civil Case No. 4:18-cv-3985 |

## PLAINTIFFS' ORIGINAL COMPLAINT

1.      "No right is more precious in a free country than having a voice in the election of those who make the laws under which, as good citizens, we must live." *Reynolds v. Sims*, 377 U.S. 533, 560 (1964). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

2.      Nonetheless, Defendants Waller County, Texas, the County Commissioners Court, County Judge Carbett "Trey" J. Duhon III, and Elections Administrator Christy A. Eason (collectively, "Defendants") have once again set out to suppress the voting rights of Black residents of the City of Prairie View and Black students at Prairie View A&M University ("PVAMU"), a historically Black University, by offering them far fewer early voting opportunities than non-Black and non-student voters.

3.     To ensure that Black PVAMU students are afforded the same opportunities to vote as all other voters in Waller County, Plaintiffs Jayla Allen, Damon Johnson, Joshua Muhammad, Raul Sanchez, and Treasure Smith (collectively, "Plaintiffs") seek immediate declaratory and injunctive relief pursuant to Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the U.S. Constitution, 42 U.S.C. § 1983, against Defendants.

4.     Defendants' actions are a continuation of Waller County's decades-long pattern of unconstitutional racial and age-based discrimination against Black student voters at PVAMU. Prior to the enfranchisement of Americans over 18 years old in 1971, Waller County had almost no Black voters. With the ratification of the Twenty-Sixth Amendment, however, the mostly Black student population at PVAMU became (and remains) a significant political force in Waller County.

5.     In response to the enfranchisement of this substantial number of Black voters, Defendants and other county officials have denied or abridged the rights of Black PVAMU students time and time again through a variety of unconstitutional and illegal schemes, including: restrictive or unnecessary voter registration and property requirements; baseless selective prosecutions and voter challenges; and, more recently, needless reductions in access to early voting and polling locations.

6.     These past barriers to voting were blocked only after successful litigation or advocacy by either brave Black PVAMU students or the U.S. Department of Justice. Despite this litigation, Defendants continue to make registering to vote and casting a ballot unduly burdensome, if not impossible, for Black PVAMU students.

7.     Section 2 of the Voting Rights Act ("VRA") prohibits the abridgment or denial of the right to vote, including the use of electoral devices that make it more difficult for Black people to vote. 52 U.S.C. §10301. To succeed on a Section 2 claim, Plaintiffs can "either prove

[discriminatory] intent, or, alternatively, must show that the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process." *Chisom v. Roemer*, 501 U.S. 380, 394 & n.21 (1991) (citation omitted).

8.     The Fifteenth, Fourteenth, and Twenty-Sixth Amendments to the United States Constitution together prohibit race- and age-based discrimination in voting, and bar Defendants from targeting Black student voters aged 18 to 21 for discrimination and disparate treatment. *See, e.g.*, *Symm v. United States*, 439 U.S. 1105 (1979), s*ummarily aff'g sub nom. United States v. Texas*, 445 F.Supp. 1245, 1261-62 (S.D. Tex. 1978) (3-judge court); *Latham v. Chandler,* 406 F. Supp. 754, 755 (N.D. Miss. 1976); *Frazier v. Callicutt,* 383 F. Supp. 15, 19-20 (N.D. Miss.1974).

9.     Defendants' refusal to provide the same or even similar number of early voting days and hours to Black PVAMU voters as other voters in Waller County and Defendants' failure to provide any early voting sites at PVAMU during the first week of early voting—even though many Black PVAMU student voters lack transportation to off-campus sites—has the purpose or the result of denying or abridging the rights of Plaintiffs in violation of the VRA and the Constitution. 42 U.S.C. § 1983; 52 U.S.C. § 10301.

## JURISDICTION AND VENUE

10.     This is a civil rights action arising under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the Constitution, and Section 2 of the Voting Rights Act. 42 U.S.C. §§ 1983, 1988; 52 U.S.C. § 10301.

11.     This Court has jurisdiction under 28 U.S.C. § 1331.

12.     Venue is proper in this District under 28 U.S.C § 1391 because the events giving rise to Plaintiffs' claims arose, and Defendants are located, in this District and Division.

## PARTIES

13.    Plaintiff Jayla Allen is a 19-year-old Black registered voter, resident of Waller County, and a second-year PVAMU student. Ms. Allen has used early voting for every election since she started voting while at PVAMU. If Waller County provided Prairie View with early voting in the first week, she would vote then because it is more convenient and quicker than voting on Election Day. Ms. Allen is the Chair of Rock the Vote and a member of IGNITE, an organization that seeks to increase women's involvement in politics at PVAMU. As a student leader, she assists and encourages other students to vote as early as possible. Without access to the same or similar opportunities for early voting as other voters in Waller County, Ms. Allen's right to vote will be denied or abridged in violation of Section 2 and the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. Constitution.

14.    Plaintiff Damon Johnson is a Black registered voter and resident in Waller County. He is a 19-year-old sophomore at PVAMU. Mr. Johnson lives off-campus within walking distance of the PVAMU campus and does not own a car. Mr. Johnson serves on PVAMU's Student Government Association and is a member of the Prairie View Consulting Association, Chemistry Club, American Association for Chemical Engineers, and Speech and Debate Club. He has used early voting during his time as a student at PVAMU so that he is able to vote despite having a busy student and activity schedule. The Memorial Student Center on PVAMU's campus is significantly more convenient for Mr. Johnson than off-campus locations because he is often on-campus for classes and extracurricular activities and does not have a reliable or practical means of traveling to off-campus early voting locations. Without access to the same or similar opportunities for early voting as other voters in Waller County, Mr. Johnson's right to vote will be denied or abridged in

violation of Section 2 and the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. Constitution.

