**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JAYLA ALLEN, DAMON JOHNSON, JOSHUA MUHAMMAD, RAUL SANCHEZ, and TREASURE SMITH, <br><br> *Plaintiffs*, <br><br> v. <br><br> WALLER COUNTY, TEXAS; THE WALLER COUNTY COMMISSIONERS COURT; JUDGE CARBETT "TREY" J. DUHON III, in his official capacity as the Waller County Judge; and CHRISTY A. EASON, in her official capacity as the Waller County Elections Administrator, <br><br> *Defendants*. | Civil Case No. 4:18-cv-3985 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Jayla Allen, Damon Johnson, Joshua Muhammed, Raul Sanchez, and Treasure Smith (collectively, "Plaintiffs") submit this memorandum in support of their Rule 65 motion for an emergency relief and a temporary restraining order ("TRO") to enjoin Defendants Waller County, Commissioners Court; Judge Carbett Duhon III; and Ms. Christy Eason (collectively, "Defendants") from continuing to engage in unconstitutional discrimination and to require Defendants to provide Plaintiffs, who are students at Prairie View A&M University ("PVAMU"), a historically Black university, in the City of Prairie View, with the same or similar early voting opportunities that

1

Defendants are providing to non-Black or non-student voters in other cities in Waller County.

For decades, Defendants, or their predecessors, have used unconstitutional and racially discriminatory tactics to deny or abridge the voting rights of Black people and students in Prairie View on an equal basis as other non-Black or non-student voters. This has repeatedly required the intervention of federal courts, the U.S. Department of Justice, and private citizens. Unfortunately, this Court's intervention is once again necessary to vindicate the rights of PVAMU student voters.

Under the early voting plan that Defendants adopted for the 2018 general election, the County will not provide voters in Prairie View with any early voting opportunities during the first week. During the second week, the only on-campus early voting opportunity will be at the Memorial Student Center on the PVAMU campus for three days, Monday, October 29 to Wednesday, October 31, from 8:00am to 5:00pm (27 hours total)—i.e., meaning there will be no opportunities for students to vote in the evening hours on campus. In addition, during the second week, there will be early voting at an off-campus site, the County Community Center in Prairie View, for two days, Thursday, November 1 to Friday, November 2, from 7:00am to 7:00pm (24 hours total). The Community Center is located about a mile off-campus and is not well-known to PVAMU students. In sum, this plan offers no weekend hours for early voting anywhere in Prairie View; no evening hours (i.e., after 5:00 pm) for early voting anywhere on campus; and no early voting at all in Prairie View the first week of voting.

By contrast, during the first week of early voting, the City of Waller—a majority-white city with half of the citizen voting-age population ("CVAP") of Prairie View and where only 10% of the voting-age population ("VAP") is under age 21—has two early voting sites. The first site has six days (50 hours), and the second site has three days (23 hours) of early voting. Both sites in Waller have Saturday hours. In the second week, Waller has five days (51 hours) of early voting at one site, including two days of evening hours. In total, Waller will have eleven (11) early voting days as compared to Prairie View's five total days, only three of which are on PMAVU's campus.

As compared to the ample opportunities to vote offered to other cities in Waller County like the City of Waller, this schedule severely limits early voting opportunities for Black voters in the City of Prairie View and for student voters at PVAMU, who disproportionately lack access to transportation, and have school and work obligations and other socioeconomic barriers that make it more difficult to vote at remote locations.

Defendants' actions violate Section 2 of the Voting Rights Act and violate the Fourteenth, Fifteenth, and Twenty-Sixth Amendments of the United States Constitution. Emergency injunctive relief is necessary to enjoin Defendants from continuing to implement the early voting plan that just began on Monday, October 22, 2018. Not only does the current plan violate federal law, it also creates an unacceptable risk of irreparable harm to voters in Prairie View, a disproportionate share of whom are Black students, during this election season.

Moreover, to prevent the implementation of the plan that has just recently begun and ends on November 2, Plaintiffs respectfully request that this Court issue a ruling as

soon as possible either on the papers or after an emergency hearing conducted telephonically. On October 23, 2018, and October 24, 2018, Plaintiffs' counsel contacted counsel for Defendants, Elton Mathis, who indicated that Defendants do not consent to the relief requested in this motion.

## FACTUAL BACKGROUND

PVAMU is the only university in Waller County. Founded in 1876 after the Civil War and during America's Reconstruction, PVAMU is a historically Black university with a student body of more than 8,000, 82% of whom are Black students.[1] The PVAMU campus is located entirely in the City of Prairie View.

On September 22, 2018, the Waller County Commissioners Court, pursuant to a recommendation by the Democratic and Republican county party chairs, voted to adopt an early voting plan for the November 2018 general election.[2] Waller County's early voting period for the 2018 general election began on Monday, October 22 and runs through Friday, November 2.[3] Under the existing plan adopted by the Commissioners Court, during the first week of early voting, there are *no* early voting sites or opportunities on the PVAMU campus or anywhere in the city of Prairie View. During the second week of the early voting period, the Memorial Student Center at PVAMU in Prairie View is an early voting site for three days, Monday, October 29 to Wednesday, October 31, from 8:00am

---

[1] Prairie View A&M, *About PVAMU, College History*, https://www.pvamu.edu/about_pvamu/college-history/ (last visited Oct. 22, 2018).

[2] *October 17, 2018 Commissioners Court, Elections (Item 5)*, WALLER COUNTY COMMISSIONERS COURT (Oct. 17, 2018), http://wallercountytx.swagit.com/play/10172018-1225 [hereinafter *Oct. 17 Video, Elections, Item 5*].

[3] *Waller County Elections, Early Voting Locations*, Oct. 18, 2018 http://www.co.waller.tx.us/page/Front%20Page (last visited Oct. 22, 2018).

to 5:00pm (27 hours total); and the County Community Center in Prairie View is an early voting site for two days, Thursday, November 1 to Friday, November 2, from 7:00am to 7:00pm (24 hours total). The Community Center, which is located near the Post Office, is off-campus and is not well-known to or frequently used by PVAMU voters, particularly because most students receive their mail on campus.[4] In addition, there are no weekend hours for early voting anywhere in Prairie View, and there are no evening hours (i.e., after 5:00 p.m.) for early voting at the Memorial Student Center on PVAMU's campus during the early voting that is scheduled there on the second week.

The Memorial Student Center at PVAMU would be available and could accommodate increases to early voting days and hours on any day from Monday, October 22 through Friday, November 2. Ex. A, Decl. of Valerie Gibson ¶ 5.[5]

In stark contrast, the City of Waller, for example, which is majority-white and has half of the citizen voting age population ("CVAP") of Prairie View has several early voting sites that will offer more than twice the early voting days—eleven (11)—over the two-week period, including during the first week of early voting and during evening and Saturday hours as compared to Prairie View. Ex. B, Decl. of William S. Cooper. In addition, the City of Katy, which is majority-white and where less than 10% of the VAP is under age 21, has three days (27 hours total) of early voting during the first week.

---

[4]     *Oct. 17 Video, Elections, Item 5*, at 40:25.
[5]     All citations to Exhibits are to materials attached to the Declaration of Leah C. Aden.

