**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JAYLA ALLEN, DAMON JOHNSON,** | § | |
| **JOSHUA MUHAMMAD, RAUL** | § | |
| **SANCHEZ, AND TREASURE SMITH,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | |
| | § | **Civil Action No. 4:18-CV-3985** |
| **WALLER COUNTY TEXAS; THE** | § | |
| **WALLER COUNTY COMMISSIONERS** | § | |
| **COURT; JUDGE CARBETT "TREY" J.** | § | |
| **DUHON III, in his official capacity as the** | § | |
| **Waller County Judge; and CHRISTY A.** | § | |
| **EASON, in her official capacity as the** | § | |
| **Waller County Elections Administrator,** | § | |
| *Defendants*. | § | |

---

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Respectfully submitted,

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
512-472-8021 (Telephone)
512-320-5638 (Facsimile)

By: _____
Gunnar P. Seaquist
Texas State Bar No. 24043358
Southern District No: 1140733
gseaquist@bickerstaff.com
C. Robert Heath
Texas State Bar No. 09347500
Southern District No. 13381
bheath@bickerstaff.com

**ATTORNEYS FOR ALL DEFENDANTS**

**TABLE OF CONTENTS**

Table of Contents. ................................................................................................................. i

Table of Authorities ........................................................................................................... iii

Nature of Claims and Stage of Proceedings ........................................................................2

Summary of the Argument.....................................................................................................3

Plaintiffs' Allegations and Factual Background ...................................................................5

    A.    Early voting under Texas law. ..............................................................................5

    B.    Adoption of Early Voting Plan for 2018 Election ...................................................6

    C.    Participation in the March 2018 Primary and the 2016 General Election .............10

    D.    Reconsideration of Early Voting Hours at October 17, 2018 Commissioners Court Meeting ............................................................................................................12

    E.    The Lawsuit and Extended Voting Hours.............................................................14

Standard of Review.............................................................................................................16

Argument and Authorities...................................................................................................17

    A.    Plaintiffs fail to state a claim under Section 2 of the Voting Rights Act because their Complaint affirmatively demonstrates Waller County's early voting schedule did not abridge or deny their right to vote on account of race. ......................................................................................................................17

        1)    The Two Part Framework ........................................................................17

        2)    Plaintiffs' allegations fail to plausibly suggest a discriminatory burden that denied or abridged the ability of minorities to cast an early ballot. ........................................................................................................18

    B.    Plaintiffs' complaint also fails to state a claim of intentional race discrimination under either the Voting Rights Act or Fourteenth and Fifteenth Amendments to the U.S. Constitution. ..................................................23

    C.    Plaintiffs also fail to plead facts to support their claim of intentional age discrimination under the Twenty-Sixth Amendment or the intersection of the Fourteenth and Twenty-Sixth Amendments. ......................................................27

i

Conclusion ....................................................................................................................29

Prayer ..........................................................................................................................29

Certificate of Service ..................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez,*
 135 S. Ct. 2305, 201 L.Ed 2d 714 (2018) .......................................................... 24, 25

*Ashcroft v. Iqbal,*
 556 U.S. 662 ..................................................................................................... 16

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) .......................................................................................... 26

*Chhim v. University of Texas at Austin,*
 836 F.3d 467 (5th Cir. 2016) ............................................................................ 23

*Collins v. Morgan Stanley Dean Witter,*
 224 F.3d 496 (5th Cir. 2000) ............................................................................ 10

*Democratic Nat'l Comm. v. Reagan,*
 329 F. Supp. 824 (D. Arizona May 10, 2018) ................................................ 18, 19

*In re Katrina Canal Breaches Litig.,*
 495 F.3d 191 (5th Cir. 2007) ............................................................................ 16

*Latham v. Chandler,*
 406 F. Supp. 754 (N.D. Miss. 1976) ................................................................. 28

*League of Woman Voters of Florida, Inc. v. Detzner,*
 314 F. Supp. 3d 1205, 1221 (N.D. Florida July 24, 2018) .............................. 27, 28

*Lee v. Virginia State Board of Elections,*
 843 F.3d 592 (6th Cir. 2016) ......................................................................... 18, 19

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
 594 F.3d 383 (5th Cir. 2010) ......................................................................... 6, 10

*In Re McCoy,*
 666 F.3d 924 (5th Cir.2012) ............................................................................. 16

*Ohio Democratic Party v. Husted,*
 834 F.3d 620 (6th Cir. 2016) ......................................................................... 17, 18

*Overton v. City of Austin,*
 871 F.2d 529 (5th Cir. 1989) ............................................................................ 23

*Plotkin v. IP Axess, Inc.,*
 407 F.3d 690 (5th Cir. 2005) ............................................................................ 16

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) .................................................................16

*Puente v. Ridge*,
   324 Fed. Appx. 423 (5th Cir. 2009) ........................................................23

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir.2011) ...................................................................6

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ................................................................................23

*Thornburg v. Gingles*,
   478 U.S. 30 (1986) ..................................................................................18

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ...............................................17, 18, 19, 23

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
   429 U.S. 252 (1977) ...........................................................................23, 27

*Wilson v. Birnberg*,
   667 F.3d 591 (5th Cir. 2012) ..................................................................16

**Statutes**

52 U.S.C. § 10301 ........................................................................................19

52 U.S.C. § 10301(a) .....................................................................................2

Tex. Elec. Code §§ 81.001 and 85.002 .........................................................5

Tex. Elec. Code § 85.062 (a) ......................................................................5, 7

Voting Rights Act ...........................................................................3, 18, 23, 29

Section 2 of the Voting Rights Act ..........................................................*passim*

TO THE HONORABLE ANDREW S. HANEN, UNITED STATES DISTRICT JUDGE:

Defendants, Waller County Texas, the Waller County Commissioners Court (the "Commissioners Court"), Judge Carbett "Trey" J. Duhon III, in his official capacity as the Waller County Judge, and Christy A. Eason, in her official capacity as the Waller County Elections Administrator, move to dismiss Plaintiffs' First Amended Complaint in its entirety. *See* Fed. R. Civ. P. 12(b).

In smaller counties such as Waller, Texas law tasks the commissioners court with determining the need for early voting locations and hours beyond the mandated main early-voting branch at the County's offices. This delegation preserves local control by allowing county officials to allocate their limited election resources, such as personnel and voting machines, in a manner that best serves the unique needs of voters in a particular county. For the 2018 general election, the Waller County Commissioners Court fulfilled this obligation by adopting, after notice and a public hearing, a bipartisan early-voting plan, which was jointly created, submitted, and agreed to by the respective chairs of the local democratic and republican parties. As one would expect from such a cooperative effort, the adopted plan sought to balance opportunities for early voting throughout the county.

The Plaintiffs are students of the Texas A&M University at Prairie View (PVAMU) and an alleged student and alumni organization, who sue under the United States Constitution and Section 2 of the Voting Rights Act (VRA) to challenge the County's adopted plan and to have the Court supplant the legislative discretion of the Waller County Commissioners by requiring subsequent early-voting plans to "provide at least parity or standardized early voting hours to [the City of] Prairie View and PVAMU as compared to other Waller Cities." But, as the allegations in their First Amended Complaint facially negate the suggestion that the County's plan had either the purpose or effect of burdening the voting rights of African American or young voters in Waller County, Plaintiffs cannot show an entitlement to that relief. Rather, if Plaintiffs desire more early voting on campus, they must

1

pursue that aim through participation in the political process, not the courts. Each of Plaintiffs' claims should be dismissed.

