## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JAYLA ALLEN, DAMON JOHNSON,** | § | |
| **TREASURE SMITH, and THE** | § | |
| **PANTHER PARTY,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:18-CV-3985** |
| | § | |
| **WALLER COUNTY TEXAS; THE** | § | |
| **WALLER COUNTY** | § | |
| **COMMISSIONERS COURT; JUDGE** | § | |
| **CARBETT "TREY" J. DUHON III, in** | § | |
| **his official capacity as the Waller County** | § | |
| **Judge; and CHRISTY A. EASON, in her** | § | |
| **official capacity as the Waller County** | § | |
| **Elections Administrator,** | § | |
| *Defendants*. | | |

---

## DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT

---

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
512-472-8021 (Telephone)
512-320-5638 (Facsimile)

By: _____

Gunnar P. Seaquist
Texas State Bar No. 24043358
Southern District No: 1140733
gseaquist@bickerstaff.com
C. Robert Heath
Texas State Bar No. 09347500
Southern District No. 13381
bheath@bickerstaff.com

**ATTORNEYS FOR ALL DEFENDANTS**

# TABLE OF CONTENTS

Table of Contents..................................................................................................... i

Table of Authorities ............................................................................................... iii

Nature of Claims and Stage of Proceedings ........................................................... 1

Statement of Facts .................................................................................................. 2

    A.    Early Voting - Texas Law. ......................................................................... 2

    B.    Waller County's Adoption of Early Voting Schedules ................................ 3

    C.    The Initial Plan for the 2018 General Election ............................................ 3

    D.    Participation in the 2018 Primary and the 2016 General Election ............... 4

    E.    Reconsideration of Early Voting Hours at October 17, 2018 Commissioners Court Meeting........................................................................ 5

    F.    The Lawsuit and Extended Voting Hours .................................................... 6

Summary Judgment Standard.................................................................................. 7

Summary of the Argument ...................................................................................... 7

Argument and Authorities ...................................................................................... 8

    A.    Defendants are entitled to summary Judgment on Plaintiffs' claim under Section 2 of the Voting Rights Act because they *did not* abridge or deny Plaintiffs' right to vote. ................................................................... 8

        1)    The Two Part Framework for Abridgement Claims .......................... 8

        2)    Plaintiffs' allegations of fewer total early voting hours is insufficient to establish a discriminatory burden under Section 2. ...................................................................................................... 8

        3)    Plaintiffs' retained experts also fail to demonstrate an actionable burden under Section 2.................................................... 12

            a.    Dr. Henry Flores................................................................. 12

b.      Dr. Robert Stein ...................................................... 13

B.      Plaintiffs' cannot show intentional race discrimination under either the
        Voting Rights Act or the U.S. Constitution. ................................................ 14

C.      Plaintiffs' claims of intentional discrimination based on age or the
        intersecting bases of age and race similarly fail........................................... 16

D.      Alternatively, Texas H.B. 1888 moots Plaintiffs' proposed injunctive
        relief and PVAMU is an indispensable party to any relief ordering on-
        campus voting................................................................................................. 17

Conclusion ............................................................................................................... 19

Prayer ....................................................................................................................... 19

Certificate of Word Count ....................................................................................... 21

Certificate of Service ............................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Perez*,
    135 S. Ct. 2305, 201 L.Ed 2d 714 (2018) ..................................................................... 15

*De la O v. Housing Authority of City of El Paso, Tex.*,
    417 F.3d 495 (5th Cir. 2005) ....................................................................................... 18

*Democratic Nat'l Committee v. Reagan*,
    329 F. Supp. 3d 824, 865-66 (D. Ariz. 2018) ................................................................ 9

*Frank v. Walker*,
    768 F.3d 744 (7th Cir. 2014) ........................................................................................ 9

*League of Woman Voters of Florida, Inc. v. Detzner*,
    314 F. Supp. 3d 1205, 1221 (N.D. Florida July 24, 2018) ........................................... 16

*Lee v. Virginia State Board of Elections*,
    843 F.3d 592 (6th Cir. 2016) ................................................................................ 8, 9, 11

*Likens v. Hartford Life & Accident Ins. Co.*,
    688 F.3d 197 (5th Cir.2012) ........................................................................................ 16

*Ohio Democratic Party v. Husted*,
    834 F.3d 620 (6th Cir. 2016) ........................................................................................ 8

*Overton v. City of Austin*,
    871 F.2d 529 (5th Cir. 1989) ...................................................................................... 15

*Pendleton v. Prairie View A&M Univ.*,
    121 F.Supp.3d 758, 762-63 (S.D. Tex. 2015) .............................................................. 19

*Personnel Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) .................................................................................................... 14

*Rogers v. Lodge*,
    458 U.S. 613 (1982) .................................................................................................... 14

