# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JAYLA ALLEN, DAMON JOHNSON, TREASURE SMITH, and THE PANTHER PARTY, <br>     *Plaintiffs*, <br><br> V. <br><br> WALLER COUNTY TEXAS; THE WALLER COUNTY COMMISSIONERS COURT; JUDGE CARBETT "TREY" J. DUHON III, in his official capacity as the Waller County Judge; and CHRISTY A. EASON, in her official capacity as the Waller County Elections Administrator, <br>     *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 4:18-CV-3985 |

## REPLY IN SUPPORT OF
## RULE 56 MOTION FOR SUMMARY JUDGMENT

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
512-472-8021 (Telephone)
512-320-5638 (Facsimile)
Gunnar P. Seaquist
Texas State Bar No. 24043358
Southern District No: 1140733
gseaquist@bickerstaff.com
C. Robert Heath
Texas State Bar No. 09347500
Southern District No. 13381
bheath@bickerstaff.com

**ATTORNEYS FOR ALL DEFENDANTS**

# TABLE OF CONTENTS

Table of Contents......................................................................................................................i

Table of Authorities................................................................................................................ii

I.     Plaintiffs fail to show a discriminatory effect. ........................................................ 1

II.    The second step of the "effects" test applies only if the Plaintiffs show a discriminatory burden............................................................................................... 5

III.   Plaintiffs fail to show intentional discrimination. .................................................. 6

Certificate of Word Count ..................................................................................................... 9

Certificate of Service ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crawford v. Marion County Election Bd.*,
 443 U.S 181 (2008) .................................................................................................. 2

*Democratic Nat'l Committee v. Hobbs*,
 948 F.3d 989 (9th Cir. 2020) .................................................................................... 1

*Democratic Party v. Husted*,
 834 F.3d 620 (6th Cir. 2016) ................................................................................ 5, 6

*Lee v. Virginia State Board of Elections*,
 843 F.3d 592 (4th Cir. 2016) ................................................................................ 2, 6

*McManaway v. KBR, Inc.*
 852 F.3d 444 (5th Cir. 2017) ............................................................................ 2, 4, 5

*Sanchez v. Cegavske*,
 214 F.Supp. 3d 961 (D. Nev. 2018) .......................................................................... 3

*Veasey v. Abbott*,
 830 F.3d 216 (5th Cir. 2016) ................................................................................ 1, 5

**Statutes**

52 U.S.C.A. § 10301 ..................................................................................................... 1

Plaintiffs' response confirms theirs is an abridgment claim without an abridgment. Armed with only the *ipse dixit* of their hired experts, Plaintiffs contend that because there were fewer overall early voting hours in the City of Prairie View than the City of Waller, "they were not afforded the same or similar opportunities to vote early as other registered voters in the County." But no court has held that fewer hours alone equates to less opportunity, and Plaintiffs fail to identify any actual burden that made it harder for them than others in the County to vote in the 2018 election. Likewise, Plaintiffs' experts confirm that the County's plan, which was adopted in an open meeting, followed the same procedure used in prior years, and expanded—rather than restricted—early voting in Prairie View. Plaintiffs have, therefore, failed to show the challenged plan had either a discriminatory effect or purpose.

## I. Plaintiffs fail to show a discriminatory effect.

Defendants have never suggested that Plaintiffs must demonstrate an outright denial of the ability to vote to establish abridgment. However, Plaintiffs *are required* to show some meaningful burden that makes it harder for them to vote in comparison to others outside of their protected class. *Veasey v. Abbott*, 830 F.3d 216, 253 (5th Cir. 2016); 52 U.S.C.A. § 10301. The mere existence of a disparate impact on a racial minority is insufficient. *Democratic Nat'l Committee v. Hobbs*, 948 F.3d 989, 1012 (9th Cir. 2020). Thus, Plaintiffs may not claim a disparate effect simply because areas with differing demographic majorities have greater or fewer overall hours of early voting. They must show that the hours allotted imposed some added impediment to minority voters in Waller County.

Plaintiffs make no such showing in this case, as the evidence establishes not only that the County allocated the greatest number of early voting hours in majority-minority areas, Doc. 73, p. 15, but that PVAMU students were uniquely *advantaged* by having substantial early hours brought directly to them on campus and at the WCCC, *Id.* at 16. And contrary to Plaintiffs' unsupported assertion, the 2018 voting schedule did not restrict or eliminate hours; in fact, it was the most expansive early-voting schedule at PVAMU to date. (*Id.*, Ex. 8, 104:4-105:2). Thus, Plaintiffs have not identified any impediment to their ability to vote during the on-campus hours other than having to rearrange their schedule. Of course, Plaintiffs offer no evidence to suggest that their scheduling burdens were any greater than other voters in the County. Moreover, citizens may not base a claim of abridgement on the "usual burdens of voting" such as locating a polling place and finding a time to vote. *See Crawford v. Marion County Election Bd.*, 443 U.S 181, 198, 209 (2008); *see also Lee v. Virginia State Board of Elections*, 843 F.3d 592, 600-01 (4th Cir. 2016) (Section 2 does not sweep away all election practices that result in a disparity in the convenience of voting).

