IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAMON JOHNSON, TREASURE SMITH, and THE PANTHER PARTY,<br><br>*Plaintiffs,*<br><br>v.<br><br>WALLER COUNTY, TEXAS; *et al.*,<br><br>*Defendants.* | Civil Action No. 4:18-cv-3985-CRE |

## DEFENDANTS' MEMORANDUM OF LAW

This suit challenges the number of hours of early voting at the Prairie View campus—a number that was less than some locations in the county and that was more than others. They also complain that some of the hours were provided at a location on the edge of campus rather than in the Memorial Student Center location they preferred. This memorandum addressed the legal standards by which their claims are to be reviewed.

The plaintiffs assert claims under section 2 of the Voting Rights Act, 52 U.S.C. § 10301, as well as the Fourteenth, Fifteenth, and Twenty-Sixth Amendments. Plaintiffs' Amended Complaint, ¶¶86, 89, 93, and 98. As a practical matter, the analysis under the Fourteenth and Fifteenth Amendment claims will be subsumed in the consideration of the section 2 claim.

**The interrelated nature of claims under the Fourteenth and Fifteenth Amendments and section 2 of the Voting Rights Act.**

Even after the passage of the Voting Rights Act in 1965 early cases challenging voting practices tended to focus on constitutional claims. *See, e.g., White v. Regester,* 412

U.S. 755, 783 (1973). Indeed, the Supreme Court indicated that there was no effective difference between section 2 and the Fifteenth Amendment, and since the plaintiffs had made a constitutional claim, the section 2 claim was essentially extraneous . *City of Mobile v. Bolden,* 466 U.S. 55, 60-61 (1980) (plurality opinion). In that opinion, the Supreme Court held that the Voting Rights Act claims asserted under the Fourteenth and Fifteenth Amendment required proof of both denial or abridgement of the right to vote *and* discriminatory purpose. *City of Mobile,* 466 U.S. at 62, 66. In 1982 the Congress amended section 2 of the Voting Rights Act in order to give the section added viability and to make it clear that the statutory claim could be established on a showing of discriminatory effect alone without the necessity of proving discriminatory purpose. *Thornburg v. Gingles,* 478 U.S. 30,35 (1986); S.Rep. No. 97-417, 97th Cong. 2nd Sess. 2 (1982), U.S. CODE CONG. & ADMIN. NEWS 1982, pp. 177, 179.

Because a section 2 claim requires proof of only one of the two elements of a constitutional claim, actions now are typically brought under section 2 rather than the constitution. The exception is where, as here, a plaintiff also seeks relief under the bail-in provision found at section 3 of the Voting Rights Act, 52, U.S.C. § 10302(c), since that section expressly requires proof of a violation of either the Fourteenth or Fifteenth Amendment.

Similarly, the fact that Fourteenth and Fifteenth Amendment claims require the same proof of discriminatory effect as a section 2 claim plus the additional proof of discriminatory intent, means that unless a plaintiff can establish a section 2 violation, he or she cannot prevail on the constitutional claim. *See, e.g., Veasey v. Abbott,* 830 F.3d 216,

265 (5th Cir. 2016) (en banc) (declining to reach Fourteenth and Fifteenth Amendment claims when the case was effectively decided under section 2), *Jordan v. City of Greenwood, Miss.,* 711 F.2d 667, 669 (5th Cir. 1983). Here, the plaintiffs will be unable to prove discriminatory effect under section 2. As this means that they will not have established the first of the two elements of their Fourteenth and Fifteenth Amendment claims, those claims will necessarily fail without regard to whether they could have proven the second element of discriminatory intent.

**The section 2 standard**

Section 2 forbids application of a standard, practice, or procedure in a manner that results in a denial or abridgement of the right to vote on account of race or color. 52 U.S.C. § 10301(a). A violation

> is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b). Thus, the basic issue in the section 2 analysis will be whether the hours or location of early voting resulted in less opportunity for Prairie View students than for other members of the Waller County electorate. In the Fifth Circuit there is a two-part framework to be used to evaluate a section 2 claim.

> [1] The challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice, and

3

> [2] That burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class.

