Deposition of Henry Flores, Ph.D.
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 394 of 677
12/10/2019
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

**PLAINTIFF'S EXHIBIT**

**31**

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION

 3   JAYLA ALLEN, DAMON JOHNSON,   &
     TREASURE SMITH, and THE       &
 4   PANTHER PARTY,                 &
              Plaintiffs,           &
 5                                  &
     V.                             &        Civil Action No.
 6                                  &         4:18-CV-3985
     WALLER COUNTY TEXAS; THE       &
 7   WALLER COUNTY COMMISSIONERS    &
     COURT; JUDGE CARBETT "TREY"    &
 8   J. DUHON III, in his           &
     official capacity as the       &
 9   Waller County Judge; and       &
     CHRISTY A. EASON, in her       &
10   official capacity as the       &
     Waller County Elections        &
11   Administrator,                 &
              Defendants.           &
12
          ****************************************
13
                    ORAL DEPOSITION OF
14                  HENRY FLORES, Ph.D.
                    DECEMBER 10, 2019
15
          ****************************************
16        ORAL DEPOSITION OF HENRY FLORES, Ph.D., produced as

17   a witness at the instance of the DEFENDANTS, and duly

18   sworn, was taken in the above-styled and numbered cause

19   on DECEMBER 10, 2019, from 1:43 p.m. to 4:31 p.m.,

20   before Aubrea Hobbs, CSR, RPR, in and for the State of

21   Texas, reported by computerized machine shorthand, at

22   the offices of Norton Rose Fulbright, US, LLP, 1301

23   McKinney Street, Suite 5100, Houston, Texas, pursuant to

24   the Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached hereto.
```

Deposition of Henry Elroy Jordan
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 395 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

```
 1                    A P P E A R A N C E S

 2

 3     FOR THE PLAINTIFFS:
             Ms. Leah Aden, Esq.
 4                -and-
             Mr. John Cusick, Esq.
 5                 -and-
             Mr. Steven Lance, Esq.
 6     NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.:
             40 Rector Street, 5th Floor
 7     New York, New York 10006-1738
             E-mail:  laden@naacpldf.org
 8           E-mail:  jcusick@naacpldf.org
             E-mail:  slance@naacpldf.org
 9

10

11     FOR THE PLAINTIFFS:
             Mr. Tyler Ames, Esq.
             NORTON ROSE FULBRIGHT, US, LLP
12           Fulbright Tower
             1301 McKinney Street, Suite 5100
13           Houston, Texas 77010-3095
             E-mail:  tyler.ames@nortonrosefulbright.com
14

15

16     FOR THE DEFENDANTS:
             Mr. C. Robert Heath, Esq.
             BICKERSTAFF HEATH DELGADO ACOSTA, LLP
17           3711 S. MoPac Expressway, Building One, Suite 300
             Austin, Texas 78746
18           E-mail:  bheath@bickerstaff.com

19

20

21

22

23

24

25
```

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 396 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

```
 1                        INDEX

 2                                                    PAGE

 3   Appearances .......................................   2

 4
     Witness:  HENRY FLORES, Ph.D.
 5
          Examination by Mr. Heath .....................   4
 6        Examination by Ms. Aden ......................  63
          Examination by Mr. Heath .....................  83
 7        Examination by Ms. Aden ......................  85

 8
     Signature and Changes .............................  88
 9
     Reporter's Certificate ............................  90
10

11                       EXHIBITS

12   NUMBER           DESCRIPTION                       PAGE

13   Exhibit 1        Expert Report of Henry Flores, Ph.D.   5

14   Exhibit 2        Expert Rebuttal Report of Henry       5
                      Flores, Ph.D.
15
     Exhibit 3        Verity Equipment Assignment         10
16                    2018 General Election

17   Exhibit 4        Map                                 13

18   Exhibit 5        November 6, 2018 Election Law       18
                      Calendar
19
     Exhibit 6        Commissioners Court Meeting         20
20
     Exhibit 7        Commissioners Court Meeting         24
21