15.     Plaintiff Joshua Muhammad is a 28-year old Black registered voter, resident of Waller County, and a senior at PVAMU. Mr. Muhammad serves on the executive board of PVAMU's Student Government Association as Director of Health and Safety. Defendants' decisions to restrict access to early voting at PVAMU have made it more difficult for Mr. Muhammad to vote insofar as he has an academic and activity schedule that, but for early voting, would make it more difficult for him to vote due to the anticipated long lines and wait times on Election Day, November 6, 2018. Without access to the same or similar opportunities for early voting in the first week as other voters in Waller County, Mr. Muhammad's right to vote will be denied or abridged in violation of Section 2 and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.

16.     Plaintiff Raul Sanchez is a Latino registered voter and resident of Waller County. He is 19 years old and a sophomore at PVAMU. Mr. Sanchez is a member of the Power Lifting Club and two church groups at PVAMU. Mr. Sanchez uses early voting due to his student schedule and because he does not have a car. He relies on a PVAMU shuttle to travel to and from campus. Mr. Sanchez is unfamiliar with the location of the off-campus early voting site at the Community Center in Prairie View and does not know how he would get there. Without access to the same or similar opportunities for early voting in the first week as other voters in Waller County, Mr. Sanchez's right to vote will be denied or abridged in violation of the Twenty-Sixth Amendment to the U.S. Constitution.

17.     Plaintiff Treasure Smith is a Black registered voter and resident of Waller County. She is 20 years old and a sophomore at PVAMU. Ms. Smith works part-time and is a member of

PVAMU's speech and debate team. Ms. Smith uses early voting because of her busy work, student, and activity schedule. She lives off-campus in the Panther Hill Apartments and does not have a car. Ms. Smith relies on a PVAMU shuttle to travel to and from campus. To access other locations off-campus, Ms. Smith must rely on rides from others and must accommodate their schedules. Without access to the same or similar opportunities for early voting in the first week as other voters in Waller County, Ms. Smith's right to vote will be denied or abridged in violation of Section 2 and the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. Constitution.

18.     Defendant Waller County, Texas is a political subdivision of the State of Texas.

19.     Defendant Waller County Commissioners Court (the "Commissioners Court") is the governing body for Waller County. The five-member Commissioners Court includes the County Judge who is elected at-large and four Commissioners who are elected from four single-member districts. The Commissioners Court has authority over the County's budgetary and administrative decisions, including decisions concerning early voting days, hours and locations. Four members of the Commissioners Court are white people elected from majority-white voting districts. The fifth Commissioner, Mr. Jeron Barnett, is Black and is elected from a majority-Black district.

20.     Defendant Judge Carbett Duhon III is sued in his official capacity as the County Judge and as a representative member of the Commissioners Court.

21.     Defendant Christy Eason is sued in her official capacity as the Waller County Elections Administrator and the chief elections official in Waller County.

## DEMOGRAPHICS OF WALLER COUNTY

22.     Waller County sits on the northwest border of Harris County and within 55 miles of the City of Houston.

23.     PVAMU is the only university in Waller County. Founded in 1876, PVAMU is the second-oldest public institution of higher education in the State of Texas. PVAMU is a historically Black university with 8,470 full and part-time students.[1] About 82% of PVAMU students are Black. The campus of PVAMU is located entirely in the City of Prairie View ("Prairie View").

24.     According to the 2010 Census, Waller County has a total population of 43,205, of whom 44.6% (19,260) are Anglo (non-Hispanic white) residents, 24.4% (10,537) are Black, and 29% (12,536) are Latinx (Hispanic people of any race). Waller County's voting age population ("VAP") is 32,549, of whom 26.8% (8,737) are Black voters, are 47.48% (15,455) Anglo voters, and 23.8% (7,755) are Latinx voters.

25.     According to the 2010 Census, the total population of the City of Prairie View ("Prairie View") is 5,576, of whom 87.6% (4,884) are Black and 2.6% (147) are Anglo. Prairie View has a VAP of 5,168, of whom 89.5% (4,627) are Black.

26.     According to the 2010 Census, the demographics of other communities in Waller County are as follows: the City of Brookshire's total population is 4,702, or whom 34.5% (1,622) are Black and 16.5% (774) are Anglo; the City of Hempstead's total population is 5,770, of whom 38% (2,195) are Black and 22.5% (1,299) Anglo; the City of Katy's total population is 14,102, of whom 5.1% (713) are Black and 62.8% (8,854) are Anglo; and the City of Waller's total population is 2,326 of whom 22.1% (467) are Black and 50.3% (1,170) are Anglo.

27.     According to the U.S. Census Bureau's 2011-2015 American Community Survey ("ACS") five-year estimates, the Citizen Voting Age Population ("CVAP") of Waller County is 30,740. Of that total, Black CVAP is 32.1% (9,875), Anglo CVAP is 51.3% (15,755), and Latinx CVAP is 14.1% (4,345).

---

[1]     Enrollment Statistics, Prairie View A&M University (2018), http://www.pvamu.edu/ir/wp-content/uploads/sites/98/Enrollment-Statistics_SP18.pdf.