The political party chairs submitted their agreement for the 2018 General Election early voting schedule.[6] On September 22, 2018, the Commissioners Court approved the agreement.[7] On that date, a community member, Dr. Denise Maddox, who is the President of the Waller County Democrat club and who has identified herself as a person who works to register PVAMU students to vote, raised concerns about the limited number of early voting days at PVAMU.[8]

In response to the concerns, Defendant Commissioners Court added an agenda item to their October 17, 2018 meeting to consider a motion to amend and add days to the early voting schedule. At that meeting, multiple community members spoke in favor of adding additional days on-campus at PVAMU.

For example, Plaintiff Mr. Muhammad noted in relation to the current early voting plan that PVAMU "keeps getting the short end of the stick" in terms of "fairness and equality" in access to early voting locations.[9] Dr. Maddox again urged Defendant Commissioners Court to provide more early voting hours at PVAMU.[10] She stated that she has asked "every year … for parity for PVAMU students" and that "they be allowed to vote every single day [of early voting] at the [Memorial Student Center] on campus."[11]

---

[6]     *Oct. 17 Video, Elections, Item 5*, at 25:45.
[7]     *Id*. at 7:59-8:52.
[8]     *Id*.
[9]     *October 17, 2018 Commissioners Court, Public Comment, Item 2*, WALLER COUNTY COMMISSIONERS COURT at 30:30-32:30 (Oct. 17, 2018), http://wallercountytx.swagit.com/play/10172018-1225 [hereinafter *Oct. 17 Video, Public Comment, Item 2*].
[10]    *Id*. at 16:50.
[11]    *Oct. 17 Video, Elections, Item 5*, at 38:00.

Kendric Jones, a Black student, and current Prairie View city councilmember, echoed the repeated requests for on-campus early voting at PVAMU.[12] In response to Defendant Duhon's question, the councilmember explained that the off-campus Community Center site, which is near the post-office, is not frequently visited by PVAMU students because most students get their mail on campus.

Xante' Wallis, another Black student and Prairie View city councilmember expressed frustration with the fact that PVAMU had "zero [early voting hours or days in the first week] after all of the issues [that PVAMU students] have had over the decades" referring to Waller County's well-known record of obstructing PVAMU students' ability to register to vote and vote in Waller County, as discussed *infra*.[13] This student remarked: "it is a grave injustice that we have zero days" during the first week of early voting.

Dr. Maddox addressed the unique concerns that PVAMU students face each year.[14] She stated that new PVAMU students and first-time voters, for example, must navigate the complications of registering to vote, while also fully immersing themselves in their school work. She also indicated that many students either lack access to cars or money to pay for gas, which, in turn, prevents them from voting at location off campus. Similarly, Sabrina Franklin, a PVAMU parent and third-generation alumna, explained how long lines on campus may deter students from voting.[15] Each of these community members stressed the

---

12      *Id.* at 41:20.
13      *Oct. 17 Video, Elections, Item 5*, at 47:30.
14      *Oct. 17 Video, Public Comment, Item 2*, at 13:20-14:30.
15      *Id.* at 17:25.

unequal distribution of early voting days in Prairie View as compared to other Waller County cities and unincorporated areas.

With the exception of Defendant Commissioners Court, very few people commented in support of the plan. Mr. David Luther, the chair of the local Republican Party, who is white, urged Defendant Commissioners Court to oppose any changes.[16] He commented that: "we[,] [the political party chairs,] decided what this was going to be" in terms of early voting opportunities.[17] Another attendee, Sherry Griswald, who voiced support for the plan—a white woman—did so while acknowledging that the process for choosing early voting sites "needs to be improved" because it was "broken."[18]

Members of the Defendant Commissioners Court attempted to justify the early voting plan by asserting that: it was proposed by members of both major political parties; that early voting at PVAMU was not included for the first week because it would conflict with PVAMU's homecoming; that the "community," particularly senior citizens, did not want or like to go onto campus at the historically-Black PVAMU; that it was difficult to park at PVAMU; and that it was too late to add early voting sites.[19]

At least two students affiliated with PVAMU explained that party leaders did not speak for PVAMU. Antonious Brown, a former graduate and Black male asked, "how come the party chairs get to decide" how much early voting opportunities voters have?[20] He commented: "I don't think that [the party chairs] represent[ ] my voice when it comes

---

[16]     *Oct. 17 Video, Elections, Item 5*, at 59.00.
[17]     *Oct. 17 Video, Public Comment, Item 2*, at 28:28.
[18]     *Oct. 17 Video, Elections, Item 5*, at 59:00.
[19]     *Id*. at 4:36, 10:18, 20:40, & 27:05.
[20]     *Id*. at 53:45.

to choosing where early voting happens," indicating that he himself is not registered to vote for any party. Kirsten Budwine, another Black woman and PVAMU student similarly expressed that she is not affiliated with either of the two major political parties.[21] Defendant Duhon agreed with this Black voter admitting: "I think it's fair to say that a lot of students don't identify as Democrat or Republican."[22]

Moreover, with respect to homecoming, most of PVAMU's activities do not begin until the end of the first week of early voting and would be advantageous to conduct early voting while so many students, local alumni, and other residents of Prairie View would already be on-campus. Ex. C, Decl. of Frank Jackson ¶ 12.

Further, PVAMU makes parking available to non-PVAMU students on voting days. *Id.* ¶ 14. Many other events are frequently are held on PVAMU's campus, including the Fire Department's annual banquet.

Based, in part, on community opposition to the existing early voting plan, on October 17, 2018, Defendant Eason acknowledged that that the early voting schedule did not reflect "equal representation," particularly as between the four cities in the County— Waller, Hempstead, Prairie View and Brookshire—because there are no scheduled early voting days during the first week.[23] She further stated that the existing early voting plan did not reflect community members' input and that a uniformed voting schedule, along with structured feedback and input from community members, would curb the unequal

---

[21]       *Id.* at 46:45.
[22]       *Id.* at 56:30.
[23]       *Id.* at 2:40.

distributions of early voting days and mitigate confusion.[24] She also recommended that Defendant Commissioners Court approve the addition of early voting days during the first week of early voting at: PVAMU Memorial Student Center on Monday, October 22 and Tuesday, October 23; PVAMU Student Square on Wednesday, October 24, and the Prairie View City Hall on Thursday, October 25, and Friday, October 26.[25]

Commissioners Jeron Barnett and Justin Beckendorff also informally discussed proposals that included additions of up to three days of early voting in a combination of locations and hours during the first week of early voting; those proposals would have included additional sites in Prairie View and on PVAMU's campus, and also other areas like Monaville and Katy.[26] Commissioner Beckendorff also urged additional hours for voters in Katy to extend beyond 5:00 p.m. to account for commuters who needed to vote after work.[27]

Defendant Judge Duhon also admitted "that there's an inequity" in the early voting opportunities available to Prairie View as compared to other cities like Waller that get eleven days of early voting.[28] Defendant Judge Duhon acknowledged Defendant Commissioners Court's responsibility to "give them[,] [PVAMU students] equal access."