### NATURE OF CLAIMS AND STAGE OF PROCEEDINGS

In their First Amended Complaint, filed April 26, 2019, Plaintiffs assert the following causes of action:

1) Vote denial or abridgment in violation of Section 2 of the Voting Rights Act. *See* 52 U.S.C. § 10301(a). Plaintiffs allege that the "unequal distribution" of early voting opportunities denies them an equal opportunity to vote as compared to non-Black voters. (Doc. 49, ¶¶ 85-87);

2) Intentional racial discrimination in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution. Plaintiffs allege that Defendants sought, at least in part, to discriminate against Black voters by not providing uniform early-voting hours throughout the County. (Doc. 49, ¶¶ 88-91);

3) Intentional age discrimination in violation of the Twenty-Sixth Amendment to the United States Constitution. Plaintiffs allege that Defendants sought, at least in part, to discriminate on the basis of age by not providing uniform early-voting hours throughout the County. (Doc. 49, ¶¶ 92-96).

4) Intentional discrimination on the intersecting bases of age and race in violation of the Fourteenth, Fifteen, and Twenty-Sixth Amendments to the United States Constitution. Plaintiffs allege that Defendants sought, at least in part, to discriminate on the basis of age and race by not providing uniform early-voting hours throughout the County. (Doc. 49, ¶¶ 97-100).

Plaintiffs initially sought a temporary restraining order extending the early voting hours in Prairie View for the 2018 general election from those initially adopted by the Commissioners Court. (*See* Doc. 16, 16-1, and 17). The Plaintiffs later withdrew that request after the County voluntarily extended early voting hours in Prairie View. (Doc. 22). Defendants were served with Plaintiffs' Complaint on November 27-28, but sought an unopposed extension to file its responsive pleading until January 7, 2019, which the Court granted. (Doc. 29 and 30).  In accordance with that extension, Defendants filed their Motion to Dismiss Plaintiff's Original Complaint on January 7, 2019 (Doc. 34), which was followed by Plaintiffs' Response (Doc. 39), and Defendants' Reply (Doc. 42). On April 26, 2019, Plaintiffs filed their First Amended Complaint, which added the Panther Party as a

Plaintiff, but did not otherwise materially amend Plaintiffs' factual allegations or asserted causes of action. Ultimately, none of the Plaintiffs have stated a claim for which the Court may grant relief, and Defendants once again move to dismiss. *See* FED. R. CIV. P. 12(b)(6).

## SUMMARY OF THE ARGUMENT

Neither the United States Constitution nor the Voting Rights Act guarantees any right to in-person early voting, much less a precisely equal or standardized number of early-voting hours among polling locations. Rather, the federal courts have repeatedly recognized the fundamental interest and discretion of the states and their constituent local governments in regulating and administering elections to ensure a fair and orderly process. The logistical decisions necessary to administer an election, including the selection of polling locations and hours, will inherently inconvenience some more than others. Every polling site will necessarily be geographically closer to one voter than another, and voters will have varying preferences on voting hours based on their individual work, family, and life circumstances. Thus, while Plaintiffs may prefer additional voting hours in Prairie View or feel that early voting at the on-campus student center is more convenient than the Waller County Community Center a quarter-mile away, the protections of the Fourteenth Amendment and the VRA are not triggered by such unsatisfied preferences or inconveniences. The question instead is whether early voting in Waller County had either the intent or effect of disproportionately abridging the ability of minority voters to participate in elections. As is evident on the face of Plaintiff's Amended Complaint, the bipartisan early-voting plan adopted by Waller County did neither.

In fact, Plaintiffs' allegations unequivocally show that the County's adopted plan actually provided the highest number of early voting hours in the cities of Brookshire and Hempstead, where Black voters make up a majority of the citizen voting age population. While the City of Prairie View may have received fewer total early-voting hours than the City of Waller, it received a much *greater*

3

number of total hours than either Katy (which has a larger population) or Fields Store (which has a greater turnout percentage for early voting), both of which Plaintiffs identify as white, non-Hispanic majority areas. Likewise, although Prairie View was not initially scheduled under the adopted plan to have early voting hours over the weekend, neither was Katy. And though Plaintiffs complain that Prairie View was not able to participate in the first week of early voting, it was initially scheduled instead to have five days of early voting the second week—when neither Katy nor Fields Store had *any* early voting hours.

Taken as true, Plaintiffs' First Amended Complaint merely reflects the uncontroversial reality that in allocating limited resources across a county, where an individual voting machine or poll worker can only be in one place at one time, the location and operating hours of polling places must necessarily vary. What Plaintiffs' allegations do not, and indeed cannot, do is plausibly suggest that the County's plan burdens minority voters in any way that disproportionately abridges their ability to participate in the political process, which is the threshold requirement to state a claim under either the Fourteenth Amendment or Section 2 of the VRA. Furthermore, Plaintiffs have not only failed to plead a discriminatory effect, but also make no allegation to support a reasonable inference that Defendants adopted the early-voting plan with the intent to discriminate on the basis of either race or age. To the contrary, Plaintiffs' allegations show that, in the daylight of the public meeting process, Defendants considered and adopted the plan based on bi-partisan support of the chairs of the local Democratic and Republican parties. That Plaintiffs were ultimately dissatisfied with that plan, or felt inadequately represented by the party chairs, falls well short of a plausible suggestion of discriminatory purpose.

In the end, Plaintiffs' allegations establish that Defendants acted with bi-partisan support to adopt a neutral, non-discriminatory plan for early voting in Waller County. Accordingly, Plaintiffs

have not just failed to plead facts plausibly supporting their claims, they have affirmatively foreclosed them. Dismissal at the pleadings stage is therefore appropriate.

PLAINTIFFS' ALLEGATIONS AND FACTUAL BACKGROUND

**A.      Early Voting under Texas Law**

Texas law requires counties to conduct early voting, but only at one "Main Early Voting Polling Place" (MEVPP). *See* Tex. Elec. Code §§ 81.001 and 85.002. In most county elections, the MEVPP is in the county building that houses the main business office of the county clerk. *Id.*; *see also* § 83.002. The early voting period at the MEVPP typically begins seventeen (17) days before the election and continues through the fourth day before election day. *Id.* at § 85.001(a). State law requires early voting at the MEVPP on the weekdays of the early voting period and during the hours that the county clerk's main business office is regularly open for business. *Id.* And although it is not required, a county may order early voting at the MVEPP on the weekend at hours of its choosing. *Id.* at § 85.006. Any person entitled to vote an early voting ballot by personal appearance may do so at the MEVPP. *Id.* at § 85.003. The MEVPP for Waller County is the Waller County Courthouse, which houses the main business office of the County Clerk, located at 836 Austin St., in Hempstead Texas. *See,* http://co.waller.tx.us/page/County.Clerk.