*Shaw v. Reno*,
    509 U.S. 630 (1993) ...................................................................................................... 9

*Sissom v. Univ. of Texas High School*,
   927 F.3d 343 (5th Cir. 2019) ........................................................................ 19

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ........................................................ 8, 10, 14, 15

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
   429 U.S. 252 (1977) .................................................................................. 15, 16

**Statutes**

52 U.S.C. § 10301 ............................................................................................... 9

52 U.S.C. § 10301(a) ........................................................................................... 1

TEX. ELEC. CODE §§ 81.001 and 85.002 .......................................................... 2

TEX. ELEC. CODE § 85.062(a) ........................................................................... 2

TEX. ELEC. CODE § 85.064(b) ......................................................................... 18

TEX. ELEC. CODE § 85.065 (a) and (b) ............................................................ 2

TEX. ELEC. CODE § 85.065(c) ........................................................................... 3

TEX. ELEC. CODE § 85.066(a) ........................................................................... 2

TEX. GOV'T CODE § 572.002(10)(B) ............................................................. 18

Section 2 of the Voting Rights Act ............................................................ *passim*

**Other Authorities**

FED. R. CIV. P. 19(a) ......................................................................................... 18

FED. R. CIV. P. 19(b) ................................................................................... 18, 19

FED. R. CIV. P. 56 ................................................................................................ 1

FED. R. CIV. P. 56(c)(1) ...................................................................................... 7

U.S. CONST. art. III, § 2 .................................................................................... 18

TO THE HONORABLE CHARLES ESKRIDGE, UNITED STATES DISTRICT JUDGE:

Plaintiffs allege that Waller County's early voting schedule for the 2018 general election was discriminatory in both effect and purpose because it allocated fewer overall hours of early voting on the majority-Black Prairie View A&M University (PVAMU) campus than other polling locations in the County. In truth, the County's plan not only balanced opportunities for early voting throughout the county, it provided Plaintiffs the unique convenience of having early voting brought to them. While other voters had to travel to an out-of-the-way polling location, PVAMU students were singularly able to cast a ballot at or immediately next to the campus where they already spend almost all of their time. While Plaintiffs may have preferred additional voting hours on campus or felt that early voting in the center of campus is more convenient than voting on the edge of campus, the protections of the U.S. Constitution and the Voting Rights Act of 1965 (VRA) are not triggered by disparate conveniences or unsatisfied preferences. The issue for resolution here is whether Waller County's allocation of early voting had either the intent or effect of disproportionately burdening the ability of minority or youth voters to participate in in the 2018 election. Because the summary judgment evidence establishes that Waller County's adopted schedule did neither, Defendants move for summary judgment on Plaintiffs' claims. *See* FED. R. CIV. P. 56.

## NATURE OF CLAIMS AND STAGE OF PROCEEDINGS

Plaintiffs assert that Waller County's early voting schedule for the 2018 general election had the effect of abridging their right to vote on account of race in violation of section 2 of the VRA, *See* 52 U.S.C. § 10301(a), and that Defendants adopted the early

voting schedule with the intent to discriminate against them and the basis of race and age in violation of the 14th, 15th, and 26th Amendments to the United States Constitution. Plaintiffs sought a temporary restraining order extending early voting hours in the City of Prairie View, but withdrew that request after the County extended early voting hours voluntarily. (Doc. 16, 16-1, 17, and 22). After Defendants moved to dismiss the Original Complaint for failure to state a claim, (Doc. 34), Plaintiffs filed their Amended Complaint (Doc. 49), which added the Panther Party as a Plaintiff, but did not otherwise materially amend Plaintiffs' factual allegations or causes of action. Defendants therefore again moved to dismiss, and that motion remains pending before the Court. (Doc. 51). Defendants now move for summary judgment on Plaintiffs' claims.

STATEMENT OF FACTS

**A.      Early Voting - Texas Law**

Texas law requires counties to conduct early voting only at one "Main Early Voting Polling Place" (MEVPP). *See* TEX. ELEC. CODE §§ 81.001 and 85.002. The MEVPP for Waller County is the Waller County Courthouse, which is located in Hempstead. In addition to the MEVPP, the Election Code allows counties the discretion to establish "Temporary Branch Polling Places" (TBPPs). *Id.* at § 85.062(a). Eligible voters wishing to cast an early ballot generally may do so at any TBPP within the county. *Id.*at § 85.066(a). Although the statute has since been amended, in 2018, a county with a population of less than 100,000, such as Waller, could conduct early voting at a TBPP on any one or more days and during any hours of the period for early voting by personal appearance, as determined by the commissioners court. *Id.* at § 85.065 (a) and (b). Prior to its amendment, the Election Code

2

provided that "the schedules for conducting voting are not required to be uniform among the temporary branch polling places." *Id.* at § 85.065(c).