Lacking any actual burden on their right to vote, Plaintiffs fall back on the conclusory testimony of their experts. However, in reviewing expert evidence on summary judgment, courts look "to the basis of the expert's opinion, and not the bare opinion alone." *McManaway v. KBR, Inc.* 852 F.3d 444, 449 (5th Cir. 2017). A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness. *Id.* Here, the gravamen of the Plaintiffs' expert testimony is that PVAMU students meaningfully use early voting (though in fewer numbers than some other polling locations) and have a relative lack of transportation. That

might suggest a discriminatory burden in a case where the only polling locations for minority voters to vote early are a prohibitive distance away. *See e.g., Sanchez v. Cegavske*, 214 F.Supp. 3d 961 (D. Nev. 2018) (finding an actionable burden where nearest early voting locations were in majority Anglo that were over 30 miles away). However, Plaintiffs' experts offer no basis to conclude that PVAMU students required transportation or financial resources to avail themselves of the allotted early voting at the MSC or the WCCC at the edge of campus.

Further, Plaintiffs cite only the expert report of Dr. Stein for the contention that they lacked the same or similar opportunities to vote. (Doc. 77, p. 11). As shown in Defendants' motion, however, Dr. Stein offers no analysis or opinion as to whether voters in Prairie View faced any greater burden in voting than other voters in the County. (Doc. 73, pp. 18-19). Instead, Dr. Stein identified "what he considered to be best practices for conducting early voting…and then measured whether or not the target population had equal access on those dimensions." (Doc 73-2, Ex. 8, 48:10-22). These purported best practices include the number and location of polling places, distance and travel time to the polling places, transportation to the polls, hours of operation, numbers of days and of hours of polling locations, and information given to the public about the locations and hours of operations. (Id. 48:10-45:5). But Dr. Stein takes no issue with the number of polling places in Prairie View during the 2018 general election. And, like Dr. Flores, Stein admits he has no basis to suggest that Prairie View voters were disparately burdened by the distance to cast an early ballot at the MSC or Waller County Community Center in comparison to the distances required of other early voters in the County. (*Id.*, 100:9-22).

3

What is left is nothing more than a bare reiteration of Plaintiffs' contention that Prairie View received fewer overall voting hours than the City of Waller. Stein admits that none of his cited materials actually give a best practice specifying the necessary number of early hours to offer. (*Id.*, at 103:1-6). Rather, Stein's proffered best practice is simply the unspecific suggestion to have "sufficient and varied (e.g., evening) hours of polling place operation." (Doc. 77-1, p. 180). Significantly, Stein conceded at deposition that there is no evidence to suggest that the early voting hours and days in Prairie View, including the greatest number of evening hours of any location, were not sufficient for the number of voters there. (Doc 73-2, Ex. 8, 110:8-12; 134:23-2). Stein further agreed that no other polling location in the County offered such concentrated access of early voting to a population in such close proximity to where the voters conducted their daily activities. (*Id.*, 135:13-18). Stein's report and testimony, therefore, offer no basis to support his bare opinion that minority voters in Prairie View had less opportunity to cast a ballot than other Waller County voters. *McManaway*, 852 F.3d at 449.

Nor can Plaintiffs sidestep the fact that the County's early voting plan allocated the greatest number of early voting hours to the BVAP-majority cities of Hempstead and Brookshire, and allocated the City of Prairie View an equal or greater number of early voting hours—including extended hours—than every Anglo-majority area in the County besides the City of Waller, including Katy, Monaville, Fields Store, and Hockley. It is of no consequence, that Hockley and Fields Store are unincorporated, as each had greater number of early voters than PVAMU in both the 2016 presidential election and the 2018 primary. (Doc. 73-2, Ex. 11(A, B, and C)). Further, while portions of the City of Katy are

4

outside of Waller County, that polling location also serves neighboring Igloo, and also reported higher early voting totals than Prairie View in the 2016 election. *Id.* Therefore, this is not a case in which the rights of some Black voters have been traded off against others, but a case in which Black voters, both in Prairie View and in the County as a whole, were not disproportionately burdened by the 2018 early voting schedule in comparison to other voters throughout Waller County.