*Veasey,* 830 F.3d at 244. As this court noted in its Memorandum and Order Denying Motion for Summary Judgment, *Allen v. Waller County,* ___F.Supp.3d ___, 2020 WL 4012656 (S.D. Tex, July 15, 2020), the district court is required to review the nine Senate Report or *Gingles* factors in addressing the second of the two prongs of the *Veasey* test. The nine factors are (1) the extent of any history of official discrimination that affected the right of the group to participate in the political process, (2) the extent of racially polarized voting, (3) the extent of the use of practices that enhance the opportunity for discrimination against the minority group, (4) the existence of any slating process in which minority group members were denied participation, (5) the extent that members of the minority group bear the effects of discrimination in areas such as education, employment, and health that hinders their ability to participate in the political process, (6) whether campaigns have been characterized by racial appeals, (7) the extent to which minority candidates have been elected to office in the jurisdiction, (8) whether there is a lack of responsiveness to the needs of the members of the group, and (9) whether the policy underlying the challenged practice is tenuous. *Veasey,* 830 F.3d at 345-46.

But if the first element of the two-part analytical framework is not established, there is no need to address the second, which entails consideration of the nine Senate Report factors. *Veasey,* 830 F.3d at 245 (explaining how the second part of the analysis is to determine if there is a causal link between social and historical conditions and the disparate burden and suggesting that the analysis is unnecessary if there is no disparate burden); *Ohio*

4

*Democratic Party v. Husted,* 834 F.3d 620, 638 (6th Cir. 2016); *Lee v. Virginia State Board of Elections,* 843 F.3d 592, 600 (4th Cir. 2016).

Here the plaintiffs' case relates to the hours for early voting and the location of an early voting site. In 2018, the hours for early voting in Prairie View were less than in some areas and more than in others. Due to changes in the law, hours of early voting are now uniform throughout the county. As for the location of the polling place, the site the plaintiffs object to is located a little under 500 yards, about a quarter of a mile, from the one they prefer. To establish a violation the plaintiffs must show that the challenged practice imposes a denial or abridgement of their right to vote—not a mere inconvenience. The plaintiffs, however, are making

> An unjustified leap from *the disparate inconveniences* that voters face when voting to *the denial or abridgement of the right to vote*. Every decision that a State makes in regulating its elections will, inevitably, result in somewhat more inconvenience for some voters than for others. For example, every polling place will, by necessity, be located closer to some voters than to others. To interpret § 2 as prohibiting any regulation that imposes a disparate inconvenience would mean that every polling place would need to be precisely located such that no group had to spend more time traveling to vote than did any other.

*Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 600–01 (4th Cir. 2016); *see also, Texas Democratic Party v. Abbott,* 961 F.3d 389, 404 (5th Cir. 2020) ( there is no constitutional violation merely because some groups find voting to be less convenient for them than it is for others).

Further, while moving the voting site to the Community Center, located a short walk away on the edge of the campus, may not be as convenient for the Prairie View students as having it in the Memorial Student Center located in the center of the campus, the legal

standard is not measured by the difference in the convenience of the two sites, but rather is gauged by the difference in the burden on the plaintiff group versus the burden faced by the rest of the county's electorate. It is difficult to imagine how that site is more burdensome for the plaintiffs than sites serving the rest of the electorate who do not have the opportunity to vote at locations near where they reside, work, or congregate.

It should be noted that there is authority that a plaintiff could theoretically establish a section 2 claim on the basis of discriminatory intent alone without reference to a discriminatory result. *E.g., McMillan v. Escambia County, Fla.,* 748 F.2d 1037, 1046-47 (5th Cir. 1984) (dictum) (relying on Senate Report rather than the language of the statute to conclude that discriminatory intent alone could establish a section 2 violation).

Of course, if the facts establish, as they do here, that the practice does not impose a discriminatory burden on the plaintiffs, it will be hard to say that there was a discriminatory intent. Intent to discriminate seldom results in a nondiscriminatory product. Further, if there is no discriminatory effect, it would be difficult to find that the plaintiffs had suffered an injury and, thus, had established standing.

**The Fourteenth and Fifteenth Amendment Claims**

As discussed above, to establish a claim under the Fourteenth or Fifteenth Amendments it is necessary to prove that the challenged practice or procedure both had a discriminatory effect and was adopted with a discriminatory purpose. The alleged discriminatory intent, though, "implies more than intent as volition or intent as awareness of consequences . . .. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse

effects upon an identifiable group." *Fusilier v. Landry,* 963 F.3d 447, 463 (5th Cir. 2020), *quoting, Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979). Put another way, the plaintiffs must show that racial discrimination was a substantial or motivating factor behind enactment of the challenged practice. *Veasey,* 830 F.3d at 231.