22

23

24

25
```

Deposition of Henry Flores, Ph.D.
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 397 of 677
12/10/2019                                    Jayla Allen, Damon Johnson, and Treasure Smith, and The Panther Party vs. Waller Cty

Page 4

1        P R O C E E D I N G S
2         HENRY FLORES, Ph.D.,
3  Having been first duly sworn, testifies as follows:
4         DIRECT EXAMINATION
5  BY MR. HEATH:
6     Q.  Would you state your name for the record,
7  please?
8     A.  Henry Flores.
9     Q.  Okay.  And Dr. Flores, I take it you have --
10  this is not your first deposition?
11     A.  No, it is not.
12     Q.  All right.  You have been deposed many times?
13     A.  Yes.
14     Q.  And I'm not going to go over the rules and
15  situation about the deposition because I know you're
16  very familiar with it.
17     A.  Okay.
18     Q.  And there's no reason that you can't be
19  deposed today, is there?
20     A.  No.
21     Q.  All right.  That you're well and --
22     A.  I'm just suffering from the usual South Texas
23  allergies but that's okay.
24     Q.  I understand completely.  Did you prepare a
25  couple of reports in this case?

Page 5

1     A.  Yes, I did.
2     Q.  And I'm showing you one that's Exhibit No. 1.
3         (Exhibit No. 1 marked.)
4     Q.  (BY MR. HEATH)  And is that your basic report?
5         MR. HEATH:  Do you want copies?
6         MS. ADEN:  That would be great.
7         MR. HEATH:  I tell you what, you can --
8         MS. ADEN:  Dole them out.  Thank you very
9  much.
10         MR. HEATH:  I don't know if we're going
11  to talk about it that much, but just to have it in
12  there.
13     A.  Yes, this is my basic report.
14     Q.  (BY MR. HEATH)  All right.  And these are
15  ultimately going to be the court reporter's, but --
16     A.  Oh, okay.
17     Q.  And now I'm showing you what has been marked
18  Exhibit No. 2.
19         (Exhibit No. 2 marked.)
20     Q.  (BY MR. HEATH)  And is that your rebuttal
21  report?
22         MS. ADEN:  Thank you.
23         MR. HEATH:  Actually, why -- oh, I've got
24  one.  Thank you.
25         MS. ADEN:  Perfect.

Page 6

1     A.  Yes, this is my rebuttal report.
2     Q.  (BY MR. HEATH)  All right.  And if we're
3  talking about the report during the deposition, unless I
4  say otherwise, I'll be referring to the main report.
5     A.  Okay.
6     Q.  On page 6 of your report you say that -- well,
7  first let me go back a second.  On page 7 of your
8  report, you say that the decision to offer these hours
9  and days of early voting in Prairie View created a
10  discriminatory impact which was foreseeable.  I think
11  that's in the main report.
12     A.  Yes.
13     Q.  If it was foreseeable, what would we expect to
14  foresee -- to see?  What would be the impact that we
15  would see?
16     A.  That the number of hours that was offered at
17  Prairie View A&M were less than those offered at the
18  other polling places, the other early voting places.
19     Q.  All right.  What sort of impact would we see
20  on the persons who would use that site?  Would we expect
21  to see less usage?
22     A.  Well, I think Dr. Stein looked at that in his
23  report, so I would have to refer to his report, and
24  according to his report he indicated yes.
25     Q.  And is your view of the discriminatory impact

Page 7

1  just the fact that they are less than other sites?
2     A.  Yes.
3     Q.  Okay.  How do you measure that, because it
4  seems to me that if you look at the various sites of
5  Waller County, there are less than some sites and more
6  than others; is that correct?
7     A.  That's correct.
8     Q.  So do they need to be the same as the highest
9  number of hours?
10     A.  Well, you know, that's not necessarily my
11  call.  That would probably be the call of the -- of the
12  people that make the decision on the number of hours.
13  But if -- by just looking at where the largest number of
14  eligible registered voters are located, I would -- I
15  would conclude by just observing everything, that
16  looking at all the data that I saw, that I would put an
17  early voting place at Prairie View A&M University, and
18  they didn't do that.
19     Q.  Well, actually they did -- didn't they have an
20  early voting place at Prairie View A&M for -- we're
21  talking about the 2018 -- November 2018 election, are we
22  not?
23     A.  Yes, we are.
24     Q.  All right.  And was there not an early voting
25  place at Prairie View A&M University?

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 398 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 8

A.   There was, but the students had to agitate for it and request it and it wasn't part of the normal planning process of the Waller County officials.

Q.   Is your testimony then that it's discriminatory because they had to agitate for it, or because it didn't happen?

A.   Because it didn't happen.

Q.   Okay.  So the days and hours that were there were not enough.  Is that what you're saying?

A.   That -- well, I'm just saying that there were less than -- that the Prairie View A&M campus was treated lesser than the other locations.

Q.   On page 6 of your report you say that 81 percent of the Prairie View students who voted in the 2018 election voted early compared to 71 percent of non-Prairie View students, and you rely on Dr. Stein's report for this?

A.   That's correct.

Q.   Okay.  And actually just offhand I think Stein said that 71 percent of all county voters, not just non-Prairie View?

A.   Okay.

Q.   But can we agree that Prairie View students took advantage of early voting at a greater rate than Waller County voters generally?

Page 9

A.   Yes.

Q.   Does the fact that Prairie View students use early voting at a higher rate than the county as a whole, suggest that early voting opportunities for Prairie View students were at least as good as they were for non-Prairie View residents and students?

A.   No, I'm not sure you can say that.  I think that Prairie View students just took advantage of what opportunity was given to them at that time.

Q.   And that did not prevent them from voting early at a greater rate than everybody else?

A.   No.

Q.   I noticed in reading, I think your rebuttal report, that you had read Ms. Eason's deposition; is that correct?

A.   Yes.

Q.   Okay.  Do you recall that she indicated there were ten voting machines for early voting at the Memorial Student Center?

A.   I'd have to review the deposition again, but that sounds reasonable.

Q.   Okay.  If you would like, I can show you the exhibit on that from her deposition if that -- do you think that would refresh your memory?

A.   Sure.

Page 10

(Exhibit No. 3 marked.)

MS. ADEN:  Thank you.

A.   (Witness examines document.)  Okay.

Q.   (BY MR. HEATH)  Looking at that Exhibit 3, which was Exhibit 5 to Ms. Eason's deposition --

A.   Uh-huh (Affirmative).

Q.   -- does it reflect that there were seven touchscreens and three accessible machines for a total of ten?

A.   Yes.

Q.   All right.  Now, I ran a calculation from Dr. Stein's report that showed there were about 39 voters per hour.  If you take all the voters at the Memorial Student Center and divide by the number of hours, and I'm just going to ask you to accept what I've said and we can go back and check it if you want to, but that's what my math said, was that it came out to 39 voters per hour.  And then there were ten machines.  Do you have any knowledge or any reason to believe that there were long lines at the Memorial Student Center for early voting?

A.   No, I don't have any knowledge of that.

Q.   Okay.

MS. ADEN:  And for the record, did he suggest -- did he opine in his report -- is that inside

Page 11

the scope of the report that he opined about long lines?

MR. HEATH:  Whose report?

MS. ADEN:  Dr. Flores's.  Are you --

MR. HEATH:  No, I'm just asking if he knows anything about whether there were or not.

MS. ADEN:  Gotcha.

Q.   (BY MR. HEATH)  Is the Memorial Student Center a convenient location for students?

A.   Yes.

Q.   Is it a place that they are likely to visit every school day or at least be in the near vicinity?

A.   Yes.

Q.   Would virtually all students be likely to be in or near the Memorial Student Center over a three day Monday, Tuesday, Wednesday period?

A.   That's difficult to say but I would assume so.

Q.   Okay.

A.   Yeah.

Q.   And on Monday, Tuesday and Wednesday, you know about academic schedules?

A.   Yeah.

Q.   Typically if you have classes you're going to have -- are you going to have classes on at least one of those days and probably all three?

A.   Probably all three, yeah.

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 399 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 12

1    Q.   Okay.  And do students with meal plans, for
2    example, typically eat at the Memorial Student Center?
3    A.   Yes.
4    Q.   Okay.  They pick their mail up there?
5    A.   I think so.
6    Q.   Is it more likely that a student at Prairie
7    View would be at the Memorial Student Center than it
8    would be for most citizens to be at, say, the county
9    courthouse, justice of the peace office, a library, the
10   VFW hall, or a school administration building?
11   A.   Yes.
12   Q.   Okay.  And you recognize, do you not, that all
13   those things I mentioned were early voting sites?
14   A.   Yes, I do.
15   Q.   Okay.  Now, the Prairie View Community Center
16   is on the southern edge of the campus a few yards away
17   from the Memorial Student Center, which is located
18   closer to the center of the campus.  Memorial center --
19   student center's more the center, community center is at
20   the southern edge.  Is that your understanding?
21   A.   Yes, off campus.
22   Q.   Okay.  Have you been to the location?
23   A.   Only through Earth Google.
24   Q.   Okay.
25        MS. ADEN:  And by location, are you --

Page 13

1    well, he understood your question.
2    Q.   (BY MR. HEATH)  Prairie View, to the Prairie
3    View campus, in particular the Memorial Student Center
4    and the community center?
5    A.   No, not physically, no.
6    Q.   All right.  Have you done anything to convince
7    yourself as to the convenience of the community center
8    as opposed to the student center?
9    A.   Well, that's why I went to Google Earth.  What
10   I tried to do was measure the distance between the
11   center of the campus to the community center, and I
12   found that it was about three quarters of a mile away
13   from the center of the campus, whereas the university
14   center is right in the middle, the heart of the campus.
15   Q.   You say three quarters of a mile?
16   A.   That was my estimation.
17   Q.   Okay.  I am showing you what I have labeled as
18   deposition Exhibit 4.
19        (Exhibit No. 4 marked.)
20   Q.   (BY MR. HEATH)  Is that -- does that
21   accurately reflect the Google Earth view of that portion
22   of the Prairie View campus?
23   A.   I guess in a bird's eye line it is, yeah.
24   Q.   Okay.
25   A.   But I also -- what I also did was I Googled

Page 14

1    it -- maybe it wasn't from the university -- I was
2    Googling it from the student residence hall, that's what
3    it was, the student residence halls, down to where the
4    community center was.
5    Q.   Okay.
6    A.   And those are varying distances.
7    Q.   And some of those are located to the south,
8    some to the north, some to the east?
9    A.   Yeah.
10   Q.   Is that correct?
11   A.   Correct.
12   Q.   And so if you were at a residence hall on the
13   south or some other residence on the south, would the
14   community center be closer than the student center?
15   A.   Well, I guess.  Where's the residence hall on
16   the south?  I thought they were all on the north,
17   northwest part in north central.
18   Q.   Well --
19   A.   And down the south of those look like vacant
20   lots and things.  Might be some apartments down in here,
21   but I -- I didn't see them on the map.  They're not
22   reflected here.
23   Q.   Are you familiar with the practice in some
24   larger cities of bringing mobile early voting sites to
25   nursing homes, assisted living centers or in Austin they

Page 15

1    do it to state office buildings?
2    A.   I'm familiar about other practice.  I'm not
3    familiar -- I'm not really knowledgeable of how they go
4    about doing it.
5    Q.   Okay.  Is that a convenient way to provide
6    early voting to citizens?
7    A.   In those particular locations, I would think
8    so, but like I said, I'm just familiar with the fact
9    that it happens.
10   Q.   Okay.
11   A.   I've never really investigated or know
12   anything beyond that.
13   Q.   Was the 2018 early voting situation in Prairie
14   View, given location, days, hours, less convenient to
15   Prairie View voters than earlier early voting situations
16   there, say, over the past ten years?  Was it less
17   convenient in 2018 than it was in the ten years period
18   earlier than that?
19        MS. ADEN:  Objection, that's outside of
20   the scope of his report.
21   Q.   (BY MR. HEATH)  Well, you can go ahead and
22   answer.
23   A.   Could you be more specific, please?  I --
24   could you narrow that question down a little bit?
25   Q.   All right.  You talk about the early voting

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 400 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

**Page 16**

1  site and location and so forth, convenience of it.
2     A.  Uh-huh (Affirmative.)
3     Q.  In earlier years, and let's say the last ten
4  years, have things gotten more convenient for Prairie
5  View students than they were earlier in the rest of that
6  period?  Has it gotten better?
7     A.  From my reading of the history it's been
8  consistently the same situation.  The Waller County
9  officials have made it difficult for the students to
10  vote and I don't think it's gotten better.
11     Q.  So you're saying it's the same in 2018 as it
12  was in the earlier years as far as convenience?
13     A.  As far as convenience is concerned, yes.
14     Q.  If you wanted to make it more difficult for
15  students to vote --
16     A.  Uh-huh (Affirmative.)
17     Q.  -- which I think maybe I'm mischaracterizing
18  it, but I think that's what you just said, that they had
19  in the past made it more difficult to vote; is that
20  correct?
21     A.  Yes.
22     Q.  Okay.  I don't want to put words in your
23  mouth.
24     A.  No, no.
25     Q.  But I thought that's what you said.  If you

**Page 17**

1  wanted to make it more difficult for a group to vote,
2  would you do your best to ensure there were long lines
3  and extensive waits so that people would be discouraged?
4     A.  Sure.
5     Q.  Anything of that happen at the Memorial
6  Student Center?
7     A.  That I don't know.
8     Q.  You complain about the fact that the
9  Commissioners Court took up the question of the timing
10  of early voting on August 22nd when students were just
11  returning to campus; is that correct?
12     A.  That's correct.
13     Q.  In Texas, are the hours for early voting and
14  the sites and locations typically things that are
15  covered in the order calling the election?
16     A.  Yes.
17     Q.  Okay.  Do you know when the Texas Election
18  Code requires the election order calling the election to
19  be considered?
20     A.  I think early voting has to occur within two
21  weeks of the election day, according to the election
22  code.  Is that what you mean?
23     Q.  Well, if I told you -- and we can -- I'm not
24  going to go and pull out the code.  We can all look it
25  up later, but if I said that the election has to be

**Page 18**

1  called 78 days before the election, if that's what the
2  code says, would you disagree with that?
3     A.  Well, no.  I mean --
4     Q.  Okay.
5     A.  -- no.  I mean I'd have to look -- see the
6  code, but I wouldn't disagree with it.
7     Q.  Okay.  Let's see.  I'm going to show you what
8  has been marked as Exhibit 5.
9          (Exhibit No. 5 marked.)
10     Q.  (BY MR. HEATH)  And I'm going to represent to
11  you that this is something printed off the secretary of
12  state's website, which is the secretary of state's
13  election law calendar for the November 6, 2018 election.
14     A.  Okay.
15     Q.  You understand the secretary of state
16  publishes a calendar every election?
17     A.  Right, yes.
18     Q.  And if you go to page 11, does it indicate
19  August 20th is the 78th day before the election?
20  There's a highlight there?
21     A.  Right, yes.
22     Q.  And then if you turn to the next page, does
23  the secretary of state recommend that that is the date
24  that you list the branch early voting polling places and
25  the dates and hours?  And as I say recommends, doesn't

**Page 19**

1  require, but recommend?
2     A.  Right.  I mean yes, it does, right.
3     Q.  So if you are doing it at or around August
4  20th, or August 22nd, does that suggest that they are
5  doing that to keep the students from participating or at
6  a time that it's inconvenient for students?
7     A.  It's inconvenient for students, but it's in
8  the law.
9     Q.  In your original report you complain that the
10  process for considering and approving early voting
11  locations and hours was done without notice, but in your
12  rebuttal report you indicate that was incorrect as you
13  had located the notices but felt that they were almost
14  impossible to locate.  Is that a fair characterization
15  of your report?
16     A.  Yes, that's fair.
17     Q.  Okay.  Was the notice on the county website?
18     A.  It was on the county website.
19     Q.  Is it more convenient to have the notice
20  located on the website than merely posted at the county
21  courthouse or some similar location?
22     A.  Repeat your question again.
23     Q.  Is it more convenient for students, for
24  example, to post it on the county website than simply to
25  have it posted at the county courthouse or some other

Deposition of Henry Torres-Russ
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 401 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 20

1  location?
2      A.  Yes, it would be.
3      Q.  Okay.  And do students, if they are interested
4  in trying to find out what the county's going to do, is
5  the Internet a pretty good location to find that out?
6      A.  Most students, yes.
7      Q.  In fact, students are probably more adept at
8  navigating the Internet than either you or I.  Is that a
9  fair characterization?
10     A.  I think that's a fair characterization.
11     Q.  I know it is for me.
12     A.  My students are always correcting me, so...
13     Q.  Let me -- let's look at the notices.  Let's
14  start --
15          (Exhibit No. 6 marked.)
16     Q.  (BY MR. HEATH)  I'm handing you what I have
17  marked as Exhibit 6.
18     MS. ADEN:  Thank you.
19     MR. HEATH:  Uh-huh (Affirmative.)
20     Q.  (BY MR. HEATH)  And if you look at the shaded
21  area, is that a calendar that is essentially the one
22  that appears on the Internet when you went to look for
23  the notice?  And this one being August 2018?
24     A.  I don't remember.
25     Q.  Okay.  Well --

Page 21

1      A.  I'd have to go -- I'd call it up and look at
2  it, but...
3      Q.  Do you recall that there was a calendar
4  and that you clicked on the -- where there -- is there
5  for the 22nd sort of hard to read -- actually the box
6  covers up the 22nd.
7      A.  Oh, okay.
8      Q.  But were there indication of dates on the
9  calendar where the Commissioners Court was going to be
10  meeting?
11     A.  I don't remember how I got that.  I think I
12  went to -- I'd have to go back and look at my notes
13  again to refresh my memory, to tell you the truth.
14     Q.  Okay.
15     A.  So I'd rather not say anything without doing
16  that.  But if I remember, I saw this not on one of the
17  calendar types of things but on the -- the agenda that
18  county commissioners in the -- under the audio hearings,
19  I'd have to go back and look at my notes.  I can't
20  remember, to tell you the truth.  I'm sorry, Mr. Heath.
21  As a matter of fact, let me check my supplementary
22  report.
23     Q.  If you look on page 26 and 27, the rebuttal
24  report.
25     A.  Yes, there it is.

Page 22

1      Q.  Does that tell you that there's a link on the
2  website?
3      A.  Right.  It was the public notice's calendar.
4      Q.  All right.
5      A.  That's right.
6      Q.  And if you click on the date where it says
7  Commissioners Court meeting, does it pull up a box that
8  says event details which is shown on Exhibit 6?  The
9  white box.
10     A.  Yeah, I think it said something like that,
11  then it had items.
12     Q.  All right.  And in fact, on page 26 you say
13  you previously overlooked the event details subpage.  Is
14  that the event details on the shaded -- or the box
15  inside the shaded area?
16     A.  Yes, but I don't remember why I overlooked it,
17  because I was in there a lot, and I remember trying to
18  do a search for specifically that particular date, and I
19  just couldn't find it and couldn't find it.  And
20  suddenly I kept digging further and I found it.  It took
21  me time to dig it up.
22     Q.  Okay.
23     A.  It was not easy.
24     Q.  All right.  If you went to event details and
25  it shows agenda, backup payables, item 17 and watch

Page 23

1  here, if you wanted to find out what they were going to
2  do at that meeting, would you click on agenda?
3      A.  Yes.
4      Q.  And if you read the agenda and read through,
5  what does item 17 say?
6      A.  Discuss and take action to approve Early
7  Voting locations and Election Day polling locations to
8  be used in the November 6, 2018 General Election.
9      Q.  Okay.  And that's what you're interested in,
10  isn't it?
11     A.  Yes.
12     Q.  And if you -- on that dropdown box, the event
13  details, if you click on item 17, corresponding to item
14  17 of the agenda, does it pull up the list of polling
15  places, early voting polling places and election day
16  polling places?
17     A.  Yeah, I didn't see that.  I did not see that.
18     Q.  Okay.  But if you had clicked on 17, would it
19  do that?
20     A.  No.  It didn't when I clicked on it.  As a
21  matter of fact, it was not a hotlink at the time that I
22  clicked it.  It might have been made a hotlink
23  afterwards.
24     Q.  Okay.  Well, let's look then at the September
25  one, which I am going to show you, and it is labeled

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 402 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 24

1  Exhibit 7.
2          (Exhibit No. 7 marked.)
3          MS. ADEN:  Thank you.
4      Q.  (BY MR. HEATH)  Now, this one is a little
5  different in that it starts out with the calendar page
6  without the dropdown box.
7      A.  Okay.
8      Q.  But if we click on September 5, will that take
9  us to the dropdown box, which is on the next page?
10     A.  I've not seen this.
11     Q.  Okay.  Look at -- look at the second page.
12     A.  Okay.
13     Q.  Second page look like the event detail box
14  that you talk about in your report?
15     A.  It's -- yeah, event details, certainly.
16     Q.  And let me say that when you print out just
17  the calendar, it prints out like this, it doesn't print
18  out like the screenshot?
19     A.  Right.
20     Q.  But now on page 26 of your rebuttal report, do
21  you indicate that the link titled item 8 corresponds to
22  the number of the agenda item on the September 5 meeting
23  relating to order in the general election?
24     A.  Repeat that again.  I'm sorry, I was reading
25  something.

Page 25

1      Q.  Okay.  Page 26 of your report.
2      A.  Okay.
3      Q.  Rebuttal report.
4      A.  Certainly.
5      Q.  If you click on item 8 --
6      A.  Right.
7      Q.  -- that corresponds to the agenda item No. 8.
8      A.  Right.
9      Q.  Which relates to ordering the election?
10     A.  Right.
11     Q.  And if you click on item 8, which apparently
12  you did before you wrote the report, does it pull up --
13  it's the last two pages of that exhibit which shows the
14  hours and sites for early voting as well as election day
15  polling places?  This is on No. 7.
16     A.  Yes, it does.
17     Q.  Okay.  And that was there posted on the
18  Internet, correct?
19     A.  Correct.
20     Q.  Okay.  By the way, can we take just a quick
21  break?  Because I'm going to suggest that you put on
22  Exhibit 6, I think it has been disassembled.
23     A.  I think I did that.
24     Q.  And for the court reporter's benefit, let's
25  assemble it back --

Page 26

1      A.  Oh, I'm sorry.
2      Q.  -- before we forget it.
3          THE REPORTER:  Thanks.
4          (Off the record from 2:19 to 2:20.)
5      Q.  (BY MR. HEATH)  Is the sort of notice that
6  Waller County posted, the same sort of notice that is
7  routinely provided according to law or -- law by Texas
8  governmental bodies?
9      A.  I would think so.
10     Q.  Okay.  Was there any difference in the type of
11  notice that was available to Prairie View students than
12  to the general public?
13     A.  Well, I mean I don't know.  Probably not.
14     Q.  Okay.
15     A.  If it was on a website where everybody could
16  look at, sure.
17     Q.  Okay.  If it's on the website, it's the same
18  for everybody?
19     A.  Right.
20     Q.  And college students almost uniformly have
21  access to the Internet, don't they?
22     A.  That's a qualified yes, because some have
23  better access than others.
24     Q.  Would you assume that students at Prairie View
25  A&M University have at least as good of access to the

Page 27

1  Internet as residents of Waller County generally?
2          MS. ADEN:  I'm going to object because
3  this line of questioning is also outside of the scope of
4  his report.
5      A.  Yeah, I don't know.
6      Q.  (BY MR. HEATH)  On page 18 of your report you
7  say:  Based on a review of Dr. Stein's report, in
8  addition to my conversation with the Bexar County
9  Elections Administrator, it appears that this process
10  was inconsistent with and departed from best practices.
11         What does Dr. Stein's report say about best
12  practices?
13     A.  You mean my supplemental report?
14     Q.  Well, I think you say this on page 18 of your
15  regular report, but whichever one it is.
16     A.  Let me look.  Yes.  I did say that.
17     Q.  Okay.  What does Dr. Stein say about best
18  practices?
19     A.  I'd have to go back and review his report.  I
20  can tell you what the Bexar County Elections
21  Administrator said because I interviewed her personally.
22     Q.  Okay.  Well, that was going to be my next
23  question.
24     A.  Oh, okay.
25     Q.  As far as the conversation with the Bexar

Deposition of Henry Flores, Ph.D.
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 403 of 677
12/10/2019                                                    Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 28

1  County Elections Administrator, did you speak personally
2  with Ms. Callahan [sic]?
3      A.  Callanan, yes.
4      Q.  Callanan.  What was that conversation and when
5  did it occur?
6      A.  I'd have to look at my notes.
7      Q.  I'm not asking the date, but --
8      A.  Yeah, okay.  It was while I was compiling my
9  report, but I asked her about how Bexar County went
10 about doing it, and they have a standardized practice.
11 They have a set very specific locations for early voting
12 sites in Bexar County.  And they've been the same for a
13 number of years, that have been negotiated over the
14 years by Ms. Callanan and they're there.  They're open
15 same number of hours every day throughout the entire
16 early voting period.
17     Q.  So would the best practices -- are you saying
18 that best practices is that you have a set of polling
19 sites that you don't change?
20     A.  Correct.
21     Q.  Are you suggesting that Waller County should
22 not have changed their polling sites in hours?
23     A.  Well, what I'm suggesting is that I think
24 Waller County should -- any county should have
25 standardized early voting sites and standardized number

Page 29

1  of hours for every site.
2      Q.  But your concept of best practices or what you
3  referred to as best practices refers to uniformity and
4  not necessarily to location or hours?
5      A.  Well, uniformity it would include location and
6  hours.
7      Q.  Right.  And obviously I concur with that, but
8  uniformity of hours and location rather than potentially
9  adding locations, changing locations or changing the
10 number of hours?
11     A.  Well, I think there always has to be
12 contingency plans for changes in the event something
13 happens, but that would have to be laid out also in
14 their plan.
15     Q.  Now Bexar is significantly larger than Waller,
16 isn't it?
17     A.  Yes.
18     Q.  In fact -- well, does it offer more hours than
19 Waller when you con -- more hours per population?
20     A.  Oh, I don't know that.
21     Q.  Okay.  I'll tell you I do.
22     A.  Oh, okay.  I haven't calculated it, I'm sorry.
23     Q.  Would you agree with me that, you know, if I
24 say that Waller has a site hour of early voting for
25 every 96 persons and Bexar is one for every 312, is

Page 30

1  that --
2      A.  I have no idea.
3      Q.  Okay.
4      A.  No idea.
5      Q.  Does Bexar County have an early voting site at
6  St. Mary's University?
7      A.  No, it does not.
8      Q.  Okay.  Does St. Mary's University, is it
9  predominantly minority population?
10     A.  Yes, it is.
11     Q.  But not having one at a predominantly minority
12 campus is consistent with your idea of best practices,
13 at least for Bexar County; is that correct?
14     A.  Well, no.  I mean, no, I can't really say that
15 because they do have voting sites at UT San Antonio,
16 which is principally a minority campus.
17     Q.  Uh-huh (Affirmative.)
18     A.  Also have voting sites at all the community
19 college district campuses, most of which are minority
20 campuses, and so, you know, I'm not sure they take that
21 necessarily into effect.  They have it there because
22 there's a large number of registered voters that
23 participate there.
24     Q.  Is UTSA, or you mentioned they have a polling
25 site?

Page 31

1      A.  Right.
2      Q.  Is it about three quarters the size of the
3  entirety of Waller County?
4      A.  I don't know what the population of UTSA is,
5  to tell you the truth.
6      Q.  Is it much large -- is it significantly larger
7  than Prairie View?
8      A.  Oh, yes.
9      Q.  Okay.
10     A.  Yeah, I would think so.
11     Q.  You mentioned the community college sites.  At
12 Alamo College, that's the community college, isn't it?
13     A.  That's the district, yes.
14     Q.  The district?
15     A.  Uh-huh (Affirmative.)
16     Q.  Are those primarily commuter schools?
17     A.  Yes.
18     Q.  Okay.  So on page 19 of your report, you
19 compare the hours of Prairie View to those of the City
20 of Waller, and you compute the city -- the hours for
21 Waller by adding the Waller School District
22 Administration Building and Fieldstore?
23     A.  Uh-huh (Affirmative.)
24     Q.  Is Fieldstore in the City of Waller?
25     A.  No.

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 404 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 32

1  Q.  In fact, is it closer to Prairie View than it
2  is to Waller?
3  A.  I think relatively.
4  Q.  In your report at pages 22 through 24, you set
5  out what you say some citizens said at the Commissioners
6  Court meeting of October 17 about why Prairie View was
7  not being treated equitably?
8  A.  Correct.
9  Q.  Are you relying on or adopting the rationale
10  of those comments?
11  A.  What I'm reporting to you is what I saw in the
12  video recordings of the Commissioner Court hearings.
13  Q.  Okay.  And while I think we can all agree that
14  whatever you said is fact -- is what -- an accurate
15  representation of what they said, are you saying that
16  whatever the citizens said is logically or factually
17  correct?
18  A.  I'm just taking them on their word for their
19  testimony in Commissioners Court.
20  Q.  Okay.  For example, Dr. Mattox noted,
21  according to your report --
22  A.  Uh-huh (Affirmative.)
23  Q.  -- the UT Austin and Texas A&M University at
24  College Station had on-campus early voting?
25  A.  That's right.

Page 33

1  Q.  And that Prairie View was being treated
2  differently?
3  A.  That's correct.
4  Q.  Are you suggesting that is evidence of
5  disparate treatment toward Prairie View?
6  A.  That is what Dr. Mattox said was evidence of
7  disparate treatment.  I was just reporting what you
8  said.
9  Q.  Okay.  Do you agree with her?
10  A.  Yes.
11  Q.  Is the University of Texas at Austin and Texas
12  A&M, are both of those significantly larger than the
13  entirety of Waller County?
14  A.  I think UT Austin is.  I don't know what their
15  enrollment at A&M is though.
16  Q.  Okay.
17  A.  Can't tell you.
18  Q.  Is that something that makes a difference as
19  to whether a site would be appropriate for full-time --
20  a full-time early voting site, the number -- the number
21  of students?
22  A.  Number of registered, yeah, eligible voters,
23  certainly.
24  Q.  Now are you suggesting -- I think you are
25  suggesting that early voting at the community center is

Page 34

1  not as effective to serve the student population?
2  A.  That's correct.
3  Q.  Okay.  Do you think it is unreasonable or that
4  it's reasonable to believe that it is so inconvenient
5  that students would not go down to the community center?
6  A.  Yes.
7  Q.  And I think we agreed that it is at the edge
8  of the campus, correct?
9  A.  It's on the outside of the campus, yes.
10  Q.  Okay.  You say "outside," but it's actually on
11  land that was part of the campus before --
12  A.  It was part but it's not anymore.
13  Q.  Okay.  So it's outside simply because that
14  little piece got conveyed and is under a different deed
15  of ownership now; is that correct?
16  A.  Correct.
17  Q.  All right.  Do you have an opinion as to
18  whether on-campus parking is a problem for townspeople?
19  A.  No, I don't have an opinion on that, other
20  than what the university administration said, that they
21  would make voting -- voting -- parking convenient for
22  voters.  There's a lot of parking around the university
23  center, as you can see from the Google Earth map.
24  Q.  Do you know if that parking is frequently
25  full?

Page 35

1  A.  Is frequently what?
2  Q.  Full.
3  A.  I don't know that.
4  Q.  Okay.  Do you know if that parking is
5  regulated in that to park there you have to have a
6  particular kind of permit?