28.     According to the 2011-2015 ACS, the CVAP of

    a   Prairie View is 5,524 and the CVAP is 79% (4,364) Black.

    b   Brookshire is 2,702 and the CVAP is 50.9% (1,376) Black, 28.5%

        (769) Anglo, and 19.7% (533) Latinx.

    c   Hempstead is 3,810, and the CVAP is 65.4% (2,492) Black,

        28.9% (1,099) Anglo, and 12.5% (474) Latinx.

    d   Katy is 10,515, and the CVAP is 3.5% (364) Black,

        77.1% (8,102) Anglo, and 16.3% (1,712) Latinx; and

    e   Waller is 1,433, and the CVAP is 18.9% (271) Black, 69%

        (989) Anglo, and 10.7% (153) Latinx.

29.     According to the 2010 Census, 66.0% of Prairie View's VAP is between the ages of 18 and 21. By comparison, 10.1% of the City of Waller's VAP is 18-21 years old. In Katy, only 7.4% of the VAP is 18-21 years old; in Brookshire, 9.4% of the VAP is aged 18 to 21 years old; and, in Hempstead, 11.8% of the VAP is aged 18 to 21. In Waller County as a whole (including Prairie View), a total of 17.3% of the VAP is 18-21 years old. Thus, a significant majority (66%) of the VAP in Prairie View is made up of individuals protected by the Twenty-Sixth Amendment to the U.S. Constitution, and no other city in the County has a comparable percentage of young voters.

30.     In Waller County, according to the 2012-2016 ACS, amongst employed individuals over 16 years old, 11.6% of Black people commute to work by walking, as compared to 1.9% of Anglo people; 10.1% of Black people carpool, as compared to 8.1% of white people; 2.4% of Black people took a taxicab, motorcycle or bicycle to work, as compared to 1.1% of white people; and 71.6% of Black people drove alone in a vehicle, compared to 81.8% of Anglo people. Thus,

24.6% of Black people in Waller County, as compared to only 11.9% of Anglo people, commute to work by walking, biking, or via carpool, taxicab or public transit (i.e., riding in another person's vehicle).

31.    In Prairie View, according to the 2012-2016 ACS, amongst employed individuals over 16 years old, 32.1% of Black and 30.9% of Anglo people commute to work by walking; 12.9% of Black and 10.9% of white people carpooled; 6.7% of Black people and 0.0% of Anglo people commute via a taxicab, motorcycle, or bicycle; and 40.4% of Black and 55.2% of Anglo people commute alone in a vehicle. Thus, 51.7% of Black people in Prairie View, as compared to only 41.8% of Anglo people, commute to work by walking, biking, or via carpool or taxicab (i.e., riding in another person's vehicle).

32.    In Waller County, according to the 2012-2016 ACS, 33.6% of Black people lived below the poverty line in the last 12 months, as compared to 7.4% of Anglo people; the median household income for Black residents of Waller County was $33,544, as compared to $72,186 for Anglo residents; 26.2% of Black people between ages 18 to 64 lack health insurance, as compared to 17.1% of Anglo people; 21.8% of Black people between 16 and 64 years of age were unemployed, as compared to 4.0% of Anglo people in the same age range; 18.6% of Black people over 25 years old had less than a high school diploma, compared to 8.6% of Anglo people. In the same age group, 38.8% of Black people were high school graduates, compared to 30.8% of Anglo people; and 30.9% of Black people had completed some college or an associate's degree, compared to 34.6% of Anglo people.

33.    In Prairie View, according to the 2012-2016 ACS, 49.1%% of the Black population lived below the poverty line in the last 12 months, as compared to 23.4% of the Anglo population; the median household income for Black residents of Prairie View was $24,125, as compared to

$46,250 for Anglo residents; 22.9% of Black people between ages 18 to 64 lack health insurance, as compared to 20.9% of Anglo people; 22.9% of the Black population between 16 and 64 years of age were unemployed, as compared to 2.9% of the Anglo population in the same age range; 15.8% of Black people over 25 years old had less than a high school diploma, compared to 0% of Anglo people; 20.2% of Black people were high school graduates, compared to 28.1% of Anglo people; 37.3% of Black people had obtained a Bachelor's or higher degree, compared to 26.0% of Anglo people; and 37.3% of Black people had completed some college or an associate's degree, compared to 53.1% of Anglo people.

## EARLY VOTING IN WALLER COUNTY

34.     In Waller County, where the population is fewer than 100,000 people, Texas state law requires Defendant Commissioners Court to establish a main early voting site and "branch" sites with days and hours where registered voters can cast in-person ballots during the two-week period before Election Day on November 6. Tex. Elec. Code §§ 85.001; 85.002; 85.061-85.062.

35.     On September 22, 2018, based on a proposal by the chairs of the local Democratic and Republican parties, Defendant Commissioners Court adopted an early voting plan for the 2018 November election. On information and belief, the party chairs did not consult with students or administrators at PVAMU, or members of the Prairie View City Council in devising the plan.