Notwithstanding, Defendant Judge Duhon proposed providing additional days of early voting for Monaville so that it would have a full week of early voting during the first

---

[24]     *Id*. at 5:15.
[25]     *Id*. at 3:30 & 4:55.
[26]     *Id*. at 28:00, 1:03-1:08, & 1:00-1:06.
[27]     *Id*. at 1:04:35.
[28]     *Id*. at 12:51 & 21:42.

week.[29] Defendant Eason, however, urged against that because Monaville does not have the population for that much advanced voting. Defendant Eason explained that during the 2018 primaries, there were days when no more than about 18 voters voted daily.[30]

Even more, Defendant Judge Duhon made a motion to add three days of early voting at the Waller County Community Center in Prairie View on Monday, Thursday, and Friday, as well as extend hours on Thursday and Friday from 8:00 am-5:00pm to 7:00am-7:00pm on two days (Thursday and Friday) at the off-campus Monaville Building in Hempstead during the first week of early voting.[31] Defendant Commissioners Court heard public testimony that the proposal was insufficient because, as discussed, the County Community Center in Prairie View is off-campus, about a mile from the Memorial Student Center's central PVAMU location, that the Community Center is not well-known to PVAMU students, and that PVAMU students do not visit the Community Center because students do not typically send or receive mail at the nearby post office. The other proposed site, the Monaville County Building, is about thirteen (13) miles from the PVAMU campus.

Despite the community's opposition to the existing early voting schedule, Defendant Eason's determination that the addition of days of early voting to sites in Prairie View was feasible, and Defendant Duhon's motion to add early voting sites and hours to the existing schedule, none of the Commissioners provided a second vote in favor of

---

[29]     *Id*. at 1:00:02.
[30]     *Id*. at 1:03:15.
[31]     *Id*. at 1:06:25.

Defendant Duhon's motion, which prevented a vote.[32] Commissioner Amsler made a motion to make no change to the early voting schedule, which Defendant Commissioners Court approved 3-2.[33]

While ultimately acting to maintain the current plan, Defendants Ms. Eason and Judge Duhon indicated a need for representatives from all over the County, including PVAMU, to be involved in setting the schedule for early voting in the future because this issue of disparities keeps coming up.[34] They also indicated a need for a standard early voting schedule for future elections to avoid this ongoing inequity issue.

Plaintiffs are five PVAMU students. *See generally*, Exs. D-H, Decls. of Jayla Allen, Damon Johnson, Joshua Muhammad, Raul Sanchez, and Treasure Smith. All are Black or Latinx registered voters in the State of Texas. *Id.*

Jayla Allen is a 19-year-old second year PVAMU student who is involved in at least two student PVAMU groups, Chair of Rock the Vote and a member of IGNITE. Ex. D, Decl. of Allen. She has used early voting for every election since she started voting at PVAMU and desired to vote during the first week of early voting to set an example for other students as a student leader and because it is more convenient and efficient for her. *Id.* She ultimately did vote this week but had to arrange a ride to travel off campus to do so.

---

[32]   *Id.* at 1:07:30.
[33]   *Id.* at 1:08:55.
[34]   *Id.* at 6:40, 56:00, & 58:00.

Plaintiff Damon Johnson also is a 19-year old sophomore PVAMU student, who serves on PVAMU's Student Government Association and is involved in several student organizations like the Prairie View Consulting Association, Chemistry Club, American Institution for Chemical Engineers, and the Speech and Debate Club. Ex. E, Decl. of Damon Johnson. His work on the Speech and Debate club takes him out-of-town almost every week via transportation provided by PVAMU. *Id*. Mr. Johnson has used early voting and takes advantage of it whenever he is available due to his busy student and activity. *Id*. Since he does not have a car, he has relied on others to vote off-campus, but has missed voting when he has been unable to get rides. *Id*. Voting on-campus at PVAMU's Memorial Center is most accessible to him because it is centrally located and he already passes through there between classes and club activities. *Id*.

Plaintiff Raul Sanchez is a 19-year-old second-year student as well. Ex. G, Decl. of Raul Sanchez. He is involved in PVAMU's Power Lifting Club and a member of two church groups. *Id*. He lives off-campus, relies on a shuttle to get to and from school, and relies on others to get to other places off-campus. *Id*. He has missed classes or been late because he lacked transportation. *Id*. He uses early voting in light of his schedule and lack of transportation. *Id*. The Memorial Center on campus also is most accessible to him because it is centrally located and he, like other students, passes through it regularly. *Id*.

Consistent with Plaintiffs' experiences, PVAMU students use early voting at one of the highest rates in the County.[35] *See*, *e.g*., Exs. I-J, Mar. 6, 2016, Canvass reports.

---

[35]    *03.06.2018    Democratic    Primary    Canvass*, WALLER    COUNTY, http://www.co.waller.tx.us/page/open/2110/0/03.06.2018%20%20Democratic%20Primary%20Canvass

13

Defendant Waller County, Texas is a political subdivision of the State of Texas. Defendant Waller County Commissioners Court is the governing body for Waller County. The five-member Commissioners Court includes the County Judge who is elected at-large and four Commissioners who are elected from four single-member districts. Tex. Loc. Gov't Code § 81.001. The Commissioners Court has authority over the County's budgetary and administrative decisions, including decisions concerning early voting days, hours and locations. Tex. Const. art. V, § 18(b); Tex. Loc. Gov't Code §§ 111.007, 111.008; Tex. Elec. Code §§ 85.001, 85.002, 85.061, 85.062. Four members of the Commissioners Court are white people elected from majority-white voting districts. The fifth Commissioner, Mr. Jeron Barnett, is Black and is elected from a majority-Black district. Defendant Judge Carbett Duhon III is sued in his official capacity as the County Judge and as a representative member of the Commissioners Court. Defendant Christy A. Eason is the Waller County Elections Administrator and the chief elections official in Waller County.

## ARGUMENT

Plaintiffs urgently seek a TRO pursuant to Federal Rule of Civil Procedure 65. Fed. R. Civ. P. 65(b). A party seeking a TRO under must show the same elements for relief as a plaintiff seeking a preliminary injunction. *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002). Those elements are: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the threatened injury

---

(last visited Oct. 24, 2018); *03.06.2018 Republican Primary Canvass*, WALLER COUNTY, http://www.co.waller.tx.us/page/open/2110/0/03.06.2018%20Republican%20Primary%20Canvass (last visited Oct. 24, 2018).

to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that an injunction would not disserve the public interest. *Jackson Women's Health Organization v. Currier*, 760 F. 3d 448, 452 (5th Cir. 2014); *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006). "While each of these factors must be met in order for a preliminary injunction to be granted, a stronger showing of one factor can compensate for a weaker showing of another." *Texas v. EPA*, No. 3:15-CV-00162, 2018 WL 4518230, at *1 (S.D. Tex. Sept. 12, 2018).

A TRO is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove her case in full at a preliminary-injunction hearing." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). All that is required is that Plaintiffs "present a prima facie case," not that they are "certain to win." *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011) (citation omitted).

Plaintiffs satisfy each of these requirements.

## I.      PLAINTIFFS' CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS.

### A. Plaintiffs are Likely to Succeed on the Merits of Their Claims Under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments.

Plaintiffs are likely to prevail on their claim that Defendants' inequitable early-voting plan discriminates against Plaintiffs as young voters or as young Black and Latinx

voters on account of race or age in violation of the Fourteenth, Fifteenth and Twenty-Sixth Amendments to the U.S. Constitution.