In addition to the MEVPP, the Texas Election Code grants the county commissioners court the discretion to establish "Temporary Branch Polling Places" (TBPPs). Tex. Elec. Code § 85.062 (a). In a county such as Waller, which has a population of less than 100,000, early voting at a TBPP may be conducted on any one or more days and during any hours of the period for early voting by personal appearance, as determined by the commissioners court. *Id.* at § 85.065 (a) and (b). Notably, the Election Code explicitly provides that "the schedules for conducting voting are not required to be uniform among the temporary branch polling places." *Id.* at § 85.065(c). Subject to exceptions

5

not applicable here, eligible voters wishing to cast an early ballot may do so at *any* TBPP within the

county. *Id.* at § 85.066(a) (italics added).

**B.    Adoption of Early Voting Plan for 2018 Election**

In September of 2018, the Waller County Commissioners Court adopted an early voting plan

for the November 2018 election that was based on a proposal by the chairs of the local Democratic

and Republican parties (the "Initial Plan"). (Doc. 49, ¶ 35). Plaintiffs make no allegation that there

were any objections to the plan at the time it was adopted, or that there were any procedural

irregularities in the plan's adoption. Plaintiffs incorporate the Initial Plan into their complaint as

Figure 1. (Doc. 49, p. 12, Figure 1).

Based on the Initial Plan, Plaintiffs allege that there were no early voting sites or

opportunities anywhere in Prairie View during the first week of early voting for the November

general election (October 22-28, 2018). (Doc. 49, ¶ 37). But as County Judge Duhon confirmed in

a subsequent public hearing on whether to modify the Initial Plan, Prairie View *was* originally

scheduled to have early voting the during the first week. Prior to the plan's adoption, however, early

voting was moved to the second week based on concerns raised by the Democratic Party Chair that

first-week voting would potentially conflict with homecoming activities. (Doc. 49, ¶ 50).[1]

Moreover, as shown by Plaintiffs' complaint, Prairie View was not the only city slated for a single

week of early voting; Katy, Monaville, and Fields Store were also scheduled for early voting during

only one week. (Doc. 49, p. 12, Figure 1).

---

[1] *See also* Video Recording of the October 17, 2018 meeting of the Waller County Commissioners Court, 08:30-09:43 at   http://wallercountytx.swagit.com/play/10172018-1225)   ("October 17th Meeting Video"). In deciding a motion to dismiss, the court may consider not only the complaint, but any documents attached to the complaint, and any materials that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (*citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir.2011). Here, the Plaintiffs selectively cite and rely upon statements made at the October 17, 2018 Commissioners Court in support of the central elements of their claims. (*See e.g.*, Doc. 1, ¶¶ 43-51). As such, in evaluating whether Plaintiffs' allegations state a plausible claim to relief, the Court is able to consider the entirety of the Commissioners Court meeting.

Next, Plaintiffs allege that the Initial Plan contained no weekend hours for early voting in Prairie View. (Doc. 49, ¶ 39). And they assert that there are no evening hours (i.e., after 5:00 p.m.) for early voting at the Memorial Student Center on PAMU's campus. (Doc. 49, ¶ 40). As shown in Figure 1, though, the City of Katy, which has a greater population and is majority Anglo, also did not receive weekend hours under the initial plan. (Doc. 49, p. 12, Figure 1). Conversely, the Black-Majority areas of Hempstead and Brookshire *were* allotted weekend hours under the Initial Plan. (*Id.*). Similarly, in the case of evening hours, none of the early voting locations had hours past 5:00 p.m. during the first voting week. (*Id.*). The only extended hours for early voting under the Initial Plan were from 7:00 a.m. to 7:00 p.m. on the Thursday and Friday of the second week of early voting. The Initial Plan provided these hours for the cities of Hempstead, Waller, Brookshire, and Prairie View. While Plaintiffs allege that the evening hours were not available at the Student Center, their complaint shows that the extended hours were available at the Waller County Community Center, which, as shown through Google Earth below is only about a quarter-mile away. (Doc. 49, p. 12, Figure 1).



Finally, Plaintiffs allege that the majority-white City of Waller had two polling locations and a greater number of early voting hours than Prairie View. (Doc. 49, ¶ 41). To make this assertion, Plaintiffs group early voting at Fields Store with early voting in the City of Waller. Significantly, although Fields Store is located in a zip code assigned to the City of Waller, the Court may take judicial notice that it is actually an unincorporated area located several miles away. FED R. EVID. 201. Indeed, Google Maps reflects that the Fields Store early-voting location at 27388 Fields Store Rd. is approximately 8 miles away from the Waller ISD Administration Building, the polling place in the City of Waller. Thus, Fields Store is actually farther from Waller than is PVAMU, which is only about 5.2 miles away from the Waller ISD Admin Bldg. Ultimately, a review of Plaintiffs' complaint[2] yields the following early-voting breakdown among the various polling locations in the Initial Plan:

---

[2] *Compare* Doc. 49, ¶ 28; and Figure 1.

| Polling Place | City (by zip code) | Week 1 Hours | Week 2 Hours | Total Early Voting Hours | CVAP Majority (As alleged by Plaintiffs) |
|---|---|---|---|---|---|
| Courthouse | Hempstead | 55 | 51 | 106 | BVAP |
| Waller ISD Admin Bldg. | Waller | 50 | 51 | 101 | WVAP |
| Brookshire Library | Brookshire | 55 | 51 | 106 | BVAP |
| Fields Store County Bldg. | Waller | 23 | 0 | 23 | WVAP |
| Monaville[3] County Bldg. | Hempstead | 23 | 0 | 23 | BVAP[4] |
| Katy VFW | Katy | 18 | 0 | 18 | WVAP |
| Mem. Student Center | Prairie View | 0 | 27 | 27 | BVAP |
| Community Center | Prairie View | 0 | 24 | 24 | BVAP |

Thus, as shown by Plaintiffs' complaint, the Initial Plan allocated the greatest number of early voting hours to Hempstead and Brookshire, which both have a Black-majority CVAP. (Doc. 49, ¶ 28(b) and (c); p. 12, Figure 1). Plaintiffs' allegations further establish that, for its part, Prairie View had fewer total early-voting hours than Waller, Hempstead, and Brookshire, but received a greater number of hours than Fields Store, Monaville, and Katy, at least two of which are Anglo-majority areas. (Doc. 49, ¶ 28 (c) and (d); p. 11, Figure 1).

---

[3]Although Monaville has a Hempstead zip code, it, too, is an unincorporated community well outside of the city. Google Maps shows that the polling location in Monaville is approximately 12 miles away from the Courthouse in Hempstead. By comparison, Prairie View A&M is only about 6.4 miles away from the Courthouse in Hempstead.

[4] Moreover, because the U.S. Postal Service has assigned Monaville has a Hempstead address it is included within the census numbers for the City, which, as Plaintiffs allege, is majority African American. (Doc. 49, ¶ 27). However, if this case were to proceed beyond this motion to dismiss, Defendants believe the evidence would show that the unincorporated, rural area of Monaville actually has an Anglo-majority CVAP.