## B.     Waller County's Adoption of Early Voting Schedules

In setting the early-voting schedule, Elections Administrator Christy Eason coordinates with the local chairs for the democratic and republican parties—the two active parties in Waller County—to propose a schedule for adoption by the Commissioners Court. (Exhibit 1, 32:21-33:19; 87:23-88:5; 99:24-100:13; 30:25-31:1). Eason prepares a plan based on locations used in the past, as well as various factors, including historical usage, the number of registered voters, the competitiveness of the election, the number and availability of poll workers and the time it takes to train them, the availability of voting equipment, and the accessibility and ease of use of a given location. (Exhibit 1, 32:19-33:8; 86:3-87:19; 92:13-94:12; 97:9-13; 132:5-133:21). Eason then reviews her proposal with the party chairs who propose any necessary changes. (Exhibit 1, 87:20-88:7). Once the party chairs agree to the plan, Eason submits the schedule to the Commissioners Court for approval at a public meeting. Eason testified that this has been the standard practice for the County going back to the 1990s. (Exhibit 1, 33:9-19; 99:3-8).

## C.     The Initial Plan for the 2018 General Election

For the general election in 2018, Eason submitted the agreed early-voting locations for approval by the Commissioners Court at its public meeting on August 22, 2018. (Exhibit 1, 109:17-110:14; Exhibit 9, August 22, 2018, Item 16-17, at 2:20-4:10; Exhibit 10, ¶ 3). At that time, Eason notified the Commissioners Court that the days and times of early voting

would be finalized after the Elections Office completed training on its new voting equipment. *Id.*

Eason initially proposed early voting on the PVAMU campus during the first week of early voting to take place at the Memorial Student Center (MSC) from Wednesday, October 24th through Friday, October 26th, as well as additional voting at the Waller County Community Center (WCCC) the following Monday and Tuesday (October 29-30). (Exhibit 1, 171:7-172:10). However, the Democratic Party Chair asked to move early voting at PVAMU to the second week due to potential conflicts with homecoming, which coincided with the first week of early voting. (Exhibit 1, 164:20-165:9; 167:11-20). Eason made that change and both party chairs agreed to the revised schedule. (*Id.*; *see also* 219:11-21). The Commissioners Court approved the agreed schedule at its public meeting on September 5, 2018, as part of the comprehensive order calling the election. (Exhibit 1, 111:4-16; 150:3-24; Exhibit 10, ¶ 3). The Initial Plan, as modified and agreed to by the party chairs, is contained in Plaintiffs' Amended Complaint. (Doc. 49, p. 12, Figure 1).

Eason also allocated the greatest number of voting machines to the MSC, both during early voting and on Election Day (Exhibit 1, 119:4-124:25). In fact, the additional controller and machines Eason placed at the MSC allowed it to have two voting lines running at the same time, effectively operating as two polling locations. (Exhibit 1, 122:16-24; Exhibit 2, 187:18-25).

**D.    Participation in the 2018 Primary and the 2016 General Election**

Plaintiffs further allege that "[a]s compared to other early voting sites in Waller County, the MSC at PVAMU had one of the highest numbers of early votes cast in the

November 2016 Election and March 2018 Primary." (Doc. 49, ¶ 69). However, a comparison of the canvass results for those elections shows that the precincts in Hempstead and Waller had greater early voting numbers than Prairie View in the March 2018 primary, with Katy having only slightly fewer votes. (*See* Exhibit 11, ¶ 10, Ex. B, C). In the 2016 general election, Hempstead, Brookshire, Waller, and Katy each had a higher total of early votes and turnout by percentage of registered voters, than did Prairie View. *Id.* The Initial Plan was therefore consistent with historical early voting turnout within the County.

### E.   Reconsideration of Early Voting Hours at October 17, 2018 Commissioners Court Meeting

Although the County adopted the Initial Plan in September of 2018 without issue, concerns were later raised that Prairie View was not allocated the same number of early voting hours as other cities in Waller County. (Exhibit 1, 162:7-163:25). The Commissioners Court therefore met in a public meeting on October 17, 2018 to consider possible changes to the early voting schedule. (Exhibit 9, October 17, 2018, item 5). The meeting allowed for public input, and a handful of students spoke to the Commissioners Court.