## II. The second step of the "effects" test applies only if the Plaintiffs show a discriminatory burden.

*Veasey* did not hold that courts in this circuit must consider the Senate factors under both elements of the two-part "effects" test, as argued by Plaintiffs. (Doc. 77, p. 18-19). Rather, the court explicitly stated that the Senate factors are used to examine causality under the second part of the two-part analysis," and cited to *Husted* and *League* only for that proposition. *Veasey*, 830 F.3d at 244-45. The *Veasey* majority then analyzed the burdens imposed on the plaintiffs without reference to the Senate factors and, finding such a burden, used the Senate factors only to evaluate causation under the second part of the test. *Id.* at 254-265. Moreover, the Fifth Circuit specifically noted that its approach was consistent with the Seventh Circuit's decision in *Frank v. Walker*, which did not apply the Senate factors, because the *Frank* court concluded that the plaintiffs there, unlike the *Veasey* plaintiffs, failed to show a discriminatory burden. Thus, the Fifth Circuit's approach aligns with the decisions of the Fourth and Sixth Circuits (from which the Fifth Circuit derived its test) that a complex § 2 analysis is not necessary where, as here, plaintiffs fail

to show a discriminatory burden. *Lee*, 843 F.3d at 600; *see also* Ohio *Democratic Party v. Husted*, 834 F.3d 620, 638 (6th Cir. 2016).

### III. Plaintiffs fail to show intentional discrimination.

First, Plaintiffs concede that Defendants adopted the early voting plan based on the agreed proposal of the local Democratic and Republican parties, a longstanding practice in Waller County. (Doc. 77, p. 9; Doc. 73-2, Ex. 1, 33:9-19; 99:3-8). Though Plaintiffs are critical that Defendants did not seek the specific input of PVAMU, they offer no evidence that Defendants sought input from any other group, either. So while Plaintiffs may not agree with the County's use of the party chairs' proposal, they offer no basis to conclude that reliance on chairs was intentional discrimination on the basis of either race or age, as it was not.

Second, while Plaintiffs accuse Defendants of non-transparency, the record shows that they adopted the schedule in open meetings that were properly noticed. (Doc. 73-2, Ex. 10, ¶3; Ex. 11, ¶9; Ex. 7, 26:5-19; 37:2-5). Further, as Dr. Flores admits, the timing of the schedule's adoption was consistent with the Texas Secretary of State's guidance and consistent with Texas law. (*Id.* at Ex. 7, 18:10-19:8; Depo Ex. 5).

Third, Plaintiffs offer no evidence to show that Defendants did not consider the number of registered voters in setting the election schedule; they simply disagree with the resulting schedule. But there are a number of factors that must be considered in allocating voting locations. (Doc. 73-2, Ex. 1, 125:10-126:19; Ex. 11, ¶¶ 5-8). Ultimately, as Dr. Stein opines, the County's 2018 general election schedule was consistent with where the County "anticipated early voters would choose to vote." (Exhibit 8, Stein Report, p. 12). Moreover,

6

Defendants allocated additional machines to operate two voting lines at the MSC in the event that registered voters in that precinct turned out in greater numbers than they had in the past. Thus, Plaintiffs' vague and conclusory allegations that Defendants fail to adhere to some unspecified "best practices" raise no inference of intentional discrimination.

Finally, Plaintiffs' allegations of "contemporaneous statements" and "tenuous justifications" simply do not permit an inference of intentional discrimination. The alleged statements by Eason and Duhon merely recognize that Prairie View, like Fields Store, Monaville, and Katy, received fewer total early voting hours than Hempstead, Brookshire, and Waller. (Doc. 72-3, Ex. 1, 159:14-160:13; Ex. 2, 208:23-25). Furthermore, Defendants' concerns regarding the difficulties of non-PVAMU students voting on campus are well documented in the record. *See e.g.,* Doc. 73-2, Ex. 9, October 17, 2018, Item 5 at 25:30-27:18 and 4:28-4:57; Ex. 1, 220:7-221:6. Indeed, non-student residents of the City of Prairie View have continued to express their concerns that the WCCC is a more accessible polling location than the MSC as recently as this year. *See* https://wallercountytx.swagit.com/play/01152020-598, Item 9(2) at 49:15-50:20; 57:30-1:02:10. The fact that Plaintiffs or other isolated individuals may have a different opinion of these concerns is a political disagreement, not evidence that they are tenuous or pretextual.

Respectfully Submitted,

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
512-472-8021 (Telephone)
512-320-5638 (Facsimile)

By: _____
Gunnar P. Seaquist
Texas State Bar No. 24043358
Southern District No: 1140733
gseaquist@bickerstaff.com
C. Robert Heath
Texas State Bar No. 09347500
Southern District No. 13381
bheath@bickerstaff.com

**ATTORNEYS FOR ALL DEFENDANTS**

## CERTIFICATE OF WORD COUNT

Pursuant to S.D. Tex., Hon. Charles R. Eskridge III, Court Procedures, Rule 18, I certify that this Motion has been prepared in a conventional typeface no smaller than 13-point for text and 12-point for footnotes. I also certify that this Motion complies with the word count limitations contained in Rule 18, because, excluding the case caption, table of contents, table of authorities, signature block, and certificates, it contains 1,998 words. I relied on the computer-generated word count of Microsoft Word 2013, which is the software used to prepare this Motion.

Gunnar P. Seaquist

## CERTIFICATE OF SERVICE

This is to certify that on February 26, 2020, a true and correct copy of the foregoing document was served on all counsel of record via the electronic case filing system of the United States District Court for the Southern District of Texas.

Gunnar P. Seaquist