The evidence leaves no basis to conclude that racial discrimination was a substantial or motivating factor behind the decisions at issue in this litigation. The suit challenges the hours and location of early voting. While there were three early voting sites in the county that had a greater number of hours for early voting, two of those three were in cities with Black-citizen-voting-age-population majorities, a fact that hardly suggests an intent to discriminate on the basis of race. Plaintiffs' Amended Complaint, ¶ 28(b) and (c). Other cities in the county, including Prairie View, did not have as many early voting hours, but of those, the Prairie View's early voting locations together offered significantly more hours than any of them. Of course, the issue of disparate numbers of hours is not an issue going forward, as state law now provides that temporary branch polling places—the category of polling place that includes the early voting sites in Prairie View—be open the same days as the main early voting polling place and remain open for a minimum number of hours each day. Tex. Elec. Code, § 85.064(b). To the extent that the suit challenges the use of the Community Center as the site for some or all of the early voting in Prairie View, the evidence will show that the county's decision to use that location was motivated in large part by an effort to provide a convenient polling location for the Prairie View non-student population, a group that is overwhelmingly Black. Indeed, the City of Prairie View has a

7

slightly higher percentage of Black-voting-age population (89.5%) than the percentage of Blacks in the student population (82%). Plaintiffs' Amended Complaint, ¶¶ 23, 25.

In determining whether a decision was made with discriminatory intent, five non-exhaustive factors offer guidance to the courts: (1) the discriminatory impact of the official action, (2) the historical background of the decision, (3) the specific sequence of events leading up to the challenged action, (4) substantive and procedural departures from the normal-decision-making process, and (5) contemporaneous viewpoints expressed by the decisionmakers. *Fusilier,* 963 F.3d at 463*, citing, Village of Arlington Heights v. Metro. Housing Devel. Corp.,* 429 U.S. 252, 266-68 (1977). However, as the Fifth Circuit has recently reiterated, "[p]roving the motivation behind official action" is "a problematic undertaking," *Fusilier* 963 F.3d at 464. Direct evidence of discriminatory intent must be prioritized over circumstantial evidence, and the analysis should start with the presumption that legislative officials acted in good faith. *Id.* ("the Supreme Court has long cautioned against the quick attribution of improper motives, which would interfere" with a legislative official's rightful independence and ability to function."). Thus, in overturning the finding of intentional discrimination in *Fusilier*, the Fifth Circuit hewed to the Supreme Court's admonishment not to overemphasize statements from individual legislators. *Id.* at 466. As the Fifth Circuit opined, even if suspect, such statements are not necessarily what motivates others to act (or not act) and are therefore entitled to little probative value. *Id*.

Here, as discussed above, there was no discriminatory impact on the plaintiff group. Indeed, by having early voting sites on or immediately adjacent to the campus, early voting was more convenient for the plaintiffs than for other persons in the county who had to

travel to voting sites rather than having the site established within easy walking distance of where they would be in their daily routine. While, as the court notes in its ruling on summary judgment, the parties disagree on whether the sequence of events and the statements of decisionmakers evince a discriminatory intent, the county is confident that an airing of the evidence will demonstrate an absence of discriminatory purpose.

The plaintiffs' primary emphasis is on the historical background of actions in the county involving student electoral participation. The defendants do not deny that history; however, the Fifth Circuit has made it clear that unless it is reasonably contemporaneous with the challenged action, it has little probative value. *Veasey,* 830 F.3d at 232, *citing, McCleskey v. Kemp,* 481 U.S. 279, 298 n. 20 (1987); *see also, Shelby County v. Holder,* 570 U.S. 529, 535, 556 (2013). The *Veasey* opinion does refer to "reprehensible actions of county officials in one county (Waller County) to make voting more difficult for minorities," but found it was error for the district court to consider those actions to be probative of the intent of the legislature. *Veasey,* 830 F.3d at 232. The court of appeals does not elaborate on what those actions were, but the references to Waller County in the district court opinion took place over a period between twelve and 49 years ago. *Veasey v. Perry,* 71 F.Supp.3d 627, 635-36 (S.D. Tex. 2014), *aff'd in part, vacated in part, and rev'd in part, Veasey v. Abbott,* 830 F.3d 216 (5th Cir. 2016). None of the actions involved any of the members of this commissioners court, which made the challenged decision regarding the hours and location for early voting.