7  A.  I don't know that either.
8  Q.  Okay.  At St. Mary's, for example, is parking
9  there permitted?
10  A.  Yes.
11  Q.  So that -- okay.  And I suspect you have a
12  pretty good permit?
13  A.  I have a permanent permit since I'm married to
14  this, yes.
15  Q.  That's right.  Do you know if at St. Mary's,
16  parking may be intimidating for townspeople who don't
17  have permits and don't know much about the layout of the
18  campus of the traffic or anything like that?
19  A.  I don't -- I can't answer that.  I don't know.
20  Q.  Okay.  Now, so is it your opinion that the
21  community center is a place that would not give
22  university students an equal opportunity to early vote?
23  A.  Correct.
24  Q.  And that would be an equal -- you're talking
25  about an equal opportunity compared to the student

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 405 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 36

1  center or an equal opportunity compared to the public
2  generally?
3      A.  No, equal opportunity compared to the student
4  center.
5      Q.  Okay.  What about compared to the public
6  generally?
7      A.  You mean of what public?
8      Q.  Well, some residents, if they're going to
9  early vote and assuming they're not in Prairie View --
10     A.  Oh.
11     Q.  -- are voting here at the student center,
12  maybe they go to a VFW hall or to the school district
13  administration building --
14     A.  Sure.
15     Q.  -- are students having to go to the community
16  center on the edge of the campus less of an
17  opportunity -- less equal to people having to go to the
18  VFW hall, the library, county courthouse, JP office?
19     A.  That I don't know.
20     Q.  So you don't have any opinion at all?
21     A.  Not of that, no.
22     Q.  Okay.  You talk in your report or one thing
23  you say in your report is if any decision regarding the
24  early voting schedule was made behind closed doors or at
25  an unannounced executive session, it would seem to

Page 37

1  violate the law.
2      Do you have any information that there was a
3  closed door decision or an unannounced executive
4  session?
5      A.  No, I do not.
6      Q.  Okay.  You spend a couple of pages in your
7  report, I think this is in the rebuttal report, talking
8  about the comments of David Luther?
9      A.  Yes.
10     Q.  Whom you've characterized as white and is
11  chair of the local Republican party?
12     A.  That's correct.
13     Q.  And you suggest on page 34 that the gist of
14  his comments was, quote:  That the commissioners should
15  take care not to provide voting in a location that was
16  easily accessible by young black and/or democratic
17  voters.  End quote.
18     A.  That's correct.
19     Q.  And should do their best to prevent Prairie
20  View A&M students, most of whom are black and young from
21  voting?
22     A.  That's correct.
23     Q.  And you note that the commissioners didn't
24  openly reject or express any disagreement with
25  Mr. Luther's comments?

Page 38

1      A.  That's correct.
2      Q.  Now, are there reasons the public officials do
3  not comment on comments from the public at an open
4  meeting?
5      A.  There may be but I don't know what they would
6  be in this case.
7      Q.  Okay.  If, for example, you were in a
8  lawsuit --
9      A.  Uh-huh (Affirmative.)
10     Q.  -- involving that situation, sometimes are
11  officials advised not to comment?
12     A.  Yes, but they didn't say anything at all.
13     Q.  Okay.
14     A.  Most officials would make a comment
15  saying that --
16     Q.  If you have -- are you familiar with the open
17  meetings training that elected officials have to undergo
18  in Texas?
19     A.  No, I am not.
20     Q.  Okay.  So you don't know if there are
21  situations where at public meetings it is advisable not
22  to comment on the comments of the public, or there are
23  restrictions on what comments you can make?
24     A.  No, I do not know that.
25     Q.  Okay.  Did -- and you say they didn't openly

Page 39

1  say anything about this?
2      A.  Correct.
3      Q.  Did the Commissioners Court whose members are
4  Republicans --
5      A.  Uh-huh (Affirmative.)
6      Q.  -- do anything following the comments of the
7  Republican chair who was saying that the student center
8  location was likely to increase the number of Democratic
9  votes?  Did they do anything to take early voting hours
10  or locations or the polling place away from the student
11  center?
12     A.  No.
13     Q.  Okay.  So did they essentially reject -- or
14  they certainly didn't adopt his reasoning or do anything
15  to implement his suggestion?
16     A.  They did nothing at all.
17     Q.  Okay.  In your report you talk about
18  socioeconomic conditions.  Are the statistics for blacks
19  and whites in Waller County generally, blacks generally,
20  whites generally, not so much for students or
21  non-students; is that correct?
22     A.  Correct.
23     Q.  Okay.  Now, is this suit about where the
24  Prairie View students have equal access to voting?
25     A.  Yes.

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 406 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 40

1  Q.  Do you look at any --
2  A.  Partially.  I mean that's partially, yeah, but
3  it's also -- the black voters in Prairie View and Latinx
4  voters as well, and also young voters.
5  Q.  Okay.  Now, as far as black non-students or
6  Hispanic non-students, or Hispanics generally, who are
7  non-students, is having a polling place at the Memorial
8  Student Center necessarily in their interest?
9  A.  Only for the ones in and around -- that live
10 in Prairie View and that are on the campus at Prairie
11 View A&M.  That's the point of my research and the point
12 of my opinion.
13 Q.  Okay.  Well, the non-students?
14 A.  I'm not speaking about any -- any minorities
15 in Katy, for instance, or Hempstead.
16 Q.  Okay.  Minorities in Prairie View who are not
17 students and let's say not faculty or staff --
18 A.  Right.
19 Q.  -- might they have more difficulty accessing a
20 site in the middle of the campus than another site away
21 from the campus or on the edge of the campus?
22 A.  I don't know that.
23 Q.  You don't know one way or the other?
24 A.  No, I don't know one way or the other.
25 Q.  Okay.  Did you look at any statistics relating

Page 41

1  specifically to college students in Prairie View?
2  A.  Did I look at any what?
3  Q.  Socioeconomic statistics relating specifically
4  to college students at Prairie View?
5  A.  No, I did not.
6  Q.  Okay.  And among the statistics you cite in
7  your report or whether persons have less than a high
8  school diploma or high school graduates and have some
9  involving persons that have some college, and are all of
10 those statistics are persons who are 25 years of age or
11 older?
12 A.  Yes.
13 Q.  So basically by definition those statistics
14 generally don't have anything to do with college
15 students, do they?
16 A.  No.
17 Q.  Okay.
18 A.  Maybe some but not -- it's only a -- would be
19 a very small percentage.
20 Q.  Right.  And in fact, not only are they likely
21 to be under 25, they are all going to have some high
22 school, they're all going to have some college and
23 whatever the other -- well, they're all going to be high
24 school graduates?
25 A.  The ones at Prairie View A&M?

Page 42

1  Q.  Yeah.
2  A.  Yes, certainly.
3  Q.  Yeah.  Now, do poverty statistics apply to
4  students as -- or are they typically for heads of
5  households or persons who are not dependents?
6  A.  Yeah, they're for the general population as a
7  whole, individuals.
8  Q.  Okay.  Now looking at statistics for whites in
9  Prairie View, is white population relatively small in
10 Prairie View?
11 A.  In Prairie View itself, yes.
12 Q.  Okay.  And I think that you have statistics
13 about the whites in Prairie View?
14 A.  Someplace in here, yes, I do.
15 Q.  Okay.
16 A.  Actually in Waller County, yeah.
17 Q.  Okay.  So those statistics are not for the
18 whites or for the county generally?
19 A.  For the county generally, correct.
20 Q.  All right.  On the issue of responsiveness,
21 you discuss the issue that arose with the mailing
22 addresses of students who live on campus, correct?
23 A.  Correct.
24 Q.  Did the county -- and said because of that,
25 the county was not responsive.  Did the county assign

Page 43

1  those addresses?
2  A.  Did the county what?
3  Q.  Assign those addresses to the students?  Did
4  it tell them here's the address you have to put down?
5  A.  No.  I think the university did.
6  Q.  All right.  And when you register, don't you
7  have to have a mailing address so that you can get
8  registration cards or notices or so forth?
9  A.  Yes.
10 Q.  Okay.  Once the problem became apparent, did
11 the county along with the secretary of state work to
12 resolve it?
13 A.  I think they -- the county did a -- a
14 workaround.
15 Q.  Uh-huh (Affirmative.)
16 A.  But I don't think it was ever resolved.
17 Q.  To resolve it do the students have to give a
18 different address?
19 A.  It depends on the resolution.  I mean I
20 think -- well, I think I need a break.
21 Q.  I beg your pardon?
22 A.  May I take a break at this point?
23       MS. ADEN:  Do you want him to finish
24 answering the question?
25 Q.  (BY MR. HEATH)  Yeah, let's finish answering

Deposition of Henry Harvey Porter
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 407 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 44

1  the question.
2      A.  Okay.  Ask your question again, please.
3      Q.  Okay.  Well, let's just sort of cut through,
4  is there anything you are suggesting that the county
5  should have done differently in regard to the address
6  issue?
7      A.  Well, they should have followed through with
8  trying to fix it on a permanent basis rather than just
9  do the workaround at one time.
10      Q.  Well, if you -- in doing the workaround, did
11  it involve letting the students vote when they showed
12  up?
13      A.  Uh-huh (Affirmative.)
14      Q.  At the precinct to which they showed up?
15      A.  Yes.
16      Q.  No matter which precinct they were assigned
17  to?
18      A.  That's correct.
19      Q.  So they got to vote, correct?
20      A.  That's correct.
21      Q.  And then were they requested to fill out a
22  change of address card to avoid the situation happening
23  in the future?  Were they given a change of address?  Do
24  you know?
25      A.  I'd have to check my notes.  I don't know.

Page 45

1      Q.  Okay.  In order to solve it for the future, to
2  get the right address on that student's registration, do
3  they have to give you a new address?  The county can't
4  give them a new address, can it?
5      A.  No.  What has to happen is the county has to
6  sit down with the university and the U.S. Postal Service
7  to negotiate that out.  It's a three-way negotiation.
8  It can't just be -- the county can't just give them a
9  new address because the county doesn't give addresses.
10      Q.  When they were given the opportunity to fill
11  out a change of address card, did the county indicate
12  what they could put down so that they would be in the
13  309 precinct rather than the 310 precinct?
14      A.  That I don't know.
15      Q.  So you don't know one way or the other?
16      A.  No.
17          MS. ADEN:  Can we take that break?
18          MR. HEATH:  Sure.
19          MS. ADEN:  Are you done with that line of
20  questioning?
21          MR. HEATH:  Yeah.
22          (Off the record from 2:49 to 3:05.)
23      Q.  (BY MR. HEATH)  On page 10 of your report you
24  talk about a 2008 effort to obtain an early voting site
25  on campus.  And I think that is the regular report.  And

Page 46

1  there was no citation for that.  What's the source of
2  that information?
3      A.  Well, I don't know, but the copy of the
4  consent decree is sitting in my hotel room, in my hotel
5  room.  I know.  I just didn't cite it but I can come
6  back in and enter that later.
7      Q.  Okay.  You mentioned that for five more years,
8  so presumably 2008-2013, I assume, the county refused to
9  allow an early voting site on campus and did so only in
10  2013.
11          During all that time, was there an early
12  voting site at the community center located at the
13  southern edge of the campus?
14      A.  I don't know that.  I'd have to go back and
15  look.
16      Q.  In that discussion you say that:  In 2013,
17  after appeals from the Prairie View University
18  president, Student Government president, Secretary of
19  State, and True the Vote, the county relented and put an
20  early voting site on the campus.
21          Is there a source for that?
22      A.  Where did I --
23      Q.  It's on page 10.
24      A.  Page 10?  Again, I'll have to come back and
25  give you that source.  I left it off, but I remember

Page 47

1  specifically the secretary of state saying that the
2  county should clean that up.
3      Q.  Okay.  Now, actually in 2013 I'm going to -- I
4  want you to assume that this is correct.  Did the
5  election day site move from the community center to the
6  student center but early voting remained at the
7  community center?
8      A.  I don't know.
9      Q.  You don't know?
10      A.  No.
11      Q.  Okay.  Do you know that during all that time
12  if an early voting site wasn't at the community center,
13  there was one elsewhere at the edge of the campus,
14  either St. Francis Church or the Prairie View A&M Alumni
15  Center?
16      A.  I think I saw reference, but that was early on
17  at some time.  I think -- I don't even know if those
18  buildings even exist anymore.
19      Q.  Okay.  You mentioned that the National
20  Organization True the Vote joined the students and
21  others to push for an on-campus voting site.  That was
22  on page 10.  What is True the Vote?
23      A.  I don't know.  I'd have to go back and see who
24  they are.
25      Q.  But your testimony is that they worked to make

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 408 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 48

1  it easier for African American students to vote?

2  A.  Yeah, if you look right behind that True the

3  Vote, it's a -- I say is a national group focused on

4  voter fraud.  So once I get that citation, which I think

5  was a newspaper article, I can -- I can reference it

6  better.

7  Q.  If you have one, I would appreciate --

8  A.  Sure.

9  Q.  -- knowing that.

10  A.  Yeah, we'll update that.

11  Q.  In 2016, the county had early voting at the

12  student center.  Do you know at that time if the only

13  debate was not so much whether to put it on campus, but

14  where on campus to put it, whether the student center or

15  Panther Plaza?

16  A.  No.  I don't know that.

17  Q.  You don't know.  Do you agree that the county

18  should consider the needs of both students and older

19  town residents when choosing voting locations?

20  A.  In general?

21  Q.  Yeah.

22  A.  I guess broadly speaking in general, yeah.

23  Q.  Are you aware of any instance in which the

24  county has reduced the hours of early voting on campus?

25  A.  That I don't know.

Page 49

1  Q.  On page 43 of your report you mentioned that

2  the county had posed a problem or the county's action

3  posed a problem for plaintiffs' use of early vote by

4  mail.

5  What categories of early voting by mail, what

6  categories of eligibility for early voting by mail do

7  Prairie View students fall into?

8  A.  Well, this had to do with the delivery of the

9  ballots because of the way the students' mail was

10  delivered to them in their dorms, or not their dorms but

11  on campus.

12  Q.  Okay.  Well, first is that something that the

13  county does?

14  A.  Well, the county sends out the ballots.

15  Q.  But do they set the addresses?

16  A.  No.

17  Q.  Okay.  And you say that this was a problem for

18  the plaintiffs, student plaintiffs, correct?  The

19  plaintiffs are all students, correct?

20  A.  Right, right, correct.

21  Q.  Use of early voting by mail.  What students

22  qualify to get early voting by mail?  Is it because

23  they're over 65?

24  A.  No, I mean anybody can get early voting by

25  mail, you know.  You don't have to be over 65.  But

Page 50

1  still this is a problem that has to be negotiated

2  between the county and the university.  They're just not

3  communicating with each other.  And the students are

4  being victimized.

5  Q.  You talk on page 43 about how the actions of

6  Waller County officials created long lines for voting.

7  When was that?

8  A.  I'm citing from the Commissioner Court's

9  hearing.  You see down there footnote 95?  It came from

10  there.

11  Q.  Okay.  Let's see.  But I think you earlier

12  said you were not aware of any long lines for early

13  voting at the student center; is that correct?

14  A.  Correct.  I'm not aware of it.  I'm just

15  saying what was cited -- I cited this from the actual

16  hearings.  They were the ones complaining about it.

17  Q.  Okay.

18  A.  I personally didn't gather any research on

19  that other than what is revealed from in the

20  commissioner's hearings themselves.

21  Q.  All right.  And that hearing, October 17th --

22  A.  Uh-huh (Affirmative.)

23  Q.  -- 2018, would that be before the beginning of

24  early voting by -- at the student center?

25  A.  Yes.

Page 51

1  Q.  Okay.  So it doesn't suggest or you're not

2  suggesting that the hours for early voting at the

3  student center on the November '18 election, resulted in

4  long lines?

5  A.  No.  Not at all.  These are two separate

6  issues.

7  Q.  Did you do any research to determine the

8  length of lines or waiting times during early voting at

9  Prairie View?

10  A.  No, I did not.

11  Q.  Okay.  Now, by having -- we talked earlier in

12  the deposition about class schedules and when students

13  were likely to be on campus and we talked about the fact

14  that they go to the student center for meals and other

15  things.

16  Is having early voting at the student center

17  essentially bringing the polling place to students much

18  as happens when mobile voting sites go to nursing homes

19  or senior citizen centers or similar things?

20  A.  No.  No, huh-uh (Negative.)  No, this is

21  actually the establishment of a permanent early voting

22  place site.  It's not like a temporary polling place --

23  Q.  Well --

24  A.  -- that you move around.

25  Q.  But is it essentially bringing the site to

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 409 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 52

1  where the students are rather than setting up a site
2  that students or other voters would be expected to go
3  to?
4      A.  Isn't that the same thing?
5      Q.  Well, let me give you an example.
6      A.  Okay.
7      Q.  When I go to early vote, typically I go to --
8  in Austin --
9      A.  Uh-huh (Affirmative.)
10     Q.  -- to the Ben Hur Shrine Temple.
11     A.  Okay.
12     Q.  Which is a place I never go to except for
13  early voting.
14     A.  Okay.
15     Q.  Now, if the county had established an early
16  voting site at the office building where I work, I
17  wouldn't go anywhere.
18     A.  Right.
19     Q.  Correct?
20     A.  Okay.
21     Q.  They would be essentially bringing the voting
22  site to where all the people in that building are.
23  Isn't that essentially what's happening here?
24     A.  No, I don't think so.  I don't think so.  The
25  students have been asking for a permanent early voting

Page 53

1  site on their campus for a long period of time, many
2  years, and the county has just avoided placing one there
3  permanently.  They just keep never putting it there
4  until the students protest about it.
5      So it's not like it's being moved from a
6  permanent location to -- I think the examples are
7  completely different from each other.
8      Q.  You do agree with me that the students are
9  going to be at -- routinely at the Memorial Student
10  Center?
11     A.  Yes.
12     Q.  With other voters in Waller County, are the
13  polling places located where the voters typically go day
14  in and day out?
15     A.  That I can't tell you.
16     Q.  Well, do you have any idea whether voters
17  typically go to the VFW hall day in and day out?
18     A.  I don't know.
19     Q.  Or the JP office?
20     A.  I don't know that.
21     Q.  Does it make any difference?
22     A.  Yes, because as far as Prairie View A&M
23  University is concerned, that university center is just
24  exactly what it says.  It's the center of student life
25  on that campus, so it's there all the time.  Whereas the

Page 54

1  VFW hall, I've been a member of the VFW, you know, the
2  only time I ever went to the VFW hall was to go meet
3  with my buddies.
4      Q.  Yeah.
5      A.  Or anytime I ever went to the JP hall was to
6  pay a ticket, and I haven't done that, you know.  And so
7  they're just not typical locations that I think the
8  average person would go to.  But a student will day in
9  day out pass through that university center.
10     Q.  Okay.  And so I think we agreed then that the
11  student day in and day out is likely to be at the
12  student center, whereas day in and day out a regular
13  resident of Waller County is unlikely to be at the JP
14  court or the VFW hall or the library?
15     A.  Correct.
16     Q.  Okay.  In that regard, is having a polling
17  place at the student center more accessible to the
18  students than these other places are to the population
19  generally?
20     A.  It's more accessible to the students.  As far
21  as the populations are concerned, it depends on the
22  specific locations.  I mean I don't know.
23     Q.  Well, if a site is where you go and congregate
24  every day, is that more convenient than a site that you
25  have to go to rather than you're already going to be

Page 55

1  there?
2      A.  Yes.
3      Q.  Okay.  In your rebuttal report, you dismiss
4  Dr. Gimpel's discussion of comparably cited campuses in
5  comparably cited counties because the campuses were not
6  predominantly minority, and specifically predominantly
7  black; is that correct?
8      A.  That's correct.
9      Q.  What's the ultimate question we're trying to
10  answer in this litigation?
11     A.  Whether or not the Waller County commissioners
12  or officials, you know, created and maintained early
13  voting sites that gave less of an opportunity to the
14  black and Hispanic students of Prairie View A&M and
15  Prairie View generally and the voters there than other
16  places.
17         MS. ADEN:  I'm going to object to the
18  question a little belatedly to the extent that it calls
19  for a legal conclusion.
20         THE WITNESS:  Oh.
21         MS. ADEN:  Which Dr. Flores is not here
22  to offer.
23         THE WITNESS:  That's true.
24     Q.  (BY MR. HEATH)  But number one, you can go
25  ahead and answer, which I think you already did, but

Deposition of Henry Elroy Wallace
12/10/2019
Case 4:18-cv-03985    Document 73-2    Filed on 01/24/20 in TXSD    Page 410 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 56

1 what's the opinion you are offering?

2    A.   My opinion?

3    Q.   Yeah.

4    A.   My overall opinion is that that Waller County

5 did, in fact, intentionally discriminate against the

6 students and the young people at Prairie View A&M

7 University, in the way they cited the -- the way they

8 decided and then cited the early voting place at Prairie

9 View A&M.

10    Q.   And is your opinion that they gave less of an

11 opportunity to the students at Prairie View than to

12 whom?

13    A.   Than to other residents of Waller County.

14 They were not treated in the same manner.

15    Q.   If that's the issue, isn't the relevant

16 part -- point of comparison for the colleges, colleges

17 that are not predominantly minority?

18    A.   No, not necessarily.  My point was that it was

19 not clear why Dr. Gimpel chose these particular colleges

20 to use in his -- as comparators to Prairie View A&M

21 University's situation.

22        I mean none of them are historically black

23 colleges or universities.  And if you look at the other

24 two HBCUs in Texas, they have polling places on those

25 campuses.  Texas Southern University and Wiley College

Page 57

1 in Marshall, Texas.

2        And there's a lot of other universities and

3 colleges in the state that have polling on the campuses.

4 Why Dr. Gimpel didn't include others in his comparison,

5 I don't know.  That's really my critique of Dr. Gimpel's

6 methodology.

7    Q.   Texas Southern University, is that located in

8 a comparably-sized county?

9    A.   No.

10    Q.   Where is -- in fact, it's significantly

11 larger?

12    A.   It's right down the street here in Houston,

13 right, Harris County.

14    Q.   Where at Texas Southern University is the

15 polling place?

16    A.   At the student center I think.  I'd have to

17 look specifically at the site.

18    Q.   Those are the only two historically black

19 colleges?

20    A.   Well, Wiley College is also historically

21 black.

22    Q.   Right.  Those are the only two in Texas?

23    A.   Besides Prairie View A&M University.

24    Q.   What about Huston-Tillotson in Austin?

25    A.   On if that's HSPCU now, might be.

Page 58

1    Q.   Do you know if there's a polling place there?

2    A.   I don't know that.

3    Q.   And these are early voting polling places?

4    A.   Yes.

5    Q.   One of the things you mentioned that Prairie

6 View is not comparable because it was established at a

7 different time than the other colleges, later than the

8 1876 constitutional provision relating to Prairie View.

9    A.   Uh-huh (Affirmative.)

10    Q.   Why does that matter?

11    A.   I'm sorry?

12    Q.   Why is that relevant?

13    A.   Oh, because I just -- I wanted to state

14 that -- I wanted to show how different it was from the

15 other schools.  I was just showing that the schools were

16 all very different as far as their founding -- their

17 origins and the reasons they were founded and what

18 systems they belonged to.

19    Q.   Does any of that have anything to do with

20 whether they should have or appropriately have early

21 voting sites?

22    A.   No.  All I was using them is was as a critique

23 of Dr. Gimpel's choice of colleges for his analysis.

24 That's all.

25    Q.   You talk about the county's continuous efforts

Page 59

1 to thwart access, and I'm think in that you go back to

2 '70s or something and go forward.

3    A.   Yes.

4    Q.   What do you contend this Commissioners Court

5 has done to thwart access?

6    A.   Not considered putting an early voting place

7 on Prairie View A&M campus.

8    Q.   Did they put an early voting place on the

9 Prairie View campus?

10    A.   Yes, but it was after a lot of complaints and

11 after the suit was filed.

12    Q.   So your contention is, or your testimony is,

13 that the Prairie View early voting site happened only

14 after the suit was filed?

15    A.   Only after the suit was filed and after

16 students and community members complained about it in

17 Commissioners Court.

18    Q.   Now, if it happened after students complained

19 about it, and then the county did it, is that a way of

20 being responsive to the students' requests?

21    A.   Well, it's responsive when it's under duress,

22 but it's not responsiveness under normal circumstances

23 because this has been a continuous history of this.

24        The county should have known that if they

25 didn't do this they were going to get complaints from

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 411 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 60

1 students, just given the history of what's happened in
2 the past.
3     Q.  You talk about the unique transportation
4 difficulties faced by students.  What transportation
5 difficulties exist that preclude, for example, their
6 voting at the community center as opposed to the
7 Memorial Student Center?
8     A.  Well, it's not -- I mean it's not -- it's
9 inconvenient to walk that far and you'd have to -- you'd
10 have to really -- if you're a student and you're on
11 campus and you're going from class from the dorm to your
12 class and back to the dorm or back to have lunch or
13 whatever, you have to go way out of your way to make
14 that extra trip all the way over to the community center
15 just to cast a vote.
16         And given the tight schedule the students
17 have, passing time between classes, the time to eat
18 lunch, the time to get advising, their extracurricular
19 activities, without the convenience of it being -- a
20 point base being located at the community -- at the
21 university center, it would make it an extra hardship
22 for them to just go way out of their way to vote like
23 that.
24     Q.  About how many hours a day does a typical
25 student spend in class?

Page 61

1     A.  From my own experience, yeah, I -- I don't
2 know.  It varies.  It varies.  Some students only take
3 one class a day, some take four or five, and then
4 there's labs, and then you've got extracurricular
5 activities, you know.  Some students -- those campuses
6 are alive deep into the evenings sometimes with
7 activities that they're involved in.
8     Q.  For regular -- regular -- for voters who are
9 not students in Waller County, do they have work
10 responsibilities?
11     A.  I presume some do.
12     Q.  Okay.  And typically, will those involve more
13 hours during the day than a student spends in class?
14     A.  I wouldn't know that.
15     Q.  Is -- does a typical person work eight hours
16 in a day?
17     A.  No, I don't know that.
18     Q.  Okay.  One of the issues raised in this suit
19 is that the times assigned to Prairie View were in the
20 second week rather than the first week of early voting?
21     A.  That's correct.
22     Q.  Why is it important that the hours be in the
23 first rather than the second week?
24     A.  Well, the hours should be scattered across
25 both weeks.  Prairie View A&M University should be a

Page 62

1 regular early voting place, like the main early voting
2 places in Waller County that have voting on both --
3 voting on days of both weeks.  Excuse me.
4     Q.  Do you think if -- do you have an opinion
5 about whether additional people would vote if the early
6 voting were there both weeks?
7     A.  Well, given Dr. Stein's research, he points
8 out that that would be the case.  I haven't done any --
9 I haven't conducted any research on that so I can't
10 really give you an opinion.
11     Q.  Okay.  Other than what we've talked about
12 today and what's in your two reports, is there anything
13 else you contemplate testifying about at this trial?
14     A.  No.
15     Q.  Okay.
16         MR. HEATH:  I'll pass the witness.
17         MS. ADEN:  You assume there's going to be
18 a trial?
19         MR. HEATH:  Yeah, I'm hoping there's not.
20         THE REPORTER:  Are we still on the record
21 here?
22         MR. HEATH:  No.
23         MS. ADEN:  No.
24         (Off the record from 3:32 to 4:01.)
25

Page 63

1         EXAMINATION
2 BY MS. ADEN:
3     Q.  Okay.  Dr. Flores, earlier in the deposition
4 Mr. Heath asked you some questions about measuring
5 impact, discriminatory impact in this case.  Do you
6 recall that?
7     A.  Yes, I do.
8     Q.  What information did you principally rely on
9 for your conclusions about discriminatory impact?
10     A.  Dr. Stein's research and what he put forth in
11 his report.
12     Q.  Turning to another subject, Mr. Heath I
13 believe asked you about specific indicators of making it
14 more difficult to vote.  Do you recall that topic?
15     A.  Yes.
16     Q.  And he offered an example of a county that
17 might create longer lines or not resolve long lines when
18 voting.  Do you recall that?
19     A.  Yes, I do.
20     Q.  And you testified that you agree that those
21 would -- could be indicators of making it more difficult
22 to vote; is that accurate?
23     A.  That's correct.
24     Q.  In the context of this case, though, are there
25 any other ways that a county may make it more difficult

Deposition of Henry Harvey Wright
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 412 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 64

1  for voters to vote?

2      A.  You mean for the student voters to vote?

3      Q.  So with respect to student voters, how might a

4  county make it more difficult for student voters to

5  vote?

6      A.  For one, ignoring their request -- their

7  constant demands for placing polling places at -- on

8  their campus for early voting, over the years, they

9  continually just ignore them.

10      Q.  What about the rule addressing issue that you

11  testified about?

12      A.  Oh, the rule addressing issues, well, they

13  never did finish fixing that.  They did the workaround

14  but they should have sat down with university officials

15  and the U.S. Postal Service and worked out a permanent

16  fix so the students wouldn't be victimized by the -- the

17  students are caught in the middle and -- of that whole

18  process, and without those three institutions getting

19  together, there will never be a solution to it.

20      Q.  Are you aware of whether that issue was

21  addressed for the 2019 election season?

22      A.  No, I'm not aware of it and I don't think it

23  was.

24      Q.  Just to clarify for the record, there was some

25  testimony about when early voting was established in

Page 65

1  Waller County.  Do you recall that line of questioning?

2      A.  For the -- which election?

3      Q.  More generally when early voting came to --

4  not to Waller County, when early voting came to the

5  Prairie View campus.

6      A.  Oh, yes, I remember the discussion.

7      Q.  And do you agree that there was early voting

8  on Prairie View's campus prior to November 2018?

9      A.  Yes.

10      Q.  Going back to that question about making it

11  more difficult to vote, is it your understanding based

12  upon your expertise, your experience, that a county, for

13  example, can make it more difficult for someone to vote

14  without having necessarily the intent to make it more

15  difficult to vote?

16      A.  Yes.

17      Q.  For example, do you have an opinion or

18  thoughts about whether a county could provide fewer

19  hours and days at a voting location where many members

20  of a certain population may live, eat, work, go to

21  school?

22      A.  Yes.

23      Q.  Turning to another topic, Mr. Heath asked you

24  about whether students pick up their mail at the