36.     Figure 1 is a true and correct copy of the early voting plan adopted by Defendant Commissioners Court and posted on the Waller County website as of October 22, 2018:

**Figure 1**

| 2018 GENERAL ELECTION WALLER COUNTY AND ROYAL ISD | EARLY VOTING LOCATIONS | |
|---|---|---|
| DURING EARLY VOTING ALL PRECINCTS AND ENTITIES CAN VOTE AT ANY LOCATION | | |
| **WEEK ONE** | | |
| MONDAY – FRIDAY October 22 – 26, 2018 SATURDAY October 27, 2018 SUNDAY October 28, 2018 | Waller County Courthouse 836 Austin St, Hempstead, Tx | 8am – 5pm 9am – 2pm 12pm – 5 pm |
| MONDAY – FRIDAY October 22 – 26, 2018 SATURDAY October 27, 2018 | Waller ISD Admin Bldg 2214 Waller St., Waller, Tx | 8am – 5pm 9am – 2pm |
| MONDAY – FRIDAY October 22 – 26, 2018 SATURDAY October 27, 2018 SUNDAY October 28, 2018 | Waller Co Library Brookshire 3815 6th St., Brookshire, Tx | 8am – 5pm 9am – 2pm 12pm – 5 pm |
| THURSDAY – FRIDAY October 25 – 26, 2018 SATURDAY October 27, 2018 | Fieldstore County Bldg, JP 2 27388 Fieldstore Rd., Waller, Tx | 8am – 5pm 9am – 2pm |
| THURSDAY – FRIDAY October 25 – 26, 2018 SATURDAY October 27, 2018 | Monaville County Bldg., JP 3 12620 FM 1887, Hempstead, Tx | 8am – 5pm 9am – 2pm |
| MONDAY – WEDNESDAY October 22 – 24, 2018 | Katy VFW 6206 George Bush Dr., Katy, Tx | 8am – 5pm |
| **WEEK TWO** | | |
| MONDAY – WEDNESDAY October 29 – 31, 2018 THURSDAY - FRIDAY November 1 – 2, 2018 | Waller Co Courthouse 836 Austin St, Hempstead, Tx | 8am – 5pm 7am – 7pm |
| MONDAY – WEDNESDAY October 29 – 31, 2018 THURSDAY - FRIDAY November 1 – 2, 2018 | Waller ISD Admin Bldg 2214 Waller St., Waller, Tx | 8am – 5pm 7am – 7pm |
| MONDAY – WEDNESDAY October 29 – 31, 2018 THURSDAY - FRIDAY November 1 – 2, 2018 | Waller Co Library Brookshire 3815 6th St., Brookshire, Tx | 8am – 5pm 7am – 7pm |
| MONDAY – WEDNESDAY October 29 – 31, 2018 | Memorial Student Center PVAMU , Prairie View, Tx | 8am – 5pm |
| THURSDAY – FRIDAY November 1 – 2, 2018 | WC Community Center – PV FM 1098, Prairie View, Tx | 7am – 7pm |

37.     Under this plan, during the first week of early voting, there are no early voting sites or opportunities anywhere in Prairie View.

38.     During the second week of early voting, the Memorial Student Center at PVAMU in Prairie View is an early voting site for three days, Monday October 29 to Wednesday October 31, from 8:00am to 5:00pm (27 hours total); and the County Community Center in Prairie View is an early voting site for two days, Thursday November 1 to Friday November 2, from 7:00am to 7:00pm (24 hours total). The Community Center, which is located near the Post Office, is located off-campus and is not well-known to or frequently used by PVAMU voters, particularly because most students receive their mail on campus.

39.     There are no weekend hours for early voting anywhere in Prairie View.

40.     There are no evening hours (i.e., after 5:00 p.m.) for early voting at the Memorial Student Center on PVAMU's campus during the early voting that is scheduled there on the second week.

41.     By contrast, during the first week of early voting, the City of Waller—which is majority-white, has half of the CVAP of Prairie View, and where only 10% of the VAP is under age 21—has two early voting sites. The first site has six days (50 hours), and the second site has three days (23 hours) of early voting. Both of the sites in Waller have Saturday hours. In the second week of early voting, Waller has five days (51 hours) of early voting at one site, including two days of evening hours. In total, Waller will have eleven (11) early voting days.

42.     As compared to Prairie View, the City of Katy, which is majority-white and where less than 10% of the VAP is under age 21, has three days (27 hours total) of early voting during the first week.

43.     On October 17, 2018, at a meeting of Defendant Commissioners Court, various

Black individuals spoke out in opposition to the early voting plan because of its disparate treatment of and negative impact on Black PVAMU students. The majority of the people who commented on the issue asked for "parity" for students at PVAMU and "consistency throughout the county."[2]

44.     For example, at the meeting, Plaintiff Mr. Muhammad noted that PVAMU "keeps getting the short end of the stick" in terms of "fairness and equality" in access to early voting locations.

45.     A Black woman, who identified herself as a person who works to register PVAMU students to vote, urged Defendant Commissioners Court to provide more early voting hours at PVAMU. She stated that she has asked "every year … for parity for PVAMU students" and that "they be allowed to vote every single day [of early voting] at the [Memorial Student Center] on campus." She contended that more hours were necessary given Prairie View's large student population, many of whom are first-time voters who lack access to cars or the money for gas needed to vote elsewhere.

46.     A Black student, and current Prairie View city councilmember, echoed the repeated requests for on-campus early voting at PVAMU. In response to Defendant Duhon's question, the councilmember explained that the off-campus Community Center site, which is near the post-office, is not frequently visited by PVAMU students because most students get their mail on campus.

47.     Another Black student and Prairie View city councilmember expressed frustration with the fact that PVAMU had "zero [early voting hours or days in the first week] after all of the issues [that PVAMU students] have had over the decades" referring to Waller County's well-known record of obstructing PVAMU students' ability to register to vote and vote in Waller

---

[2]     A video of the October 17, 2018 Commissioners' Meeting is available at http://wallercountytx.swagit.com/play/10172018-1225 (Elections Issue 5).