The Fourteenth and Fifteenth Amendments forbid the denial or abridgment of the right to vote on account of race or ethnicity. U.S. Const. amend. XIV; U.S. Const. amend. XV; *see also Veasey v. Abbott*, 830 F.3d 216, 253 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 612 (2017). Likewise, the Twenty-Sixth Amendment forbids denying or abridging the right to vote on account of age. U.S. Const. amend. XXVI; *see also United States v. Texas*, 445 F. Supp. 1245, 1257 (S.D. Tex. 1978) (three-judge court), *aff'd sub nom. Symm v. United States*, 439 U.S. 1105 (1979). The Twenty-Sixth Amendment has "particular relevance for the college youth who comprise approximately 50 per cent of all who were enfranchised by this amendment." *Walgren v. Howes*, 482 F.2d 95, 101 (1st Cir. 1973).

Thus, the Constitution bars discrimination against either Black and Latinx voters or 18 to 21-year-old student voters. Indeed, the Fourteenth, Fifteenth, and Twenty-Sixth Amendments have been read together to prohibit discrimination that is unique to Black student voters. *See, e.g.*, *Texas*, 445 F. Supp. at 1257 (holding that Waller County officials violated the Fourteenth, Fifteenth, and Twenty-Sixth Amendments in imposing special requirements on Black students at PVAMU, even where those requirements did not affect Black non-students); *Latham v. Chandler,* 406 F. Supp. 754, 755 (N.D. Miss. 1976) (enjoining, under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments, practices that treated registration applications tendered by Black students at a historically Black college differently from applications tendered by non-students of any race); *Frazier v. Callicutt,*

383 F. Supp. 15, 19-20 (N.D. Miss.1974) (same). Thus, unconstitutional discrimination against Black students can exist even in the absence of discrimination against Black non-students. *Cf. Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1033-35 (5th Cir. 1980).

The hallmarks of the amendments guaranteeing the franchise are fairness and a prohibition against arbitrary or disparate treatment. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam) (citing *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 (1966)). This principle, in and of itself, shows that Plaintiffs are likely to succeed on the merits of their claims. It is the essence of arbitrary and disparate treatment to provide significantly greater early voting opportunities for white and non-student voters in Waller County as compared to their Black and student counterparts.

In addition, Plaintiffs are likely to succeed on the merits of their claims because they are likely to show that the early voting plan was motivated, at least in part, by an intent to discriminate against Black voters and young voters. Here, to demonstrate such unconstitutional discrimination, Plaintiffs can rely on direct or circumstantial evidence of intentional discrimination, including: (1) evidence that Defendants' decision bears more heavily on one race, or age group, than another; (2) the historical background of the decision; (3) the specific sequence of events leading up to the decision; (4) departures from

the normal procedural sequence; (5) substantive departures; and (6) legislative history, including "contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (stating test in the context of race discrimination claims). Plaintiffs can also rely on "the normal inferences to be drawn from the foreseeability of defendant's actions." *United States v. Brown*, 561 F.3d 420, 433 (5th Cir. 2008) (internal citation and quotation marks omitted).

Demonstrating intentional discrimination "does not require a plaintiff to prove that the challenged action rested solely on racially discriminatory purposes." *Arlington Heights*, 429 U.S. at 262. Instead, the plaintiff's burden is to show that the discriminatory purpose was a motivating factor rather than the primary or sole purpose. *Id.* at 265-66 ("Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one. . . . When there is proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified.").

"An official action taken for the purpose of discriminating on account of race has no legitimacy at all." *Veasey*, 830 F.3d at 231 (internal citation, alterations, and quotation marks omitted).

Here, the unconstitutional discrimination is evident on the face of the plan, because it: (1) singles out Prairie View, a community that, unlike any of the other communities in the County is overwhelmingly made up of young Black student voters, for unequal

treatment as compared to smaller cities with whiter or older populations *and lower early voting utilization rates*; (2) there is a significant history of racial discrimination in the County; (3) the sequence of events leading up to the decision excluded the Prairie View community; (4) Defendants' actions lack any rational or non-discriminatory bases for the early voting plan; (5) the October 17, 2018 Commissioners Court meeting included overt and subtle comments revealing unconstitutional biases; and (6) Defendants were fully aware that the foreseeable result of their decision was to violate of the fundamental rights of Black students.

       1.    <u>Disparate Impact</u>

In evaluating Plaintiffs' constitutional claims, the impact of Defendants' early voting plan is an "important starting point." *Arlington Heights*, 429 U.S. at 266. Where, as here, the effect of Defendants' actions evidence "a clear pattern, unexplainable" on grounds other than race or age, "the evidentiary inquiry is then relatively easy" and the impact alone can be "determinative." *Id*.

On its face, Defendants' early voting schedule discriminates against Black student voters. There is no early voting during the first week in Prairie View generally or at PVAMU. Likewise, there is no early voting on weekends at any time or at any site in Prairie View or at PVAMU over the entire early voting period.

Only in the County's one city where a majority of voters are both Black and students, Prairie View, are voters denied the opportunity to vote early during the first week

or on weekends. And the County implemented this plan even though PVAMU students use early voting at one of the highest rates in the County.[36]

No other city or area in Waller has more than 12% of voters that are 18-21 years old. Ex. B, Decl. of Cooper. According to the 2010 Census, 66.0% of Prairie View's voting-age population ("VAP") is between the ages of 18 and 21. By comparison, 10.1% of the City of Waller's VAP is 18-21 years old. In Katy, only 7.4% of the VAP is 18-21 years old; in Brookshire, 9.4% of the VAP is aged 18 to 21 years old; and, in Hempstead, 11.8% of the VAP is aged 18 to 21. In Waller County as a whole (including Prairie View), a total of 17.3% of the VAP is 18-21 years old.

In contrast to Prairie View, during the first week of early voting, the City of Waller—which is majority-white, has half of the VAP of Prairie View, and where only 10% of the VAP is 21-years-old or under—has two early voting sites. In Waller, the first site has six days (50 hours), and the second site has three days (23 hours) of early voting. Both voting sites in Waller have Saturday hours. The City of Katy—which is also majority-white and where less than 10% of the VAP is age 21-years-old or younger—has three days (27 hours total) of early voting during the first week.

In the second week of early voting, there are only three early voting days on PVAMU's campus at the Memorial Center. Then, there are two early voting days off-campus a mile away at the Community Center that many students at PVAMU are unfamiliar with. Exs. F, G, Decls. Muhammad ¶ 6; Sanchez ¶ 6. PVAMU students require

---

[36]     *Id.*

additional early voting days on-campus because voting on campus is more accessible to students who lack cars, have busy academic, work, and/or activities schedules. Exs. D, G, F, Decls. Allen ¶¶ 9-10; Sanchez ¶¶ 3, 6; Muhammad ¶ 6.

During the second week of early voting, Waller has five days (51 hours) of early voting at one site, including two days of evening hours. The cities of Hempstead and Brookshire, with VAPs that contain less than 10 percent voters aged 18 to 21 years old, also have five days of voting and evening hours. Ex. B, Decl. Cooper. Because of the lack of access to transportation, students are unlikely to be able to travel to these locations several miles away. Exs. D, E, G, Decls. Allen ¶¶ 9-10; Johnson ¶¶ 5-6; Sanchez ¶¶ 3, 5-7; Muhammad ¶¶ 5, 7.