## C.      Participation in the March 2018 Primary and the 2016 General Election

Plaintiffs allege, however, that "[a]s compared to other early voting sites in Waller County, the Memorial Student Center at PVAMU had one of the highest numbers of early votes cast in the November 2016 Election and March 2018 Primary." (Doc. 49, ¶ 69). Thus, they conclude, Black student voters at PVAMU are more likely than other residents of Waller County to need and depend on the opportunity to vote early on-campus. They do not, however, allege that voters in Prairie View use early voting at a higher rate than voters in Waller, Hempstead, Brookshire, or Katy. Nor could they. The early voting totals for the 2016 General Election for President/Vice President and the 2018 March Primary are summarized in the following tables[5]:

## 2016 General Election (President and Vice President) [6]

| Precinct | Registered Voters | Location | City | Total EV |
|---|---|---|---|---|
| 101 | 1848 | St. Bartholomews | Hempstead | 744 |
| 102 | 1767 | Waller Annex (Road and Bridge) | Hempstead | 609 |
| 103 | 1325 | Hempstead High School | Hempstead | 496 |
| 104 | 819 | Waller Fairgrounds | Hempstead | 284 |
| 105 | 773 | Rolling Hills Vol. Fire Dep't | Hempstead | 289 |
| 206 | 2602 | Fields Store | Waller | 1240 |
| 207 | 3348 | Turlington | Hockley | 1493 |
| 208 | 1642 | Waller ISD | Waller | 626 |
| 309 | 5008 | Memorial Student Center | Prairie View | 911 |
| 310 | 1764 | City Hall | Prairie View | 539 |
| 311 | 759 | Monaville JP | Hempstead | 339 |
| 312 | 1514 | Monaville Fire Department | Waller | 705 |
| 313 | 610 | Adams Flat | Brookshire | 180 |
| 414 | 359 | Mt. Zion | Brookshire | 111 |

[5] Once again, as Plaintiffs expressly reference, as central to their claim, the voting numbers from the 2018 March Primary, the Court may consider them as context in evaluating Plaintiffs' claims pursuant to a Rule 12(b)(6) motion to dismiss. *Lone Star Fund V (U.S.), L.P.* 594 F.3d at 387 *Collins*, 224 F.3d at 498-99. Moreover, as these results can be accurately and readily determined from the election canvass, the accuracy of which cannot reasonably be questioned, the Court is free to take judicial notice of them. FED. R. EVID. 201. Indeed, Plaintiffs confirm the accuracy of the County's election canvass by attaching and citing to it in their Motion for a Temporary Injunction. (Doc. 17-10, Doc. 17-11). Thus, these numbers may be sourced through Plaintiffs' own attachments or the County's website at http://www.co.waller.tx.us/page/HistoricElectionResults. Further, the corresponding election precinct names and addresses may be sourced to http://www.co.waller.tx.us/page/Front%20Page.

[6] *Id.*; *see also* http://www.co.waller.tx.us/page/open/1260/0/11.08.2016%20General%20Canvass at pp. 2-4.

| | | | | |
|---|---|---|---|---|
| 415 | 1316 | Pattison Vol. Fire Dept | Pattison | 516 |
| 416 | 1511 | Brookshire Convention Ctr | Brookshire | 424 |
| 417 | 1349 | Waller Co. Library | Brookshire | 411 |
| 418 | 2082 | Igloo | Katy | 1160 |
| 419/420 | 1099 | Katy VFW | Katy | 606 |

Based on this data, the early voting numbers for 2016 Presidential Election for the polling places with designated addresses in the cities of Hempstead, Brookshire, Waller, Prairie View, and Katy are as follows:

| | **Hempstead** | **Brookshire** | **Waller** | **Prairie View** | **Katy** |
|---|---|---|---|---|---|
| Total Early Votes | 2422 | 1126 | 2571 | 1450 | 1766 |
| % EV Turnout | 37.08% | 29.41% | 44.65% | 21.41% | 55.52% |

## 2018 March Primary

| Precinct | Location | City | Total EV |
|---|---|---|---|
| 101 | St. Bartholomews | Hempstead | 210 |
| 102 | Waller Annex (Road and Bridge) | Hempstead | 118 |
| 103 | Hempstead High School | Hempstead | 131 |
| 104 | Waller Fairgrounds | Hempstead | 58 |
| 105 | Rolling Hills Vol. Fire Dep't | Hempstead | 73 |
| 206 | Fields Store | Waller | 276 |
| 207 | Turlington | Hockley | 248 |
| 208 | Waller ISD | Waller | 125 |
| 309 | Memorial Student Center | Prairie View | 174 |
| 310 | City Hall | Prairie View | 122 |
| 311 | Monaville JP | Hempstead | 72 |
| 312 | Monaville Fire Department | Waller | 155 |
| 313 | Adams Flat | Brookshire | 26 |
| 414 | Mt. Zion | Brookshire | 17 |
| 415 | Pattison Vol. Fire Dept | Pattison | 78 |
| 416 | Brookshire Convention Ctr | Brookshire | 45 |
| 417 | Waller Co. Library | Brookshire | 49 |
| 418 | Igloo | Katy | 163 |
| 419/420 | Katy VFW | Katy | 105 |

11

Although the 2018 Primary Canvass did not include the numbers of registered voters,[7] the total early votes in the 2018 Primary for the polling places with designated addresses in the cities of Hempstead, Brookshire, Waller, Prairie View, and Katy are as follows:

|  | Hempstead | Brookshire | Waller | Prairie View | Katy |
|---|---|---|---|---|---|
| Total Early Votes | 590 | 137 | 556 | 296 | 268 |

Thus, while there were a relatively high number of early votes cast from precincts 309 and 310 in Prairie View, there were a greater number of early votes cast from precincts in Hempstead (Pct. 101 had more votes in the March Primary), Fields Store (Pct. 206 had more votes in the March Primary, and a substantially comparable number in the 2016 Presidential election), and Hockley (Pct. 207) had more votes in both elections. Similarly, a comparison of early voting from precincts designated to be within the cities of Hempstead, Brookshire, Waller, Prairie View, and Katy show that Hempstead and Waller both had greater early voting numbers than Prairie View in the March 2018 primary, with Katy having only slightly fewer votes. Likewise, in the 2016 Presidential Election, Hempstead, Waller, and Katy all had a higher total of early votes cast than did Prairie View. And Hempstead, Brookshire, Waller, and Katy each had a higher early-voting turnout, by percentage of registered voters, in the 2016 general election than did Prairie View.

## D.    Reconsideration of Early Voting Hours at October 17, 2018 Commissioners Court Meeting

Although the Initial Plan was adopted in September of 2018 without issue, concerns were later raised by some PVAMU students that Prairie View was not allocated the same number of early-voting hours as other cities in Waller County. (Doc. 49, ¶¶ 43-44). In response to those concerns, the Commissioners Court met in a public meeting on October 17, 2018 to consider possible changes

---

[7] Because the registered voter numbers for Waller County are not currently publically available for the March Primary, Defendants do not incorporate them here. However, Defendants have reviewed the registered voter numbers and, if this case were to proceed, the respective early-voter turnout for the 2018 Primary would be: 9.76% for Hempstead, 3.79% for Brookshire, 9.89% for Waller, 6.05% for Prairie View, and 6.88% for Katy.

to the early voting hours at the Prairie View A&M Campus.[8] The meeting allowed for public input, and a handful of students made comments to the Commissioners Court. Of these, Plaintiffs allege "[t]he majority of the people who commented on the issue asked for 'parity' for students at PVAMU and 'consistency throughout the County.'" (Doc. 49, ¶ 43). One woman went further and opined that she wanted PVAMU students be allowed to vote every single day [of early voting] at the [Memorial Student Center] on campus. (Doc. 49, ¶ 45). Others complained that they wanted early voting in Prairie View during the first week. (Doc. 49, ¶ 47).