At the meeting, Eason acknowledged that Brookshire, Hempstead, Waller, and Prairie View did not receive the same number of hours under the Initial Plan and recommended additional hours in Prairie View during the first week on Monday and Tuesday at the MSC, Wednesday at the University Square, and Thursday and Friday at City Hall. (Doc. 49, ¶ 54; Exhibit 9, October 17, 2018, Item 5, 05:50-06:30; *see also* Exhibit 1, 159:14-160:13; Exhibit 2, 208:23-25)). Duhon was concerned Eason's proposal was confusing because it created four different polling places in the City of Prairie View over the two-week early voting period. (*Id.*, 22:20-24:25). He suggested instead adding three days of voting the

first week at the WCCC. (*Id.*). Commissioner Barnett, the county commissioner for Precinct 3, including Prairie View, expressed his concern that Prairie View voters who were not PVAMU students did not want to vote on campus and that additional hours at the MSC were unfair to them. (*Id.* at 25:30-27:18; Doc 49, ¶ 50). Barnett also commented that if the County was going to add days, it should do so for Monaville, which had less early voting than Prairie View. (*Id.* at 27:20-29:15; Doc 49, ¶ 57). Commissioner Beckendorff identified the difficulty in adopting an early voting schedule that was equally fair to everyone, pointing to other communities, such as Hockley and Pattison, that had no early-voting locations at all, and Katy, which had only three days of early voting. (Exhibit 9, October 17, 2018, Item 5, 32:50-34:22; Doc. 49 ¶ 57). Commissioner Amsler stressed his belief that there was a process in place and that the Court had already approved the schedule agreed to by the party chairs. (Doc. 49, ¶ 50, Exhibit 9, October 17 2018, Item 5, 34:45-35:5).

Ultimately, there was no consensus on changes that would satisfactorily allocate additional hours across the County. (Doc. 49, ¶¶ 55-60; Exhibit 9, October 17, 2018, Item 5, 1:00:00-1:10:00).

## F.    The Lawsuit and Extended Voting Hours

Plaintiffs filed this lawsuit on October 22, 2018, two-weeks before the November election and after early-voting had already begun. (Doc. 49, ¶ 35). To ensure an orderly election and avoid the risk of undue interruption, and as a show of good faith, the Commissioners Court called a special meeting at which it extended early voting hours in Prairie View. (Exhibit 9, October 24, 2018, Item 2). The Court extended the hours on the three previously-scheduled days at the MSC to 7:00 a.m. to 7:00 p.m. and added early voting

at the Prairie View City Hall on Sunday, October 28, 2018, from 12:00 p.m. to 5:00 p.m. (the "Extended Plan"). (Exhibit 3, 143:9-145:7). This change brought the combined early voting hours in the City of Prairie View for the November General Election to 65, more than Fields Store, Monaville, and Katy.

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be supported by (a) citing to specific materials that resolve an issue of fact or (b) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

### SUMMARY OF THE ARGUMENT

In keeping with past practice and procedure, the County's early voting schedule in the 2018 general election allocated voting among all voters of Waller County based on legitimate, non-discriminatory factors. The adopted schedule did not impose and disparate burden on Plaintiffs' ability to vote and therefore they cannot sustain a claim of vote abridgment under Section 2 of the VRA. Likewise, as there is no evidence that the County adopted the early voting schedule with the specific intent of harming minority voters, Plaintiffs' intentional discrimination claims must also fail. Alternatively, Plaintiffs' requested injunctive relief either has been rendered moot by recent legislative changes, or requires the joinder of PVAMU, and indispensable party that cannot be feasibly joined. Defendants are therefore entitled to summary judgment on each of Plaintiffs' claims.

## ARGUMENT AND AUTHORITIES

**A.**  **Defendants are entitled to summary judgment on Plaintiffs' claim under Section 2 of the Voting Rights Act because they *did not* abridge or deny Plaintiffs' right to vote**

      **1)**  **The Two-Part Framework for Abridgment Claims.**

The Fifth Circuit has adopted a two-part framework for analyzing Section 2 abridgment claims. *Veasey v. Abbott*, 830 F.3d 216, 243-44 (5th Cir. 2016). First, the Court must determine whether the challenged practice imposes a discriminatory burden on members of a protected class, such that they have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. *Id.* If that element is satisfied, the Court uses the non-exclusive factors from *Thornburg v. Gingles* to determine whether that burden is caused by social and historical conditions that produce discrimination against members of the protected class. *Id.* Here, Plaintiffs cannot show a discriminatory burden, and the inquiry terminates at the first step. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 638 (6th Cir. 2016); *see also Lee v. Virginia State Board of Elections*, 843 F.3d 592, 600 (6th Cir. 2016) (a complex § 2 analysis is not necessary where plaintiffs failed to show that members of the protected class have less of an opportunity than others to participate in the political process).