Defendants also anticipate that Plaintiffs will continue to advance statements by Defendants Duhon and Eason that the original schedule in 2018 was not "equal

representation" or that there was "an inequity' in the early voting opportunities available to Prairie View as compared to other cities like Waller that get eleven days of early voting." (Id.). But both Eason and Duhon have testified these statements merely recognize that Prairie View, like Fields Store, Monaville, and Katy, received fewer total early voting hours than Hempstead, Brookshire, and Waller. They do not suggest that either Eason or Duhon believed that the schedule had the effect of discriminating on the basis of age or race, much less that it was chosen *because* of such an effect. Even if they did, those individual statements are of little probative value to the motivation of the other four commissioners necessary to reach a majority vote by the Commissioners Court. *Fusilier* 963 F.3d at 464.

Because the plaintiffs cannot establish a discriminatory effect or result, it is unnecessary to consider whether there was a discriminatory intent. Nevertheless, if that analysis is undertaken, it will fail to establish any intent to discriminate, as there was none.

**The Twenty-Sixth Amendment Claim**

As this court noted in its memorandum opinion denying the motion for summary judgment, *Allen,* 2020 WL 4012656, at *8, the Twenty-Sixth Amendment has received relatively little judicial gloss. Indeed, that opinion summarizes the few relevant cases on the interpretation of the Amendment. By far the most important for purposes of this case is the Fifth Circuit's recent determination of the level of scrutiny to be used in analyzing a Twenty-Sixth Amendment claim. The Circuit, relying on the logic of *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), was led "inescapably to the conclusion that rational-basis review applies." *Texas Democratic Party v. Abbott,* 961 F.3d

389, 409 (5th Cir. 2020). In that case, the action the action being challenged as violating the Twenty-Sixth Amendment must be upheld unless no ground can be conceived to justify it. *Texas Democratic Party,* 961 F.3d at 406. The evidence here will clearly demonstrate that the county had much more than a rational basis for setting the challenged hours and location of early voting.

Further, what the Amendment protects against is denial or abridgement of "the right to vote" on account of age. *Texas Democratic Party*, again relying on *McDonald,* held that the failure to permit younger eligible voters to use an alternate means of voting—in that case, the ability to vote by mail—did not result in a denial of the right to vote. It reasoned that there was no denial because the individual still had the opportunity to vote on election day. The Fifth Circuit, in discussing the issue in the equal protection context concluded that "[t]he Constitution is not 'offended simply because some' groups 'find voting more convenient than' do the plaintiffs because of a state's mail-in ballot rules. *Texas Democratic Party,* 961 F.3d at 404, citing, McDonald,* 394 U.S. at 810. Lessened convenience will not be sufficient to establish a violation here.

**The Hybrid Claim**

The plaintiffs also raise a hybrid claim involving "the intersecting bases of age and race." Plaintiffs' Amended Complaint, at ¶ 98. As this court stated, though, "It is difficult to conceive of a hybrid action combining the Fourteenth, Fifteenth, and Twenty-Sixth Amendments where independent action under each wouldn't redress the grievance." *Allen,* 2020 WL 4012656, *11. If the plaintiffs cannot establish a claim based on discrimination due to race or due to age, they certainly cannot establish a claim of discrimination against

11

Blacks aged 18-20 years. Consequently, Plaintiffs have not offered, and Defendants have not found, any case recognizing the type of blended claim they seek to assert here.

## Conclusion

To prevail, the plaintiffs must show that they had less opportunity than other members of the electorate to participate in the political process. There must be a denial or abridgement of their right to vote, not merely an inconvenience. The plaintiffs here do not meet the standards required to establish any of the claims they raise.

Respectfully submitted,

By: */s/ C. Robert Heath*
C. ROBERT HEATH
Texas State Bar No. 09347500
Southern District No. 13381
*bheath@bickerstaff.com*

GUNNAR P. SEAQUIST
Texas State Bar No. 24043358
Southern District No: 1140733
*gseaquist@bickerstaff.com*

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

**ATTORNEYS FOR DEFENDANT**

# CERTIFICATE OF SERVICE

This is to certify that on August 17, 2020, a true and correct copy of the foregoing document was served on all counsel of record via the electronic case filing system of the United States District Court for the Southern District of Texas.

*/s/ C. Robert Heath*
C. Robert Heath