25  Memorial Student Center, and I believe you testified

Page 66

1  that they do?

2      A.  Yes, but I wasn't sure.  I'm not sure.

3      Q.  I mean is that within your personal knowledge,

4  the answer?

5      A.  No, not really.

6      Q.  Did you hear or view any testimony about mail

7  where students may or may not get mail from the

8  Commissioners Court meetings?

9      A.  Yeah.  I do know that for sure they do not

10  pick it up at the community center.  The post office

11  there located next to the community center.

12      Q.  And is that reported in either one of your

13  reports?

14      A.  I think so.

15      Q.  Mr. Heath asked you whether students are

16  likely to have classes on multiple days a week rather

17  than just Monday and Tuesday and I believe Wednesday; is

18  that correct?

19      A.  Right.

20      Q.  And you testified that they are likely to?

21      A.  Yes.

22      Q.  Okay.  Is it likely that students at Prairie

23  View may have classes in different buildings other than

24  the Memorial Student Center?

25      A.  Oh, yeah, certainly.

Page 67

1      Q.  Is it likely that students may not remain at

2  the Memorial Student Center even if they have a class

3  because of other obligations like extracurricular

4  activities?

5      A.  Yes.

6      Q.  Is it likely that students may not remain at

7  the MSC because of work?

8      A.  May not remain at the MSC because of work?

9  Yes.  MSC.

10      Q.  Memorial Student Center.  When Prairie View

11  students do not have a class at the Memorial Student

12  Center, are there reasons that they may not remain at

13  the Memorial Student Center?

14      A.  Sure.

15      Q.  Any examples?

16      A.  Sleeping in the dorm room.

17      Q.  Mr. Heath asked you if students congregate at

18  the Memorial Student Center every day.  Do you have any

19  personal knowledge of the answer to that question?

20      A.  No.

21      Q.  Did you hear anything during Commissioners

22  Court meetings about how students spend their time with

23  respect to the Memorial Student Center?

24      A.  Only that it's the center of life for them.

25  They pass through it a lot.

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 413 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 68

1    Q.  Is it possible that students could be busy
2  with class, work, extracurricular activities Monday
3  through Wednesday -- strike that.
4          During the November 2018 election season, do
5  you recall or would you agree that there was early
6  voting on campus at the Memorial Student Center Monday
7  through Wednesday during the second week?
8    A.  Yes.
9    Q.  Is it possible that a student might have
10  extracurricular activities which would take them off
11  campus during those first three days of early voting
12  during the second week?
13    A.  Yes.
14    Q.  Turning to another subject.  Mr. Heath asked
15  you some questions about public comments at the Waller
16  County Commissioners Court October 17th, 2018 meeting
17  that you cited in your report.  That was earlier in your
18  testimony.
19    A.  Okay.
20    Q.  Do you recall that?
21    A.  Yes, I think so.
22    Q.  Well, and you testified about a state -- the
23  statements that you saw and heard at the meetings
24  generally?
25    A.  Yes.

Page 69

1    Q.  Or is it accurate that you cited to statements
2  in your reports?
3    A.  Yes.
4    Q.  Okay.  Putting aside whether they are accurate
5  or not, what was the relevance of you reporting what you
6  heard and saw during the Commissioners Court meeting
7  either on October 17th or some other time?
8    A.  On October 17th specifically because I heard
9  from -- I saw and heard the -- Dr. Mattox and other
10  students and students, student leaders and one community
11  member, a white woman, if I remember correctly, all talk
12  about the need to have early voting put on Prairie View
13  A&M University campus.  And so it was -- it was just
14  really -- I was able to see them express their opinion
15  about that.
16    Q.  And Mr. Heath also asked you about students
17  going to the Waller County Community Center.  During
18  your review of those Commissioners Court meetings, what
19  did you hear students or other members of the public say
20  about the community center?
21    A.  They just don't go to that.  They don't go to
22  that community center under any -- under normal
23  circumstances.  They've had a party there.  I think I
24  saw a reference to a party or something of that nature,
25  but it seems to me like it's a unique occurrence.

Page 70

1    Q.  Based upon your review of the October 17th,
2  2018 meeting, Commissioners Court meetings or any
3  others, do you have any opinion about the accessibility
4  of the Memorial Student Center to Prairie View students?
5    A.  Yeah.  I think it's like -- like I say in my
6  report, it's like the university center of any
7  university, it's the -- it's the heart and center of
8  campus life and they -- a lot of their daily activities
9  are centered around that.  They're passing through it
10  all the time.
11    Q.  And did you hear anything about the
12  accessibility of the Memorial Student Center to other
13  members of the public non-Prairie View students?
14    A.  Only that the university would try to make
15  things available to them, parking spaces, things of that
16  nature.  They're willing to work with the community to
17  make the campus open and available so other people can
18  come on and vote.
19    Q.  Turning to some of the documents that were
20  referenced during this deposition, Mr. Heath represented
21  to you earlier today, that the county was required to
22  order the November 2018 election in August based upon
23  Exhibit 5.  Do you recall that testimony?
24    A.  Yes.
25    Q.  And assuming for a moment that that's correct,

Page 71

1  if you were a county official -- and assuming that was
2  correct and based upon what you examined in this case,
3  if you were a county official and a county with a large
4  population of student voters and you were constrained to
5  call an election at a time when you knew those students
6  would not be around, do you think that would create any
7  issues?
8    A.  Yeah.
9    Q.  Like what?
10    A.  Well, for one, if I were the county elections
11  administrator I would be kind of -- if I had a large
12  population of eligible voters smack dab in the middle of
13  my county and suddenly I'd have to call an election or
14  an election was called and I had to sit down and get
15  ready and do all the logistics for it and everything,
16  I'd have to try to figure a way to try to contact them
17  to let them know an election's going to happen, and --
18  so I -- I don't know, I'd work with the campus officials
19  to try to see what I could do, dean of students
20  probably.
21    Q.  And if that campus had a particular history of
22  advocating for equal access to voting opportunities,
23  would that influence what steps you might take to
24  include them in the deliberative process to establish
25  early voting opportunities?

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 414 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 72

A.   Oh, sure.  If I had -- if my county had been under constant pressure to have early voting or have had a history of difficulties with providing access to the students at the campus over the years, I would definitely try to do everything I could to not create a similar sort of situation.

Q.   And based upon your review of the Commissioners Court meeting and Ms. Eason's deposition, did you see any evidence that they did anything to affirmatively reach out to the students before setting these, not only the election day, but the hours and the locations and the sites of early voting?

A.   No.

Q.   And what inference did you draw from that?

A.   That they're just not -- they're not -- they're not paying attention to the needs of that particular group of voters.  They're not paying attention to the needs of -- to the voices and the requests and the constant demands of the voters for a polling place at that particular location.  They're being unresponsive really.

Q.   Mr. Heath directed your attention to page 11 of Exhibit 5 where it is recommended when -- where it recommends the early voting locations.

Putting aside whether it's required or not,

Page 73

can the commissioners amend those hours and locations after initially setting them?

A.   Sure.

Q.   In fact, did you review any Commissioners Court meetings where they discussed submitting them after they had been set as required?

A.   Yes.

Q.   And in fact, did you review any meeting minutes that show that they, in fact, did make amendments after they were set?

A.   Absolutely.

Q.   And is calling for an election different than setting the hours, locations and dates of them?

A.   Yes.

Q.   Mr. Heath showed you several screenshots from the Waller County website including a screenshot from the Commissioners Courts calendar marked as Exhibit 6?

A.   Right.

Q.   And the screenshot included a hyperlink to the agenda backup payables, item 17, and a video of the meeting.  Do you recall seeing that?

A.   Yes.

Q.   Do you recall whether or not all of those materials were available to you when you reviewed them and in forming your report?

Page 74

A.   They were not.

Q.   And can you look specifically at Exhibit 6 for me quickly?

A.   Sure.  Be happy to.

Q.   Now, on Exhibit 6, do you see in the white box in the center that there is a description, and following the description there's a -- looks like a link that were it live, Watch Here.

Do you see that, Dr. Flores?

A.   Yes.

Q.   Okay.

A.   Watch Here.

Q.   If that is a link to a video, do you think that this page would have been one that existed at the time that this calendar was originally set?

A.   This didn't exist the way it was when I looked at it originally.

Q.   And in fact, a video probably would not have been there when -- at the time -- in August 2018 on the date of August 22nd, which is the calendar date for this -- or the event detail for this, a video on that exact date would not be available on that date?

A.   Not at the exact date, no.

Q.   So based upon the exhibits that you received from Mr. Heath, Exhibits 6 and 7, nothing on them

Page 75

reflects that these were materials that were necessarily posted and made available on the date before -- on the date that is being noticed on these calendars?

A.   The only thing that was available that's in Exhibits 6 and 7, are the actual notice of the meeting, the second page of both exhibits, the second, third, fourth, fifth page of both exhibits, says -- titled Notice of Meeting of Commissioners Court, those were available only because -- and they appeared as -- as part of the agenda, but that's it.  The rest of these other items weren't there.

Q.   And even when you went about looking for these items, was it easy and reasonably clear when and how to access them?

A.   No.

Q.   So turning to accessibility, Mr. Heath asked you about whether having on-campus early voting is more accessible for students.

Do you have any thoughts about whether Prairie View students face unique barriers related to transportation as compared to other voters in Waller County?

A.   Only that a large percentage of them don't have automobiles and they have to walk.

Q.   And having reviewed Commissioners Court

Deposition of Henry Flores, Ph.D.
12/10/2019
Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 415 of 677
Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 76

1  meeting minutes cited in your report, did you report
2  that those statements were made by students and shared
3  with members of the Commissioners Court as early voting
4  was being deliberated?
5      A.  Yes.
6      Q.  You talked about St. Mary's briefly during
7  your conversation with Mr. Heath, and you were asked
8  about on-campus early voting at St. Mary's.
9          What makes the St. Mary's student population
10 similar or different than the Prairie View student
11 population?
12     A.  Well, it's 70 percent Hispanic.  It's an HSI.
13         THE REPORTER:  I'm sorry, it's an HSI?
14         THE WITNESS:  Hispanic-Serving
15 Institution.
16         THE REPORTER:  Thank you.
17     A.  And 70 percent of that 70 percent are women.
18     Q.  (BY MS. ADEN)  How does the -- you reported in
19 your report about the political history, the long
20 history of political activism on Prairie View's campus.
21 How does that compare to St. Mary's?
22     A.  Well, there is no comparison.  I mean at St.
23 Mary's it's known as the cradle of the Chicano Civil
24 Rights Movement, but there was never any voting access
25 questions.  There was never any request to have a

Page 77

1  polling place put on a campus, ever.
2          Whereas Prairie View A&M, there's been a
3  continual history of demands and requests for voting
4  access.  There's been marches, there's been
5  demonstrations.  It's such an important event in the
6  history of Prairie View A&M that it's memorialized on
7  our web page.  It's part of the history's -- of the
8  university's culture.
9      Q.  And based upon your experience and your work
10 on this case, are you aware of any other Texas
11 university that has the same history with respect to
12 voting and access to voting as the Prairie View
13 University?
14     A.  No.  I mean it's so unique that it was even
15 cited as part of the reason that Texas was included
16 under the new Voting Rights Act that congress just
17 passed.
18     Q.  Speaking of history, Mr. Heath asked you about
19 specific events in 2018, and I believe 2013 that were
20 referenced in your report, related to voting
21 discrimination.  Just to clarify, and -- strike that.
22         Mr. Heath asked you about specific examples, I
23 believe from 2008 and also 2013 related to voting
24 discrimination.  And he asked you in particular for
25 specific sites to where you got that information?

Page 78

1      A.  Correct.
2      Q.  As a general matter, did you do a historical
3  analysis for purposes of your work in this case?
4      A.  No, I mean I relied on Dr. Joseph's research.
5      Q.  So the -- is it likely or can you tell me
6  whether the information about 2008 and 2013, whether
7  that was derived from Dr. Joseph's report or not?
8      A.  It was.
9      Q.  I'm wrapping up.  On the topic of rural
10 addressing which you discussed with Mr. Heath, are you
11 aware of -- oh, strike that.  I think I asked that
12 already.
13         Mr. Heath asked you about standardization of
14 the early voting.
15     A.  Uh-huh (Affirmative.)
16     Q.  You had a conversation about that.
17     A.  Yeah.
18     Q.  Do you have, based upon your experiences and
19 your work in this case, do you have an opinion about
20 whether standardization of early voting in Waller County
21 would resolve the issues that gave rise to this lawsuit?
22     A.  Only if part of the standardization process
23 was the siting of an early voting place, an election day
24 polling place on the Prairie View A&M campus for every
25 day of voting, for the equal number of hours that every

Page 79

1  regular vote polling place has.
2      Q.  And is that because this case, in your
3  understanding, is not just about the hours and dates of
4  early voting, but -- of early voting, but it's about
5  where early voting is located?
6      A.  Yes, I mean you're talking about the largest
7  group of eligible voters in the entire county.  Why are
8  they ignoring the largest group of eligible voters.  The
9  only reason I can think of is that they're 90 percent --
10 practically 90 percent African American and 90 percent
11 18 and 20 year-olds.
12     Q.  And is that a unique population in Waller
13 County?
14     A.  Absolutely unique.
15     Q.  So to this last -- and this is my last line of
16 questioning.  Mr. Heath asked you about some ways in
17 which Prairie View students are unlike what he termed I
18 believe, quote, regular residents, we'll refer to them
19 as non-student residents.
20     A.  Okay.
21     Q.  Okay.  Are there any differences?
22         (Laughter.)
23         MS. ADEN:  Thank you.
24     Q.  (BY MS. ADEN)  Are there any differences
25 between non-student Waller County residents and Prairie

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 416 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 80

1 View students that are relevant to your testimony beyond
2 the ones I think that you -- beyond anything that you
3 have already told me to date?
4     A.   Only that they're overwhelmingly black and
5 overwhelmingly young, 18 to 20 year-olds, they're two of
6 the protected groups under the Constitution of the
7 United States.  That's what makes them so unique.
8     Q.   And how does that compare to the other
9 populations in Waller County?
10     A.   Well, the rest of the populations are regular
11 voters.  I mean some are members of protected groups,
12 but you know, it's a very mixed up group of people when
13 you talk about the rest of the residents at Waller
14 County.
15     Q.   And what's the basis of your understanding for
16 the demographics of Waller County?
17     A.   That it's a majority white county.
18     Q.   What sources did you use to understand the
19 demographics of Waller County?
20     A.   The American Community Survey, U.S. Bureau of
21 Census Data.
22     Q.   Did you happen to review also the data
23 reported by Bill Cooper?
24     A.   Yes, also by Bill Cooper.
25     Q.   And then finally, you and Mr. Heath discussed

Page 81

1 visiting the JP and the VFW hall, is that Veterans --
2     A.   Of Foreign Wars.
3     Q.   -- Foreign Wars Hall.  And the JP stands for?
4     A.   Justice of the Peace.
5     Q.   Justice of the Peace.  Even if non-students
6 only go to those specific locations occasionally, do you
7 think it's fairly common for non-students of residents
8 of Waller County to travel around the county to various
9 locations?
10     A.   I don't know about the uniqueness of Waller
11 County, but you know, I drive through it all the time
12 and I just -- there's no reason for me to visit other
13 parts of Waller County.  I'm not sure what the rest of
14 the residents are like in that county.  I don't know how
15 they travel around Waller County, to tell you the truth.
16     Q.   I guess to put it another way, even if
17 non-students may infrequently go to the Veterans of
18 Foreign Wars --
19     A.   Veterans or Foreign Wars.
20     Q.   Veterans of Foreign Wars hall or some other
21 place, or the JP, even if they go there on occasion, it
22 is also the case that they go to lots of other places on
23 a more regular basis, like work, like the courthouse,
24 some other place?
25     A.   Oh, sure.

Page 82

1     Q.   So siting early voting at a place that people
2 go infrequently, doesn't tell you anything about where
3 they might go frequently?
4     A.   Correct.
5     Q.   But siting early voting at a place that is
6 frequently used by a particular group of students who do
7 not have transportation, does that tell you anything in
8 this -- the context of this case?
9         MR. HEATH:  Form.
10     Q.   (BY MS. ADEN)  Strike that.  That was a
11 horrible thing.  Strike that.
12         Based upon your experiences and also what you
13 heard from reviewing Commissioners Court meeting
14 minutes, is it common for Prairie View students to
15 travel off campus around the county?
16     A.   Not that I -- no, not really.  I mean I don't
17 know that for sure but I -- you know, I really can't
18 say.
19     Q.   And based upon your experiences in either what
20 you heard people tell the Commissioners Court or what
21 you reviewed from any of the other expert reports, is
22 there a difference in transportation access and
23 flexibility to move about the county between Prairie
24 View students and non-Prairie View students?
25     A.   Well, Waller County is a very rural county and

Page 83

1 I would think it would be very difficult to move about
2 the county on foot, including me.
3     Q.   Okay.  Having been to Waller County, have you
4 ever seen a bus, a public bus?
5     A.   No.
6     Q.   Do you know one way or the other whether
7 there's public transportation?
8     A.   No, I do not.
9         MS. ADEN:  I will pass back potentially.
10         MR. HEATH:  I have just a very few
11 questions.
12         THE WITNESS:  Okay.
13         FURTHER EXAMINATION
14 BY MR. HEATH:
15     Q.   You were asked just now about whether there
16 was any evidence that -- or the election administrator
17 reached out to these Prairie View students --
18     A.   Uh-huh (Affirmative.)
19     Q.   -- in setting the early voting sites.  Do you
20 have any evidence whether she reached out to residents
21 of Hempstead, Waller, Brookshire, Fieldstore or any of
22 those places?
23     A.   I do not know that.
24     Q.   You mentioned about Exhibit 6 which included
25 the dropdown --

Deposition of Henry Flores, PhD
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 417 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 84

1  A.  Right.
2  Q.  -- box.  And said that that was not there.
3  Now are you saying that the box wasn't there or that the
4  reference to the video wasn't there?
5  A.  No, the way this is configured, it wasn't
6  configured this way originally when I went there to go
7  to the site.
8  Q.  Okay.  When you click --
9  A.  It looks like it's been redesigned completely.
10  Q.  When you clicked on the date, did it bring up
11  a box similar to the one shown?
12  A.  No.  What it brought up was the agenda.  And
13  in the agenda itself on the bottom is where it had the
14  items.  And if you hit the items, some of them were
15  hyperlinked and some of them weren't.  That's how the
16  information came up.
17  Q.  Was item 6 or item 8, I think it was on the
18  September meeting item 17 on the August meeting, were
19  those hyperlinked?
20  A.  No.  I didn't know it was hyperlinked the
21  first time I went through it.
22  Q.  Okay.
23  A.  That's why I didn't notice it.  Second time I
24  went through it I did discover it.
25  Q.  But you're not saying it wasn't hyperlinked at

Page 85

1  that time?
2  A.  I'm just saying I didn't discover it.
3  Q.  You didn't discover it.  Do you know if the
4  question about whether the posting was there at the time
5  before the meeting, do you know if counties that
6  maintain a county website are required to post the
7  notices of the meeting on the website?
8  A.  I don't know what the state law says on that.
9  Q.  Okay.  But if it does, would you expect that
10  they posted it?
11  A.  If the state law says so, sure.
12  Q.  Okay.
13  MR. HEATH:  Pass the witness.
14  MS. ADEN:  One very minor clarification.
15  FURTHER EXAMINATION
16  BY MS. ADEN:
17  Q.  Looking back at Exhibit 6, in the event
18  details box in the description line it specifically
19  identifies item 17.  Do you see that?
20  A.  Yes.
21  Q.  Okay.  And if you go to item 17 in the
22  documents, item 17 refers to the:  Discuss and take
23  action to improve Early Voting locations and Election
24  Day polling locations to be used in the November 6, 2018
25  General Election.

Page 86

1  Is that accurate?
2  A.  Yes.
3  Q.  Do you remember when you went to look up this
4  calendar and look for this item whether item 17 was
5  specifically identified in the pop-up box that --
6  A.  It wasn't identified in the pop-up box.  It
7  was identified in the agenda, like it is right there.
8  Q.  So it's possible -- so if it wasn't identified
9  in this event details, it's possible that this has been
10  changed since the time that you saw it?
11  A.  Yes, because I had to read each agenda item in
12  order to find where the discussion on any access to --
13  any discussion on polling sites on any of the agendas
14  were, so I went through a lot of different agendas.
15  Q.  And do you --
16  A.  And I remember reading them all.
17  Q.  And do you remember about when, what month you
18  started poking around the Commissioners Courts looking
19  for these, looking for this information?
20  A.  No, but I have it in my records at home.
21  Q.  But it wasn't August 2018?
22  A.  I don't know.  I have to check my records to
23  give you the exact.
24  Q.  If I represent to you that we filed this
25  lawsuit in October of 2018, is it likely that you would

Page 87

1  have been poking around the Commissioners Court's
2  website before October 2018?
3  A.  Oh, yeah.
4  Q.  You would have been?
5  A.  Sure.
6  Q.  Why?
7  A.  You filed the lawsuit?  No, no, no.
8  Q.  We didn't file until October --
9  A.  No, no, no.
10  Q.  Is it likely that you would have been poking
11  around prior to October of 2018?
12  A.  No, no, no, no.  He didn't contact me until
13  much later than that.
14  MS. ADEN:  That's all.
15  MR. HEATH:  No more questions.
16  MS. ADEN:  Beat a dead horse.
17  (Proceedings concluded at 4:31 p.m.)

Deposition of Henry Flores, Ph.D.
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 418 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 88

1    CHANGES AND SIGNATURE
2  WITNESS NAME:  HENRY FLORES, Ph.D.
3  DATE:  DECEMBER 10, 2019
4  PAGE LINE    CHANGE      REASON
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

Page 89

1    I, HENRY FLORES, Ph.D., have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5          _____
6              HENRY FLORES, Ph.D.
7  THE STATE OF _____)
8  COUNTY OF _____)
9
10    Before me, _____, on this day
11 personally appeared HENRY FLORES, Ph.D., known to me to
12 be the person whose name is subscribed to the foregoing
13 instrument and acknowledged to me that they executed the
14 same for the purposes and consideration therein
15 expressed.
16    Given under my hand and seal of office this _____
17 day of _____, 2019.
18
19
20          _____
21          NOTARY PUBLIC IN AND FOR
22          THE STATE OF _____
23          COMMISSION EXPIRES:_____
24
25

Page 90

1    IN THE UNITED STATES DISTRICT COURT
2   FOR THE SOUTHERN DISTRICT OF TEXAS
        HOUSTON DIVISION
3  JAYLA ALLEN, DAMON JOHNSON, &
   TREASURE SMITH, and THE      &
4  PANTHER PARTY,               &
        Plaintiffs,             &
5                               &
   V.                           &    Civil Action No.
6                               &    4:18-CV-3985
   WALLER COUNTY TEXAS; THE     &
7  WALLER COUNTY COMMISSIONERS &
   COURT; JUDGE CARBETT J. "TREY" &
8  J. DUHON III, in his         &
   official capacity as the     &
9  Waller County Judge; and     &
   CHRISTY A. EASON, in her     &
10 official capacity as the      &
   Waller County Elections      &
11 Administrator,                &
        Defendants.             &
12
13        REPORTER'S CERTIFICATION
      DEPOSITION OF HENRY FLORES, Ph.D.
14          DECEMBER 10, 2019
15    I, Aubrea Hobbs, Certified Shorthand Reporter in
16 and for the State of Texas, hereby certify to the
17 following:
18    That the witness, HENRY FLORES, Ph.D., was duly
19 sworn by the officer and that the transcript of the oral
20 deposition is a true record of the testimony given by
21 the witness to the best of my ability;
22    That the deposition transcript was submitted on
23 _____ to the witness or to the attorney
24 for the witness for examination, signature and return to
25 me by _____;

Page 91

1    That the amount of time used by each party at the
2  deposition is as follows:
3    MR. C. ROBERT HEATH:  1 hour, 34 minutes
4    MS. LEAH C. ADEN:  28 minutes
5    That pursuant to information given to the
6  deposition officer at the time said testimony was taken,
7  the following includes counsel for all parties of
8  record:
9  FOR THE PLAINTIFFS:
     Ms. Leah Aden, Esq.
10        -and-
     Mr. John Cusick, Esq.
11        -and-
     Mr. Steven Lance, Esq.
12 NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.:
     40 Rector Street, 5th Floor
13   New York, New York 10006-1738
     E-mail: laden@naacpldf.org
14   E-mail: jcusick@naacpldf.org
     E-mail: slance@naacpldf.org
15
16
   FOR THE PLAINTIFFS:
17   Mr. Tyler Ames, Esq.
     NORTON ROSE FULBRIGHT, US, LLP
18   Fulbright Tower
     1301 McKinney Street, Suite 5100
19   Houston, Texas 77010-3095
     E-mail: tyler.ames@nortonrosefulbright.com
20
21
   FOR THE DEFENDANTS:
22   Mr. C. Robert Heath, Esq.
     BICKERSTAFF HEATH DELGADO ACOSTA, LLP
23   3711 S. MoPac Expressway, Building One, Suite 300
     Austin, Texas 78746
24   E-mail: bheath@bickerstaff.com
25

Deposition of Henry Torrey Pope
12/10/2019

Case 4:18-cv-03985   Document 73-2   Filed on 01/24/20 in TXSD   Page 419 of 677

Jayla Allen, Damon Johnson, Treasure Smith, and The Panther Party vs. Waller Cty

Page 92

1     That $_____ is the deposition officer's
2   charges to the Defendants for preparing the original
3   deposition transcript and any copies of exhibits;
4     I further certify that I am neither counsel for,
5   related to, nor employed by any of the parties or
6   attorneys in the action in which this proceeding was
7   taken, and further that I am not financially or
8   otherwise interested in the outcome of the action.
9     Certified to by me this _____ of
10  _____, 2019.
11
12
13  Aubrea Hobbs, TX CSR # 7143
    Expiration Date:  1/31/21
14  Firm No. 810
    Encase Legal (The Document Group)
15  1010 Lamar Street, Suite 120
    Houston, Texas 77002
16  800-538-3745
    www.encaselegal.com
17  courtreporting@encaselegal.com
18
19
20
21
22
23
24
25



Waller County Community Center – 21274 FM 1098 Loop
PVAMU Memorial Student Center – 155 L.W. Minor Street
Distance of 1,495.26 feet or 0.283 miles
Some on-campus housing facilities are farther from the Student Center than the Community Center is

# November 6, 2018 Election Law Calendar

The uniform election date in November of even-numbered years, by statute, is the general election date for federal, state, and county officers. Additionally, many local political subdivisions have their regular general election for members of their governing bodies in November of even-numbered years, or they may order special elections for this date to vote on propositions or to fill vacancies. Therefore, this calendar is required to meet the needs of many different governmental bodies. If there are questions about the applicability of something in this calendar to your specific election, do not hesitate to call the Elections Division of the Office of the Texas Secretary of State at 1-800-252-VOTE (8683).

## Notes

1. Campaign Information
2. Submissions to the U.S. Department of Justice
3. Statutory and Administrative Code References
4. Required Use of County Polling Places
5. Notice of Candidate Filing Periods
6. Joint Election Requirement for School Districts
7. Joint Elections Generally
8. Notice of Elections
9. Extended Early Voting Hours and Branch Locations
10. Notice of Previous Polling Place
11. Note on Notice of Change of Polling Place
12. Testing Tabulating Equipment
13. Note on Voting Order Priority for Voters with Mobility Issues
14. Note on new law regarding faxed or emailed ABBMs and faxed FPCAs

## 1. Note on Campaign Information

Under Title 15 of the Texas Election Code, candidates running for an office must file campaign contribution and expenditure reports. For further information and all questions about such disclosure filings, campaign finance, and political advertising, please contact the Texas Ethics Commission at 201 E. 14th, 10th Floor, Austin, Texas 78701; or call 512-463-5800.

## 2. Note on Submissions to the U.S. Department of Justice

On June 25, 2013, the United States Supreme Court issued its decision in Shelby County v. Holder, 133 S. Ct. 2612 (2013). The Supreme Court's decision holds that Section 4 of the federal Voting Rights Act of 1965 is unconstitutional and its formula can no longer be used as a basis for subjecting jurisdictions to preclearance. Accordingly, unless and until there is new law from the United States Congress signed by the President or other court order, the Texas Attorney General has advised the Secretary of State that it is no longer required to submit voting changes to the DOJ for preclearance. We suggest that Texas counties or other Texas political subdivision discuss the effect of Shelby and the continuing applicability of other provisions of the Voting Rights Act with their legal counsel.

## 3. Note on Statutory and Administrative Code References



EXHIBIT 5
WIT: Flores
DATE: 12|10|19
Aubrea Hobbs, CSR, RPR

Unless otherwise indicated, all references are to the Texas Election Code. The county election officer is the county clerk, the county elections administrator, or the county tax assessor-collector, depending on the actions of the county commissioners court. (Secs. 31.031; 31.071; 31.091). The county voter registrar is the county clerk, the county elections administrator, or the county tax assessor collector, depending on the actions of the county commissioners court. (Secs. 12.001; 12.031; 31.031; 31.071).

## 4. Note on Required Use of County Polling Places

**Political subdivisions holding an election on the November uniform election date MUST use county election precincts and the county polling places on election day.** This is the case even when the county has adopted the **countywide polling place system**; in that case the entity **must** have a presence in every countywide location in the county, not just the locations physically within the territory of the political subdivision. (Secs. 42.002; 43.004; 43.007(e)).

> NOTE: As this election is being held on the date of the general election for state and county officers, **no consolidation of county election precincts may occur**. (Secs. 42.002(b); 42.008; 42.009).

In an election held by a political subdivision other than a county on the November uniform election date, and in which the political subdivision is not holding a joint election with a county in accordance with Chapter 271 of the Code, or has not executed a contract for election services with a county elections officer pursuant to Chapter 31 of the Code under which the political subdivision and the county share early voting polling places for the election, the political subdivision **must** designate as one of its own early voting sites one of the early voting sites established by the county (other than a movable site established under Section 85.062(e) of the Code) that is located in the political subdivision. If such a shared polling place is designated as the **main** early voting polling place by the political subdivision, it must be open for voting for all political subdivisions the polling place serves for at least the days and hours required of a main early voting polling place for the political subdivision making the designation. (Sec. 85.010; 85.002; 85.062(e)).