County. This student remarked: "it is a grave injustice that we have zero days" during the first week of early voting.

48.     Even Defendant Mr. Eason acknowledged at this meeting that the early voting plan "is not equal representation," particularly as between the four cities in the County: Waller, Hempstead, Prairie View and Brookshire. Defendant Judge Duhon also admitted "that there's an inequity" in the early voting opportunities available to Prairie View as compared to other cities like Waller that get eleven days of early voting. Defendant Judge Duhon acknowledged Defendant Commissioners Court's responsibility to "give them[,] [PVAMU students] equal access."

49.     With the exception of Defendant Commissioners Court, very few people commented in support of the plan. The Waller County Republican party chair, who is white, commented that: "we[,] [the political party chairs,] decide what this is going to be" in terms of early voting opportunities. Another attendee who voiced support for the plan—a white woman— did so while acknowledging that the process for choosing early voting sites "needs to be improved" because it was "broken."

50.     Members of the Defendant Commissioners Court attempted to justify the early voting plan by asserting that: it was proposed by members of both major political parties; that early voting at PVAMU was not included for the first week because it would conflict with PVAMU's homecoming; that the "community," particularly senior citizens, did not want or like to go onto campus at the historically-Black PVAMU; that it was difficult to park at PVAMU; and that it was too late to add early voting sites. But each of these purported justifications was refuted, uncorroborated by community members, or not supported by any evidence at the October 17 hearing.

51.     First, at least two students affiliated with PVAMU explained that party leaders did

not speak for PVAMU. One former graduate and Black male asked, "how come the party chairs get to decide" how much early voting opportunities voters have? He commented: "I don't think that [the party chairs] represent[ ] my voice when it comes to choosing where early voting happens," indicating that he himself is not registered to vote for any party. Another Black woman PVAMU student similarly expressed that she is not affiliated with either of the two major political parties. Defendant Duhon agreed with this Black voter admitting: "I think it's fair to say that a lot of students don't identify as Democrat or Republican."

52.     With respect to homecoming, on information and belief, most of its activities do not begin until the end of the first week of early voting and reasonably it would be advantageous to conduct early voting while so many students, local alumni, and other residents of Prairie View would already be on-campus.

53.     Third, on information and belief, PVAMU makes parking available to non-PVAMU students on voting days. Moreover, on information and belief, many other events frequently are held on PVAMU's campus, including the Fire Department's annual banquet.

54.     Although some members of Defendant Commissioners Court stated that it was not feasible to add more early voting sites because there was not enough time before the election began and may not be enough voting machines or workers to add more sites in the first week, Defendant Judge Duhon and other Commissioners made proposals, and considered the recommendations of Defendant Ms. Eason, including to add more hours and days of early voting in the first week for sites in Prairie View and other areas in Waller County. As the County's chief election official, Defendant Ms. Eason is the person most familiar with the County's election capabilities. Her recommendation to add more hours and sites for early voting elsewhere in the County during the first week means that additional days at PVAMU are also feasible.

55.     Specifically, Defendant Judge Duhon proposed modifying the first week of early voting to add three days of early voting (Wednesday, Thursday, and Friday) at the off-campus Community Center in Prairie View and to provide extended voting hours (7:00 am to 7:00 pm) on two days (Thursday and Friday) at the off-campus Monaville County Building in Hempstead.

56.     Defendant Commissioners Court heard public testimony that the proposal was insufficient because the County Community Center in Prairie View is off-campus, about a mile from the Memorial Student Center's central PVAMU location, that the Community Center is not well-known to PVAMU students, and that PVAMU students do not visit the Community Center because students do not typically send or receive mail at the nearby post office. The other proposed site, the Monaville County Building, is about thirteen (13) miles from the PVAMU campus.

57.     Commissioners Barnett and Justin Beckendorff also informally discussed proposals that included additions of up to three days of early voting in a combination of locations and hours during the first week of early voting; those proposals would have included additional sites in Prairie View and on PVAMU's campus, and also other areas like Monaville and Katy.

58.     Defendant Duhon proposed providing additional days of early voting for Monaville so that it would have a full week of early voting during the first week. Defendant Eason, however, urged against that because Monaville does not have the population for that much advanced voting. Defendant Eason explained that during the 2018 primaries, there were days when no more than about 18 voters voted daily.

59.     Commissioner Beckendorff urged additional hours for voters in Katy to extend beyond 5:00 p.m. to account for commuters who needed to vote after work.

60.     Ultimately, however, Defendant Commissioners Court voted 3-2 against modifying the plan, after having rejected all proposals and Defendant Duhon's motion. Thus, Defendants

acted to maintain the current plan that offers no early voting in Prairie View during the first week and overall offers significantly less early voting opportunities to Black voters and PVAMU students in Prairie View than other areas and voters in the County.

61.     In so doing, Defendants Ms. Eason and Judge Duhon indicated a need for representatives from all over the County, including PVAMU, to be involved in setting the schedule for early voting in the future because this issue of disparities keeps coming up. They also indicated a need for a standard early voting schedule for future elections to avoid this ongoing inequity issue.

62.     Defendants' actions have the purpose or result of denying or abridging the rights of Plaintiffs, Black PVAMU students, and other Black voters in Prairie View.