Moreover, beyond the specific hurdles faced by PVAMU students, Black voters in Prairie View generally face socioeconomic hurdles that make reaching early voting locations in other cities more difficult than for Anglo voters or other older voters in neighboring cities. For example, 24.6% of Black people in Waller County, as compared to only 11.9% of Anglo people, commute to work by walking, biking, or via carpool, taxi or public transit (i.e., riding in another person's vehicle). Ex. B, Decl. of Cooper, Attachment 3, 2012-2016 ACS Data. In Prairie View, 51.7% of Black people, as compared to only 41.8% of Anglo people, commute to work by walking, biking, or via carpool or tax (i.e., riding in another person's vehicle). Ex. B, Decl. of Cooper, Attachment 2, 2011-2015 ACS Data.

While the Census data on households does not include college dorms and so largely underestimates the lack of vehicle access for Black students, the data still reveals racial

disparities. For example, in Waller County, 12.9% of Black households and 2% of white households have no vehicle. Ex. B, Decl. of Cooper, Attachment 3, 2012-2016 ACS Data. In Prairie View, 18.3% of Black renters have no vehicle in their household. Ex. B, Decl. of Cooper, Attachment 2, 2012-2016 ACS Data.

In Prairie View, the majority Black and majority student population also more likely to be poor and face other socioeconomic barriers that whites or others in the County do not face. *Id*. For example, in Prairie View, 30.8% of Black workers, as compared to 23.6% of white workers, are in service occupations. *Id*. Black workers in service occupations "are likely to be working for an hourly wage and are less likely to be able to take off from work" to vote early during the weekday business hours. *Operation PUSH v. Allain*, 674 F. Supp. 1245, 1256 (N.D. Miss. 1987), *aff'd sub. nom. Operation PUSH v. Mabus*, 932 F.2d 400 (5th Cir. 1991). In Prairie View, 49.1% of the Black population lived below the poverty line in the last 12 months, as compared to 23.4% of the Anglo population; the median household income for Black residents was $24,125, as compared to $46,250 for Anglo residents; 22.9% of the Black population between 16 and 64 years of age were unemployed, as compared to 2.9% of the Anglo population; and 15.8% of Black people over 25 years old had less than a high school diploma, compared to 0% of Anglo people. These socioeconomic disparities make it more difficult to vote on Election Day or to travel to other cities to use early voting there because these disparities can hinder the ability of Black voters in Prairie View to effectively participate in the political process as compared to others. *See Veasey*, 830 F.3d at 250-51, 258-60.

Defendants' decision to deny Black students in Prairie View the same opportunities to vote early in the first week or on weekends as other non-student or non-Black voters is intentional discrimination. Courts have found illegal discrimination based on similar evidence of the unequal access to early voting opportunities or a misallocation of polling sites. *See, e.g.*, *Obama for America v. Husted*, 697 F.3d 423, 440-41 (6th Cir. 2012); *Republican Party of Ark. v. Faulkner County, Ark.*, 49 F.3d 1289, 1298-99 (8th Cir. 1995); *League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1216-19 (N.D. Fla. 2018); *Common Cause Ind. v. Marion Cty. Election Bd.*, 311 F. Supp. 3d 949, 968-69 (S.D. Ind. 2018); *One Wisconsin Inst., Inv. v. Thomsen*, 198 F. Supp. 3d 896, 931-33 (W.D. Wis. 2016); *Sanchez v. Cegavske*, 214 F. Supp. 3d 961, 973-74 (D. Nev. 2016).

Thus, on its face, Defendants enacted and maintained an early voting plan that disadvantages student and Black voters in Prairie View in violation of the federal Constitution.

2.    <u>Historical Background</u>

Defendants' decision to enact and maintain a discriminatory early voting plan must be viewed in the context of a long, well-documented history of discrimination in Texas, generally, and Prairie View, specifically. This past discrimination is relevant to drawing an inference of unconstitutional discrimination where, as here, "the evidence shows that discriminatory practices were commonly utilized, that they were abandoned when enjoined by courts or made illegal by civil rights legislation, and that they were replaced by laws and practices which, though neutral on their face, serve to maintain the status quo." *Rogers v. Lodge*, 458 U.S. 613, 625 (1982).

Prairie View and Waller County are in the State of Texas. Texas's history of discrimination in voting is well-documented. *See LULAC v. Perry*, 548 U.S. 399, 439-40 (2006). Even in recent years, Texas's repeated use of discriminatory voting schemes has necessitated federal intervention. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017) (illegal restrictions on voter assistance); *Veasey*, 830 F.3d at 264-65 (photo voter ID requirement); *Perez v. Perry*, 26 F. Supp. 3d 612, 614 (W.D. Tex. 2014) (three-judge court) (noting that an interim plan was adopted to address concerns that Texas's redistricting violated the Constitution and Section 2 of the VRA).

Because of this history, Waller County and the State of Texas were subject to preclearance under Section 5 of the VRA from 1975 until 2013. Between 1982 and 2013, the U.S. Department of Justice objected to dozens of proposed voting changes in Texas, including three objections against Waller County with one such objection coming as recently as 2002. *See* Exs. K-M, U.S. Dep't of Justice, Civil Rights Div., Voting Determination Letters in Texas (for 1976, 1978, 2002).

Among Texas counties, Waller County stands out for its particularly shameful history of discrimination against Black voters and students in Prairie View. For instance, in the last fifteen years, Defendants have admitted to violating the VRA. *See*, *e.g.*, Consent Decree, *United States v. Waller Cty.*, No. 4:08-cv-03022 (S.D. Tex. Oct. 17, 2008), ECF No. 8; Consent Order, *Prairie View Chapter of NAACP v. Kitzman*, No. 04-459 (S.D. Tex. Feb. 24, 2004), ECF No. 11.

In 2014, this Court singled out Waller County's abhorrent history of discrimination from 1971-2008 as an example of Texas's overall "penchant for discrimination" and "a

recalcitrance that has persisted over generations despite the repeated intervention of the

federal government":

> In 1971, after the 26th Amendment extended the vote to those 18 years old and older, Waller County which was home to Prairie View A & M University (PVAMU), a historically Black university, became troubled with race issues. Waller County's tax assessor and voter registrar prohibited students from voting unless they or their families owned property in the county. This practice was ended by a three-judge court in 1979.
>
> In 1992, a county prosecutor indicted PVAMU students for illegally voting, but dropped the charges after receiving a protest from the DOJ.
>
> In 2003, a PVAMU student ran for the commissioner's court. The local district attorney and county attorney threatened to prosecute students for voter fraud — for not meeting the old domicile test. These threatened prosecutions were enjoined, but Waller County then reduced early voting hours, which was particularly harmful to students because the election day was during their spring break. After the NAACP filed suit, Waller County reversed the changes to early voting and the student narrowly won the election.
>
> In 2007-08, during then Senator Barack Obama's campaign for president, Waller County made several voting changes without seeking preclearance. The county rejected "incomplete" voter registrations and required volunteer deputy registrars (VDRs) to personally find and notify the voters of the rejection. The county also limited the number of new registrations any VDR could submit, thus limiting the success of voter registration drives. These practices were eventually prohibited by a consent decree.

*Veasey v. Perry*, 71 F. Supp. 3d 627, 635-36 (S.D. Tex. 2014), *aff'd in part, and rev'd in part on other grounds* 830 F. 3d 216 (2016) (en banc).