At the meeting, Waller County Election Administrator Christy Eason acknowledged that Brookshire, Hempstead, Waller, and Prairie View did not receive the same number of hours under the Initial Plan and recommended extension of voting during the first week of Monday and Tuesday at the Memorial Student Center, Wednesday at the University Square, and Thursday and Friday at City Hall. (Doc. 49, ¶ 54; October 17th Meeting Video, Item 5, 05:50-06:30). Defendant Duhon, stated his concern that Eason's proposal was confusing because it created four different polling places in the City of Prairie View over the two-week early-voting period. (October 17th Meeting Video, Item 5, 22:20-24:25). He suggested instead adding three days of voting the first week at the Waller County Community Center. (*Id.*). Commissioner Barnett, the county commissioner for Precinct 3, which includes Prairie View, expressed his concern that citizens of Prairie View who were not PVAMU students did not want to vote on campus and that additional hours at the student center was unfair to them. (*Id.* at 25:30-27:18; Doc 49, ¶ 50). Further, Barnett commented that if the Commissioners Court was going to add additional days, it should do so for Monaville, which had less early voting than Prairie View. (*Id.* at 27:20-29:15; Doc 49, ¶ 57). Commissioner Beckendorff expressed his opinion that there was no way to enact an early voting schedule that was equally fair to everyone. (*Id.* at 32:50-34:22; Doc 49, ¶ 57). In particular, he pointed to other communities, such

---

[8] *See generally,* October 17th Meeting Video, Item 5.

as Hockley, that had no early-voting locations at all, and Katy, which had only three days of early voting. (*Id.*). Commissioner Amsler stressed his belief that there was a process in place and that the Court had already approved a schedule that had been agreed to by the party chairs. (Doc. 49, ¶ 50, October 17th Meeting Video, Item 5, 34:45-35:5).

After a lengthy discussion of potential changes to the Initial Plan, there was no consensus on a single set of changes that would satisfactorily allocate additional hours, not just to Prairie View, but to other communities such as Monaville and Katy. (Doc. 49, ¶¶ 55-60; October 17th Meeting Video, Item 5, 1:00:00-1:10:00).

### E.    The Lawsuit and Extended Voting Hours

Although they allege the Initial Plan was approved on September 22, 2018, Plaintiffs waited to file this lawsuit challenging that plan a month later on October 22, 2018, after early-voting had already begun and approximately two-weeks before the November election. (Doc. 49, ¶ 35). To ensure an orderly election and avoid the risk of undue interruption, and as a show of good faith to the Plaintiffs and the PVAMU community, the Commissioners Court voluntarily elected to call a special meeting at which it voted to extend early-voting hours in Prairie View.[9] Specifically, the Commissioners Court extended the hours on the three previously-scheduled days for early voting at the Memorial Student Center to 7:00 a.m. to 7:00 p.m. Additionally, the Commissioners Court added early voting at the Prairie View City Hall on Sunday, October 28, 2018, from 12:00 p.m. to 5:00 p.m. (the "Extended Plan"). Under the Extended Plan, the early voting hours the breakdown of early-voting hours throughout the County changed to the following:

---

[9] Video Recording of the October 24, 2018 meeting of the Waller County Commissioners Court, Item 2, at http://wallercountytx.swagit.com/play/10242018-1502. The Court may also take judicial notice of the extension of early voting hours adopted at the October 24, 2018 meeting as it can be accurately and readily determined from the County's public records, FED. R. EVID 201, and has been acknowledged by Plaintiffs in filings before the Court, *see* Doc. 22, p. 2.

| Polling Place | City | Week 1 Hours | Week 2 Hours | Total Early Voting Hours | CVAP Majority |
|---|---|---|---|---|---|
| Courthouse | Hempstead | 55 | 51 | 106 | BVAP |
| Waller ISD Admin Bldg. | Waller | 50 | 51 | 101 | WVAP |
| Brookshire Library | Brookshire | 55 | 51 | 106 | BVAP |
| Fields Store County Bldg. | Waller | 23 | 0 | 23 | WVAP |
| Monaville County Bldg. | Hempstead | 23 | 0 | 23 | BVAP[10] |
| Katy VFW | Katy | 18 | 0 | 18 | WVAP |
| Student Center | Prairie View | 0 | 36 | 36 | BVAP |
| Community Center | Prairie View | 0 | 24 | 24 | BVAP |
| City Hall | Prairie View | 0 | 5 | 5 | BVAP |

This change brought the combined early voting hours in Prairie View for the November General Election to sixty-five, more than Fields Store, Monaville, and Katy combined.

At that same meeting, County Judge Duhon read an official statement emphasizing that Waller County and the County Elections Office had complied with the law and been open and transparent in setting early-voting hours throughout the County.[11] The statement stressed the need for the Commissioners Court to use its limited resources to accommodate all voters throughout the County. Finally, the statement explained that while the County had been able to marshal its resources to afford additional hours of early voting for Prairie View, it would vigorously oppose the allegations in the lawsuit.

---

[10] *See* N. 3 and 4, *infra*.

[11] Video Recording of the October 24, 2018 meeting of the Waller County Commissioners Court, Item 3, 0:14-1:10 at http://wallercountytx.swagit.com/play/10242018-1502.

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)); *accord In Re McCoy,* 666 F.3d 924, 926 (5th Cir.2012). However, the court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005); Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)); *accord Wilson v. Birnberg,* 667 F.3d 591, 595 (5th Cir. 2012).

A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal,* 556 U.S. at 678. The standard of plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678–79; *accord Wilson,* 667 F.3d at 600. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.,* 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). In such an instance, the complaint is subject to dismissal under Rule 12(b)(6). *See id.*

ARGUMENT AND AUTHORITIES

**A.     Plaintiffs fail to state a claim under Section 2 of the Voting Rights Act because their Complaint affirmatively demonstrates Waller County's early voting schedule *did not* abridge or deny their right to vote on account of race.**

The crux of Plaintiffs' Section 2 claim is that the "unequal distribution of early voting opportunities imposes a substantial and unwarranted burden on Plaintiffs and denies them an equal opportunity to vote as compared to non-Black voters." (Doc. 49, ¶ 86). Notably, Plaintiffs do not allege that either the Initial Plan or the Extended Plan reduced early-voting hours or eliminated polling locations in the County or the City of Prairie View from those used in recent elections. Nor do they allege a lack of access to early voting opportunities throughout the County. Instead, Plaintiffs' complaint under Section 2 distills to their dissatisfaction that there were no early-voting locations in Prairie View over the first week of early voting, that there were initially no weekend hours in Prairie View (although that was remedied through the adoption of the Extended Plan), and that the City of Waller received a greater total number of early voting hours than did Prairie View. (*See* Doc. 49, ¶¶ 37-42). Taken as true, however, Plaintiffs' complaints and supporting factual allegations do not plausibly show that the early voting schedule imposed a discriminatory burden on Black voters, as required to state a claim under Section 2.

**1)     The Two Part Framework**

Section 2 encompasses two types of claims: "vote dilution" in which districting practices are alleged to deny minorities an equal opportunity to elect representatives of their choice, and vote "denial" or "abridgment" claims in which a challenged election standard, practice, or procedure is alleged to deny or abridge minority opportunity to participate in the political process. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 636 (6th Cir. 2016); *Veasey v. Abbott*, 830 F.3d 216, 243-44 (5th Cir. 2016). Several federal circuits, including our own, have adopted a two-part framework for analyzing Section 2 vote-denial claims such as this one. *See Veasey,* 830 F.3d at 244.