      **2)**  **Plaintiffs' allegations of fewer total early voting hours is insufficient to establish a discriminatory burden under Section 2.**

Plaintiffs' allegations of vote abridgment distill to their complaint that there were fewer overall early voting hours in the MSC than in the City of Waller. However, no federal court has found a cognizable burden under Section 2 based solely on a difference in the number of early voting hours between areas with differing demographic majorities. Rather,

courts have recognized that not every disparity between minority and non-minority voters is cognizable under the VRA. *Lee*, 843 F.3d at 600-601; *Frank v. Walker*, 768 F.3d 744, 754 (7th Cir. 2014); *Democratic Nat'l Committee v. Reagan*, 329 F. Supp. 3d 824, 865-66 (D. Ariz. 2018). There is a difference between disparate inconveniences that voters face when voting and the denial or abridgement of the right to vote. *Lee*, 843 F.3d 592, 601 (4th Cir. 2016). To be cognizable under Section 2, a challenged voting practice must impose a discriminatory burden and not merely result in a disproportionate impact or inconvenience. *Id.*

Indeed, "[e]very decision that a State makes in regulating its elections, will, inevitably, result in somewhat more convenience for some voters than for others…To interpret § 2 as prohibiting any regulation that imposes a disparate inconvenience would mean that every polling place would need to be precisely located such that no group had to spend more time traveling to vote than did any other." *Lee*, 843 F.3d at 600-601. It would also mean that election officials would be required to allocate early voting hours based on race, rather than what is necessary to accommodate actual voting in a given location. *Cf., Shaw v. Reno*, 509 U.S. 630, 643-44 (1993) (racial classifications, regardless of purported motivation, are presumptively invalid and can be upheld only upon an extraordinary justification). Thus, the protections of the VRA are not triggered simply because some voters in areas with fewer overall early voting hours may be disparately inconvenienced; Plaintiffs must demonstrate a discriminatory *burden* resulting in less opportunity than other members of the electorate to participate in the political process and elect representatives of choice. 52

U.S.C. § 10301; *see also Veasey*, 830 F.3d at 244. Plaintiffs can make no such showing in this case.

First, the allocation of early voting hours for the 2018 election did not disparately affect Black voters in Waller County. To the contrary, both the Initial Plan and the Extended Plan afforded the greatest number of early voting hours in the Black-majority CVAP communities of Hempstead and Brookshire. (Doc. 49, ¶ 28; *see also*, Doc. 49, Figure 1). Although Prairie View had fewer total hours than the City of Waller, it had more hours than either Katy, Monaville, or Fields Store, which Plaintiffs concede to be Anglo-majority areas. Moreover, despite comparable or in some instances greater numbers of usage, voters in rural areas such as Hockley and Pattison had no polling location and had to travel to a neighboring city to cast an early ballot. (Exhibit 11, ¶ 8; Ex. A; Exhibit 7-6, p. 6). So while there were more total hours to cast an early ballot in Hempstead, Brookshire, and Waller, than in Fields Store, Katy, Monaville, or Prairie View, there is no evidence to suggest Black voters had less opportunity to participate than other voters throughout Waller County.

Second, even viewed in isolation, Plaintiffs cannot show that the difference in voting hours between Prairie View and Waller resulted in less opportunity to vote. Importantly, unlike *any* other voting group in Waller County, PVAMU voters had the advantage of five full days of early voting (and an Election Day poll) at, or within a short walking distance of, the heart of the campus. Further, under the Extended Plan, Prairie View received more 7:00 a.m. to 7:00 p.m. early voting days (5) than any other location in Waller County. Voters served by the polling location in Waller, including those in the surrounding rural communities such as Hockley, had to make a special trip—often during daytime hours—to

10

vote, while PVAMU students were uniquely able to cast a ballot, over a twelve-hour window, at the very location where they would be anyway. As such, there is simply no apt quantitative comparison of the opportunity to vote between the days and hours allocated for Waller and those given to the students of PVAMU at either the MSC or the Community Center on the edge of campus.

Importantly, neither the Initial Plan nor the Extended Plan reduced early voting hours or eliminated polling locations from those they used in past elections. In fact, the Initial and Extended schedules for the 2018 general election offered the most expansive early-voting schedule at PVAMU to date. (Exhibit 8, 104:4-105:2). There is similarly no evidence to show that the schedule resulted in long lines or other burdens that impeded Plaintiffs' ability to cast a ballot. (Exhibit 4, 53:15-54:19; Exhibit 5: 87:7-88:14; Exhibit 6 155:12-157:11; Exhibit 3, 147:19-22). Instead, the County affirmatively doubled the number of controllers and voting machines such that the MSC effectively operated as two polls. (Exhibit 1, 119:4-124:25; Exhibit 2, 187:18-25). Thus, when asked what impediments or difficulties they encountered in casting an early ballot in the 2018 general election, the individual Plaintiffs each provided a boilerplate response stating only that they had to rearrange their schedule and divert time and energy away from school-related activities to vote at the MSC. (Exhibits 3-5, Deposition Exhibit 1, Response to Interrogatory No. 8). However, the inconvenience of scheduling a time to vote is a burden shared by all voters, and cannot serve as the basis for a claim of vote abridgment. *See Lee*, 843 F.3d at 600-601. Ultimately, there is no evidence that, even with fewer overall hours, Plaintiffs faced greater burdens in voting at the MSC or

11

the nearby WCCC than other Waller County voters, who had to find time to vote away from their daily activities.