> NOTE: The deadline for counties who were not previously designated as "Successful" or counties applying to the program for the first time to submit their proposed written plans to participate in the countywide polling place program for the November 6, 2018 general election date is Thursday, August 23, 2018. *See* 2018 Opportunities to Use Countywide Polling Places and Countywide Polling Place Program FAQs.

## 5. Note on Notice of Candidate Filing Periods

The authority with whom an application for a place on the ballot is filed must post a Notice of Deadline to File Applications for Place on the Ballot (PDF), listing the filing period dates in a building in which the authority maintains an office. The notice must be posted not later than the 30th day **before** the first day to file. (Sec. 141.040). If you order a special election to fill a vacancy, the order must include the filing deadline; we recommend posting the notice of the filing period as soon as practicable after a special election is ordered. Note that an application for a place on the ballot for a special election may not be filed before the election is ordered.

## 6. Note on Joint Election Requirement for School Districts

The joint election requirement for school trustee elections under Section 11.0581 of the Education Code is met by complying with the requirement of using county election precincts on election day per Section 42.002 of the Election Code.

## 7. Note on Joint Elections Generally

Many entities will have joint elections for the November 6, 2018 election. Note that the entries in this calendar are generally written in terms of elections held individually rather than jointly. For example, cities are advised about conducting two 12-hour days for early voting. However, we have long advised different entities who conduct early voting together to coordinate their early voting hours, which may result in entities other than cities also holding early voting on two 12-hour days. On the other hand, depending on the plan, different entities may choose to do different things separately, i.e., not holding early voting together. Not all joint election plans are alike. With a few exceptions,

we do not discuss the impact of coordinating rules for a joint election, as we think this would make the calendar longer and confusing. We encourage joint election partners to read through the entire calendar, taking note of the rules affecting the partner entities and to address the differences within the agreement itself. If you have questions about how different rules apply to a particular joint election plan, please contact our office by phone or email.

## 8. Note on Notice of Elections

Political subdivisions other than cities and school districts may have specific statutory notice requirements. In the absence of specific statutory requirements, political subdivisions must post a notice of election, which must include the location of each polling place, on the bulletin board used for posting notices of the meetings of the governing body of the political subdivision that the authority serves, on or before the 21st day before the election. (Sec. 4.003(b)). For the Tuesday, November 6, 2018 election, this notice must be posted on or before Tuesday, October 16, 2018. The general rule is that, additionally, notice must be given using one of the following methods:

A. By posting a notice at a public place in each election precinct in which the election is to be held on or before the 21st day before the election, Tuesday, October 16, 2018. (Sec. 4.003(a)(2)).
B. By publishing the notice at least once not earlier than the 30th day or later than the the 10th day before the election, Sunday, October 7, 2018 – Saturday, October 27, 2018. (Sec. 4.003(a)(1)).
C. By mailing a copy of the notice to each registered voter of the territory covered by the election, not later than the 10th day before election day, Saturday, October 27, 2018. (Sec. 4.003(a)(3)).

**This notice must include:**

1. The type and date of the election;
2. The location of each polling place;
3. The hours the polls will be open;
4. The location of the main early voting polling place;
5. The regular dates and hours for early voting by personal appearance;
6. The dates and hours of any Saturday or Sunday early voting, if any; and
7. The early voting clerk's mailing address.
8. We *recommend* that the information regarding branch early voting locations be included as part of your notice.

The following forms may be used:

-Notice of General Election for Counties (PDF)
-Notice of General Election for Cities (PDF)
-Notice of General Election for Other Political Subdivisions (Including Schools) (PDF)
-Notice of Special Election for Counties (PDF)

**Note for All Political Subdivisions:** The election notice shall be posted on the political subdivision's website, if the political subdivision maintains a website. For political subdivisions other than counties or cities, the original order and notice should include all days and hours for early voting by personal appearance, including voting on **ANY** Saturday or Sunday. (Secs. 85.006; 85.007). **Note for cities and counties**, the election notice must be subsequently amended to include voting ordered for **ANY** Saturday or Sunday and must be posted on the political subdivision's website, if maintained.

**Note for Bond Elections:** Entities holding bond elections must provide additional notice per Section 4.003(f). A debt obligation order under Section 3.009 must be posted:

1. On election day and during early voting by personal appearance, in a prominent location at each polling place.
2. Not later than the 21st day before the election, in three public places in the boundaries of the political subdivision holding the election.

3. During the 21 days before the election, on the political subdivision's Internet website, prominently and together with the notice of the election and the contents of the proposition, if the political subdivision maintains an Internet website.

**Note for Counties for the General Election for State and County Officers:** Counties are required to publish their notice in a newspaper in accordance with Section 4.003(a)(1). Counties must also post a copy of the notice on the governmental bulletin board used for posting notice of public meetings no later than the 21st day before election day, Tuesday, October 16, 2018. (Sec. 4.003(b))

**Note for Cities and School Districts:** Cities and school districts are required to publish their notice in a newspaper in accordance with Section 4.003(a)(1)(See B, above) and may also give any additional notice.  (Sec. 4.003(c)). School districts and cities must also post a copy of the notice on the governmental bulletin board used for posting notice of public meetings no later than the 21st day before election day, Tuesday, October 16, 2018. (Sec. 4.003(b)).

**Note for Home-Rule Charter Cities:** Home-rule cities MUST also give notice as provided in their charters.

**Note for Cities:** Cities must choose **two weekdays** to be open for 12 hours during the regular early voting period. The city council must choose the two weekdays and the hours the site will be open, and include that information in the notice. (Sec. 85.005(d)).

**Notice for Political Subdivisions, Except Counties, School Districts, and Cities:** Political subdivisions other than counties, school districts, and cities may have specific statutory election notice requirements either in their enabling acts or in the Code governing them (such as the Water Code). In the absence of specific statutory requirements, such political subdivisions must post a copy of the notice on the bulletin board used for posting notices of the meetings of the governing body of the political subdivision on or before the 21st day before election day, Tuesday, October 16, 2018. (Sec. 4.003(b)).

**Note for All Political Subdivisions, Except Counties:**  The governing body of a political subdivision must deliver notice of the election to the county election officer and voter registrar of each county in which the political subdivision is located not later than the 60th day before election day, Friday, September 7, 2018. (Sec. 4.008)

## 9. Note of Extended Early Voting Hours and Branch Locations

**Note for Counties with Population of 100,000 or more:** Early voting in the general election for state and county officers must be conducted at the main early voting location: (1) for at least 12 hours on each weekday of the last week of the early voting period, (2) for at least 12 hours on the last Saturday of the early voting period, **AND** (3) for at least 5 hours on the last Sunday of the early voting period. (Secs. 85.005(c); 85.006(e)).

**Note for Counties with Population of less than 100,000:** Early voting in the general election for state and county officers must be conducted at the main early voting location on the weekdays of the early voting period and during the hours that the county clerk's main office's business office is regularly open for business. (Sec. 85.005(a)). However, upon receipt of a written request by at least 15 registered voters of the county for extended hours to the early voting clerk, early voting in a general election for state and county officers must be conducted at the main early voting location for at least 12 hours on each weekday of the last week of the early voting period. (Sec. 85.005(c)). The written request must be submitted in time to enable compliance with Section 85.067. (Secs. 85.005(c); 85.067(c)).

**Saturdays and Sundays for Counties with Population of less than 100,000:** Counties with a population under 100,000 are not required to conduct early voting on Saturday or Sunday in the general election for state and county officers. However, the county election officer may order early voting on a Saturday or Sunday, and determine the hours for such Saturday or Sunday early voting. This must be done by written order. (Secs. 85.006(b); 85.006(c)). Notice of Saturday or Sunday early voting must be posted continuously for at least 72 hours immediately preceding the first hour that voting will be conducted. (Sec. 85.007(c)). The notice shall be posted on the bulletin board used for posting notice of meetings of the commissioners court, as well as on the political subdivision's website, if maintained. (Secs. 85.007(c); 85.007(d)).

Also, for counties with a population under 100,000, if the early voting clerk receives a written request by at least 15 registered voters of the county, early voting in a general election for state and county officers must be conducted at the main early voting location for at (1) least 12 hours on the last Saturday of the early voting period, and (2) for at least 5 hours on the last Sunday of the early voting period. (Sec. 85.006(e)).  The request for Saturday and Sunday hours must be received in time for the early voting clerk to comply with the 72-hour posting requirement before the start of early voting.  (Secs. 85.006(e); 85.007(c)).

**Note about branch early voting in the November General Election for state and county officers**:

The commissioners court:

(1)  in a county with a population of 400,000 or more, **must** establish one or more temporary polling places, other than the main early voting polling place, in each state representative district containing territory covered by the election.  The temporary polling place(s) must remain open the same days as the main early voting polling place, but the commissioners court determines the hours during which voting is to be conducted, unless a written request signed by 15 registered voters requesting the same number of hours as the main polling place is timely filed with the commissioners court;

(2)  in a county with a population of 120,000 or more but less than 400,000, **must** establish one or more temporary polling places, other than the main early voting polling place, in each commissioners precinct containing territory covered by the election. The temporary polling place(s) must remain open the same days as the main early voting polling place, but the commissioners court determines the hours during which voting is to be conducted, unless a written request signed by 15 registered voters requesting the same number of hours as the main polling place is timely filed with the commissioners court; or;

(3)  in a county with a population of 100,000 or more but less than 120,000, **must** establish one or more early voting polling places in each commissioners court precinct for which the commissioners court receives a timely filed written request signed by at least 15 registered voters of that precinct. The temporary polling place(s) must remain open the same days as the main early voting polling place, but the commissioners court determines the hours during which voting is to be conducted, unless a written request signed by 15 registered voters requesting the same number of hours as the main polling place is timely filed with the commissioners court. (Secs. 85.062; 85.064).

**Note**: If a county has a population under 100,000, the location, days, and hours of temporary branch locations may be established **only** by the commissioners court.  **No petition process is available**. (Sec. 85.065).

**Note**: A temporary branch polling place that is "movable" may be established only with the approval of the county clerk.  If a movable temporary branch polling place is established on the request of a political party, each other political party whose nominee for Governor in the most recent gubernatorial general election received more than 10 percent of the total number of votes received by all candidates for Governor in the 2014 election, is entitled to the establishment of such a polling place.  The election officers serving a polling place covered by this subsection must be appointed from the list submitted by the county chairs to the early voting clerk and, to the extent possible, must be affiliated or aligned with different political parties. (Sec. 85.062(e)).

**Note**: In a countywide election, the total number of permanent branch polling places and temporary branch polling places open for voting at the same time in a commissioners precinct may not exceed twice the number of permanent branch and temporary branch polling places open at that time in another commissioners precinct.  (Sec. 85.062(f)).

**Note for All Political Subdivisions, *Except* Counties & Cities**: Voting on **ANY** Saturday or Sunday **must** be included in the order and notice of election.  The order and notice must include the dates and hours of Saturday or Sunday voting. (Secs. 85.006; 85.007).  The election notice must be posted on the political subdivision's website, if the political subdivision maintains a website. (Sec. 85.007).  The political subdivision **must** have early voting on Saturday or Sunday, *if a* written request is received from at least 15 registered voters of the political subdivision in time to comply with the posting requirement. (Sec. 85.006(d)). **The request must be submitted in time to be included in the order and notice of election.** (Secs. 85.006; 85.007)

**Note for Cities**: Cities must choose **two weekdays** for the main early voting polling place to be open for 12 hours during the regular early voting period.  The city council must choose the two weekdays. (Sec. 85.005(d))

The city secretary may also order early voting on a Saturday or Sunday, and determine the hours for such Saturday or Sunday early voting. This must be done by written order. (Secs. 85.006(b); 85.006(c)). Notice of Saturday or Sunday early voting must be posted continuously for at least 72 hours immediately preceding the first hour that voting will be conducted. (Sec. 85.007(c)). The notice shall be posted on the bulletin board used for posting notice of meetings of the city's governing body if the early voting clerk is the city secretary, as well as on the political subdivision's website, if maintained. (Secs. 85.007(c); 85.007(d)). The city secretary **must** have early voting on Saturday or Sunday, *if a* written request (PDF) is received from at least 15 registered voters of the city. The written request for Saturday and Sunday hours **must** be received in time for the early voting clerk to comply with the 72-hour notice posting requirement before the start of early voting. (Secs. 85.006(d); 85.007(c)).

## 10. Note on Notice of Previous Polling Place:

If a different polling place is being used from the previous election held by the same authority, a Notice of Previous Precinct (PDF) must be posted at the entrance of the previous polling place informing voters of the current polling place location, if possible. (Sec. 43.062).

## 11. Note on Notice of Change of Polling Place Location:

For elections ordered by the **Governor or county judge only**, if the location of the polling place changes after notice has been given under Section 4.003 of the Texas Election Code, and the county election officer maintains a website to inform voters about elections, the notice of the change must be posted on the website. The notice on the website must be posted not later than the earlier of 24 hours after the location was changed or 72 hours before the polls open on election day. (Sec. 43.061). If the county election officer is conducting a legislative vacancy election, the candidates listed on the ballot are entitled to receive notice directly from the county judge. **As a reminder, notice should also be provided to the Secretary of State regarding any changes made to the location of polling places.**

## 12. Note on Testing Tabulating and Electronic Voting Equipment

### Note on Ballot Testing:

Once all candidate filing deadlines have passed, we recommend that you proof and test your ballot programming as soon as possible. Early testing will allow adequate time to locate any errors and make any necessary corrections in ballot programming. We also strongly suggest that you have candidates proof their names and offices before finalizing the ballot to avoid the necessity for last minute ballot corrections.

### Note on Logic and Accuracy Test:

We recommend establishing a date to perform the test of your electronic voting equipment (L&A, or Logic and Accuracy Test) as soon as possible. We recommend that this test be performed on a date that allows time to correct programming and retest, if necessary. A notice of this test must be published by the custodian of the electronic voting equipment at least 48 hours before the date of the test. (Sec. 129.023; Tex. Sec'y of State Election Advisory No. 2014-06). The L&A test must be conducted not later than 48 hours before voting begins on a voting system. (Sec. 129.023).

### Note on Testing Tabulating Equipment:

The automatic tabulating equipment used for counting ballots at a central counting station must be tested three times for each election. (Ch. 127, Subch. D). We recommend you test the equipment as soon as possible; early testing will allow adequate time to locate any errors and make any necessary corrections in programming. However, the first test **must be conducted at least 48 hours before** the automatic tabulating equipment is used to count ballots voted in the election. The second test shall be conducted immediately before the counting of ballots with the equipment begins. The third test must be conducted immediately after the counting of ballots with the equipment is completed. Please note that the custodian of the automatic tabulating equipment must publish notice of the date,

hour, and place of the first test in a newspaper at least 48 hours before the date of the test. (Sec. 127.096). The electronic files created from the L&A testing are what must be used for testing the tabulating equipment. (Tex. Sec'y of State Election Advisory No. 2014-06).

Precinct tabulators must also be tested in accordance with the procedures set forth in Chapter 127, Subchapter D of the Texas Election Code to the extent those procedures can be made applicable. (Sec. 127.152; Tex. Sec'y of State Election Advisory No. 2014-06).

Our recommendation is that both L&A testing and testing of the automatic tabulating equipment take place prior to ballots by mail being sent out. However, should there be a reason to delay testing, please be advised that L&A testing must be conducted at least 48 hours before voting begins on a voting system. This means that L&A testing should be completed before early voting and possibly, before election day, if your election day system is different than your early voting system. Additionally, the automatic tabulating equipment may not be used to count ballots voted in the election until a test is successful.

For more information on testing tabulating equipment used at the central counting station, please see Chapter 127, Subchapter D of the Election Code and Tex. Sec'y of State Election Advisory No. 2014-06. See Chapter 129, Subchapter B of the Election Code and Tex. Sec'y of State Election Advisory No. 2014-06 for other types of testing such as functionality tests, logic and accuracy tests, tests for central accumulators, etc. *See also* Tex. Sec'y of State Election Advisory No. 2017-17.

## 13. Note on Voting Order Priority

**NEW LAW:**  Section 63.0013, as amended by House Bill 658 (85th Legislature, RS 2017) provides that an election officer may accept a person with a mobility problem that substantially impairs a person's ability to ambulate who is offering to vote before accepting others offering to vote at the polling place who arrived **before** the person.  For additional information, please see our **Election Judges and Clerks Handbook.**

The *recommended* time to include this notice on a county website is when the Notice of Election is also posted on the website. (Sec 85.007(d)).  *See* Note regarding Notice of Elections.

**Cities, Schools, and Other Political Subdivisions:** It is *strongly recommended* that the notice regarding accepting voters with certain disabilities also be posted on the subdivision's website, if one is maintained by the political subdivision.

## 14. Note on new law regarding faxed or emailed ABBMs and faxed FPCAs

**NEW LAW: SB 5** (85th Legislature, 1st CS, 2017), **effective December 1, 2017**, provides that if an ABBM is faxed or emailed or if an FPCA is faxed, then the applicant **must** submit the ORIGINAL application BY MAIL to the early voting clerk so that the early voting clerk **receives the original no later than the 4th business day after receiving the emailed or faxed ABBM or faxed FPCA.**  If the early voting clerk does not receive the original ABBM or FPCA by that deadline, then the emailed or faxed ABBM or faxed FPCA will be considered incomplete. An original hardcopy ABBM received after the 4th business day deadline but received by the 11th day before election day would entitle the voter to receive a ballot for the election.

The early voting clerk should retain a copy of the FPCA for their own records, but should send the FPCA submitted by the voter to the Voter Registrar for registration purposes.

If a voter faxes or emails the ABBM or faxes the FPCA, the date the early voting clerk receives the FAX or EMAIL is considered the date of submission.  Essentially, the faxed or emailed form serves as a place-holder for the voter. Therefore, a voter whose application was faxed or emailed by the 11th day before election day (the deadline), and whose original application is received on or before the 4th business day after that date, would still be entitled to receive a ballot for the election (if otherwise eligible).  The early voting clerk will have to hold the faxed or emailed ABBM or faxed FPCA until the clerk receives the original, and would only send the voter a ballot if the original is received by

the 4th business day after the faxed or emailed ABBM or faxed FPCA was received. *See* Tex. Sec'y of State Election Advisory No. 2018-02.

   **NOTE:**  The requirement to mail the original application does not apply to an **emailed** FPCA.

# Calendar of Events

## May

**Thursday, May 10, 2018 (180th day before Election Day)**

First day to accept applications for state write-in ballots for the November 6, 2018 election. (Sec. 105.002).

**Tuesday, May 29, 2018 (75th day after minor party precinct conventions)**

Deadline for minor party chairs to submit petitions and precinct convention lists to Secretary of State and to the appropriate county clerk (or other county election official) for placement on the ballot.  (Secs. 1.006; 181.005(a); 181.006(b)(3); 182.003; 182.004). **The deadline is extended to the next regular business day which is Tuesday, May 29, 2018 due to the 75th day falling on Sunday, May 27, 2018 and Monday, May 28, 2018 is Memorial Day, a state legal holiday. (Sec. 1.006).**

## June

**Monday, June 11, 2018 (20th day after Runoff Primary Election Day)**

First day of new term for political party county and precinct chairs elected in the March 6, 2018 Primary Election. (Sec. 171.022(c)).

**Thursday, June 21, 2018 (30th day before Saturday, July 21, 2018, "first day to file"; 30th day after Runoff Primary Election Day)**

**Counties:  5:00 p.m.** — Filing deadline for independent candidate's application for place on ballot (PDF) and petition (PDF) for the November General Election for state and county officers. (Sec. 142.006). *See* Independent Candidates Guide.

**Cities, Schools and Other Political Subdivisions:** Deadline to post Notice of Deadline to File Applications for Place on the Ballot (PDF)in a public place in a building in which the authority maintains an office. The notice must be posted not later than the 30th day before the first day to file. (Sec. 141.040; Sec. 49.113 Water Code).

   **NOTE - Water Districts:** The notice must be posted at the district's administrative office or at the public place established by the district under Section 49.063 of the Water Code. (Sec. 49.113 Water Code).

**Saturday, June 30, 2018 (last day in June)**

In a county with a population of **over 500,000**, deadline for party chairs to submit to county commissioners court a list of eligible persons for precinct presiding election and alternate presiding judges for appointments, as well as for presiding and alternate presiding judges of central counting station for appointments for the November General Election for state and county officers. (Secs. 1.006; 32.002(a)(1), (c); 127.005(e)).

Deadline for party chairs to submit to county election officer the list of eligible persons to serve as election officers for the main and any branch early voting location for the November General Election for state and county officers. (Sec. 85.009).

Recommended date that party chairs, in a county with a population of **over 500,000**, submit to the county election board a list of names of eligible persons to serve on the early voting ballot board for the November General Election for state and county officers. (Sec. 87.002(c), (d)). **NOTE: This is not a deadline; just a recommendation.**

      **NOTE:**  A signature verification committee may be appointed at a later date. (Sec. 87.027).

**Political Subdivisions Other than Counties:  For recommended date to appoint your presiding election judges,** *see* **entry under** <u>August 20, 2018</u>.


# July

**Monday, July 2, 2018 – Monday, October 1, 2018**

Recommended timeframe for the **county election board** in a **county with a population of over 500,000** to appoint the members to the early voting ballot board for the November General Election for state and county officers. (Sec. 87.002(c), (d)). Section 87.002(c) of the Election Code does not provide a deadline for the county election board to make such appointments. **NOTE: This is not a deadline; just a recommendation. October 1 is the recommended deadline because of various notice requirements.**

It is also recommended that the commissioners court, in a county with a population of **over 500,000**, appoint during its July term the central counting station manager, tabulation supervisor, and assistants to the tabulation supervisor if it has established a central counting station. (Secs. 127.001; 127.002; 127.003; 127.004). **NOTE: This is not a deadline; just a recommendation.**

**Saturday, July 21, 2018 (30ᵗʰ day before Monday, August 20, 2018, regular filing deadline for a place on the ballot)**

**Counties:**   First day to file a <u>Declaration of Write-In Candidacy (PDF)</u> and accompanying filing fee or nominating <u>petition (PDF)</u> in lieu of filing fee with the county judge or Secretary of State, as applicable, for the November General Election for state and county officers. (Secs. 146.023; 146.0231; 146.0232; 146.025(a); 172.024; 172.025).  *See* <u>Write-In Candidates Guide.</u>

**Political Subdivisions Other Than Counties**: First day to file an application for a place on the ballot or a declaration of write-in candidacy. (Secs. 143.007(a); 144.005(a); 146.054 Election Code; Secs. 11.055; 11.056; 130.082(g); 130.0825 Educ. Code). *See* Candidacy Filing outline for more details. The following forms are available on the Secretary of State's website:

- <u>Application for Place on City/School/Other Political Subdivision Ballot (PDF)</u>

- If your home rule city or special law district allows for a petition, the following petition may be used:  <u>Petition for Place on the City General Election Ballot (PDF)</u>

- <u>Declaration of Write-In Candidacy for City, School, or other Political Subdivisions</u>

**NOTE:** We are often asked how filing can begin if you have not yet ordered the general election. You do not need to order your **general** (regularly occurring) election in order for the filing period to begin.

**NOTE: Cities, Schools, and Other Political Subdivisions:** At least part of the candidate filing period will occur during the summer break for school districts. Additionally, there are political subdivisions that do not have office hours on all days of the business week (Monday through Friday) or do not have an office that is open for eight hours each day of the business week. The Elections Division recommends that political subdivisions take steps to have someone available for a few hours most days during the candidate filing period to accept filings, and that political subdivisions post a schedule on their websites and on the bulletin boards where notices of meetings are posted of the days and times when someone will be available to accept filings. The Elections Division also strongly recommends having someone available at the place of business on the filing deadline, especially from 2:00 p.m. to 5:00 p.m., if you are otherwise closed. This guideline is based on the office-hour rule under Section 31.122 of the Election Code. Although a political subdivision may accept applications by mail and fax, without a person there at the office, the political subdivision will not be able to determine which applications were timely filed by 5:00 p.m.

**Tuesday, July 31, 2018 (last day "before August")**

In a county with a population of **500,000 or less**, deadline for party chairs to submit to county commissioners court list of eligible persons for precinct presiding election and alternate presiding judges for appointments, as well as for presiding and alternate presiding judges of central counting station for appointments for the November General Election for state and county officers. (Secs. 32.002(a)(2), (c); 127.005(e)).

Recommended date that party chairs in a county with a population of **500,000 or less** submit to the county election board a list of names of eligible persons to serve on the early voting ballot board for the November General Election for state and county officers. (Sec. 87.002(c), (d)). **NOTE: This is not a deadline; just a recommendation.**

    **NOTE:** A signature verification committee may be appointed at a later date. (Sec. 87.027).

Recommended date that county election officials and local political subdivisions meet to discuss conducting elections at the same polling locations pursuant to Sections 42.002 & 42.0621, as well as any applicable joint election issues needed to be agreed upon. **NOTE: This is not a deadline; just a recommendation.**

# August

**Wednesday, August 1, 2018 – Monday, October 1, 2018**

Recommended timeframe for the county election board in a county with a population of **500,000 or less** to appoint the members to the early voting ballot board for the November General Election for state and county officers. (Sec. 87.002(c), (d)). Section 87.002(c) of the Election Code does not provide a deadline for the county election board to make such appointments. **NOTE: This is not a deadline; just a recommendation. October 1 is the recommended deadline because of various notice requirements.**

Recommended date that commissioners court in a county with a population of **500,000 or less** appoint central counting station manager, tabulation supervisor, and assistants to the tabulation supervisor if it has established a central counting station. (Secs. 127.001; 127.002; 127.003; 127.004). **NOTE: This is not a deadline; just a recommendation.**

**Wednesday, August 8, 2018 (90th day before Election Day)**

Last day for eligible political subdivisions to submit Notice of Exemption Under Section 61.013 (PDF) or an Application of Undue Burden Status (PDF) to the Secretary of State for exemption from the accessible voting system requirement. (Sec. 61.013). For additional information, consult the most current advisory on this topic, Voting Accessibility Issues.

**Friday, August 17, 2018 (81st day before Election Day, day before 2nd day before filing deadline)**

**Political Subdivisions Other Than Counties**: If a candidate dies on or before this date, his or her name is not placed on the ballot, if the filing deadline is Monday, August 20, 2018. (Sec. 145.094(a)(1)).

**Monday, August 20, 2018 (78th day before Election Day)**

**Counties: 5:00 p.m.** — Deadline to file as a write-in candidate for the November General Election for state and county officers. (Sec. 146.025(a)). A declaration of write-in candidacy filed by mail is considered to be filed at the time of its receipt by the appropriate authority. (Sec. 146.025(c)).   *See* Write-In Candidates Guide.

> **Exception:**  If a candidate whose name is to appear on the general election ballot dies or is declared ineligible after the third day before the date of the filing deadline above, a declaration of write-in candidacy for the office sought by the deceased or ineligible candidate may be filed not later than 5:00 p.m. of the 75th day before election day. (Sec. 146.025(b)).

**Political Subdivisions Other Than Counties: 5:00 p.m.** — Last day for a candidate in a political subdivision (other than a county) to file an application for a place on the ballot for general election for officers for most political subdivisions, except as otherwise provided by the Texas Election Code. (Secs. 143.007(c); 144.005(d); Sec. 11.055, Education Code; Chapter 286, Health & Safety Code). *See* Candidacy Filing outline for more details.

> **NOTE:**  A home-rule city's charter may **not** provide an alternate candidate filing deadline. (Secs. 143.005(a); 143.007).