63.     Black voters and Black PVAMU student voters, aged 18-20, in Prairie View have less access to transportation, are more likely to have academic or work obligations on weekdays during business hours, are poorer, and face other barriers that make traveling off-campus to either the Community Center or to other cities several miles away on weekdays during business hours difficult, if not impossible. The burdens and resulting harms imposed by Defendants' decisions to limit access to early voting place a significant burden on Black voters in Prairie View.

64.     As compared to other early voting sites in Waller County, the Memorial Student Center at PVAMU had one of the highest numbers of early votes cast in the November 2016 Election and March 2018 Primary. Thus, Black student voters at PVAMU are more likely than other residents of Waller County to need and depend on the opportunity to vote early on-campus.

## TOTALITY OF CIRCUMSTANCES

65.     The totality of circumstances demonstrates that Plaintiffs have "less opportunity than other members of the electorate to participate in the political process" than others in the County. 52 U.S.C. § 10301(b).

66.     Waller County has an extensive history of racial discrimination against Black Prairie View residents and PVAMU students in voting. *See*, *e.g.*, Consent Decree, *United States v. Waller Cty.*, No. 4:08-cv-03022 (S.D. Tex. Oct. 17, 2008), ECF No. 8; Consent Order, *Prairie View Chapter of NAACP v. Kitzman*, No. 04-459 (S.D. Tex. Feb. 24, 2004), ECF No. 11.

67.     In 2014, this Court singled out Waller County's discrimination against PVAMU students from 1971-2008 as an example of Texas's overall "penchant for discrimination" and "a recalcitrance that has persisted over generations despite the repeated intervention of the federal government":

> In 1971, after the 26th Amendment extended the vote to those 18 years old and older, Waller County which was home to Prairie View A & M University (PVAMU), a historically Black university, became troubled with race issues. Waller County's tax assessor and voter registrar prohibited students from voting unless they or their families owned property in the county. This practice was ended by a three-judge court in 1979.
>
> In 1992, a county prosecutor indicted PVAMU students for illegally voting, but dropped the charges after receiving a protest from the DOJ.
>
> In 2003, a PVAMU student ran for the commissioner's court. The local district attorney and county attorney threatened to prosecute students for voter fraud — for not meeting the old domicile test. These threatened prosecutions were enjoined, but Waller County then reduced early voting hours, which was particularly harmful to students because the election day was during their spring break. After the NAACP filed suit, Waller County reversed the changes to early voting and the student narrowly won the election.
>
> In 2007-08, during then Senator Barack Obama's campaign for president, Waller County made several voting changes without seeking preclearance. The county rejected "incomplete" voter registrations and required volunteer deputy registrars (VDRs) to personally find and notify the voters of the rejection. The county also limited the number of new registrations any VDR could submit, thus limiting the success of voter registration drives. These practices were eventually prohibited by a consent decree.

*Veasey v. Perry*, 71 F. Supp. 3d 627, 635-36 (S.D. Tex. 2014), *aff'd in part, and rev'd in part on other grounds* 830 F. 3d 216 (5th Cir. 2016) (en banc).

68.     In July 2015, the improper police arrest and tragic death of Sandra Bland, a 28-year-old Black PVAMU alumna, in a county jail drew national attention to Waller County yet again. PVAMU students were galvanized into demanding an investigation into Ms. Bland's death in the custody of local officials. Within five months of Ms. Bland's death, Defendants announced their intent to cut the number of early voting sites for the 2016 primaries from eight (8) to two (2) in Prairie View. As with the plan challenged here, that 2016 plan was approved by both the local Republican and Democratic chairs. No site was within walking distance of PVAMU. Facing the threat of litigation, Defendants reversed course and adopted a plan with six (6) sites, including one site in Prairie View.

69.     Waller County is located in the State of Texas. The history of state-sponsored racial discrimination in voting, education, and employment in Texas is well-documented and judicially recognized. At different points in history, Texas has used poll taxes, literacy tests, all-white primaries, and gerrymandering to disenfranchise Black voters. *Veasey*, 71 F.Supp.3d at 636, 666-67.

70.     Because of this history, Waller County and the State of Texas were subject to preclearance under Section 5 of the Voting Rights Act from 1965 until 2013. Between 1982 and 2013, the U.S. Department of Justice objected to dozens of proposed voting changes in the State of Texas, including three objections against Defendants. One Section 5 objection against Defendants came as recently as 2002. *See* U.S. Dep't of Justice, Civil Rights Div., Voting Determination Letters in Tex., http://www.justice.gov/crt/voting-determination-letters-texas (last visited Oct. 22, 2018).

71.     Voting in Waller County is racially polarized.

72.     As described above in paragraphs 29 to 33, Black residents of Waller County and Prairie View bear the effects of racial discrimination in employment, transportation, poverty, health, and other socioeconomic areas which hinder their ability to participate effectively in the political process. These continuing effects of discrimination on Black citizens in Waller County and Prairie View limit Black political participation. Under the totality of the circumstances, Waller County's early voting plan for the 2018 general election interacts with these social and historical conditions to undermine the ability of Black voters in Prairie View and Black students at PVAMU to participate effectively in the political process.