In fall 2015, County officials returned to their longstanding practice of seeking to limit voting opportunities for Black PVAMU students. *See* Ex. N, Ltr. from J. Gerald

Hebert, Executive Director & Director of Litigation, Campaign Legal Center, to Honorable Trey Duhon, County Judge, Waller Cty., and Dan Teed, Waller County Elections Administrator (Dec. 22, 2015). For the 2016 primaries, the County intended to cut the number of early-voting locations in Waller County from eight to two, neither of which would be in the same precinct as PVAMU or the City of Prairie View. *Id.* The plan was approved by the local chairs of both the Republican and Democratic parties.[37] Of these two proposed early voting locations, neither would have been within walking distance of PVAMU. Facing the threat of litigation, however, the County ultimately reversed itself and adopted a plan that included six early-voting locations, including one in Prairie View. *Id.*

Defendants' early voting plan for the pending election is thus part of the continuum of Waller County's longstanding acts of official discrimination in voting.

### 3.    Sequence of Events Regarding the Early Voting Schedule

The specific sequence of events leading up to Defendants' enactment of the existing early voting schedule and subsequent decision to maintain the schedule support a finding of discrimination.

In general, the Waller County Democratic and Republican party chairs submit a proposed early voting schedule to the Commissioners Court for approval. At the October 17 meeting, Mr. Luther, the Republican chair, stressed that the party chairs decide the early

---

[37]      *See Minutes, Waller County Commissioner's Court Regular Session* 3 (Jan. 20, 2016), available at http://www.co.waller.tx.us/page/CC.Minutes; *see also* Emily Foxhall, *Waller County backs off plan to limit early* voting, Hous. Chron. (Jan. 5, 2016, 8:16 PM), https://www.houstonchronicle.com/news/houston-texas/houston/article/Waller-Co-backs-off-plan-to-limit-early-voting-6739007.php.

voting schedule.[38] He explained that the party chairs "look at the [early voting] schedule and determine if" there are enough days.[39] The chairs are supposed to seek input from their party's respective candidates and work together on an agreed-upon schedule.

But, Defendant Duhon conceded that, in a departure from past procedures, he had spoken to Democratic candidates who did not have an opportunity to speak with the Democratic chair before the early voting scheduled was submitted for approval.[40] These party representatives also did not solicit the feedback of community members, like PVAMU administrators and students. Ex. C, Decl. of Jackson ¶ 7. Even though she is active in the local Democratic Party, Plaintiff Ms. Allen did not learn of the early voting plan until October 12, 2018—well after it originally had been proposed by the party chairs on September 22 and even though she is a precinct chair through the Democratic Party in Waller County. Ex. D, Decl. of Allen ¶¶ 3, 12. Plaintiff Mr. Muhammad did not learn about the plan until shortly before the Commissioners' October 17, 2018 meeting. At that meeting, he testified in opposition to the plan and urged the Commissioners to add early voting on PVAMU's campus during the first week. Ex. F. Decl. of Muhammad ¶ 8. Plaintiff Johnson learned about the early voting schedule on October 21, 2018 from a fellow student. Ex. E, Decl. of Johnson ¶ 9.

Even if the party chairs had sought adequate input from local politicians and candidates, however—which they did not—public comments from several students,

---

[38]    *Oct. 17 Video, Public Comment, Item 2*, at 25:45-26:33.
[39]    *Id.*
[40]    *Oct. 17 Video, Elections, Item 5*, at 10:45.

including Plaintiff Mr. Muhammed, made clear at the October 17 meeting that they and other students are not members of either the Democratic or Republican party.[41] *See also* Ex. D, Decl. of Allen ¶ 13 (testifying that she does "not support any decision by representatives of either Waller County political party to agree to a plan that does not give PVAMU students an equal opportunity to participate in early voting"). The early voting schedule, thus, does not represent or reflect non-party affiliated voters.

This sequence of events surrounding the development and approval of the existing early voting plan and subsequent failure to approve a proposal to amend the plan to provide for an equitable provision of early voting opportunities indicate key departures from normal, transparent, and democratic procedural sequences. The county chairs' process for developing the early voting schedule agreement is structured to prioritize a Democrat or Republican party's candidates, which excludes input from voters who are not affiliated with a party. Of equal concern is the lack of structures in place to solicit community input. Even within this flawed process, the process included irregularities, including the Democratic chair failing to seek input from Democratic candidates before the early voting scheduled was submitted for approval. Community members, as well as Defendant Eason, expressed concerns about the unequal-distribution of early voting days in Prairie View. Yet the Commissioners Court did not rectify these concerns during the meeting.

In sum, the sequence of events leading to the adoption of the early voting plan shows that PVAMU students, who comprise the highest number of citizen-voting-age population

---

[41]     *Oct. 17 Video, Public Comment, Item 2*, at 30:30-32:30.

and most of whom are Black, did not have a meaningful opportunity to contribute or make recommendations to the development of the early voting schedule. Moreover, the current early voting plan disproportionately impacts Black students and citizens in Prairie View, a city in which 88.6% of the population is Black. Defendants' decision to maintain the current early voting schedule despite these outcomes, community opposition, and procedural departures and irregularities indicates that unconstitutional discrimination played an improper role in the early voting schedule development and approval.

4.    The Foreseeability of the Disparate Impact and Contemporaneous Statements

Here, members of Defendant Commissioners Court repeatedly acknowledged the disparate impact of the plan on Black voters and students in Prairie View. Admissions from Defendants and other decisionmakers that the challenged action has a disparate impact are powerful evidence of discrimination. *See Veasey*, 830 F.3d at 236-37 (finding that the admissions of proponents that the challenged decision had a disparate impact were strong evidence of discrimination). Commissioner Eason, acknowledged at the October 17, 2018 meeting that the early voting plan "is not equal representation," particularly as between the four cities in the County: Waller, Hempstead, Prairie View and Brookshire.[42] Defendant Judge Duhon also admitted "that there's an inequity" in the early voting opportunities available to Prairie View as compared to other cities like Waller that have eleven days of

---

[42]      *Oct. 17 Video, Elections, Item 5*, at 2:40.

early voting.[43] Defendant Judge Duhon acknowledged Defendant Commissioners Court's responsibility to "give them[,] [PVAMU students] equal access."[44]

In addition, coded statements that suggest or reveal unconstitutional biases also can be strong evidence of discrimination. *Brown*, 561 F.3d at 433-34 & n.10. Here, Defendants at the October 17 meeting attempted to justify the lack of early voting plan at PVAMU by baselessly asserting that the "community," particularly senior citizens, did not want or like to go onto campus at the historically-Black PVAMU.[45] The unmistakable suggestion that PVAMU students are not part of the "community," and that the "community" does not like PVAMU, is powerful evidence that bias against Black students at PVAMU was a motivating factor for the early voting plan.

5.    The Tenuousness of Defendants' Justifications

The tenuousness of the stated justifications for the actions of Defendants can demonstrate unconstitutional discrimination. *Veasey*, 830 F.3d at 237. Here, the inequities reflected in the existing early voting plan appear to have no basis. Indeed, they appear inexplicable except on the grounds of discrimination against PVAMU students on the grounds that they are predominantly young and Black.

The Commissioners Court had a choice to ensure early voting days were distributed fairly and evenly throughout the County, as well as to reduce burdens. Instead, the Commissioners Court voted against a motion to consider any changes, based on Defendant

---

43    *Id*. at 12:51 & 21:42.
44    *Id*. at 12:51 & 21:42.
45    *See*, *e.g*., *id*. at 4:36, 10:18, 20:40, & 27:05.