17

Under this framework, the Court must first determine whether the challenged standard, practice, or procedure imposes a discriminatory burden on members of a protected class such that they have less opportunity than other members of the electorate to participate in the political process. *Id.* If that element is satisfied, the Court then analyzes whether that burden is in part caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class. The analysis in the second step employs the nine non-exclusive factors from *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

In this case, the Court need not reach the second part of this analytical framework, as Plaintiffs' complaint fails at step one. *See e.g., Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 824, 873 (D. Arizona May 10, 2018) (Court does not need to reach second step where Plaintiffs have not shown at step one that the challenged voting practices impose meaningfully disparate burdens on minority voters as compared to non-minority voters), *citing Husted*, 834 F.3d at 638 (Holding that *if* the first element is met, the second step comes into play) (italics added); *see also Lee v. Virginia State Board of Elections*, 843 F.3d 592, 600 (6th Cir. 2016) (a complex § 2 analysis is not necessary where plaintiffs failed to show that members of the protected class have less of an opportunity than others to participate in the political process).

### 2) Plaintiffs' allegations fail to plausibly suggest a discriminatory burden that denied or abridged the ability of minorities to cast an early ballot.

As a threshold matter, Plaintiffs have not cited, and Defendants have not found, any case in which a federal court has found that a simple disparity in the number of early voting hours between polling locations, constitutes an actionable burden sufficient to show an abridgement of the right to vote. Significantly, neither the United States Constitution nor the Voting Rights Act requires *any* opportunities for early voting, and many states offer only a single day of early voting or no early voting at all. *Husted*, 834 F.3d at 623. Of course, an authority that does choose to offer early voting must do so in a manner that does not impose a discriminatory burden on minority voters, but no

court has found a requirement under Section 2 to provide parity of early voting hours between polling locations in areas with differing demographic majorities. Rather, courts have recognized that not every disparity between minority and non-minority voters is cognizable under the VRA. *Regan*, 329 F. Supp. 3d at 865; *Lee*, 843 F.3d at 600-601.

As the Sixth Circuit explained in *Lee v. Virginia State Board of Elections*, "[e]very decision that a State makes in regulating its elections, will, inevitably, result in somewhat more convenience for some voters than for others…To interpret § 2 as prohibiting any regulation that imposes a disparate inconvenience would mean that every polling place would need to be precisely located such that no group had to spend more time traveling to vote than did any other." *Lee*, 843 F.3d at 600-601. More recently, in *Democratic Nat'l Comm. v. Reagan*, which also included a Section 2 abridgment claim, the court reiterated that "[p]erfect racial parity is unlikely to exist in any aspect of a state's election system, which is to say it is unlikely that minorities and non-minorities will be impacted by laws in perfect proportion to their representation in the overall voting population…Unless the VRA is to be interpreted to sweep away all elections regulations, some degree of disproportionality must be tolerable." *Regan*, 329 F. Supp. 3d at 865. Therefore, to state a cognizable claim under Section 2, a plaintiff must do more than simply identify a disproportionate impact, they must allege a *discriminatory burden* resulting in members of a protected class having less opportunity than other members of the electorate to participate in the political process. *Veasey*, 830 F.3d at 244; *Regan*, 329 F. Supp. 3d at 865-66; *see also* 52 U.S.C. § 10301.

While there are certainly scenarios in which the allocation of early-voting hours could conceivably arise to a discriminatory burden under Section 2—for example where early voting is made available only or predominantly to white voters or where a plan disproportionately curtails early voting locations and times for minority voters—Plaintiffs' allegations dispel any reasonable inference that such a burden was present in *this* case. To the contrary, it is undisputed here that both

the Initial Plan and the Extended Plan adopted by the Commissioners Court afforded the greatest number of early voting hours in communities with a majority-Black CVAP. (Doc. 49, ¶ 28; *see also*, Doc. 49, p. 12, Figure 1). And while it is true that certain polling locations in Waller County were allocated a greater number of total early voting hours than others, Plaintiffs' complaint makes clear that the differences in allocated hours did not fall along racial lines or disproportionately burden minority voters.

For example, although Prairie View was allocated fewer total hours than the City of Waller, it received a significantly higher number of early-voting hours than either Katy or Fields Store, both of which Plaintiffs identify as Anglo-majority areas. And while Prairie View was not slated for weekend early voting hours under the Initial Plan, it nevertheless ended up receiving Sunday early-voting hours under the Extended Plan. Yet, Katy, which Plaintiff alleges to be majority Anglo, was not allotted weekend hours under either the Initial or the Extended Plans, even though it had a similar number of early voters in the March 2018 primary and an even greater number of early voters in the 2016 Presidential Elections. Prairie View also received early morning and evening poll hours during early voting—two twelve-hour days under the Initial Plan and five twelve-hour days under the Extended Plan—when neither Katy nor Fields Store, which consistently have higher early-voting numbers than the PVAMU Student Center, received any extended voting hours. Indeed, under the Extended Plan, Prairie View received more 7:00 a.m. to 7:00 p.m. early-voting days (5) than any other location in Waller County. The upshot is that while Plaintiffs' averments show that there were more total hours in which to cast an early ballot in Hempstead, Brookshire, and Waller, than in Fields Store, Katy, Monaville, or Prairie View, that disparity applied throughout the County and did not fall disproportionately on minority voters. As such, placed in the proper context, Plaintiffs' allegations that Prairie View received fewer overall early voting hours than the City of Waller does

not plausibly show that the early voting schedule resulted in Black voters in Waller County having less opportunity to cast an early ballot than other members of the electorate.

Nor do Plaintiffs' other allegations regarding the early voting opportunities available in Prairie View permit a plausible inference that their right to vote has been either abridged or denied. First, although Plaintiffs seek to make much of the fact that Prairie View was not allocated any early voting hours during the first week of early voting, they make no mention of the fact that other cities, such as Katy, Monaville, and Fields Store, had no early voting the second week, when Prairie View did. Plaintiffs can offer no credible explanation as to why early voting the second week instead of the first yields less opportunity to participate in the election than voting the first week, but not the second; indeed, they make no allegation that it does. Plaintiffs do aver that "…reasonably it would be advantageous to conduct early voting [the first week during homecoming] while so many students, local alumni, and other residents of Prairie View would already be on campus." (Doc. 49, ¶ 52). As a matter of common sense it seems more likely that additional people and activities on campus would only serve to create more congestion and parking woes antithetical to facilitating easy voting. But even accepting this allegation as true, the issue under the first step of an abridgement claim is not whether some might prefer voting the first week because they believe it would be advantageous or yield some added benefit, it is whether voting the second week causes a cognizable injury under the Voting Rights Act. *Regan*, 329 F. Supp. 3d at 866. Plaintiffs' complaint permits no reasonable inference that it does.