### 3) Plaintiffs' retained experts also fail to demonstrate an actionable burden under Section 2.

Plaintiffs' experts, Drs. Henry Flores and Robert Stein, also fail to show that fewer overall early voting hours is tantamount to the abridgment of the right to vote. Indeed, neither undertook any analysis of whether the allocation of hours actually resulted in voters in Prairie View having less opportunity than voters in other parts of the County.

### a. Dr. Henry Flores

Dr. Flores confirmed in his deposition that the ostensible discriminatory effect of the County's early voting schedule was simply that there were fewer hours at the MSC than at some other locations in Waller County. (Exhibit 7, 6:6-7:2). Flores admitted, however, that while virtually all PVAMU students were likely to be in or near the MSC over the three days of voting there, *Id.*, 11:7-12:11, other voters in Waller County were unlikely to have an independent reason to visit their designated polling places. (*Id.*, 12:1-14; 53: 8-54:15). And though Flores testified that he felt the WCCC was less convenient to students than the MSC, he could offer no opinion as to whether voting at the WCCC on the edge of the campus posed any greater burdens for PVAMU students than those faced by voters in other parts of Waller County. (Exhibit 7, 35:20-36:21). So while Dr. Flores offers the conclusory opinion that having fewer overall early voting hours in Prairie View resulted in a discriminatory effect, he conducted no analysis, and offers no evidence, to show that voters in Prairie View had less opportunity to participate than other members of the electorate.

### b.    Dr. Robert Stein

Dr. Stein also fails to provide evidence that Plaintiffs lacked an equal opportunity to cast a ballot. Stein states that he sought to answer the specific question of whether specific groups of registered voters are more burdened than others in casting an early vote. (Exhibit 8, 28:4-22). He uses the term "equal access" or "equal opportunity" synonymously with whether voters are burdened in casting a ballot. (*Id.*, 28:23-29:10). Stein defines "equal access" or "being burdened in the ability to cast a vote" as:

> "Is an individual in this case compared to some other individual, spending more resources to engage in this activity, in our case, of course, early voting, than another person who's not otherwise different."

(*Id.*, 29:11-14). Stein has also previously opined that equal access is determined by "whether a person could vote and whether there were any impediments under a particular voting system." (*Id.*, 81:14-19). But Stein offers no analysis or opinion to show that voters in Prairie View were required to expend any greater resources in casting an early ballot than other voters in the County under the 2018 early voting schedule. He also offers no basis to conclude that there were any impediments to Plaintiffs' ability to cast an early ballot in the 2018 general election in comparison to other voters.

Stein's report therefore suffers from the same failings as Plaintiffs' theory in this case: while it may suggest that additional early voting hours and days could be more convenient, it fails to make any showing that Plaintiffs had less opportunity than other voters in Waller County to participate in the electoral process. Although Stein suggests that additional early voting hours may cause some voters to choose as a matter of convenience to cast an early ballot rather than voting on election day, he admits that there is no evidence to suggest any

positive effect on the actual incidence of voting. (Exhibit 8, 76:4-11; 94:23-95:4; 98:7-18).

Dr. Stein's research shows instead that some of the most significant burdens on the ability

to vote are long lines and waiting periods. (*Id.*, 71:3-72:3). Stein agreed that by allocating

additional equipment, Waller County actually shortened lines and wait times, thereby

*decreasing* the burden of voting early at the MSC. (*Id.*, 112:7-113:5). In light of the extensive

hours allocated on, or immediately near the campus, as well as the fact that voting at the

MSC functioned as two polls, Plaintiffs cannot adduce evidence to show any abridgment of

their right to vote in violation of Section 2.

**B.      Plaintiffs' cannot show intentional race discrimination under either the Voting Rights Act or the U.S. Constitution.**

Plaintiffs further allege that the County's plan violated Section 2 because it had the

"purpose" of denying or abridging the rights of Plaintiffs to vote on account of their race or

color, (Doc. 49, ¶ 86), and that the County's early voting plan constituted intentional racial

discrimination under the Fourteenth and Fifteenth Amendments to the U.S. Constitution, (*Id.*

at ¶¶ 88-91). A claim of intentional racial discrimination requires both a discriminatory

impact on the targeted racial group, and a racially discriminatory purpose. Intentional

discrimination is not shown simply because a practice may affect a greater proportion of one

race than another," *Rogers v. Lodge*, 458 U.S. 613, 618 (1982); it must be adopted for the

specific purpose of disadvantaging individuals because of their membership in a minority

group. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *see also Veasey*, 830

F.3d at 231 ("Legislators' awareness of a disparate impact on a protected group is not

enough: the law must be passed *because of* that disparate impact."). Here, even if Plaintiffs

could establish a racially discriminatory impact, and they cannot, they are unable to raise a fact issue as to purposeful discrimination.