> **NOTE:**  An application submitted by mail is considered to be filed at the time of its receipt by the appropriate filing authority.  (Secs. 143.007(b); 144.005(b)).

**Political Subdivisions Other Than Counties (General Election)**: Deadline for political subdivisions to order a general election to be held on Tuesday, November 6, 2018. (Sec. 3.005). One of the following forms may be used:

- Order of Election for Municipalities (PDF)
- Order of Election for Other Political Subdivisions (Including Schools) (PDF)

**Political Subdivisions Other Than Counties (Special Election):** Deadline to order a special election on a measure or a special election to fill a vacancy (if authorized to fill vacancies by special election) to be held on the date of the November General Election for state and county officers. An application may not be filed before the special election is ordered, and in addition to the information stated below, the order must state the filing deadline. (Secs. 201.051(b); 201.054(c), (d)). The following form may be used:

- Order of Special Election for Municipalities (PDF).

**Counties:**  Deadline for counties to order a general election or a special election on a measure to be held on Tuesday, November 6, 2018. (Secs. 3.004; 3.005). The following forms may be used:

- Order of Election for the November General Election (for County & Precinct Officers) (PDF)
- Order of Special Election for County-Ordered Measure Elections (PDF) Order

  **The order must include:**

1. The date of the election;
2. The offices or measures to be voted on;
3. The location of the main early voting polling place;
4. (**Recommended**) Branch early voting polling places (*see* Note 9, above);
5. The dates and hours for early voting (recommended for counties and cities, but required for all other entities). (Cities must include the two designated weekdays for which early voting will be held for 12 hours);
6. The dates and hours of any Saturday and Sunday early voting (if applicable, it is recommended that this information be included in the order for counties and cities, but it must be included for all other entities); and
7. The early voting clerk's official mailing address.

In addition to the information included above, an order for a debt obligation (bond) election **must** include (Sec. 3.009):

1. the proposition language that will appear on the ballot;
2. the purpose for which the debt obligations are to be authorized;
3. the principal amount of the debt obligations to be authorized;
4. that taxes sufficient to pay the annual principal of and interest on the debt obligations may be imposed;
5. a statement of the estimated tax rate if the debt obligations are authorized or of the maximum interest rate of the debt obligations or any series of the debt obligations, based on the market conditions at the time of the election order;
6. the maximum maturity date of the debt obligations to be authorized or that the debt obligations may be issued to mature over a specified number of years not to exceed 40;
7. the aggregate amount of the outstanding principal of the political subdivision's debt obligations as of the beginning of the political subdivision's fiscal year in which the election is ordered;
8. the aggregate amount of the outstanding interest on debt obligations of the political subdivision as of the beginning of the political subdivision's fiscal year in which the election is ordered; and
9. the ad valorem debt service tax rate for the political subdivision at the time the election is ordered, expressed as an amount per $100 valuation of taxable property.

*Recommended* date to order the lists of registered voters from the county voter registrar. The list should include both the voters' residences and mailing addresses in order to conduct early voting by mail. (Sec. 18.006). The political subdivision should confirm that the most recent maps or boundary changes have been provided to the voter registrar.

*Recommended* date to confirm telephone number for the county voter registrar's office on election day.

*Recommended* date to order election supplies, other than ballots. (Subchapter A, Chapter 51).

**Political Subdivisions Other Than Counties:** *Recommended* date to appoint **presiding and alternate judges.** Currently, the Election Code does not establish a deadline for appointing election officials; there is only a notification deadline.  For further information concerning procedures for appointing judges and their alternates, see Sections 32.005, 32.008, and 32.011. General eligibility requirements are found in Subchapter C, Chapter 32. In addition to appointing a judge and alternate judge for each election precinct pursuant to Sections 32.001 and 32.005, the governing body must allow the judge to appoint no less than two clerks; however, the alternate judge must serve as one of the clerks as a matter of law.  (Secs. 32.032; 32.033). The presiding judge then appoints an additional clerk(s), but not more than the maximum set by the governing body. (Sec. 32.033). Presiding judges and their alternates must be given a Notice of Appointment (PDF) not later than the 20th day after the appointment is made. (Sec. 32.009). If the appointment is for a single election, the notice may be combined with the Writ of Election (PDF), which is required to be delivered to each presiding judge not later than the 15th day before the election, Monday, October 22, 2018. (Secs. 4.007; 32.009(e)). If the notices are combined, both must be delivered by the date required by the earlier notice.

NOTE: If you are conducting a joint election with the county, please be advised that the Election Code places many requirements on the method of selecting people who must be appointed by the county to work in the November General Election for state and county officers. *See* Sections 32.002 and 32.034, Election Code.

**NOTE - Water Districts:** A water district is not required to provide a Notice of Appointment to a presiding judge, as required under Section 32.009, but must provide a Writ of Election (PDF). (Sec. 4.007; Sec. 49.110, Water Code).

*Recommended* date to appoint the **presiding judge of the early voting ballot board** or to designate the election workers of one election precinct to serve as the early voting ballot board. (Secs. 87.001; 87.002, and 87.004). There is no statutory notice requirement for members of the early voting ballot board, but good practice suggests that written notice be given to them.

*Recommended* date to appoint the **central counting station personnel** (manager, tabulation supervisor and assistants to the tabulation supervisor) if applicable. (Secs. 127.002; 127.003; 127.004; 127.005). There is no statutory notice requirement for members of the central counting station, but good practice suggests that written notice be given to them.

**Thursday, August 23, 2018 (75th day before Election Day, 4th day before recommended ballot drawing date)**

**Political Subdivisions Other Than Counties and Legislative Vacancies: 6:00 p.m.** — Last day to file an application for a place on the ballot **or** a Declaration of Write-In Candidacy in a **special election to fill a vacancy** to be held on the date of the November General Election for state and county officers. (Sec. 201.054(f), (g) as amended by House Bill 2323 (2017)). **Note:** For future reference, please note that this deadline is not the same for elections held on the May uniform election date or on the November uniform election date in an odd-numbered year.

**For an election held by political subdivision other than a county or city**, the authority conducting the ballot position drawing shall mail written notice of the date, hour, and place of the drawing to candidates by this date if the drawing is to be conducted on Monday, August 27, 2018, as recommended. (Sec. 52.094(d)). If a candidate in a special election files on this date, they should be given a copy of the notice at the time they file.

**For an election held at county expense or a city election,** on receipt of a candidate's written request accompanied by a stamped, self-addressed envelope, the authority conducting the ballot position drawing shall mail written notice of the date, hour, and place of the drawing to the candidate. We recommend sending such notices by this date, if drawing is to be conducted on Monday, August 27, 2018, as recommended. (Sec. 52.094(d)).

**Friday, August 24, 2018 (74th day before Election Day)**

**Counties**: Deadline for a party nominee or independent candidate in the November General Election for state and county officers to withdraw from the election. (Secs. 145.032; 145.062).

**Counties**: Last day on which death, declaration of ineligibility, or withdrawal of a party nominee or an independent candidate for the November General Election for state and county officers causes an omission of the candidate's name from the ballot. (Secs. 145.035; 145.039; 145.064; 145.065).  For certain exceptions regarding deceased candidates, please see Section 145.064(b)).

**NOTE**: Withdrawal request submitted by mail must be **received** by appropriate authority by this date. (Sec. 145.001(c)). A withdrawal request must also be sworn, and candidates may use the Certificate of Withdrawal (PDF). (Sec. 145.001(b)).

If a vacancy occurs on or before this date in a state, district, or county office not regularly scheduled for election in 2018, due to **death**, **resignation**, or **removal** of the officeholder, the unexpired term of the office shall be placed on the November 6, 2018 election ballot. (Sec. 202.002(a)). An appointment to fill the vacancy continues until the next succeeding general election and until a successor has been elected and has qualified for the office. Also, depending on the effective date of the vacancy, the office may also be voted on in the next succeeding primary election. (Secs. 202.002(b); 202.004). *See* Election Advisory No. 2017-08.

**Political Subdivisions Other Than Counties: 5:00 p.m.** — Deadline for write-in candidates to file Declarations of Write-In Candidacy for regular officers for city, school district, library district, junior college district, hospital district, common school districts, Chapter 36 and 49 Water Code districts, and other political subdivision elections, unless otherwise provided by law. (Secs. 144.006(b); 146.054(b);146.055, Election Code; Secs. 11.056; 11.304; 130.0825, Education Code; Secs. 326.0431; 326.0432, Local Government Code; Sec. 285.131, Health and Safety Code; and Secs. 36.059; 49.101; 63.0945, Water Code). *See* Candidacy Filing outline for more details.

> **NOTE**: An application submitted by mail is considered to be filed at the time of its receipt by the appropriate filing authority. (Secs. 143.007(b); 144.005(b)).

**Political Subdivisions Other Than Counties:** If you plan on holding your ballot position drawing on Monday, August 27, 2018, then your Notice of Drawing for Place on Ballot (PDF) of such drawing should be posted today. The notice must be posted for 72 hours immediately preceding the time of the drawing. (Sec. 52.094(c)).

## Monday, August 27, 2018 (71st day before Election Day) (LBJ Holiday)

**Political Subdivisions Other Than Counties:** The Elections Division recommends that you hold your **ballot position drawing** no later than today to determine the order of candidates' names on the ballot (Sec. 52.094) and that you certify today to the county election officer the offices, propositions (in all necessary languages), and candidates' names (including the order) as they are to appear on the ballot, **if you are contracting** to have the county conduct your election or if you are conducting a joint election with the county.

> **NOTE:** After the ballot drawing has occurred, the Elections Division recommends that you proof and test your ballot programming as soon as possible and **prior to the deadline to mail a ballot** if the political subdivision will be using automatic tabulating equipment to count the mail ballots or if your mail ballots are printed from the same database used to program your precinct scanners and/or DREs (*See* Note 12 prior to Calendar of Events). **The Elections Division also recommends that you provide candidates with copies of ballot proofs so that candidates may verify the correctness of their names, positions sought, and order of names on the ballot.**

> **NOTE:** Ballot position for the November General Election for state and county officers is determined by Sections 52.091 and 52.092, Election Code.

## Tuesday, August 28, 2018 (70th day before Election Day)

**Legislative Vacancies:** Last day for all candidates (including write-in candidates) to withdraw from a special election to fill a legislative vacancy. (Secs. 146.083; 145.092(a)).

**Counties: 5:00 p.m.** — Deadline for party chair to deliver replacement nominee or nominee to fill vacancy in an unexpired term to the appropriate officer (for a vacancy in an office that would not normally be on the 2018 ballot and that occurred after December 6, 2017 but not later than August 24, 2018). (Secs. 1.006; 145.036; 145.037(e); 171.022; 201.022; 202.006). *See* Texas Sec'y of State Advisory No. 2017-08 for further information on this deadline and related procedures.*

**Political Subdivisions Other Than Counties: 5:00 p.m.** — Last day for a candidate to withdraw from a general election, by submission of a notarized Certificate of Withdrawal (PDF) or a notarized letter, or to be declared ineligible. **If a candidate withdraws or is declared ineligible by this date, his or her name is omitted from the ballot.** (Secs. 1.006; 146.054(c); 145.092(f); 145.094(a)(4)); 145.096(a)(4)). *

**Political Subdivisions Other Than Counties:** Last day for a candidate to withdraw from a special election, by submission of a notarized Certificate of Withdrawal (PDF) or a notarized letter, or to be declared ineligible. **If a**

candidate withdraws or is declared ineligible by this date, his or her name is omitted from the ballot. (Secs. 1.006; 145.092(a)). *

**Counties and Other Political Subdivisions: 5:00 p.m**. — Last day to **withdraw** as a **write-in** candidate in the general election for state and county officers, or a general or special election ordered by a political subdivision other than a county, (Secs. 1.006; 144.006(c); 146.0301; 146.054(c)). Candidates may use the Certificate of Withdrawal (PDF).*

**Political Subdivisions Other Than Counties:** Recommended first day that a general or special election may be cancelled if all filing deadlines have passed, each candidate for an office listed on the ballot is unopposed (except as discussed below), and write-in votes may be counted only for names appearing on a list of write-in candidates. (The Certification of Unopposed Candidates for Other Political Subdivisions (PDF) may be used to certify candidates as unopposed. Also, *see* our Sample Order of Cancellation (PDF).

A special election of a political subdivision is considered to be a separate election with a separate ballot from a general election for officers of the same political subdivision held at the same time as the special election. Therefore, the fact that there may be a proposition on the ballot will not prevent a cancellation of an election for candidates who are unopposed. (Sec. 2.051(a)). If any members of the political subdivision's governing body are elected from territorial units, such as single member districts, an election may be cancelled in a particular territorial unit if each candidate for an office that is to appear on the ballot in that territorial unit is unopposed **and no** opposed at-large race is to appear on the ballot. An unopposed at-large race may be cancelled in an election regardless of whether an opposed race is to appear on the ballot in a particular territorial unit. (Sec. 2.051(b)). **This recommended cancellation deadline considers a regular filing deadline of Monday, August 20, 2018, a special election filing deadline of Thursday, August 23, 2018, and a write-in deadline of Friday, August 24, 2018. For additional information, consult the outline on** Cancellation of Election for Local Political Subdivisions.

**\*The deadlines referenced above are extended to the next regular business day which is Tuesday, August 28, 2018 due to the deadline falling on Monday, August 27, 2018 which falls on a holiday, LBJ Day. (Sec. 1.006)**.

**Thursday, August 30, 2018 (68th day before Election Day)**

Deadline for Secretary of State (federal, state and district offices) and county judge (countywide and precinct offices) to certify names of independent and declared write-in candidates to county election officer for placement on the November 6, 2018 ballot. (Secs. 142.010; 146.029(c)).

Deadline for Secretary of State to certify to county election officer names of party nominees for statewide and district offices for placement on November 6, 2018 ballot, and deadline for Secretary of State to post major party nominees for county and precinct offices. (Secs. 161.008; 172.117).

# September

**Friday, September 7, 2018 (60th day before Election Day)**

**Political Subdivisions Other Than Counties:** Last day for the governing body of a political subdivision to deliver notice of the election to the county election officer and voter registrar of each county in which the political subdivision is wholly or partly located. (Sec. 4.008).

**Recommended** date for county clerk/county elections administrator to deliver an initial list of voters who have submitted annual applications for ballot by mail under Section 86.0015 and scans or photocopies of those applications to the early voting clerk of any political subdivision located within the county that is holding an election on November 6, 2018. The list should only include voters that reside in the political subdivision holding the election. The list should only be created and sent to those political subdivisions that have provided notice of the election to the county clerk/elections administrator. *See also*, the note below and the entry at Friday, October 26, 2018 for more information about delivery of a final list of voters. *See* entry at October 25, 2018 and entry at November 3, 2018 for more information on the delivery of copies/images of the applications.

> **NOTE:** Section 86.0015 requires the county clerk/elections administrator to provide a list of voters that have submitted an annual application for ballot by mail to all political subdivisions in their county holding an election. The law only applies to elections for which the county clerk/elections administrator is not the early voting clerk via a contract for election services or joint election agreement. The Election Division *strongly recommends* that the county and political subdivisions **discuss the frequency and method for which these lists should be transmitted** to ensure that ballots are sent out in a timely manner. Finally, the county clerk/elections administrator **must deliver either photocopies or scanned images of the applications (under Section 87.126) to the early voting clerk** of the political subdivision before the ballots by mail are delivered to the early voting ballot board for qualifying and counting under Section 87.041.

### Monday, September 10, 2018 (58th day before Election Day; 21st day after August 20, 2018)

**Political Subdivisions Other Than Counties**: Last day to notify election judges of their appointment if they were appointed, as recommended, on **Monday, August 20, 2018**. (Secs. 1.006, 32.009(b)). Presiding and alternate judges must be notified (PDF) of their appointment in writing, not later than the 20th day after the date the appointment is made. **The deadline is extended to the next regular business day which is Monday, September 10, 2018 due to the 20th day falling on Sunday, September 9, 2018.**

The notice of the judge's duty to conduct the election (Writ of Election (PDF)) pursuant to Section 4.007 may be combined with the above notice, if the appointment is for a single election only. If the notices are **NOT** combined, then the notice of the judge's duty to conduct the election (writ of election) must be delivered not later than the 15th day before election day, Monday, October 22, 2018.

### Monday, September 17, 2018 (50th day before Election Day)

Last day to publish notice (PDF) for testing of automatic tabulation equipment testing and logic and accuracy testing (L&A testing) of a voting system that uses direct recording electronic (DRE) voting machines and precinct scanners **if test will be completed by recommended deadline of Wednesday, September 19, 2018**. Notice of the public tests must be published at least 48 hours before the test begins. (Secs. 127.093; 127.096; 129.022; 129.023). *See* Note 12, above.

### Monday, September 17, 2018 - Sunday, December 16, 2018 (50th day before Election Day through 40th day after Election Day)

**Mandatory Office Hours**: Each county clerk, city secretary or secretary of a governing body (or the person performing duties of a secretary) must keep the office open for election duties for at least 3 hours each day, during regular office hours, on regular business days. (Sec. 31.122).

**NOTE for Independent School Districts**:  A "regular business day" means a day on which the school district's main business office is regularly open for business.  (Sec. 31.122(b)).

**NOTE - Special Elections**: In the case of a special election, the office hour rule is triggered starting the third day after the special election is ordered. (Sec. 31.122).

### Wednesday, September 19, 2018 (48th day before Election Day)

**Recommended** date to conduct the first test of the automatic tabulating equipment and for logic and accuracy (L&A test) test on precinct scanners and DREs. (Secs. 127.093; 127.096; 129.022; 129.023). The SOS recommends you complete your first round of testing **prior to mailing your mail ballots** if those ballots will be counted using automatic tabulation equipment. If you conduct your first round of testing by this date, you must publish notice of the test 48 hours prior to testing.  *See* Note 12, above.

### Friday, September 21, 2018 (46th day before Election Day)

Deadline to challenge the filing of an application for a place on the ballot as to form, content, and procedure, if the ballots are mailed on the 45th day before election day, Saturday, September 22, 2018. **This deadline will change if any ballots were mailed prior to the 45th day before election day**. (Sec. 141.034).

**NOTE – NEW LAW:** Section 141.034 as amended by Senate Bill 44 (85th Legislature, RS, 2017) provides that an application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the day **before** any ballot to be voted early by mail is mailed.

### Saturday, September 22, 2018 (45th day before Election Day)

Deadline to mail ballots to military or overseas voters who already submitted their ballot requests via a federal postcard application (FPCA) or via a standard application for ballot by mail (ABBM) and indicated that they are outside the United States. Ballots must be mailed by this date or the 7th day after the clerk receives the application. If the early voting clerk cannot meet this 45th-day deadline, the clerk **must** notify the Secretary of State within 24 hours. (Sec. 86.004(b)).

**NOTE: The 45th Day deadline under Section 86.004(b) is not extended by Section 1.006 to the next business day. The ballots covered by Section 86.004(b) should be sent out on or before Saturday, September 22, 2018.**

**Reminder Regarding FPCAs and Overseas ABBMs:**  If the EV clerk receives an FPCA (from a military or non-military voter) after the 45th day deadline, then the ballot **must** be mailed within seven days after the EV clerk **receives** the FPCA. (Secs. 86.004(b); 101.104).

**Reminder Regarding ABBMs:**  If the domestic ABBM (i.e. a voter who is not overseas) is **received** before the 45th day, the EV clerk **must** mail the ballot no later than the 30th day before election day. (Sec. 86.004(a)). If the domestic or overseas ABBM is received after the 45th day before election day, then the EV clerk **must** mail the ballot no later than the 7th day after the EV clerk **accepts** the ABBM. (Sec. 86.004(a)).

### Monday, September 24, 2018 (43rd day before Election Day, 28th day before early voting begins)

Last day for county chairs to supplement list of names for early voting officer list. (Secs. 1.006; 85.009). **The deadline is extended to the next regular business day which is Monday, September 24, 2018 due to September 22, 2018 falling on a Saturday.** \

# October

**Monday, October 1, 2018 (36th day before Election Day)**

Deadline for the Secretary of State to mail each county judge a copy of the Governor's proclamation ordering the November General Election for state and county officers. (Sec. 3.003(c)).

**Counties**: Deadline to receive a petition signed by 15 registered voters by the early voting clerk requesting that a signature verification committee be created. A request submitted by mail is considered to be submitted at the time of its **receipt** by the early voting clerk. (Sec. 87.027(a-1)).

**Friday, October 5, 2018 (32nd day before Election Day)**

*Recommended* date for early voting clerk to issue order calling for appointment of signature verification committee. (Sec. 87.027). This form may be used to issue order: Order Calling for Signature Verification Committee (PDF). If the signature verification committee will start meeting on October 17, 2018, early voting clerk must post a copy of the order calling for appointment of the signature verification committee on or before this date, in order to give notice of the meeting. The order must remain posted continuously for at least 10 days before the first day the committee meets. (Sec. 87.027).

**Sunday, October 7, 2018 (30th day before Election Day)**

First day of period during which notice of election must be published **if another method of giving notice is not specified by a law outside the Election Code**, and publication is the method of giving notice selected. (Sec. 4.003(a)(1)). The notice for elections ordered by a county or by an authority of a city or school district must be given by publication in a newspaper in addition to any other method specified by a law outside the Election Code. (Sec. 4.003(c) and (d)). This notice may be combined with the other notices you are required to publish. *See* Note 8.

**Cities, Schools, and Other Political Subdivisions:**  It is *strongly recommended* that the Notice of Voting Order Priority for voters with mobility issues also be posted on the subdivision's website, if one is maintained by the political subdivision. (Secs. 63.0013; 85.007(d)). For more information on this requirement, *see* Note 13.

> **NOTE: Notice of Change of Polling Place Location:** For elections **ordered by the governor or county judge only**, if the location of the polling place changes after notice has been given under Section 4.003, and the county election officer maintains a website to inform voters about elections, the notice of the change must be posted on the website. The notice on the website must be given not later than the earlier of 24 hours after the location was changed or 72 hours before the polls open on election day. (Sec. 43.061).

> **NOTE: Notice of Previous Polling Place:** If a different polling place is being used than at the previous election held by the same authority, Notice of Previous Precinct (PDF) must be posted at the entrance of the previous polling place informing voters of the current polling place location, if possible. (Sec. 43.062).

**Tuesday, October 9, 2018 (28th day before Election Day)**

Last day to register to vote for the Tuesday, November 6, 2018 election. (Secs. 1.006; 13.143).  **The deadline is extended to the next regular business day which is Tuesday, October 9, 2018 due to the 30th day falling on Sunday, October 7, 2018 and Monday, October 8, 2018 is a holiday, Columbus Day.**  (Secs. 13.143(e); 15.025(d)).

**NOTE:** A Federal Postcard Application (FPCA) also serves as an application for **permanent** registration under Texas law **unless the voter marked "do not intend to return" (2011 form), or "my return is not certain" (2017 form)**. The early voting clerk should make a copy (for mailing ballots, keeping records, etc.), then should forward the original to the county voter registrar, as soon as practicable. (Sec. 101.055; 1 Tex. Admin. Code Sec. 81.40(a), (c)(2)).

Last day for a voter to make a change of address that will be effective for the November 6, 2018 election. A voter who submits a change of address after this date may still be eligible to return to his or her previous precinct to vote under "fail-safe" voting, if he or she still resides in the **same** county and the same local political subdivision, if applicable, conducting the election. (Secs. 15.025; 63.0011).

*Recommended* last day for early voting clerk to coordinate with the voter registrar receipt of supplemental and registration correction lists, if applicable, or coordinate receipt of revised original list from the voter registrar for early voting by personal appearance. (Secs. 18.001; 18.002; 18.003; 18.004).

### Wednesday, October 10, 2018 (27th day before Election Day)

Deadline for the county elections board to appoint (PDF) a signature verification committee (if one was ordered not later than Friday, October 5, 2018 at the discretion of the county election officer and not required due to petition by 15 registered voters). The members must be appointed not later than the fifth day after the order was issued by the early voting clerk. The county elections board must post a notice of the appointment of committee members continuously until the last day the signature verification committee meets. (Sec. 87.027). This form may be used for the notice: Notice of Appointment of Signature Verification Committee (PDF).

### Friday, October 12, 2018 (25th day before Election Day)

**Counties**: Deadline for Democratic and Republican County Chairs to submit to the precinct presiding judges for each election day precinct, a list containing at least two persons who are eligible to serve as election clerks, in order to secure appointment of clerks affiliated or aligned with their respective parties. (Sec. 32.034(b)).

### Monday, October 15, 2018 (22nd day before Election Day)

**Counties:** Deadline for county elections board to appoint (PDF) signature verification committee, if a valid petition requesting one to be created was presented to the early voting clerk by the deadline, Monday, October 1, 2018. (Sec. 87.027(a-1), (c)).

### Tuesday, October 16, 2018 (21st day before Election Day)

Last day to post notice of election on bulletin board used for posting notices of meetings of governing body. (Sec. 4.003(b)). A Record of Posting Notice of Election (PDF) should be completed at the time of posting. (Sec. 4.005).

Last day to post notice of election in each election precinct, if the method of giving notice is **not** specified by a law outside the Election Code and notice is given by this method in lieu of publication. (Sec. 4.003(a)(2)). A Record of Posting Notice of Election (PDF) should be completed at the time of posting. (Sec. 4.005).

**NOTE for All Political Subdivisions:** The election notice shall be posted on the political subdivision's website, if the political subdivision maintains a website.

**NOTE for Counties:** The *recommended* time to include the notice of voting order priority for voters with mobility issues on a county website is when the notice of election is also posted on the website. (Secs. 63.0013; 85.007(d)). *See* Note 13 on voting order priority for voters with mobility issues.

### Wednesday, October 17, 2018 (20th day before Election Day; 5th day before the first day of early voting in person)

**Counties:** Last day to petition for temporary branch polling place(s) in a county with a population of 100,000 to 120,000, if the voting at those branch locations is to begin on the first day of early voting, Monday, October 22, 2018. (Secs. 85.062(d)(3); 85.067).

**Counties:** Last day to post notice (PDF) of places, days, and hours for voting at branch early voting polling place if voting is to begin at that location on the first day of early voting in person. The schedule may be amended after the beginning of early voting by personal appearance to include notice of additional branch locations, but any amendment must be made and posted not later than the fifth day before voting begins at the additional temporary branch. (Secs. 85.062(d)(3); 85.067(c)).

Last day for a person to apply for a full ballot by mail using an FPCA, if the person is not a registered voter but meets the requirements under Title 2 of the Texas Election Code. (Secs.101.052(e) & 101.055(a)). (If the voter marks the FPCA form indicating "indefinitely" (older form) or "do not intend to return" (newer form), the voter receives a federal-only ballot.) Postmark with this date on the FPCA is proof that the applicant submitted the FPCA by this deadline. *See* Monday, October 22, 2018 for timeliness of an FPCA received without a postmark. (Sec. 101.052(e), (i)).

> **NOTE:** Be sure to check the list of registered voters for permanent registration status. Also, state law authorizes an FPCA to also serve as an application for **permanent registration**; therefore, the person might be permanently-registered based on a prior-FPCA. Even if the FPCA arrives too late for a particular election, the early voting clerk will still need to forward the original FPCA to the county voter registrar, aftermaking a copy for your early voting clerk's use (mailing ballots, etc.) and records. (Sec. 101.055; 1 Tex. Admin. Code Sec. 81.40).

> **NOTE: Overseas (non-military) voters** marking the FPCA "do not intend to return" (2011 form) or "my return is not certain" (2017 form) receive a federal ballot **only** regardless of the date filed. (Chapter 114). In a local (non-federal) election, this means there is **no ballot to send the voter.**

Last day to publish notice of L&A test for voting systems if test will be held on Friday, October 19, 2018, if testing has was not already completed by September 19, 2018. Notice of the public L&A Test must be published at least 48 hours before the test begins. (Secs. 129.001; 129.023). *See* Note 12, above.

First day that a signature verification committee, if one is appointed, may begin operating. (Sec. 87.027(f)).

**Thursday, October 18, 2018 – Friday, October 26, 2018 (19th day before Election Day - 11th day before Election Day)**

A person submitting an FPCA (PDF) during this period who is **not** registered to vote is not entitled to receive a ballot for any non-federal election held on Tuesday, November 6, 2018. *See* entry below under October 22, 2018 (FPCA without a postmark). (Secs. 84.007; 101.052(e), (f)). The early voting clerk is required to maintain this application since it may be used for other elections