73.     No Black candidate has been elected to a countywide office since Reconstruction.

74.     The Defendants' stated reasons for their unequal treatment of Plaintiffs and Black PVAMU student voters in the distribution of early-voting hours and locations are tenuous. Both this year and in 2016, Defendants justified the reduction in early voting as the result of a compromise between the local Democratic and Republican party chairs. But, as PVAMU students informed Defendant Commissioners Court, many PVAMU students do not affiliate with either political party. The party chairs do not and have not sought the input of nor do they adequately represented the interests of PVAMU voters. Given the history of discrimination against Black PVAMU voters by elected officials of both political parties, Defendants cannot reasonably rely on the chairs' agreement as a basis for violating the voting rights of Black PVAMU student voters.

75.     Defendants are unresponsive to the particularized needs of Black PVAMU students in consistently ignoring their demands for on-campus early voting, but providing broad early voting access to nearby cities that have significantly fewer Black or young voters, even though

Prairie View's overall population is significantly larger than these cities and despite the testimony and activism of Black PVAMU students in support of parity in access to early voting opportunities.

76.     Defendants have also been unresponsive to the particularized needs of Black PVAMU student voters in the assignment of addresses and the delivery of county services. The County's "rural addressing system" uses the U.S. Postal Service's zip codes to assign rural addresses to the residents of Prairie View for mail delivery, emergency services, and property records. However, because Prairie View is divided into two zip codes—one associated with the Waller Post Office (77484) and one assigned to the Hempstead Post Office (77445), the County's reliance on the rural addressing system causes all Prairie View residences to be assigned to addresses in either Waller or Hempstead. This system creates confusion and delays during elections; costs Prairie View tax revenue, and undercuts Prairie View's identity as an incorporated city. Indeed, additional early voting could provide more time and opportunities for students to become aware of such problems with their addresses and, if necessary, to complete change of address forms to overcome this addressing system. Prairie View residents, officials, and students have raised the issues caused by the overreliance of Defendants on the rural addressing system as recently as this year, but Defendants have been unresponsive to their concerns.

77.     On information and belief, Waller County officials responsible for emergency dispatching and County records have refused to recognize the Prairie View City Council's decision to change the name of University Drive/FM 1098 (the street where Sandra Bland was arrested) to Sandra Bland Parkway. This refusal by County officials is unresponsive to the desire of many Black Prairie View residents to honor Ms. Bland, a PVAMU alumna who died in the Waller County Jail after an improper arrest.

78.    Defendants' stated rationales for refusing to provide adequate early voting in Prairie View and PVAMU are tenuous pretexts for racial discrimination against Black voters in Prairie View, including Black PVAMU student voters age 18-20.

79.    Defendants have refused to provide adequate early voting even though in recent years, following local advocacy or litigation under the Voting Rights Act, Defendants have repeatedly agreed to or been required to provide early voting options for Black student voters comply with federal law.

## CAUSES OF ACTION

### First Cause of Action

*Discriminatory Results or Intent in violation of Section 2 of the VRA (52 U.S.C. § 10301)*

80.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

81.    Section 2 forbids Defendants from denying or abridging the rights of Plaintiffs to vote on account of race or color. 52 U.S.C. § 10301(a). Defendants' unequal distribution of early voting opportunities imposes a substantial and unwarranted burden on Plaintiffs and denies them an equal opportunity to vote as compared to non-Black voters. Under the totality of circumstances, the political process is not equally open to participation by Plaintiffs, as Black students and citizens, insofar as they have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. 52 U.S.C. § 10301(b). The lack of adequate early voting in Waller County constitutes a practice or prerequisite to voting within the meaning of Section 2 and has the purpose or the result of the denying or abridging the rights of Plaintiffs to vote in Prairie View on account of their race or color in violation of Section 2.

82.     Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint and herein absent relief granted by the Court.

## Second Cause of Action

*Intentional Racial Discrimination in Violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983)*

83.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

84.     Under the Fourteenth and Fifteenth Amendments, the Defendants are prohibited from imposing burdens on voting with the intent to deny or abridge the rights of Black voters. There is no legitimate, non-discriminatory reason for Defendants to deny opportunities for early voting during the first week to Plaintiffs and Black voters in Prairie View on an equal basis with other non-Black voters of the Waller County. Defendants' maintenance or enactment of this scheme denies or abridges the rights of Plaintiffs and other Black voters in Prairie View.

85.     The severe limitation of early voting opportunities for Plaintiffs serves no compelling state interest, lacks any substantial relationship to any important state interest, and is not rationally related to any legitimate state interest.

86.     Defendants' denial of equal early voting opportunities to Plaintiffs and other Black voters in Prairie View is motivated, at least in part, by the purpose of discriminating against Black voters in violation of the Constitution. Defendants' actions, which effectively treat Plaintiffs and other Black voters as second-class citizens who do not deserve an equal opportunity to participate in our democracy, also inflict dignitary and stigmatic harms on Plaintiffs and other Black voters. Defendants' actions have deprived and severely burdened the rights of Plaintiffs in violation of the Fourteenth and Fifteenth Amendments and, absent relief granted by the Court, Defendants' actions threaten to continue do so in the future.

**Third Cause of Action**

*Violation of the Twenty-Sixth Amendments (42 U.S.C. § 1983; 52 U.S.C. § 10101)*

87.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

88.     Under the Twenty-Sixth Amendments, Defendants are prohibited from engaging in disparate or arbitrary treatment or imposing burdens on voting with the intent to harm Plaintiffs based on age. 42 U.S.C. § 1983; 52 U.S.C. § 10101. Defendants' denial of equal early voting opportunities to Plaintiffs and other PVAMU students is motivated, at least in part, by the purpose of discriminating against voters aged 18 to 20 years old and/or is irrational and arbitrary in violation of the Twenty-Sixth Amendment.