Eason's recommendations, that could have increased distribution of early voting days for Prairie View citizens. The disconnect between the alleged justification for not adding additional early voting days on campus at PVAMU strongly supports the inference that proffered justifications were a pretext for an impermissible motive.

The party chairs' agreement did not include community members' input and cannot represent the views of non-party affiliated voters. Yet, when presented with these concerns, Judge Duhon and the Commissioners simply restated that the process did not lack integrity. Further, the Commissioners Court relied on the fact that it was a joint agreement between the party chairs as indicative of a deliberative process. The undue reliance afforded to the process for developing and submitting the early voting schedule is misplaced and contradicted by the evidence cited throughout this brief.

Indeed, as PVAMU students informed Defendant Commissioners Court, many PVAMU students do not affiliate with either political party. Plaintiffs Allen and Muhammad testify similarly. *See* Exs. D, F, Decl. of Allen ¶ 13; Decl. of Muhammad ¶ 9. The party chairs do not and have not adequately represented the interests of PVAMU student voters.

The record is devoid of evidence that the Commissioners even sought out the desires of PVAMU students, even via school administrators, with respect to early voting schedules. Indeed, during the October 17, 2018 meeting, Judge Duhon acknowledged that a plan for setting early voting going forward should involve representatives from different

areas of the County, like Prairie View, because the issue of the adequacy of early voting for PVAMU students keeps coming up.[46]

During the Court of Commissioner's October 17 meeting, two commissioners also suggested that it was not feasible to change the early voting plan in time for the November 6 election, and that the County may not have enough voting machines. However, that objection ignored that Judge Duhon, based on the recommendation of Defendant Eason had moved to add three days of early voting in Prairie View on October 17. Defendant Eason, who is more familiar with the County's logistical capabilities with respect to elections than any other County official, and Judge Duhon clearly found such changes feasible given the elections schedule. Moreover, at various times during the October 17 meeting, several commissioners casually proposed adding two or more early-voting days or hours in Monaville, Katy, or Prairie View, apparently without concern for any similar logistical or timing impediments.

And, in her declaration, Valerie Gibson, an administrator at PVAMU, explains that the Student Memorial Center is available and can accommodate early voting from this week through the weekend. Ex. A, Decl. of Gibson ¶ 5.

* * *

Based on the foregoing, Plaintiffs are likely to succeed in establishing that the early voting plan is intentionally—and unconstitutionally—discriminatory, because it (1) it targets *only* those communities where young and Black voters are disproportionately

---

[46]     *Id*. at 6:40, 56:00, & 58:00.

found, (2) is part of a continuum of Texas and Waller County's efforts to suppress Black student voter strength, (3) was precipitated by a non-transparent and undemocratic process, and (4) serves no discernable purpose, other than to suppress the Black youth vote.

### B. Plaintiffs Are Likely to Succeed on the Merits of their Discriminatory Results Claim Under Section 2 of the Voting Rights Act.

Section 2 of the Voting Rights Act prohibits Defendants from imposing, applying, or maintaining any "qualification or prerequisite to voting or standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). Episodic practices, such as limiting access to early voting opportunities for Black voters before an election, are a "practice" under Section 2. *Brown,* 561 F. 3d at 432; *see Goodloe v. Madison County Bd. of Election Comm'rs*, 610 F. Supp. 240, 243 (S.D. Miss. 1985) ("Section 2 on its face is broad enough to cover practices which are not permanent structures of the electoral system but nevertheless operate to dilute or diminish the vote of blacks."); *Brown v. Post*, 279 F. Supp. 60, 64-65 (W.D. La. 1968) (holding that electoral officials violated Section 2 by soliciting absentee ballots from white voters without making the same opportunity available to black voters).

"The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and [nonblack] voters to elect their preferred representatives." *Thornburg v. Gingles*, 478 US 30, 47 (1986). In addition to vote dilution, Section 2 covers "vote-denial" claims involving challenges to practices that deny or abridge the rights of Black

voters to participate in the political process on an equal basis with other voters. *Veasey*, 830 F.3d at 244.

Section 2 vote-denial claims have two elements. *Id.* at 244. *First*, "[t]he challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id. Second*, "[t]hat burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class." *Id.*

### 1. Discriminatory Burden

The first element in this "two-part framework" draws on analysis of statistics, demographics, and other factors to determine "the nature of the burden imposed and whether it creates a disparate effect" on Black voters in Prairie View. *Id.* at 245.

As described above, the evidence demonstrating the disparate impact of the decision and the disparate treatment of Prairie View as compared to other non-majority-Black cities in the County offers sufficient evidence to meet the first element of the Section 2 vote-denial analysis.

### 2. Totality of Circumstances

The second element analyzes "the totality of the circumstances," including the congressionally-delineated Senate Factors,[47] to "provide[] the requisite causal link between

---

[47] The Senate Report factors are:

the burden on voting rights and the fact that this burden affects minorities disparately because it interacts with social and historical conditions that have produced discrimination against minorities currently, in the past, or both." *Id.*

"[T]here is no requirement that any particular number of factors be proved, or that a majority of them point one way or the other. Not every factor will be relevant in every case." *Id.* at 246 (quoting *Gingles*, 478 U.S. at 45). But, the Senate Factors that *are* relevant here "provide salient guidance from Congress and the Supreme Court on how to examine

---

1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process;

2. the extent to which voting in the elections of the state or political subdivision is racially polarized;

3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;

4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;

5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;

6. whether political campaigns have been characterized by overt or subtle racial appeals;

7. the extent to which members of the minority group have been elected to public office in the jurisdiction. . . .

[8.] whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group[; and]

[9.] whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

*Gingles*, 478 U.S. at 43-45 (citation omitted).

the current effects of past and current discrimination and how those effects interact with a challenged law." *Id.*

Here, under the "totality of circumstances" analysis, the available evidence satisfies at least Senate Factors 1, 2, 5, 7, 8, and 9. Senate Factor 1 (the history of discrimination in voting); Senate Factor 5 (socioeconomic disparities): and Senate Factor 9, are met here for the reasons stated above.

As to Senate Factor 2, "[m]any courts, including the United States Supreme Court, have confirmed that Texas suffers from racially polarized voting." *Veasey*, 71 F. Supp. 3d at 635-36 (collecting cases). Voting is also racially polarized in Waller County. *See* Ex. M, Letter from J. Michael Wiggins, Acting Assistant Attorney General, U.S. Department of Justice, Civil Rights Division to Attorneys for Waller County, Texas at 2 (June 21, 2002).

Regarding Senate Factor 7, no Black candidate has been elected to county-wide office in Waller since the 1890s. *See* Frank MacD. Spindler, *Concerning Hempstead and Waller County* (59 Sw. Hist. Quarterly 455, 457-60 (Apr. 1956)); Joe Holley, *Waller County's past, present merge along Hempstead roads* (July 31, 2015). In 2016, despite support from Black voters and PVAMU students, a Black candidate for Waller County Sheriff was defeated by a white candidate. Ex. P, *Patrick Michels, Prairie View Students See Long Lines as Waller County May Elect First Black Sheriff*, Tex. Observer (Nov. 8, 2016).

Racially polarized voting and the lack of minority elected officials are relevant because "[v]oting along racial lines allows those elected to ignore black interest without fear of political consequences." *Rogers v. Lodge*, 458 U.S. 613, 623 (1982).