Furthermore, Plaintiffs suggestion that early voting at the Waller County Community Center is somehow inaccessible to students at PVAMU simply strains credulity. As a simple Google Maps search reveals, the Community Center sits on the edge of campus, and is approximately a quarter-mile from the Memorial Student Center.[12] Plaintiffs make the curious and conclusory assertion that

---

[12] In fact, the Waller County Community Center is "off campus" only because the University conveyed that part of the

the Community Center is not well known to PVAMU students and that PVAMU student do not visit the Community Center simply because they do not typically send or receive mail from the nearby post office.[13] But even if this tenuous allegation were true, a lack of familiarity with a polling location does not equate to less opportunity to cast a ballot. Identifying, locating, and traveling to a polling place is an ordinary burden that is traditionally associated with voting and equally born by all. *See Regan*, 329 F. Supp. 3d at 858-59. Indeed, it is unlikely that all of those wishing to vote early in Katy are veterans, yet they must still locate and travel to the Katy VFW to cast their ballot. (Doc. 49, p. 12, Figure 1). And, for Prairie View voters who are not students, the Student Center is no doubt equally—if not more—unfamiliar and inconvenient, but Plaintiffs readily assume that those voters would be adequately served by the on-campus polling location. Put simply, Plaintiffs' allegations create no inference that the Waller County Community Center is an inadequate location to hold early voting. They simply prefer the greater convenience of voting at the Student Center. That preference is understandable, but it does not implicate the protections of Section 2.

Read as a whole, and taken as true, Plaintiffs' allegations affirmatively establish that the early voting plan adopted, extended, and implemented by Waller County did not impose a discriminatory burden on minority voters in the County such that they had less opportunity to participate in the election than other members of the electorate. As a result, Plaintiffs cannot state a claim to relief under section 2 of the Voting Rights Act, and that cause of action should be dismissed.

---

original campus to the County for the construction of a community center that would serve both the students and other residents of the Prairie View area. *See* October 17th Meeting Video, Item 5, 23:05-23:19.

[13] Of course, the fact that students do not get their mail at the post office provides no basis to conclude that they are generally unfamiliar with the Community Center. To the contrary Students routinely rent the Community Center for student functions. (*See e.g.,* October 17th Meeting Video, Item 5, 23:30-23:38, (in which Defendant Duhon notes that a sorority had reserved the Community Center for a Homecoming function over the weekend during early voting).

**B.**     **Plaintiffs' complaint also fails to state a claim of intentional race discrimination under either the Voting Rights Act or Fourteenth and Fifteenth Amendments to the U.S. Constitution.**

As an alternative to their discriminatory results claim under Section 2, Plaintiffs further allege that the County's plan had the "purpose" of denying or abridging the rights of Plaintiffs to vote on account of their race or color, (Doc. 49, ¶ 86), and that the County's early voting plan constitutes intentional racial discrimination in violation of the Fourteenth and Fifteenth amendments to the U.S. Constitution, (*Id.* at ¶¶ 88-91). To state a claim of intentional discrimination, Plaintiffs must allege facts sufficient to show that racial discrimination was a substantial or motivating factor behind the enactment of a given decision. Significantly, "Legislators' awareness of a disparate impact on a protected group is not enough: the law must be passed *because of* that disparate impact." *Veasey*, 830 F.3d at 231, *citing Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). In the absence of direct allegations of discrimination—of which there are none here—the Fifth Circuit analyzes claims of invidious discrimination under Section 2 and the U.S. Constitution through the five non-exclusive factors articulated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-68 (1977). *See Veasey*, 830 F.3d at 230.

Those factors include: (1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989) (*citing Arlington Heights*, 429 U.S. at 267–68). While not required to strictly plead a prima facie case of discrimination to avoid dismissal pursuant to Rule 12(b)(6), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), the Fifth Circuit has repeatedly admonished that no plaintiff is exempt from the requirement to allege facts sufficient to establish the ultimate elements of their claim. *See Chhim v. University of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *Puente v.*

*Ridge*, 324 Fed. Appx. 423, 427–28 (5th Cir. 2009). Here, even if Plaintiffs had pled facts sufficient to show that Waller's County's early-voting plan had a disparate impact on minority voters—which, as shown above, they have not—Plaintiffs still fail to plead facts sufficient to plausibly support a claim of intentional discrimination.

In this case, Plaintiffs attempt to sustain their claim for intentional discrimination largely through their allegations of the historical background of discrimination in the State of Texas and Waller County. Defendants do not, and need not, defend either history here. While the historical background of a decision is one factor that may be relevant to discriminatory intent, it is insufficient by itself to sustain a claim of intentional discrimination. As the Supreme Court has admonished, "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Abbott v. Perez*, 135 S. Ct. 2305, 2324, 201 L.Ed 2d 714 (2018), *citing Mobile v. Bolden*, 446 U.S. 55, 74 (1980). Thus, even accepting Plaintiffs' historical allegations as true, they are ultimately unavailing as there is no basis to infer intentional discrimination by the current Commissioners Court in adopting early-voting hours for the 2018 general election.

In fact, Plaintiffs' complaint affirmatively establishes that Defendants' adoption of the early-voting plan was based on a neutral, non-discriminatory consideration, namely the bi-partisan proposal that was agreed to and submitted by the chairs of the local Democratic and Republican parties. (Doc. 49, ¶ 35). Plaintiffs may not agree with the County's acceptance of the party chairs' proposal. And they may feel the local party structure is not sufficiently representative of every student at PVAMU. Nevertheless, they plead no facts from which the Court could reasonably infer that Defendants' reliance on the chairs' proposal was intentional discrimination on the basis of race or color. Similarly, there are there are no allegations to suggest that the circumstances surrounding the adoption of the early voting plans bore any indicia of discriminatory intent. Plaintiffs do not allege that there were any objections to the plan at the time it was adopted, or that there were any

procedural irregularities in the plan's adoption. Nor do they contend that the substance of the adopted plan amounted to any meaningful departure from past early-voting schedules.

Plaintiffs do recite some contemporaneous statements made by the Defendant Commissioners at the October 17th meeting to consider possible changes to the Initial Plan, but each of those statements was race-neutral and not even remotely suggestive of discriminatory intent. For example, Plaintiffs allege that "Even Defendant Mr. (sic) Eason acknowledged at this meeting that the early voting plan 'is not equal representation,' particularly as between the four cities in the County: Waller, Hempstead, Prairie View, and Brookshire." (Doc. 49, ¶ 48). And they aver that Defendant Duhon "admitted that 'there's an inequity'" in the early voting opportunities available to Prairie View as compared to other cities like Waller that get eleven days of early voting." (*Id.*). But these statements merely recognize that Prairie View, like Fields Store, Monaville, and Katy, received fewer total early voting hours than Hempstead, Brookshire, and Waller. They do not plausibly identify or signal any disparity or discrimination on the basis of race, as two of the three comparison cities have a Black-majority CVAP. Any suggestion that the early-voting schedule amounted to intentional race discrimination simply because Eason and Duhon subsequently proposed greater parity in the total number of early voting hours between Prairie View and the other cities in Waller County is therefore a non-sequitur.