In the absence of direct allegations of discrimination, the Fifth Circuit analyzes claims of invidious discrimination under Section 2 and the U.S. Constitution through the five non-exclusive factors articulated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-68 (1977). *See Veasey*, 830 F.3d at 230. Those factors include: (1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989) (*citing Arlington Heights*, 429 U.S. at 267–68). Notably, while the historical background of a decision is one factor that may be relevant to discriminatory intent, it is insufficient by itself to sustain a claim of intentional discrimination. As the Supreme Court has admonished, "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Abbott v. Perez*, 135 S. Ct. 2305, 2324, 201 L.Ed 2d 714 (2018), *citing Mobile v. Bolden*, 446 U.S. 55, 74 (1980).

Plaintiffs' allegations of historical discrimination are therefore unavailing, as there is no evidence of intentional discrimination by the current Defendants in adopting voting hours for the 2018 general election. In fact, it was these Defendants that first moved early voting into the MSC in 2016, (Exhibit 2, 106:15-107:109:4), and the summary judgment evidence demonstrates that there were no procedural or substantive departures in allocating the hours for 2018. (Exhibit 1, 30:25-33:19; 86:3-88:7; 92:13-94:12; 97:9-100:13; 132:5-133:21;

Exhibit 8, 49:14-50:14). Moreover, Waller County actually increased the convenience of voting at the MSC by allocating it the most voting equipment of any polling location in the County. (Exhibit 1, 124:5-125:6; Exhibit 8, 112:7-113:5). As Dr. Flores agreed in his deposition, if the County wanted to make it more difficult for a group to vote, it would do its best to ensure long lines and extensive waits so that people would be discouraged. (Exhibit 7, 16:25-17:4). Waller County did the opposite.

The evidence further shows that the County's voting schedule was based on legitimate, non-discriminatory factors. (Exhibit 1, 132:2-134:8). As Dr. Stein concedes, the County's early voting schedule aligned with historical turnout. (Exhibit 8-1, Stein Report, p. 12). And though Dr. Stein speculates that historical turnout at PVAMU *may* have been the result of past early voting schedules, he admits that he made no attempt to determine whether that was, in fact, the case. (Exhibit 8, 95:15-19); *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir.2012) (A non-movant will not avoid summary judgment by presenting "speculation, improbable inferences, or unsubstantiated assertions."). Finally, although Plaintiffs recite some contemporaneous statements from the October 17th Commissioners Court meeting, each of those statements was race-neutral and not even remotely suggestive of discriminatory intent. Plaintiffs therefore cannot raise a fact issue on intentional discrimination under the *Arlington Heights* factors.

C. **Plaintiffs' claims of intentional discrimination based on age or the intersecting bases of age and race similarly fail.**

The Fifth Circuit has not clearly articulated a standard for deciding claims of violations of the Twenty-Sixth Amendment, but courts in other jurisdictions have applied the *Arlington Heights* analysis to such claims. *See e.g., League of Woman Voters of Florida,*

*Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1221 (N.D. Florida July 24, 2018). Notably, though, Plaintiffs have not identified any case in which a court has found a denial or abridgment of the right to vote under the Twenty-Sixth Amendment because a college had fewer on-campus voting hours than neighboring polling locations, or even because a particular college had no on-campus polling location at all.

Rather, each of the cases Plaintiffs have cited to date has involved an electoral practice that specifically targeted students for different treatment from non-student voters and had the effect of barring their registration to vote or otherwise substantially burdening their ability to cast a ballot. There is no such burden for the PVAMU students in this case. Further, even if Plaintiffs could articulate such a denial or abridgment, their Twenty-Sixth Amendment claims would still fall short because, as with their claim of intentional race discrimination, Plaintiffs have failed to establish intentional discrimination on the basis of age. These same defects similarly defeat Plaintiffs' fourth cause of action in which they allege intentional discrimination under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. Constitution on the intersecting bases of age and race. (Doc. 49, ¶¶ 97-100).