> **NOTE: Overseas (non-military) voters** marking the FPCA "do not intend to return" (2011 form) or "my return is not certain" (2017 form) receive a federal ballot **only** regardless of the date filed. (Chapter 114). In a local (non-federal) election, this means there is **no ballot to send the voter.**

**Friday, October 19, 2018 (18th day before Election Day; at least 48 hours before early voting begins)**

Last day for a voter to hand-deliver their application for a ballot by mail. (Sec. 84.008).

If a **defective application to vote early by mail** is received on or before this date, the early voting clerk must mail the applicant a new application with explanation of defects and instructions for submitting the new application. For defective applications received after this date and before the end of early voting by personal appearance, the early voting clerk must mail only the Notice of Defective Application for Ballot by Mail (PDF) and a statement that the voter is not entitled to vote early by mail unless he or she submits a sufficient application by the deadline, which is Friday, October 26, 2018. (Secs. 84.007(c); 86.008).

Last day to conduct public L&A test of a voting system. We highly **recommend** that this test is done on an earlier date to allow time for corrections to programming, if necessary. (*See* Note 12, above). Per Section 129.023, the L&A test shall be conducted not later than 48 hours before voting begins on such voting systems, assuming that the voting system will first be used for early voting in person.

**Monday, October 22, 2018 (15th day before Election Day)**

**First day to vote early in person. (Sec. 85.001)**

**NOTE:** The early voting period for the general election begins 17 days prior to election day, but because this day falls on a weekend (Saturday, October 20, 2018), it is extended to the next regular business day, Monday, October 22, 2018. (Sec. 85.001(c)).

**NOTE:** About branch early voting in a general election for state and county officers. The commissioners court:

1. in a county with a population of 400,000 or more, **must** establish one or more temporary polling places, other than the main early voting polling place, in each state representative district containing territory covered by the election. The temporary polling place(s) must remain open the same days as the main early voting polling place, but the commissioners court determines the hours during which voting is to be conducted, unless a written request signed by 15 registered voters requesting the same number of hours as the main polling place is timely filed with the commissioners court;

2. in a county with a population of 120,000 or more but less than 400,000, **must** establish one or more temporary polling places, other than the main early voting polling place, in each commissioners precinct containing territory covered by the election. The temporary polling place(s) must remain open the same days as the main early voting polling place, but the commissioners court determines the hours during which voting is to be conducted, unless a written request signed by 15 registered voters requesting the same number of hours as the main polling place is timely filed with the commissioners court; or

3. in a county with a population of 100,000 or more but less than 120,000, **must** establish one or more early voting polling places in each commissioners precinct for which the commissioners court receives a timely filed written request signed by at least 15 registered voters of that precinct. The temporary polling place(s) must remain open the same days as the main early voting polling place, but the commissioners court determines the hours during which voting is to be conducted, unless a written request signed by 15 registered voters requesting the same number of hours as the main polling place is timely filed with the commissioners court. (Secs. 85.062; 85.064).

> **NOTE:** If a county has a population under 100,000, the location, days, and hours of temporary branch locations may be established **only** by the commissioners court. **No petition process is available.** (Sec. 85.065).

> **NOTE:** A temporary branch polling place that is "movable" may be established only with the approval of the county clerk. If a movable temporary branch polling place is established on the request of a political party, each political party whose nominee for governor in the most recent gubernatorial general election received more than 10 percent of the total number of votes received by all candidates for governor in the 2014 election is entitled to the establishment of such a polling place. The election officers serving a polling place covered by this subsection must be appointed from the list submitted by the county chairs to the early voting clerk. (Sec. 85.062(e)).

If early voting by personal appearance is required to be conducted for extended hours or for weekend hours, the county voter registrar's office is required to remain open for providing voter registration information during the extended hours or weekend hours that the main early voting polling place is open for voting. (Secs. 12.004(d); 85.005(c); 85.006(e)).

> **NOTE:** Voting by limited ballot must be done during the early voting period (or by mail). (Sec. 112.002(a)).

**Political subdivisions other than cities and counties:** Early voting in person must be conducted for at least eight (8) hours each weekday that is not a legal state holiday unless the political subdivision has fewer than 1,000 registered voters, in which case early voting in person must be conducted for at least three (3) hours per day. (Sec. 85.005).

**Cities and counties:** Early voting in person must be conducted on the weekdays of the early voting period and during the hours that the county clerk's or city secretary's main business office is regularly open for business. (Sec. 85.005). However, because cities and counties must have office hours for election-related business at least three hours every business day for this type of election (*see* note at 50th day before election entry, Monday, September 17, 2018), we harmonize these requirements with the result that, if a city or county is not regularly open for business on one or more week days, on those "closed" days a city or a county must conduct early voting for at least three (3) hours a day at the main early voting location (except for a city's two 12-hour days, when it must be open for the full 12 hours).

**Joint elections:** If conducting early voting by personal appearance jointly, we recommend a unified schedule covering all requirements; i.e., no entity's requirements should be neglected or subtracted as a result of a joint agreement.

> **NOTE for Cities:** Cities must choose **two weekdays** for the main early voting polling location to be open for 12 hours during the regular early voting period. The city council must choose the two weekdays. (Sec. 85.005(d)).

> **NOTE to Independent School Districts:** Despite the change in state law that allows an ISD to be closed on school holidays during the mandatory office hours period, you are **required to be open** during the entire early voting period except on legal state and national holidays.

If an FPCA (PDF) is **received** by this date **without** a postmark to prove mailing date, the early voting clerk will accept the FPCA and mail the applicant a full ballot even if the applicant is not a permanently registered voter but meets the requirements under Title 2 of the Election Code *(unless the voter marks the FPCA form indicating **the voter** "does not intend to return" (2011 form), or "my return is not certain" (2017 form), in which case the voter receives a federal-only ballot)*. (Sec. 101. 052(i)).

Last day to notify election judges of duty to hold election (Writ of Election (PDF) and Writ of Election – General Election for State and County Officers (PDF)). Notice must be given by the 15th day before the election or the 7th day after the day the election is ordered, whichever is later. The Writ of Election must be given to each presiding judge and include:

1. The judge's duty to hold the election;
2. The type and date of election;
3. The polling place location at which the judge will serve;
4. The polling place hours; and
5. The maximum number of clerks the judge may appoint. (Sec. 4.007).

**Tuesday, October 23, 2018 (14th day before Election Day)**

**NOTE for Counties:** Deadline to file a petition (PDF) in the November General Election for state and county officers to require the early voting clerk of a county with a population **under 100,000** to conduct extended early voting for **12 hours on the last Saturday** of the early voting period, October 27, 2018. (Secs. 85.006(e); 85.007). Notice of weekend voting must be posted beginning no later than Wednesday, October 24, 2018 and continuing through Friday, October 26, 2018. (Sec. 85.007(c)).

Deadline to file a petition in the November General Election for state and county officers to require the early voting clerk of a county with a population of 100,000 or more to conduct extended early voting for 12 hours on each weekday of the last week (Monday, October 29, 2018 through Friday, November 2, 2018) at all required **temporary branch locations** created under Section 85.062(d) of the Code.  Notice of extended hours must be posted beginning no later than Wednesday, October 24, 2018 and continuing through Friday, November 2, 2018. (Secs. 85.064(b); 85.067).

Deadline to file a petition (PDF) in the November General Election for state and county officers to require the early voting clerk of a county with a population **under 100,000** to conduct extended early voting at the **main early voting polling place** for 12 hours on each **weekday** of the last week of the early voting period (Monday, October 29, 2018 through Friday, November 2, 2018). Notice of extended hours (PDF) must be posted beginning no later than Wednesday, October 24, 2018 and continuing through Friday, November 2, 2018. (Secs. 85.005(c); 85.067).

**NOTE for Cities:** Deadline to file a petition (PDF) to require the early voting clerk of a city to conduct extended early early voting on the last Saturday of the early voting period, October 27, 2018  (Sec. 85.006(d)).  Notice of weekend voting must be posted beginning no later than Wednesday, October 24, 2018 and continuing through Friday, October 26, 2018.  (Sec. 85.007(c)).

**Wednesday, October 24, 2018 (13th day before Election Day; 72 hours preceding first hour Saturday early voting will be conducted)**

**NOTE for Counties** : Deadline to file a petition (PDF) in the November General Election for state and county officers to require the early voting clerk of a county with a population **under 100,000** to conduct extended early voting for **5 hours on Sunday**, October 28, 2018. (Sec. 85.006(e)). Notice of weekend voting must be posted beginning no later than Thursday, October 25, 2018 and continuing through Saturday, October 27, 2018.  (Sec. 85.007(c)).

**NOTE for Cities:** Deadline to file a petition (PDF) to require the early voting clerk of a city to conduct extended early early voting on the last Sunday of the early voting period, October 28, 2018  (Sec. 85.006(d)).  Notice of weekend voting must be posted beginning no later than Thursday, October 25, 2018 and continuing through Saturday, October 27, 2018.  (Sec. 85.007(c)).

**Counties and Cities Only**: Last day to post notice on bulletin board for posting notice of meetings for the commissioners court and city council if early voting will be conducted on Saturday, October 27, 2018. (Sec. 85.007). Notice must be posted at least 72 hours before early voting begins on a Saturday or Sunday. If the County Clerk or City Secretary on her own motion by written order orders early voting on Saturday or Sunday OR if the County Clerk or City Secretary orders Saturday or Sunday voting after being petitioned to do so by at least 15 registered voters, such voting need not be included in the regular order or notice of the election. (Secs. 85.006(b), (d) and 85.007(b), (c)).

**Note for all Political Subdivisions, except Counties and Cities:** Voting on ANY Saturday or Sunday ordered by the **governing body** on its own motion (i.e., not petitioned for by 15 registered voters) **must** be included in the order and notice of election. (Secs. 85.006; 85.007(a)).

> **NOTE:** Section 85.007, as amended by House Bill 2721 (2015), requires that the election notice, which includes the days and hours of early voting be posted on the political subdivision's website, if the political subdivision maintains a website.

**Thursday, October 25, 2018 (12th day before Election Day; day before the last day to apply for a ballot by mail)**

**Counties and Cities Only:** Last day to post notice on bulletin board for posting notice of meetings of the commissioners court or city council, if early voting will be conducted on Sunday, October 28, 2018. (Sec. 85.007). Notice must be posted at least 72 hours before early voting begins on a Saturday or Sunday. *See* entry at Wednesday, October 24, 2018.

A voter who becomes sick or disabled on or after this date may vote a late ballot if the sickness or disability prevents the voter from appearing at the polling place without the likelihood of needing personal assistance or of injuring his or her health. (Sec. 102.001). *See* Application for Emergency Early Voting Ballot Due to Sickness or Physical Disability. An application may be submitted after the last day of the period for early voting by personal apeprance and before 5:00 p.m. on Election Day. (Sec. 102.003).

**NOTE:** Section 87.0222, as amended by Senate Bill 383 (2015), changed the first day that a county with a population of 100,000 or more may begin processing and qualifying mail ballots beginning on the ninth day before the last day for early voting by personal appearance.

First day that counties with a population of 100,000 or more, or entities that are having joint elections with such a county, may convene their early voting ballot board and deliver by mail ballots to begin processing and qualifying mail ballots; however, the mail ballots may not be counted until (i) the polls open on election day, or (ii) in an election conducted by an authority of a county with a population of 100,000 or more or entities that are having joint elections with such a county, the end of the period for early voting in person. (Secs. 87.0222; 87.0241). The early voting clerk shall continuously post notice for 24 hours preceding each delivery of voting materials that is to be made before the time for opening the polls on election day. (Sec. 87.0222). **NOTE: Results may not be released until the polls close on election day.** *See* Notice of Delivery of Early Voting Balloting Materials, Notice of Delivery of Ballots Voted by Mail.

> **NOTE:** The county clerk/elections administrator must ensure that photocopies or electronic recordings of annual applications for ballot by mail have been delivered to the early voting clerk of every political subdivision holding an election before the ballots by mail are delivered to the early voting ballot board.

### Friday, October 26, 2018 (11th day before Election Day)

Last day to receive an FPCA (PDF) from a voter. If the voter is **not** registered in the county (and / or marked intent to return "not certain"), **the voter is still eligible for a ballot containing federal offices only.** In a local (non-federal) election, this means there is no ballot to send the voter. (Secs. 101.052(b), (f); 114.004(c)).

Last day for early voting clerk to receive applications for a ballot to be voted by mail. (Sec. 84.007(c). All applications to vote by mail must be received by the early voting clerk before the close of regular business or 12 noon, **whichever** is later. Applications to vote by mail must be submitted by mail, common or contract carrier, fax (if a fax machine is available in the office of the early voting clerk) or e-mail. The early voting clerk's designated email address must be posted on the Secretary of State's website. If a voter submits an application for ballot by mail via fax or e-mail, the early voting clerk must receive a copy via mail within 4 business days of the submission of the fax or e-mail (Sec. 84.007(c)).

> **NOTE - NEW LAW**: SB 5 (85th Legislature, 1st CS, 2017) provides that if an ABBM is faxed or emailed or if an FPCA is faxed, then the applicant must submit the ORIGINAL application BY MAIL to the early voting clerk so that the early voting clerk **receives the original no later than the 4th business day after receiving the emailed or faxed ABBM or faxed FPCA.** If the early voting clerk does not receive the original ABBM or FPCA by that deadline, then the emailed or faxed ABBM or faxed FPCA will be considered incomplete, and the early voting clerk may NOT send the applicant a ballot. The requirement to mail the original application does not apply to an **emailed** FPCA. For additional information on this new l aw, please *see* Note 14, above.

Last day for county clerk/elections administrator to deliver final list of voters that have submitted an annual application for ballot by mail to political subdivisions located within the county holding an election on November 6, 2018, for which the county clerk/elections administrator is not the early voting clerk via a joint election agreement or contract for election services.

### Saturday, October 27, 2018 (10th day before Election Day; last Saturday of early voting period)

**Counties:** In counties with populations of 100,000 or more, early voting must be conducted in the November General Election for state and county officers for at least 12 hours on last Saturday of the early voting period. (Sec. 85.006(e)). For counties under 100,000, voting on Saturday is only required if a proper petition (PDF) was received in a timely manner. *See* entry under Tuesday, October 23, 2018.

**Cities:** If a proper petition (PDF) was received in a timely manner, early voting must be conducted on last Saturday of the early voting period. *See* entry under Tuesday, October 23, 2018.

Last day of period during which notice of the November General Election for state and county officers and other elections ordered by a county or a city or school district must be published in a newspaper of general circulation. (Sec. 4.003(a)(1)).

> **NOTE:** The election notice shall be posted on the political subdivision's website, if the political subdivision maintains a website.

Last day to mail a copy of the notice of election to each registered voter of the territory that is covered by the election and is in the jurisdiction of the authority responsible for giving the notice **if method of giving notice is not specified by a law outside the Texas Election Code** and this method of giving notice is selected.

**Sunday, October 28, 2018 (9th day before Election Day; last Sunday of early voting period)**

**Counties with a Population of 100,000 or More:** In counties with populations of 100,000 or more, early voting must be conducted in the November General Election for state and county officers for at least 5 hours on last Sunday of the early voting period. (Sec. 85.006(e)). For counties under 100,000, voting on Sunday is only required if a proper petition (PDF) was received in a timely manner. *See* entry under Wednesday, October 24, 2018.

**Cities:** If a proper petition (PDF) was received in a timely manner, early voting must be conducted on last Sunday of the early voting period. *See* entry under Wednesday, October 24, 2018.

**Monday, October 29 – Friday, November 2, 2018 (last week of early voting by personal appearance)**

In counties with a population of 100,000 or more, the early voting clerk must keep the main polling place open for 12 hours each day for the November General Election for state and county officers. Early voting must be conducted at permanent branch locations for 12 hours each day. Early voting must be conducted for 12 hours on each **weekday** of the last week at a required **temporary branch locations** (created under Section 85.062(d) of the Code) if a written request signed by 15 registered voters was filed by Tuesday, October 23, 2018. Please note there is a 5-day notice posting requirement if the early voting clerk received a petition requesting these extended hours. (Secs. 85.005(c); 85.063; 85.064; 85.067).

**Wednesday, October 31, 2018 (6th day and 4th business day before Election Day)**

**5:00 p.m.** — Deadline to submit a Request for Election Inspectors (PDF) for election day, Tuesday, November 6, 2018 to the Secretary of State. (Sec. 34.001).

# November

**Thursday, November 1, 2018 (5th day before Election Day; day before the last day to vote early in person)**

A voter is eligible to vote a late ballot if they will be out of their county of residence on election day due to a death in the immediate family (related within 2nd degree of consanguinity or affinity) that occurs on or after this day. The voter may submit the Application for Emergency Early Ballot Due to Death in Family (PDF) starting Saturday, November 3, 2018 (the day after early voting in person ends). (Secs. 103.001; 103.003(b)). An application may be submitted after the last day of the period for early voting by personal appearance before the close of business on the day before election day. (Sec. 103.003).

Deadline for the early voting clerk to receive, by mail, the original of an ABBM that was faxed or emailed or of an FPCA that was faxed on the deadline to apply for a ballot by mail, Friday, October 26, 2018.

> **NOTE – NEW LAW: SB 5** (85th Legislature, 1st CS, 2017), provides that a voter who faxed or emailed their ABBM or faxed their FPCA must mail the original to the early voting clerk so that the early voting clerk **receives the original no later than the 4th business day after receiving the emailed or faxed ABBM or faxed FPCA**. For more information, *see* Note 14.

**Friday, November 2, 2018 (4th day before Election Day)**

**Last day to vote early by personal appearance. (Sec. 85.001(a)).**

Early voting clerk must post Notice of Delivery of Ballots Voted by Mail (PDF) to the early voting ballot board if materials are to be delivered to the board on Saturday, November 3, 2018. Notice must be posted continuously for 24 hours preceding each delivery to the board. (Secs. 87.0221; 87.0222; 87.023; 87.024; 87.0241).

> **NOTE:** The Notice of Delivery of Early Voting Balloting Materials serves as notice of the convening of the early voting ballot board. Your entity should also post notice every time the early voting ballot board reconvenes.

Last day to publish notice of public test of automatic tabulating equipment, if test will be held on Sunday, November 4, 2018, and if the first test was not previously already completed. The public notice of the test of automatic tabulating equipment must be published at least 48 hours before the test begins. (Sec. 127.096).

**Saturday, November 3, 2018 (3rd day before Election Day)**

First day to submit an application (PDF) for and vote a late ballot because of a death in the immediate family that occurred on or after Thursday, November 1, 2018, and will require absence from the county on election day, November 6, 2018. (Secs. 103.001; 103.003(b)). An application may be submitted after the last day of the period for early voting by personal appearance before the close of business on the day before election day. (Sec. 103.003).

First day to submit an application (PDF) for and vote a late ballot because of sickness or disability that arose on or after Thursday, October 25, 2018. (Secs. 102.001; 102.003). An application may be submitted after the last day of the period for early voting by personal appearance and before 5:00 p.m. on Election Day. (Sec. 102.003).

First day that counties with a population of 100,000 or more (or local subdivisions conducting a joint election with such a county) may convene their early voting ballot board and begin **counting** ballots; **however, the results may not be announced until after the polls close**. (Secs. 87.0222; 87.0241).

> **NOTE:** If a county with a population of 100,000 or more (or a local subdivision conducting a joint election with such a county) is convening their early voting ballot board early to begin **counting** ballots, and will be using automatic tabulating equipment, the test will need to be completed at least 48 hours before the equipment is used to count ballots. (Secs. 87.0222; 87.0241; 127.096).

First day that all other counties and political subdivisions may convene their early voting ballot board for **processing** and **qualifying** mail ballots, but cannot begin counting the ballots until the polls open on election day. The early voting clerk shall continuously post notice for 24 hours preceding each delivery of voting materials that is to be made before the time for opening the polls on election day. (Secs. 87.0221; 87.023; 87.024; 87.0241). *See* Notice of Delivery of Ballots Voted by Mail (PDF).

> **NOTE:** The county clerk/elections administrator must ensure that photocopies or electronic recordings of annual applications for ballot by mail have been delivered to the early voting clerk of every political subdivision holding an election before the ballots by mail are delivered to the early voting ballot board.

**Sunday, November 4, 2018 (2 days before Election Day)**

Last day to conduct public test of automatic tabulation equipment. Per Section 127.093, the test shall be conducted at least 48 hours before the automatic tabulating equipment is used to count ballots voted in an election and was not previously tested. We highly *recommend* that this test is done on an earlier date to allow time for corrections to programming, if necessary. (See Note 12, above).

**Monday, November 5, 2018 (1 day before Election Day)**

Last day to submit an Application for Emergency Early Ballot Due to Death in Family (PDF). The application must be submitted by the close of business on this day. (Sec. 103.003(b)).

Last day for early voting clerk to mark the precinct list of registered voters with a notation beside each name of voter who voted early, and deliver list to election judges. The early voting clerk must also deliver the precinct early voting list. (Sec. 87.122). This may be delivered electronically if your county is using an e-poll book.

**Delivery of Provisional Ballots and Forms**: If the voter registrar wants to take possession of the provisional ballots and forms on election night, the voter registrar must inform the custodian of the election records and post a Notice of Election Night Transfer (PDF) no later than Monday, November 5, 2018, 24 hours before election day. (1 Tex. Admin. Code. Secs. 81.174(d)(3)). However, under this type of delivery, the county voter registrar **must** go to the custodian of election records office and pick up the provisional ballots and forms.

> **NOTE:** The general custodian of election records (or the early voting clerk, if applicable) must also post a Notice of Delivery of Provisional Ballots at least 24 hours before delivery will occur. (1 T.A.C. 81.174(b)(1)).

**Tuesday, November 6, 2018 - (Election Day)**

| | |
|---|---|
| 7:00 a.m. – 7:00 p.m. | Polls open. (Sec. 41.031). |
| | Voter registrar's office is open. (Sec. 12.004(c)). |
| | Early voting clerk's office is open for early voting activities. (Sec. 83.011). A voter may deliver a marked ballot by mail to the early voting clerk's office while the polls are open on election day. The voter must comply with applicable identification procedures. The identification procedure is the same as that used for personal appearance voting under SB 5 (85th Regular Session, 2017) (Sec.86.006). |
| | Sick and disabled persons may vote at the main early voting polling place if **electronic voting systems** are used at regular polling place(s) on election day **and** the voter has a sickness or condition that prevents the voter from voting in the regular manner without personal assistance or likelihood of injury. (Secs.104.001; 104.003). However, if the early voting ballots by mail are processed at a location other than the main early voting polling place, the early voting clerk may require the voting to be conducted at that location. (Sec. 104.003). |
| 5:00 p.m. | Deadline for receiving Application for Emergency Early Voting Ballot Due to Sickness or Physical Disability (PDF) for late ballots to be voted by persons who became sick or disabled on or after |

Thursday, October 25, 2018. (Sec. 102.003(b)).

**7:00 p.m.**

Regular deadline for receiving **early voting ballots** by mail. **BUT see** entry **for Wednesday, November 7, 2018 on "late domestic ballots" and** entries **for Tuesday, November 13, 2018 on other "late" ballots.**

Deadline for receiving **early voting ballots** by mail and late ballots cast by voters who became sick or disabled on or after Thursday, October 25, 2018. (Secs. 86.007(a); 102.006(c)).

**NOTE - Receipt of Mail Ballots**: All early voting ballots sent by mail from inside the United States that are received by 7:00 p.m. on election day, November 6, 2018, **must be counted on election night**. If the carrier envelope does not bear a cancellation mark or a receipt mark, the ballot must arrive **before** the time the polls are required to close **on election day**. (Sec. 86.007(a)(1). If the early voting clerk cannot determine whether a ballot arrived before that deadline, the ballot is considered to have arrived at the time the place at which the carrier envelopes are deposited was last inspected for removal of returned ballots. (Sec. 86.007(b)). The early voting clerk **must** check the mailbox for early voting mail ballots at least once after the time for regular mail delivery. (Sec. 86.007(b)).

**NEW LAW: An early voting mail ballot that is not received by 7:00 p.m. on election day may not be counted unless the ballot may be counted late, per HB 1151 (85th Legislature, RS, 2017), which applies to ballots mailed from outside the United States (Sec. 86.007(d)), late domestic ballots (Sec. 86.007(a)(2)), and ballots from members of the armed forces and merchant marine of the United States, their spouses and dependents (Sec. 101.057).** *See* entry for Wednesday, November 7, 2018 on "late domestic ballots" and entries for Tuesday, November 13, 2018 on other "late" ballots. *See* Tex. Sec'y of State Election Advisory No. 2018-02.

**NOTE - Delivery of Early Voting by Personal Appearance and Mail Ballots:** The early voting clerk delivers the voted ballots, the key to the double-locked ballot box, etc., to the early voting ballot board at the time or times specified by the presiding judge of the early voting ballot board, during the hours the polls are open or as soon after the polls close as practicable. (Secs. 87.021; 87.022). The custodian of the key to the second lock of the double-locked early voting ballot box delivers his or her key to the presiding judge of the early voting ballot board on request of the presiding judge. (Secs. 85.032(d); 87.025). **The custodian is the sheriff for county elections, elections ordered by the governor, and a primary election** (or the county judge in a year when the office of sheriff is on the ballot). The custodian is the chief of police or city marshal for city elections, and the constable of the justice precinct in which the political subdivision's main office is located (or the sheriff, if there is no constable), for other political subdivision elections. (Sec. 66.060). If ballots are to be delivered before election day, the early voting clerk must post notice at least 24 hours before each delivery at the main early voting polling place.

**NOTE - Delivery of Early Voting Ballot to Early Voting Ballot Board Before Election Day**: Early voting ballots may be delivered to the early voting ballot board at any time after early voting by personal appearance ends. Mail ballots may be qualified and processed (signatures verified, carrier envelopes opened, and the secrecy envelope containing the ballot placed in a secure location), but they may not be counted until election day. (Secs. 87.0221; 87.0222; 87.023; 87.024; 87.0241). If ballots are to be delivered before election day, the early voting clerk must post notice at least 24 hours before each delivery at the main early voting polling place.

**Exception:** Counties with a population of 100,000, or more or entities that are having joint elections with counties with a population of 100,000 or more, may process the mail ballots (i.e., qualify, and accept or reject, but not count) as early as the 8th day before the end of the early voting period; in such an election, votes may be counted no earlier than the end of the period for early voting by personal appearance; the results may not be released until the polls close on election day. (Secs. 87.0221; 87.0222; 87.023; 87.024; 87.0241(b); 87.042). If ballots are to be delivered before election day, that is after the end of the early-voting-in-person period but before the polls open on election day, the early voting clerk must post notice at least 24 hours before each delivery at the main early voting polling place. (Secs. 87.0221(b); 87.023(b); 87.024(b)).

**NOTE - Manual Examination of Ballots Before Processing on Automatic Counting Equipment:** The central counting station manager shall direct the manual examination of all electronic voting system ballots to ascertain whether the ballots can be processed in the usual manner or if the ballots need to be duplicated to clearly reflect the voter's intent. (Sec. 127.125).

**NOTE - Testing of Tabulating Equipment:** The second test of automatic tabulating equipment used for counting ballots at a central counting station must be conducted immediately before the counting of ballots with equipment begins. The third test must be conducted immediately after the counting is completed. (Secs. 127.093, 127.097, 127.098).

**NOTE - Precinct Election Returns:** Precinct election returns are delivered to the appropriate authorities after completion. (Secs. 66.053(a); 127.065; 127.066; 127.067).

**Transfer of Provisional Ballots to Voter Registrar Election Night:** The county voter registrar may take possession of the ballot box(es) or transfer case(s) containing the provisional ballots (or provisional ballot affidavits when DRE systems are used) on election night (instead of on the next business day) by informing the custodian of election records and posting a notice of such election night transfer no later than 24 hours before election day. Under this type of delivery, the voter registrar must go to the office of the custodian and pick up the ballot box(es) or transfer case(s) and associated forms. (Sec. 65.052; 1 T.A.C.§§ 81.172 – 81.174 & 81.176).

Last day to post notice of governing authority's meeting to canvass returns of election if canvass is to take place on Friday, November 9, 2018 (3rd day after election). (Sec. 67.003(b)). This notice must be posted at least 72 hours before the scheduled time of the meeting. (Secs. 551.002; 551.041; 551.043, Texas Government Code).