89.     The severe limitation of early voting opportunities for Plaintiffs serves no compelling state interest, lacks any substantial relationship to any important state interest, and is not rationally related to any legitimate state interest. Defendants actions are arbitrary, lack any rational basis, and serve no discernable non-discriminatory purpose. Defendants have proffered no legitimate justification for a plan that does not provide uniform early-voting opportunities within the County and fails to reflect the reality that PVAMU students both rely on early voting more than other Waller County voters and utilize it at higher rates.

90.     Defendants' actions have deprived and severely burdened the rights of Plaintiffs in violation of the Twenty-Sixth Amendment to the United States Constitution.

91.     Unless enjoined by order of this Court, Defendants will continue to act in violation of the constitutional guarantees of the Twenty-Sixth Amendment to the Constitution by denying equal voting opportunities to PVAMU students who are 18 to 20 years old on the basis of age.

**Fourth Cause of Action**

*Violation of the Fourteenth, Fifteenth and the Twenty-Sixth Amendments (42 U.S.C. § 1983; 52 U.S.C. § 10101)*

92.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs of this Complaint as though fully set forth herein.

93.     Under the Fourteenth Amendment, the Fifteenth Amendment, and the Twenty-Sixth Amendments, Defendants are prohibited from engaging in disparate or arbitrary treatment or imposing burdens on voting with the intent to discriminate against Plaintiffs on the intersecting bases of age and race. 42 U.S.C. § 1983; 52 U.S.C. § 10101. Defendants' denial of equal early voting opportunities to Plaintiffs is motivated, at least in part, by the purpose of discriminating against Black voters aged 18 to 20 years old in violation of the Constitution. Defendants' actions have deprived and severely burdened the rights of Plaintiffs in violation of the U.S. Constitution.

94.     The severe limitation of early voting opportunities for Plaintiffs serves no compelling state interest, lacks any substantial relationship to any important state interest, and is not rationally related to any legitimate state interest.

95.     Unless enjoined by order of this Court, Defendants will continue to act in violation of the constitutional guarantees of the Fourteenth, Fifteenth, and Twenty-Sixth Amendments by purposefully denying equal voting opportunities to Plaintiffs who are Black PVAMU students 18 to 20 years old on the intersecting bases of race and age.

**PRAYER FOR RELIEF**

96.     WHEREFORE, Plaintiffs respectfully pray that the Court enter orders:

   a.   Declaring that Defendants' refusal to offer adequate early voting sites violates Section 2 and the Fourteenth, Fifteenth, and/or Twenty-Sixth Amendments;

   b.   Compelling Defendants to extend the hours and days of early voting to include:

      i.  Thursday, October 25, 2018 to Tuesday, November 2, 2018 from 7:00 a.m. to 7:00 pm at the Memorial Student Center at PVAMU's campus; *or*

     ii.  Thursday, October 25 to Friday October 26, 2018 from 7:00 a.m. to 7:00 pm at the Memorial Student Center at PVAMU; *and* Saturday October 27 from 9:00 a.m. to 2:00 p.m. and Sunday October 28 from 12:00 p.m. to 5:00 p.m. at the Memorial Student Center at PVAMU.

c.  Ordering Defendants to provide at least parity or standardized early voting hours to Prairie View and PVAMU as compared to other Waller County cities;

d.  Ordering Defendants to ensure that, now and in the future, a representative of PVAMU students is involved in the process for setting an early voting schedule;

e.  Issuing an order pursuant to Section 3(c) of the VRA retaining jurisdiction over this action and requiring Waller County to obtain preclearance through a determination from this Court or the U.S. Department of Justice that any proposed voting changes impacting any elections in the County, including*, inter alia*, decisions regarding early voting locations and hours, do not have the purpose or effect of denying or abridging the right to vote based on race, 52 U.S.C. § 10302(c);

f.  Ordering Defendants to pay Plaintiffs' costs, expenses, and other reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

g.  Ordering any such additional relief as the interests of justice may require.

Respectfully submitted on October 22, 2018,

*/s/ Adam T. Schramek*
Adam T. Schramek (SDTX 31913)
State Bar No. 24033045
Attorney-in-Charge
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
adam.schramek@nortonrosefulbright.com

Of Counsel:

Sherrilyn A. Ifill*
Janai S. Nelson*
Samuel Spital*
Leah C. Aden*
Deuel Ross*
Kristen A. Johnson*
John S. Cusick*
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
40 Rector Street, 5th Floor
New York, NY 10006
Phone: (212) 965-2200
Fax: (212) 226-7592
sspital@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org
kjohnson@naacpldf.org
jcusick@naacpldf.org

Catherine Meza*
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
700 14th Street NW, Suite 600
Washington, DC 20005
Phone: (202) 682-1300
Fax: (212) 226-7592
cmeza@naacpldf.org

Julie Goodrich Harrison (SDTX 3017799)
  State Bar No. 24092434
Nicole Lynn (SDTX 3041738)
  State Bar No. 24095526
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
julie.harrison@nortonrosefulbright.com
nicole.lynn@nortonrosefulbright.com

William F. Calve (SDTX 3206298)
  State Bar No.  24096505
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street, Suite 2100
San Antonio, Texas 78205-3792
Telephone: (210) 270-7132
Facsimile: (210) 270-7205
william.calve@nortonrosefulbright.com

*Motions for Pro Hac Vice forthcoming*          *Counsel for Plaintiffs*