Finally, under Senate Factor 8, Defendants have been unresponsive to the particularized needs of Black PVAMU student voters in the assignment of addresses and the delivery of county services. Ex. C, Decl. of Jackson ¶¶ 16-27. The County's "rural addressing system" uses the U.S. Postal Service's zip codes to assign rural addresses to the residents of Prairie View for mail delivery, emergency services, and property records. However, because Prairie View is divided into two zip codes—one associated with the Waller Post Office (77484) and one assigned to the Hempstead Post Office (77445)—the County's reliance on the rural addressing system causes all Prairie View residences to be assigned to addresses in either Waller or Hempstead. This system creates confusion and delays during elections, costs Prairie View tax revenue, and undercuts Prairie View's identity as an incorporated city. Prairie View residents, officials, and students have raised these issues caused by the overreliance of Defendant Waller County on the rural addressing system as recently as this year, but Defendants have been unresponsive to their concerns.

* * *

In sum, Plaintiffs have met their burdens under both elements of the Fifth Circuit's two-part framework. They can show that Defendants' early-voting plan for the 2018 general election imposes a disparate burden on Black PVAMU students, and that this burden is caused by and linked to social and historical conditions that have produced, and continue to produce, discrimination against Black PVAMU students. Thus, in the totality of circumstances, as plaintiffs can demonstrate, Waller County's early-voting plan "interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by [B]lack and white voters to elect their preferred representatives." *Gingles*, 478

U.S. at 47. For these reasons, plaintiffs are substantially likely to prevail on the merits of their discriminatory results claim under Section 2 of the VRA.

### C. PLAINTIFF MEETS ALL OTHER REQUIRMENTS OF A TEMPORARY RESTRAINING ORDER.

Plaintiffs also satisfy all other requirements for emergency relief. *First*, it is clear that plaintiffs will suffer irreparable injury. "A restriction on the fundamental right to vote . . . constitutes irreparable injury." *Husted*, 697 F.3d at 436.

"The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) (citations omitted). Because "it is not possible to pay someone for having been denied the right to vote," courts routinely deem restrictions on fundamental voting rights irreparable injury. *OCA Greater Houston v. Texas*, No. 1:15-CV-679-RP, 2016 WL 4597636, at *4 (W.D. Tex. Sept. 2, 2016). This is because "once [an] election occurs, there can be no do-over and no redress." *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

Indeed, in a number of cases, federal courts have specifically found that limiting access for some voters to early voting opportunities is an irreparable injury. *See Husted.*, 697 F.3d at 436-37; *Common Cause Ind.*, 311 F. Supp. 3d at 975; *Detzner*, 314 F. Supp. 3d at 1216-17.

*Second*, the balance of hardships favors Plaintiffs. A party seeking a preliminary injunction must "establish . . . that the balance of equities tips in his favor, and that an

injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Here, providing Plaintiffs' equal early voting opportunities substantially outweighs the minimal burdens involved in amending Waller County's early voting plan to add a location on the PVAMU campus. Indeed, during the October 17, 2018 Commissioners Court meeting, the Commissioners considered several proposals to amend the current schedule that were ultimately rejected by the Commissioners Court. Defendant Eason's proposal indicates that as the County' elections administrator, she had determined that the staff, equipment, and other materials and resources necessary to offer additional early voting days on campus were available. None of those proposals were adopted by the Court, but the fact that the elections administrator and commissioners themselves were comfortable making them in a formal public hearing strongly suggests that they viewed such enlargements of the early-voting plan as feasible. Indeed, Defendant Eason affirmed that she could make such changes, including Defendant Duhon's motion to add three additional early voting days to the first week of voting in Prairie View.[48]

Defendants can offer no valid justification for their refusal to provide additional early voting opportunities on the PVAMU campus. When considering proposals to add early voting days on the PVAMU campus and in Prairie View, commissioners indicated that the early voting plan had been approved in September, but they did not articulate specific concerns about whether it was too close in time to the beginning of the early voting

---

[48]      Oct. 17, Video, Elections, Item 5, 1:00:07.

period to amend the plan. Also, the cost, if any, of providing a fair and equal early voting opportunities to PVAMU and Prairie View voters are easily outweighed by the constitutional harm of disenfranchisement on the bases of race and/or age that threatens Plaintiffs. *See League of Women Voters*, 769 F.3d at 244 (potential disenfranchisement "outweighs any corresponding burden on the State, which has not shown that [it] will be unable to cope" with plaintiffs' requested relief). Indeed, as described above, during the October 17 Commissioners Meeting, Defendants considered a combination of adding early voting days and hours to locations in Prairie View and the Monaville site in Hempstead, without raising any concerns about the additional resources doing so would have required. Thus, Defendants can offer no valid justification for their refusal to provide adequate and fair early-voting opportunities on the PVAMU campus.

Lastly, there can be no question that providing additional early voting opportunities is in the public interest because the public interest favors "permitting as many qualified voters to vote as possible." *Husted.*, 697 F.3d at 437. It is always in the public's interest to prevent a violation of the U.S. Constitution and of an individual's constitutional rights. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338-39 (5th Cir. 1981). "Quite simply, allowing for easier and more accessible voting for all segments of society serves the public interest." *Detzner*, 314 F. Supp. 3d at 1224. Any interests Defendants have do not extend to permitting the County to interfere with the exercise of fundamental rights. *Deerfield Med. Ctr.*, 661 F.2d at 338-39. "Mere inconvenience to the state is no

justification for burdening citizens in the exercise of their protected right [ ] to vote."

*Operation PUSH*, 674 F. Supp. at 12666 & n.8.

## CONCLUSION

For the reasons stated above, this Court should enter a temporary restraining order entering the relief detailed in Plaintiffs' accompanying emergency motion for a TRO and proposed order.

Respectfully submitted on October 24, 2018,

*/s/ Adam T. Schramek*
Adam T. Schramek (SDTX 31913)
State Bar No. 24033045
Attorney-in-Charge
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
adam.schramek@nortonrosefulbright.com

**Of Counsel:**

Sherrilyn A. Ifill*
Janai S. Nelson*
Samuel Spital*
Leah C. Aden*
Deuel Ross*
Kristen A. Johnson*
John S. Cusick*
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
40 Rector Street, 5th Floor
New York, NY 10006
Phone: (212) 965-2200
Fax: (212) 226-7592
sspital@naacpldf.org
laden@naacpldf.org
dross@naacpldf.org

Julie Goodrich Harrison (SDTX 3017799)
 State Bar No. 24092434
Nicole Lynn (SDTX 3041738)
 State Bar No. 24095526
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
julie.harrison@nortonrosefulbright.com
nicole.lynn@nortonrosefulbright.com

William F. Calve (SDTX 3206298)
 State Bar No.  24096505
**NORTON ROSE FULBRIGHT US LLP**

kjohnson@naacpldf.org
jcusick@naacpldf.org

Catherine Meza*
**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**
700 14th Street NW, Suite 600
Washington, DC 20005
Phone: (202) 682-1300
Fax: (212) 226-7592
cmeza@naacpldf.org

300 Convent Street, Suite 2100
San Antonio, Texas 78205-3792
Telephone: (210) 270-7132
Facsimile: (210) 270-7205
william.calve@nortonrosefulbright.com

*Motions for Pro Hac Vice forthcoming*

*Counsel for Plaintiffs*