Moreover, Plaintiffs' complaint makes no plausible suggestion that the Commissioners Court's October 17, 2018 vote not to modify the early-voting schedule was motivated by discrimination of any nature. To the contrary, Plaintiffs' allegations, as well as the video recording of that meeting, demonstrate that the Commissioners voiced only legitimate, non-discriminatory concerns about the proposed changes. These included the fact that citizens of Prairie View who were not PVAMU students preferred not to vote on campus because it was difficult to park and gain access to the polls, (Doc. 49, ¶ 50; October 17th Meeting Video, Item 5 at 25:30-27:18 and 4:28-

4:57, (in which Defendant Eason explains, with audible crowd agreement, that it is difficult to find a parking spot and get around on campus)), concerns that if the Commissioners Court was going to add additional days, it would also need to do so for other areas that already had less early voting than Prairie View or no early-voting at all, (*Id.* at 27:20-29:15; 32:50-34:22; Doc 49, ¶ 57), and concerns that changing early-voting locations so soon before the election was inconsistent with the County's process for adopting early voting hours and could create confusion, (Doc. 49, ¶ 50, October 17th Meeting Video, Item 5, 34:45-35:5).

Plaintiffs make the conclusory allegation that these legitimate bases were a mere pretext for invidious discrimination but plead no underlying facts from which the Court could reasonably infer that to be the case. *Twombly*, 550 U.S. at 556 (a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.). For example, Plaintiffs imply that Defendants' concerns about the inconvenience of on-campus are contrived because Plaintiffs believe "PVAMU makes parking available to non-PVAMU students on voting days" and "other events frequently are held on the PVAMU campus." (Doc. 49, ¶ 53). But the fact that some parking may be available, or that the campus is suitable for other types of events, does nothing to undermine Defendants' concerns that forcing voters in Prairie View to navigate a crowded college campus to get to the polls presents a greater inconvenience than voting at the County-controlled Community Center, which is adjacent to the campus and only about a quarter-mile away from the Memorial Student Center. And, though Plaintiffs allege that it would have been feasible to add early-voting days at the PVAMU student center, Doc. 49, ¶ 54, they ignore the stated concerns of some of the Commissioners, including Commissioner Barnett, who is both African American and the Commissioner for Prairie View, that if they added hours for Prairie View they would need to add hours for their other constituents who already had significantly fewer early voting hours (or none at all).

Accordingly, while Plaintiffs' complaint makes clear their disagreement with the Commissioners Court's decision and the reasons for it, Plaintiffs fail to plead the requisite facts to allow the court to infer that Defendants intentionally discriminated on the basis of race. Plaintiffs have therefore failed to state a claim of purposeful discrimination under Section 2 of the Voting Rights Act or for intentional discrimination under the Fourteenth and Fifteenth Amendments.

**C.      Plaintiffs also fail to plead facts to support their claim of intentional age discrimination under the Twenty-Sixth Amendment or the intersection of the Fourteenth and Twenty-Sixth Amendments.**

Unlike claims under the Fourteenth and Fifteenth Amendment, the Fifth Circuit has not clearly articulated a standard for the interpretation of the Twenty-Sixth Amendment or deciding claims of violations of the Twenty-Sixth Amendment based on the alleged abridgement or denial of the right to vote. However, because the Twenty-Sixth Amendment is patterned on the Fifteenth, a consensus has been emerging in other jurisdictions in which courts have applied the *Arlington Heights* analysis to such claims. *See e.g., League of Woman Voters of Florida, Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1221 (N.D. Florida July 24, 2018). Notably, though, Plaintiffs have not identified any case in which a court has found a denial or abridgment of the right to vote under the Twenty-Sixth Amendment because a college had fewer on-campus voting hours than neighboring polling locations, or even because a particular college had no on-campus polling location at all.

A brief review of the cases cited by Plaintiffs in their Memorandum in Support of their Motion for Temporary Restraining Order is helpful in identifying the types of disparities that courts have found to violate the Twenty-Sixth Amendment, and readily illustrates the distinction between those cases and the claims Plaintiffs make here. For example, in *United States v. Texas*, a three-judge court in the Southern District found a voting registrar's requirement that college dormitory residents establish that they intended to remain in the community after graduation before they could be registered to vote violated the Twenty-Sixth Amendment. 445 F. Supp. 1245 (S.D. Tex. 1978).

In *Latham v. Chandler*, 406 F. Supp. 754 (N.D. Miss. 1976), the district court also found a violation of the Twenty-Sixth Amendment based on the application of disparate standards and procedures to voter registration applications tendered by black students attending Mississippi Valley State University, situated in Leflore County, from those of residents of Leflore County. Finally, in *Detzner*, a recent decision out of the Northern District of Florida, the court found the Twenty-Sixth Amendment to be violated by an opinion of the Florida Secretary of State that served as an outright bar to early voting on the campus of a state-owned university or junior college. *Detzner*, 314 F. Supp. at 1210.

The common thread in each of these cases is an electoral practice that specifically targeted students for different treatment from non-student voters and had the effect of barring their registration to vote or even the consideration of voting on campus. As exhaustively detailed above, no such disparity exists for the students at PVAMU in this case. Here, as with race, Plaintiffs' allegations negate any possible finding that they were singled out on the basis of either their age or status as a student. Under both the Initial Plan and the Extended Plan, students at Prairie View had a greater number of hours to cast an early ballot, either on campus or within a quarter mile of it, than did voters in Fields Store, Monaville, or Katy, where Plaintiffs allege the student population to be lower. And while additional hours may provide a greater convenience for early voters who reside in the cities of Hempstead, Brookshire, and Waller, any inconvenience of not having those hours is common among all voters, student and non-student alike, throughout the rest of the County. Plaintiffs' allegations therefore fail to state, in the first instance, any age-based denial or abridgement of the right to vote in Waller County.

Even if Plaintiffs could articulate such a denial or abridgment, which they cannot, their Twenty-Sixth Amendment claims would still fail because, in the same way they have failed to plead a claim of intentional race discrimination, they have also failed to plead intentional discrimination

on the basis of age. These same defects—the failure to plead an actionable abridgement of the right to vote or intentional discrimination—similarly defeat Plaintiffs' fourth cause of action in which they allege intentional discrimination under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. constitution on the intersecting bases of age and race. (Doc. 49, ¶¶ 97-100).

## CONCLUSION

Each of Plaintiffs' asserted claims should be dismissed for failure to state a claim. Neither the Constitution nor the Voting Rights Act guarantees parity of early-voting hours across all precincts in a given county. Rather, those authorities respect the traditional role and legitimate interests of local elected officials in allocating, on a non-discriminatory basis, election resources in a manner that best serves *all* of the county's voters. Here, Defendants' early voting plan did not have either the intent or effect of discriminating against Black or student voters in Waller County. Therefore, while Plaintiffs' goal to increase early-voting hours on the PVAMU campus is laudable, it is one that is to be achieved through active and timely participation in the political process, not a lawsuit.

## PRAYER

Accordingly, Defendants pray that the Court dismiss Plaintiff's First Amended Complaint, in its entirety, with prejudice to the re-filing of the same, and for such other and further relief to which they may be entitled.

Dated: May 10, 2019

Respectfully submitted,

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
512-472-8021 (Telephone)
512-320-5638 (Facsimile)

By: _____

Gunnar P. Seaquist
Texas State Bar No. 24043358
Southern District No: 1140733
gseaquist@bickerstaff.com
C. Robert Heath
Texas State Bar No. 09347500
Southern District No. 13381
bheath@bickerstaff.com

**ATTORNEYS FOR ALL DEFENDANTS**

### CERTIFICATE OF SERVICE

This is to certify that on May 10, 2019, a true and correct copy of the foregoing document was served on all counsel of record via the electronic case filing system of the United States District Court for the Southern District of Texas.

_____

Gunnar P. Seaquist