**D.     Alternatively, Texas H.B. 1888 moots Plaintiffs' proposed injunctive relief and PVAMU is an indispensable party to any relief ordering on-campus voting.**

Plaintiffs ask the Court to order Defendants "to provide at least parity, standardized, or otherwise adequate early voting hours to Prairie View and PVAMU as compared to other Waller County cities," and "to ensure that, now and in the future, a representative of PVAMU students is involved in the process for setting an early voting schedule." (Doc. 49, p. 28.). However, House Bill 1888 ("H.B. 1888"), effective September 1, 2019, now largely

17

dictates the hours required for early voting at TBPP locations throughout the State. Specifically, H.B. 1888 amended section 85.064(b) of the Texas Election Code to require counties with more than 1,000 registered voters, to hold early voting at each TBPP on each day of the early voting period for at least eight hours per day.

The federal courts are empowered by Article III to hear "cases and controversies." U.S. CONST. art. III, § 2. An actual, live controversy must remain "at all stages of federal court proceedings, both at the trial and appellate levels." *De la O v. Housing Authority of City of El Paso, Tex.*, 417 F.3d 495, 499 (5th Cir. 2005). A request for injunctive relief remains live only so long as there is some present harm left to enjoin. *Id.* In this case, the Legislature's changes to the Election Code mandate the standardized schedule that Plaintiffs sought through their request for injunctive relief in this case. Therefore, there remains no live controversy over the County's exercise of discretion in setting early voting days and hours in the future.

Further, to the extent Plaintiffs suggest that a controversy still exists over the siting of future polling locations at the MSC, *see* Doc. 68, ¶ 5, an order against Defendants is insufficient to afford them that relief, as Defendants do not control the facilities at PVAMU. Rather, PVAMU is an indispensable party to any order requiring on-campus voting. FED. R. CIV. P. 19(a). However, as an arm of the state, Prairie View A&M is shielded by Eleventh Amendment immunity from being feasibly joined in this suit. FED. R. CIV. P. 19(b). Indeed, Texas statutes consider "a [public] university system or an institution of higher education" to be a "state agency," TEX. GOV'T CODE § 572.002(10)(B), and the Fifth Circuit has held that public university systems and their component institutions are entitled to assert Eleventh

Amendment immunity absent abrogation or waiver. *See Sissom v. Univ. of Texas High School*, 927 F.3d 343, 347-49 (5th Cir. 2019); *see also Pendleton v. Prairie View A&M Univ.*, 121 F.Supp.3d 758, 762-63 (S.D. Tex. 2015) (barring under the Eleventh Amendment plaintiff's Texas Labor Code claim against PVAMU). As such, it does not appear to be feasible to join PVAMU as a party to this suit.

Therefore, although Defendants are entitled to summary judgment on the entirety of Plaintiffs' claims, Defendants alternatively submit that Plaintiffs' request for injunctive relief ordering standardized hours and days is moot in light of the new requirements of H.B. 1888. Further, Defendants ask that Plaintiffs request for injunctive relief requiring on-campus voting be dismissed for lack of an indispensable party that cannot feasibly be joined. FED. R. CIV. P. 19(b).

## CONCLUSION

As there is no genuine issue of material fact that Defendants' early voting plan in the 2018 election had either the intent or the effect of discriminating against Black or student voters in Waller County, Defendants are entitled to summary judgment on each of Plaintiffs' claims.

## PRAYER

Defendants pray that the Court grant Defendants' Motion for Summary Judgment in its entirety, and for such other and further relief to which they may be entitled.

Dated: January 24, 2020

19

Respectfully Submitted,

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
512-472-8021 (Telephone)
512-320-5638 (Facsimile)

By: _____

Gunnar P. Seaquist
Texas State Bar No. 24043358
Southern District No: 1140733
gseaquist@bickerstaff.com
C. Robert Heath
Texas State Bar No. 09347500
Southern District No. 13381
bheath@bickerstaff.com

**ATTORNEYS FOR ALL DEFENDANTS**

## CERTIFICATE OF WORD COUNT

Pursuant to S.D. Tex., Hon. Charles R. Eskridge III, Court Procedures, Rule 18, I certify that this Motion has been prepared in a conventional typeface no smaller than 13-point for text and 12-point for footnotes. I also certify that this Motion complies with the word count limitations contained in Rule 18, as amended by the January 17, 2020, Order in this case (Dkt. 72), because, excluding the case caption, table of contents, table of authorities, signature block, and certificates, it contains 5,472 words. I relied on the computer-generated word count of Microsoft Word 2013, which is the software used to prepare this Motion.

_Gunnar P. Seaquist_
_____
Gunnar P. Seaquist

## CERTIFICATE OF SERVICE

This is to certify that on January 24, 2020, a true and correct copy of the foregoing document was served on all counsel of record via the electronic case filing system of the United States District Court for the Southern District of Texas.

_Gunnar P. Seaquist_
_____
Gunnar P. Seaquist

21