**Wednesday, November 7, 2018 (1st day and 1st business day after Election Day)**

**5:00 p.m. –** Deadline to receive "**late domestic ballots"** mailed **within** the United States from **non-military voters and from any military voters** who submitted an **Application for Ballot by Mail** ("ABBM") (**not** a Federal Postcard Application – "FPCA"), if the carrier envelope was placed for delivery by mail or common or contract carrier **AND** bears a cancellation mark of a postal service or a receipt mark of a common or contract carrier or a courier indicating a time not later than **7:00 p.m.** at the location of the election on election day, November 6, 2018. (Secs. 86.007; 101.057; 101.001). A late domestic ballot **cannot be counted** if it does **not** bear a cancellation mark or a receipt mark.

> **NOTE – NEW LAW:** House Bill 1151 (2017) amended Section 86.007 to provide that a marked ballot voted by mail that a voter received due to submitting an ABBM may arrive at the address on the carrier envelope not later than 5:00 p.m. on the day **after** election day, if the carrier envelope was placed for delivery by mail or common or contract carrier from **within** the United States **and** bears a cancellation mark of a postal service or a receipt mark of a common or contract carrier or a courier from **not later than 7:00 p.m.** at the location of the election on election day.

> **NOTE:** This deadline does **not** apply to ballots sent by non-military voters who are overseas but applied for a ballot using an ABBM; these voters have until the 5th day after election day to return their ballots (or t he next business day if the 5th day falls on a weekend or legal state or federal holiday). This deadline also does **not** apply to ballots mailed (domestically or from overseas) by certain members of the military who

applied for a ballot using an FPCA; those voters have until the 6th day after election day to return their ballots. *See* **entries** for Tuesday, November 13, 2018.

Unless the county voter registrar has already taken possession of the provisional ballots prior to this date, the general custodian of election records must deliver the ballot box(es) or transfer case(s) containing the provisional ballots (or provisional ballot affidavits when DRE systems are used), along with the Summary of Provisional Ballots and the List of Provisional Voters for each precinct to the voter registrar by this day. The general custodian of election records makes this delivery to the voter registrar during the voter registrar office's regular business hours. (Secs. 65.052, 65.053; 1 T.A.C. §§ 81.172 – 81.174 & 81.176).

**Note for Political Subdivisions Located in More than One County:** A political subdivision will have to make delivery of the provisional ballots and forms to the county voter registrar in **each** county in which the political subdivision is located. (1 Tex. Admin. Code Secs. 81.172 – 81.174).

> **NOTE:** If the county voter registrar wants to take possession of the provisional ballots and forms on election night (Tuesday, November 6, 2018), the county voter registrar must inform the custodian of the election records and post a notice of the transfer no later than 24 hours before election day. However, under this type of delivery, the county voter registrar **must** go to the custodian of election records office and pick up the provisional ballots and forms. Also, note that the county voter registrar may take possession of provisional ballots prior to election night if ballots are kept separate and may be provided without unlawful entry into ballot box. (1 Tex. Admin. Code Secs. 81.172 – 81.174).

### Friday, November 9, 2018 (3rd day after Election Day)

The first possible day to conduct official local canvass of returns by governing authority of the political subdivision. However, the canvass may not be conducted until the ballot board has verified and counted **all** provisional ballots, if a provisional ballot has been cast in the election, **AND the ballot board has finished convening for all late arriving ballots.** (Sec. 67.003). *See* entries for November 7, 2018 and entries for November 13, 2018. Notice of canvass must be posted at least 72 hours continuously before the canvass is conducted.

> **NOTE:** If a recount petition has been filed and a winning candidate's race is involved in the recount, the certificate of election cannot be issued for that race until the recount has been completed. (Secs. 67.016; 212.0331).

**Cities, Schools, and Other Political Subdivisions**: First day that newly-elected local officers may qualify and assume the duties of their offices. Please note that the canvass must have been completed **before** an officer can assume office. (Sec. 67.016). If a political subdivision was able to **cancel** its election, this is the first day its elected officials can be issued a certificate of election and take the oath of office. (Secs. 2.053(e); 67.003; 67.016).

> **NOTE:** This does not apply to officers of a Type A general law city, *see* entry at Monday, November 12, 2018.

Last day to begin the **partial manual count** for districts using electronic voting systems. This is the last day to **begin** manual recount of ballots in three precincts or one percent of precincts, whichever is greater. (Sec. 127.201(a), (g)). The count must be completed not later than the 21st day after election day. Results of manual count must be delivered to Secretary of State not later than the 3rd day after the manual count is completed. (Sec. 127.201(e)). No partial manual count needs to be done of ballots cast on DRE voting machines. (Sec. 127.201(g)).

### Monday, November 12, 2018 (6th day after Election Day)

First day that newly-elected officers of Type A general law city may qualify and assume duties of office (per Sec. 22.006, Local Government Code), but see **NOTE**, below.

> **NOTE: Council members may take office anytime following the canvass**. Section 22.006 of the Texas Local Government Code states that a newly-elected municipal officer of a Type A city may exercise the duties of office beginning the fifth day after the date of the election, excluding Sundays. However, **no newly**

**elected official may qualify for office before the official canvass of the election has been conducted** (or would have been conducted, in the event of a cancelled election). Section 22.036 of the Texas Local Government Code further requires that the newly-elected governing body of the municipality "meet at the usual meeting place and shall be installed."

**NOTE:** If a recount petition has been filed and a winning candidate's race is involved in the recount, the certificate of election cannot be issued for that race until the recount has been completed. (Secs. 67.016; 212.0331).

### Tuesday, November 13, 2018 (7th day after Election Day)

Deadline for provisional voter to (1) present acceptable photo identification to county voter registrar; or (2) if the voter does not possess and cannot reasonably obtain acceptable photo identification, follow the Reasonable Impediment Declaration procedure at the county voter registrar; or (3) execute an affidavit relative to "natural disaster" or "religious objection" in presence of county voter registrar, if applicable; or (4) qualify for the disability exemption, if applicable, with the county voter registrar. (Secs. 1.006; 65.054; 65.0541).

Last day to receive ballots from **non-military and any military voters** casting ballots from outside of the United States, who submitted an **ABBM**, (not an FPCA) **AND** who placed their ballots in delivery by 7:00 p.m. on election day, Tuesday, November 6, 2018, as evidenced by a postal service cancellation mark or a receipt mark of a common or contract carrier or a courier (Secs. 86.007, 101.057 and 101.001). A late overseas ballot sent by a voter who applied for a ballot using an ABBM (not an FPCA) **cannot be counted** if it does **not** bear a cancellation mark or a receipt mark.*

> **NOTE:** House Bill 1151 (2017) amended Section 86.007 to provide that a marked ballot voted by mail from **outside** of the United States by a voter who received the ballot due to submitting an ABBM is considered timely if it is received at the address on the carrier envelope not later than **the fifth day** after the date of the election. Further, the delivery is considered timely if the carrier envelope or, if applicable, the envelope containing the carrier envelope is properly addressed with postage or handling charges prepaid **and** bears a cancellation mark of a recognized postal service or a receipt mark of a common or contract carrier or a courier indicating a time **by 7:00 p.m.** on election day.

Last day to receive ballots from **non-military voters** casting ballots from **overseas**, who submitted a **FPCA, AND** who placed their ballots in delivery by 7:00 p.m. on election day, Tuesday, November 6, 2018. (Sec. 86.007(d) and (e)).*

*The deadlines referenced above are extended to the next regular business day which is Tuesday, November 13, 2018 due to the 5th day falling on a Sunday and Veterans Day being observed by the U.S. Postal Service on Monday, November 12, 2018. (Secs. 1.006; 86.007(d-1)).

Last day to receive carrier envelopes mailed domestically (within the United States) OR overseas from voters who submitted a **FPCA AND** who are **members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine.** (Secs. 1.006; 101.057; 101.001). *See* Note on House Bill 929 (2017, RS), below. The deadline is extended to the next regular business day which is Tuesday, November 13, 2018 due to the 6th day falling on a Monday and Veterans Day being observed by the U.S. Postal Service on November 12, 2018. (Sec. 86.007(d-1)).

> **NOTE:** House Bill 929 (2017, RS) amended Section 101.057 to provide that carrier envelopes mailed domestically or overseas from certain **military voters** (members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine) who submitted a **Federal Post Card Application (FPCA)** may arrive on or before the 6th day after election day. (Secs. 86.007; 101.057; 101.001).

**NOTE: The carrier envelope or, if applicable, the envelope containing the carrier envelope sent by the military members listed above who applied to vote by mail using the FPCA does NOT need to bear a cancellation or receipt mark in order to be counted.**

Deadline for Voter Registrar to complete the review of provisional ballots. (1 Tex. Admin Code Secs. 81.172 – 81.175).

Deadline for custodian of election records or presiding judge of the early voting ballot board to retrieve provisional ballots from county voter registrar. (1 Tex. Admin. Code Secs. 81.172 – 81.176).

**Saturday, November 17, 2018 (11th day after Election Day)**

Last day to post notice of governing authority's meeting to canvass returns of election if canvass is to take place on Tuesday, November 20, 2018 (14th day after election). This notice must be posted at least 72 hours before the scheduled time of the meeting. (Secs. 551.002; 551.041; 551.043, Texas Government Code).

**Monday, November 19, 2018 (13th day after Election Day)**

Last day for **early voting ballot board** to convene to qualify and count:

1. any late **domestic** ballots (non-military) that bear a cancellation mark or receipt mark indicating they were placed for delivery by mail or common or contract carrier not later than 7:00 p.m. on election day, November 6, 2018, and were received not later than 5:00 p.m. on the first business day after election day, on Wednesday, November 7, 2018. (Secs. 86.007(a); 87.125(a)).

2. any late ballots that were submitted from <u>outside</u> the United States by voters who applied for the ballot using an ABBM or by non-military voters who applied for the ballot using an FPCA, and which were received by the 5th day after election day, Tuesday, November 13, 2018. (Secs. 1.006; 87.125(a)); 86.007(d)).\*

3. any ballots received by the 6th day after election day, Tuesday, November 13, 2018, from voters who are members of the armed forces of the United States, or the spouse or a dependent of a member of the armed forces, members of the merchant marines of the United States, or the spouse or a dependent of a member of the merchant marine and who applied for a ballot using an FPCA. (Secs. 1.006; 101.057; 87.125(a)).\*

4. any provisional ballots that have been reviewed by the voter registrar. (Sec. 65.051(a)).

**NOTE:** The deadlines referenced above are extended to the next regular business day which is Tuesday, November 13, 2018 due to the 5th day falling on a Sunday and Veterans Day being observed by the U.S. Postal Service on Monday, November 12, 2018. (Secs. 1.006; 86.007(d-1)).

**NOTE:** Ballots that do not qualify under 1-3 above should be treated as ballots not timely returned and should not be delivered to the ballot board.

**NOTE:** The presiding judge of the EVBB shall mail a <u>Notice of Rejected Ballot</u> to voters whose mail ballots were rejected no later than the 10th day after election day or as soon as practicable, depending on when the EVBB last convenes. (Sec. 87.0431).

The time the board reconvenes is set by the presiding judge of the early voting ballot board. (Secs. 86.007(d); 87.125).

**Tuesday, November 20, 2018 (14th day after Election Day)**

Last day for official canvass of returns by governing authority of political subdivision. (Sec. 67.003).

**NOTE:** If a recount petition has been filed and a winning candidate's race is involved in the recount, the certificate of election cannot be issued for that race until the recount has been completed. (Secs. 67.016; 212.0331).

**Saturday, November 24, 2018 (18th day after Election Day)**

First day that Governor may conduct the state canvass of the November General Election for state and county officers. (Sec. 67.012).

**Tuesday, November 27, 2018 (21st day after Election Day)**

Last day to complete the partial manual count.  (Sec. 127.201(a)).

**Friday, November 30, 2018 (24th day after Election Day; 10th day after last canvass)**

Last day for the presiding judge of the early voting ballot board to mail Notice of Outcome to Provisional Voter (PDF) to provisional voters, if the canvass was held on Tuesday, November 20, 2018. Such notices must be delivered to provisional voters by the presiding judge no later than the 10th day after the local canvass. (65.059; 1 Tex. Admin. Code Sec. 81.176(e)).

# December

**Thursday, December 6, 2018 (30th day after Election Day)**

Last day to file **electronic** precinct-by-precinct returns with the Secretary of State. (Sec. 67.017).

**Monday, December 10, 2018 (34th day after Election Day)**

Last day for the Governor to conduct the state canvass for the November General Election for state and county. Since the actual deadline (the 33rd day) falls on a Sunday, the deadline is moved to the next business day. (Secs. 1.006; 67.012).

**Friday, December 14, 2018 (38th day after Election Day)**

Last day of the period for mandatory office hours. *See* entry for Monday, September 17, 2018. (Sec. 31.122).

# January

**Sunday, January 6, 2019 (61st day after Election Day)**

First day that contents of ballot box(es) may be transferred from locked ballot box to separate container for the remainder of the preservation period. (Sec. 66.058(b)).

# 2018 - 2020

**Monday, September 7, 2020 (day after 22 months after November 6, 2018 Election Day)**

Contents of ballot box(es) may be destroyed **IF** no contest or criminal investigation has arisen (Secs. 1.013; 66.058), and **IF** no open records request has been filed (Tex. Att'y Gen. ORD-505 (1988)).

> **NOTE - NEW LAW**: SB 5 (85th Legislative Session, 1st CS, 2017) provides that **all** election records must be preserved for 22 months from election day, even when there is no federal office on the ballot. (Sec. 66.058).

**Notable Exceptions:**

**Permanent Records**: Election results must be permanently-maintained in the election register. (Sec. 67.006).

**NOTE - Electronic Voting Systems**: See advisories on our website for preservation procedures for electronic voting systems.

**Saturday, November 7, 2020 (day after Two Years after November 6, 2018 Election Day)**

**NOTE - Retention of Voter Registration List:**  County voter registrar must maintain **copy** of each voter list prepared for each countywide election for 2 years (24 months) after election day. (Sec. 18.011).

**NOTE - Retention of Candidate Applications**: Candidate applications must be retained by the governing body for **two** years after date of election. (Sec. 141.036).



EXHIBIT 6
WIT: Flores
DATE: 12/10/19
Aubrea Hobbs, CSR, RPR

**NOTICE OF MEETING
OF COMMISSIONERS COURT
OF WALLER COUNTY, TEXAS
WEDNESDAY AUGUST 22, 2018**
9:00 A.M.

**NOTICE** is hereby given that the Commissioners Court of Waller County, Texas, will meet in **REGULAR SESSION** at **9:00 A.M.** on **WEDNESDAY,** the 22nd **day** of **August 2018,** at its meeting place at the **Waller County Courthouse, Hempstead, Texas**

Said meeting will be a regular meeting for the purpose of transacting the routine business of the County and to **Consider and take possible action on any of the following agenda items:**

1.    Approval of Agenda.

## PUBLIC COMMENT

## CONSENT AGENDA

Items identified within the consent agenda are of a routine nature, and will be passed with one vote without being discussed separately. If a member of the court or public requests that a particular item be discussed, that agenda item will be pulled from the Consent Agenda and discussed as part of the regular agenda at the appropriate time. One vote will approve the remaining items on the Consent Agenda.

2.    Approval of the minutes.

3.    Request to approve payment on the following:

   (a) $635.00 for Invoice #NRDD-0003759 and $2,545.00 for Invoice # NRDD-0003786 for a total of $3,180.00 to Texas Association of Counties Risk Management Pool from line item 125-411-560300 [Ins Equip/Build/Pub Liab].

   (b) $15,000.00 to Waller County Historical Society from line item 125-538-568400 [Miscellaneous] as allocated in the 2018 Budget.

4.    Request by IT Department to approve Fixed Asset Transfers.

5.    Request by District Clerk to approve Fixed Asset Transfers.

## CONSENT AGENDA cont.

6.   Request by 506th District Judge to approve Fixed Asset Transfers.

7.   Request by County Tax Assessor-Collector to approve Fixed Asset Transfers.

8.   Request by County Tax Assessor Collector to approve refunds in excess of $500.00 in accordance with section 31.11 Texas Tax Code.

9.   Request by Treasurer for approval of Treasurer's Monthly Report.

10.  Request approval by Juvenile Probation to transfer $1,500.00 from line item 308-578-545302 [Training] and $1,500.00 from line item 308-578-545305 [Training] for a total of $3,000.00 to line item 308-578-530100 [Supplies].

11.  Request by County Auditor for approval and/or ratification of Accounts Payable.

## PRESENTATION

12.  Update by Michael Parks from Brazos Valley Council of Governments on the County Indigent Health Care Program.

## COUNTY ENGINEER

13.  Discuss and take action to approve a variance request to the Subdivision and Development Regulations, Engineering Design Standards Section 2 – Lot size, regarding the minimum lot size per dwelling, by Mr. Claude Bryant.

14.  Discuss and take action to approve a variance request to the Subdivision and Development Regulations, Engineering Designs Standards, Section 3 – Flag Lot, regarding the length of staff portion of the lot, by Mr. Milton Thomas.

15.  Discuss and take action to award Base Bid for "Bridge Replacement at Lewisville Creek Draw" to Forde Construction Company.

## ELECTIONS

16.  Discuss and take action to approve the Lease Proposal from Xerox for a C8055H Printer/Copier.  Monthly rate of $224.56 to be funded from line item 125-434-581826 [Equipment Rental].

## ELECTIONS cont.

17. Discuss and take action to approve Early Voting locations and Election Day polling locations to be used in the November 6, 2018 General Election.

18. Discuss and take action to approve rate of pay for Election Judges and Alternate Judges at $10/hour and Election Clerks at $9/hour for the November 6, 2018 General Election.

## MISCELLANEOUS

19. Discuss and take action to approve the Vine Service Agreement between Appriss and Waller County.

20. Discuss and take action to approve Burn Ban.

21. Discuss and take action to deliberate business and financial issues in executive session based on determination and recommendation from the District Attorney's Office that deliberation in an open meeting regarding business and financial issues related to purchasing or leasing real property in Precinct 1 would have a detrimental effect on the position of the County in negotiations with third persons.

## EXECUTIVE SESSION

22. Deliberate business and financial issues related to purchasing or leasing real property in Precinct 1 pursuant to Government Code Sections 551.072 and 551.0725.

23. Consultation with District Attorney and outside counsel pursuant to Government Code Section 551.071.

24. Reconvene in Open Session to take any action necessary on matters discussed in Executive Session.

## ADJOURN MEETING

Carbett "Trey" J. Duhon III,
County Judge
Waller County, Texas

## <u>NOTICE</u>

The County Commissioners Court of Waller County reserves the right to adjourn into executive session at any time during the course of this meeting to discuss any of the matters listed above, as authorized by Texas Government Code Sections 551.071 (Consultation with Attorney), 551.072 (Deliberation about Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 Personnel Matters, 551.076 (Deliberations about Security Devices) and 551.086 (Economic Development).

# Early Voting and Election Day Polling Places

*Sitios de votación adelantada en persona y Día de Elecciones*

## 2018 GENERAL ELECTION
## NOVEMBER 6, 2018

Waller County Courthouse
Waller ISD Admin Bldg., 2214 Waller St., Waller
Monaville County Building JP3, 12620 FM 1887, Hempstead
Waller Co. Library, 3815 6th St., Brookshire
Fieldstore County Building JP2, 27388 Fieldstore Rd., Waller
Monaville County Building JP3, 12620 FM 1887, Hempstead
PVAMU Memorial Student Center / Waller Co. Community Center, Prairie View
Katy VFW 6206 George Bush Dr., Katy, TX 77493

**Any voter eligible to vote in Waller County may vote EARLY at any one of the Early Voting Locations**

*Cualquier votante elegible para votar en el Condado de Waller puede votar en cualquiera de los sitios de votación anticipada*

**Election Day Polling Locations November 6, 2017 7AM - 7PM** *[Sitios del Día de Elecciones 6 de Noviembre 2015 7AM-7PM]*

Pct. (*Precinto*) 101: St. Bartholomew's Episcopal Church, 811 14th St., Hempstead (County only)
Pct. (*Precinto*) 102: Waller County Annex, 775 Bus. 290 East, Hempstead (County only)
Pct. (*Precinto*) 103: Hempstead High School Library, 801 Donoho St., Hempstead (County only)
Pct. (*Precinto*) 104: Waller County Fairgrounds, 21988 FM 359, Hempstead (County only)
Pct. (*Precinto*) 105: Rolling Hills Vol. Fire Dept., 31601 FM 1736, Hempstead (County only)
Pct. (*Precinto*) 206: Fieldstore Elementary School, 31670 Giboney Rd., Waller (County only)
Pct. (*Precinto*) 207: Turlington Elementary, 23400 Hegar Rd., Hockley (County only)
Pct. (*Precinto*) 208: Waller ISD Admin Bldg., 2214 Waller St., Waller (County + City of Waller)
Pct. (*Precinto*) 309: Memorial Student Center, Prairie View A & M University (County only)
Pct. (*Precinto*) 310: Prairie View City Hall, 44500 Bus. Hwy. 290 East, Prairie View I (County only)
Pct. (*Precinto*) 311: Monaville County Building JP3, 12620 FM 1887, Hempstead (County only)
Pct. (*Precinto*) 312: Monaville Fire Department, 13631 Cochran Rd., Waller (County only)
Pct. (*Precinto*) 313: Adam's Flat Building, 36249 FM 529, Brookshire (County only)
Pct. (*Precinto*) 414: Mt. Zion Methodist Church, 4998 Mt. Zion Road, Brookshire (County only)
Pct. (*Precinto*) 415: Pattison VFW, 2950 FM 359 North, Pattison (County only)
Pct. (*Precinto*) 416: Brookshire Convention Center, 4027 5th St., Brookshire TX 77423 (County + City of Brookshire)
Pct. (*Precinto*) 417: Waller Co. Library, 3815 6th St., Brookshire (County + City of Brookshire)
Pct. (*Precinct*) 418: Igloo 777 Igloo Rd., Katy (County + Katy ISD)
Pct. (*Precinto*) 419/420: Katy VFW 6206 George Bush Dr., Katy, TX 77493

**On Election Day, voters are required to vote in the voting precinct in which they are registered**
*En el Día de Elecciones cada votante tendrá que votar en el precinto en el que está registrado.*

- ◦ General
- ◦ CC Meetings
- ◦ Public Hearing
- ◦ County Holiday
- ◦ County Closure
- ◦ Town Hall Meeting
- ◦ Sub-Regional Planning Committee
- ◦ WCCWB

- • Print
- • iCal
- • RSS

**September** 2018
◀ September 2018 ▶

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 26 | 27 **9:00a** 2019 Proposed Salary Committee Meeting | 28 | 29 **9:00a** Commissioners Court Meeting | 30 | 31 | 1 |
| 2 | 3 **All Day** County Holiday | 4 | 5 **9:00a** Commissioners Court Meeting | 6 **7:00p** Public TCEQ Meeting Re-High Speed Rail Project | 7 | 8 |
| 9 | 10 | 11 | 12 **9:00a** Commissioners Court Meeting | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 **9:00a** Commissioners Court Meeting | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 **9:00a** Commissioners Court Meeting | 27 | 28 | 29 |

EXHIBIT 7
WIT: Doe5
DATE: 3/10/19
Aubrea Hobbs, CSR, RPR



# NOTICE OF MEETING
# OF COMMISSIONERS COURT
# OF WALLER COUNTY, TEXAS
# WEDNESDAY SEPTEMBER 5, 2018
## 9:00 A.M.

**NOTICE** is hereby given that the Commissioners Court of Waller County, Texas, will meet in **REGULAR SESSION** at **9:00 A.M.** on **WEDNESDAY,** the 5th **day** of **September, 2018,** at its meeting place at the **Waller County Courthouse, Hempstead, Texas**

Said meeting will be a regular meeting for the purpose of transacting the routine business of the County and to **Consider and take possible action on any of the following agenda items:**

1.   Approval of Agenda.

## PUBLIC COMMENT

## CONSENT AGENDA

Items identified within the consent agenda are of a routine nature, and will be passed with one vote without being discussed separately. If a member of the court or public requests that a particular item be discussed, that agenda item will be pulled from the Consent Agenda and discussed as part of the regular agenda at the appropriate time. One vote will approve the remaining items on the Consent Agenda.

2.   Approval of the minutes.

3.   Request to approve payment on the following:

(a) $2,887.00 for invoice # AH017684, $3,022.00 for invoice # AH017685 and $2,887.00 for invoice # AH017698 for a total of $8,796.00 to Harris County Treasurer from line item 125-423-540702 [Autopsy].

4.   Request by County Auditor for approval and/or ratification of Accounts Payable.

## PROCLAMATION

5.   Discuss and take action to approve the Proclamation designating Waller County as a Purple Heart County.

## PUBLIC HEARING

6.   Public Hearing – Proposed Tax Rate, first hearing.

Commissioners Court will vote on the proposed tax rate on September 19, 2018 at 9:00 a.m. at its meeting place in the Waller County Courthouse located at 836 Austin Street, Hempstead, Texas.

## COMMISSIONER PRECINCT 3

7.   Presentation of a future County Park by Adam McGovern with EHRA Engineering.

## COUNTY JUDGE

8.   Discuss and take action to Order the General Election to be held on November 6, 2018.

## COUNTY ENGINEER

9.   Discuss and take action to approve a variance request to the Subdivision and Development Regulations, Engineering Design Standards, Section 2, Lot size, regarding the minimum lot size per dwelling, by Ms. Letitia Duncan.

10.  Discuss and take action to approve the Infrastructure Development Plan of The Haven RV Park.

## AUDITOR

11.  Discuss and take action to approve line item transfers.

12.  Discuss and take action to amend the 2018 Budget to accommodate the remaining balance of $12,500.00 from the Charitable Activities/Initiatives Contract with Prairie View A&M.

13.  Spread upon the minutes the Certification of Funds for Constable, Precinct 4, 2017 LEOSE Funds in the amount of $683.00.

## AUDITOR cont.

14. Discuss and take action to amend the 2019 Budget to accommodate Constable, Precinct 4, 2017 LEOSE Funds.

## SHERIFF

15. Discuss and take action to approve leasing 13 vehicles with Enterprise Fleet Management.

## MISCELLANEOUS

16. Discuss and take action to rescind Burn Ban.

17. Discuss and take action to approve the Optional Fees for Calendar year 2019.

18. Discuss and take action to approve Designation of Representatives for Houston-Galveston Area Council 2019 General Assembly and Board of Directors.

19. Discuss and take action to deliberate business and financial issues in executive session based on determination and recommendation from the District Attorney's Office that deliberation in an open meeting regarding business and financial issues related to purchasing or leasing real property in Precinct 1 would have a detrimental effect on the position of the County in negotiations with third persons.

## EXECUTIVE SESSION

20. Deliberate business and financial issues related to purchasing or leasing real property in Precinct 1 pursuant to Government Code Sections 551.072 and 551.0725.

21. Consultation with District Attorney and outside counsel pursuant to Government Code Section 551.071.

22. Reconvene in Open Session to take any action necessary on matters discussed in Executive Session.

**ADJOURN MEETING**

_____

Carbett "Trey" J. Duhon III,
County Judge
Waller County, Texas

## NOTICE

The County Commissioners Court of Waller County reserves the right to adjourn into executive session at any time during the course of this meeting to discuss any of the matters listed above, as authorized by Texas Government Code Sections 551.071 (Consultation with Attorney), 551.072 (Deliberation about Real Property), 551.073 (Deliberations about Gifts and Donations), 551.074 Personnel Matters, 551.076 (Deliberations about Security Devices) and 551.086 (Economic Development).



GOU 3
Prescribed by Secretary of State
Sections 3.004, 3.005, 85.004 Texas Election Code
1/07

## ORDER OF GENERAL ELECTION
### (ORDEN DE GENERAL ELECCIÓN)

An election is hereby ordered to be held on November 6, 2018, in Waller County, Texas for the purpose of electing the following county and precinct officers as required by Article XCVI, Section 65 of the Texas Constitution. (Criminal DA, CCL Judge, County Judge, District Clerk, County Clerk, County Treasurer, Commissioner Pct. 2 and Pct. 4, JP, Pct. 1, 2, 3 and 4, ) Se ordena que una elección se celebre el 6 de noviembre de 2018 en el condado de Waller, Texas, con el propósito de elegir a los siguientes oficiales del condado y del distrito electoral según lo exige el Artículo XCVI, Sección 65 de la Constitución de Texas.

**EARLY VOTING BY PERSONAL APPEARANCE** WILL BEGIN ON MONDAY, OCTOBER 22, 2018 AND END ON FRIDAY, NOVEMBER 2, 2018. (LA VOTACIÓN TEMPRANA POR APARIENCIA PERSONAL COMIENZA EL LUNES, 22 DE OCTUBRE DE 2018 Y FINALIZARÁ EL VIERNES, 2 DE NOVIEMBRE DE 2018)

| 2018 GENERAL ELECTION   EARLY VOTING BY PERSONAL APPEARANCE – DATES, TIME AND LOCATIONS | | | | | |
|---|---|---|---|---|---|
| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
| OCT 22 | OCT 23 | OCT 24 | OCT 25 | OCT 26 | OCT 27 |
| Courthouse **8 – 5** WISD Admin. Bldg Brookshire Library Katy VFW | Courthouse **8 – 5** WISD Admin. Bldg Brookshire Library Katy VFW | Courthouse   **8 – 5** WISD Admin. Bldg Brookshire Library Katy VFW | Courthouse **8 – 5** WISD Admin. Bldg Brookshire Library JP 2 Fieldstore JP 3 Monaville | Courthouse   **8 – 5** WISD Admin. Bldg Brookshire Library JP 2 Fieldstore JP 3 Monaville | Courthouse **9 - 2** WISD Admin. Bldg Brookshire Library JP 2 Fieldstore JP 3 Monaville |
| OCT 29 | OCT 30 | OCT 31 | NOV 1 | NOV 2 | |
| Courthouse **8 –5** WISD Admin. Bldg Brookshire Library PVAMU Student Ctr | Courthouse **8 – 5** WISD Admin. Bldg Brookshire Library PVAMU Student Ctr | Courthouse   **8 – 5** WISD Admin. Bldg Brookshire Library PVAMU Student Ctr | Courthouse **7 – 7** WISD Admin. Bldg Brookshire Library WC Comm. Ctr PV | Courthouse **7 – 7** WISD Admin. Bldg Brookshire Library WC Comm. Ctr PV | |

Applications for ballot by mail shall be mailed to: (Las solicitudes para boletas que se votarán adelantada por correo deberán enviarse a:)

*Christy A. Eason, Elections Administrator*
*846 Wilkins Street*
*Hempstead, TX 77445*

Applications must be received no later than the close of business on Friday, October 26, 2018. Las solicitudes para boletas que se votaran adelantada por correo deberán recibirse no más tardar de las horas de negocio e

### Election Day Polling Locations November 6, 2018 *7AM - 7PM (Sitios del Día de Elecciones 6 de Noviembre 2018 7AM-7PM)*
Pct. (*Precinto*) 101: St. Bartholomew's Episcopal Church, 811 14th St., Hempstead (County only)
Pct. (*Precinto*) 102: Waller County Annex, 775 Bus. 290 East, Hempstead (County only)
Pct. (*Precinto*) 103: Hempstead High School Library, 801 Donoho St., Hempstead (County only)
Pct. (*Precinto*) 104: Waller County Fairgrounds, 21988 FM 359, Hempstead (County only)
Pct. (*Precinto*) 105: Rolling Hills Vol. Fire Dept., 31601 FM 1736, Hempstead (County only)
Pct. (*Precinto*) 206: Fieldstore Elementary School, 31670 Giboney Rd., Waller (County only)

Pct. (*Precinto*) 207: Turlington Elementary, 23400 Hegar Rd., Hockley (County only)

Pct. (*Precinto*) 208: Waller ISD Admin Bldg., 2214 Waller St., Waller (County only)

Pct. (*Precinto*) 309: Memorial Student Center, Prairie View A & M University (County only)

Pct. (*Precinto*) 310: Prairie View City Hall, 44500 Bus. Hwy. 290 East, Prairie View I (County only)

Pct. (*Precinto*) 311: Monaville County Building JP3, 12620 FM 1887, Hempstead (County + RISD)

Pct. (*Precinto*) 312: Monaville Fire Department, 13631 Cochran Rd., Waller (County only)

Pct. (*Precinto*) 313: Adam's Flat Building, 36249 FM 529, Brookshire (County only + RISD)

Pct. (*Precinto*) 414: Mt. Zion Methodist Church, 4998 Mt. Zion Road, Brookshire (County + RISD)

Pct. (*Precinto*) 415: Pattison VFW, 2950 FM 359 North, Pattison (County + RISD)

Pct. (*Precinto*) 416: Brookshire Convention Center, 4027 5th St., Brookshire TX 77423 (County + RISD)

Pct. (*Precinto*) 417: Waller Co. Library, 3815 6th St., Brookshire (County + RISD)

Pct. (*Precinto*) 418: Igloo 777 Igloo Rd., Katy (County + RISD)

Pct. (*Precinto*) 419/420: Katy VFW ,6202 George Bush Dr., Katy (County only)

**Issued this the 5th day of September, 2018.**

_____

**Signature of County Judge**