PLAINTIFF'S
EXHIBIT

**87**

| | |
|---|---|
| **From:** | Elizabeth Dorsey <FIRST ORGANIZATION/EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/RECIPIENTS/E.DORSEY> |
| **Sent:** | 2/6/2018 2:18:23 PM -0700 |
| **To:** | Trey Duhon <t.duhon@wallercounty.us>; John A. Amsler <j.amsler@wallercounty.us>; Russell Klecka <r.klecka@wallercounty.us>; Jeron Barnett <j.barnett@wallercounty.us>; Justin Beckendorff <j.beckendorff@wallercounty.us> |
| **Subject:** | item 8 - elections equipment contract |
| **Attachments:** | Waller Co TX 020618 Verity Master Agreement.pdf |

Good afternoon,


The attached contract is the updated agreement for the purchase of the elections equipment.


Best,

Liz



**VERITY**

**MASTER AGREEMENT**

This Master Agreement ("**Agreement**"), entered into effective as of _____, 201__ ("the **Effective Date**") by and between Hart InterCivic, Inc., a Texas corporation ("**Hart**") and the Customer set forth below ("**Customer**"), sets forth the terms and conditions pursuant to which Customer may procure from Hart certain hardware ("**Hardware**"), software ("**Software**") licenses and support services ("**Software Support Services**"), warranty services ("**Warranty Services**"), and/or design, engineering, software development, project management, operational training, election event support, and/or other services ("**Professional Services**"), from time to time. Hardware and Software may be referred to as "**Products**" and Warranty Services, Software Support Services and/or Professional Services may be referred to as "**Services.**" Products may be "**Hart Hardware**," and "**Hart Proprietary Software**," (i.e. "**Hart Products**") or "**Third Party Hardware**" and "**Sublicensed Software**" (i.e. "**Third Party Products**"). The foregoing may be referred to together as the "**Verity system**."

Hart agrees to sell or provide to Customer Products and Services according to this Agreement, which includes all Schedules, Attachments and Exhibits. Customer agrees to all terms and conditions of this Agreement. Pricing and other material terms of Customer's initial commitment are as set forth in the Schedule A or Customer Signed Quote attached hereto as **Exhibit A**. This Agreement and Hart's quotations issued hereunder together comprise the complete and exclusive Agreement for the sale of the Products and the provision of the Services. No other terms and conditions sent by Customer shall apply, including any terms or conditions contained in any purchase order, request for quote (RFQ), request for proposal (RFP), communication or other operational form that is in addition to or different than the terms and conditions of this Agreement. Any of Customer's terms and conditions that are different from or in addition to those contained herein are hereby objected to and shall be of no effect unless specifically agreed to in writing by an officer of Hart. Customer acknowledges it has read and understands this Agreement (including all Schedules, Attachments and Exhibits) and is entering into this Agreement only on the basis of the terms set forth in this Agreement (including all Schedules, Attachments and Exhibits).

Agreed and Accepted:

| **Customer** | **Hart** |
|---|---|
| Jurisdiction: Waller County, TX | |
| Name: Waller County Elections | Hart InterCivic, Inc. |
| Address: 816 Wilkins St. | 15500 Wells Port Drive |
| Hempstead, TX 77445 | Austin, Texas 78728 |
| | Attn.: Phillip W. Braithwaite, CEO |
| Phone: (979) 826-7643 | 800-223-4278 |
| Facsimile: (979) 826-7645 | 800-831-1485 |
| E-mail: c.eason@wallercounty.us | pbraithwaite@hartic.com |

Executed By:_____     _____

Name: _____     Phillip W. Braithwaite

Title: _____     CEO

This Agreement is not effective until executed by both parties.
Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement.

DEFENDANTS001546

1. **ORDERING**

Customer may request quotations for Products or Services from time to time. The existence of this Agreement does not obligate Customer to request a quotation or purchase any Products or Services from Hart. Any Customer request for quotation must include the following information: (i) description of requested Product or Services; (ii) unit quantity and/or desired term; (iii) Hart's part number and/or vendor part number, if applicable; (iv) current unit price as provided by Hart, if applicable; (v) correct shipping address, if applicable; and (vi) any other order information required by Hart. Each request for quotation shall identify the address of the shipping destination, if applicable. Customer may only make a request for quotation via facsimile and other Hart approved electronic ordering methods, including email. All quotations are valid for only 30 days unless specifically stated on the front of the quotation. If the quotation is signed by Customer within thirty (30) days, Hart will provide notice of its acceptance via countersignature within fifteen (15) days of the date on which it receives Customer's signature on the Hart quotation. Failure to provide such written acceptance shall be deemed Hart's rejection of the order. Hart reserves the right to accept or reject any order initiated by Customer in Hart's discretion. Only signed quotations will obligate the parties to the terms of such quotations and this Agreement with respect to the applicable Products and/or Services. Each accepted quotation shall be subject to the terms and conditions of this Agreement.

2. **PRICING**

2.1. **Products**. Prices for Products shall be specified by Hart in the relevant quotation or proposal and are subject to change without notice, including Prices for backordered Products, however, Prices in quotations or other agreements signed by both Parties are not subject to change. All prices are exclusive of shipping and packing costs, and insurance.

2.2. **Annual License and Support Fee** The "**Annual Fee''** is the combined fee for licensing (in the case of Hart Proprietary Software), sublicensing (in the case of Sublicensed Software, if any), and support (a "**License and Support Subscription**"). Pricing for the initial Annual Fee is the amount specified as the "**Initial Annual Fee**" on **Exhibit A**. Pricing for subsequently ordered License and Support Subscriptions shall be specified on the applicable quotation, and unless otherwise specified, shall be pro-rated so as to be co-terminus with the initially-ordered License and Support Subscriptions. Hart may adjust the amount of the Annual Fee for renewal License and Support Subscription terms by notifying Customer of any price changes with the invoice in which the adjustment is made. Unless adjusted by Hart, each renewal Annual Fee will be the same as the Annual Fee for the renewing License and Support Subscription.

2.3. **Other Services**. Pricing for other Services shall be set forth in the applicable quotation, or if not specified, at Hart's then-current hourly rates.

2.4. **Additional Charges.** Additional charges may apply to Services e.g., travel, communication and other expenses. There will be an additional charge at Hart's current technician's rate per hour for any technical work required as a result of other than Hart-recommended equipment purchased by the Customer for use with the Products. Any other additional charges must be mutually agreed to by Hart and Customer and documented in an amendment to this Agreement.

2.5. **Taxes**. All prices are exclusive of applicable taxes. All taxes shall be payable by Customer, unless Customer presents Hart with a proper certificate of exemption from such tax. If Customer challenges the applicability of any such tax, Customer shall pay the tax and may thereafter seek a refund. In the event Hart is required to pay any tax at time of sale or thereafter, Customer shall promptly reimburse Hart therefore.

3. **PAYMENT**

3.1. **Products**. Except as otherwise provided in Hart's quotation, amounts due for Products shall be billed upon shipment and shall be paid in full within thirty (30) days after delivery.

3.2. **Annual Fee**. The Annual Fee for the initial License and Support Subscription is due upon execution of this Agreement and annually thereafter before expiration thereof. Annual Fees for subsequently ordered License and Support Subscriptions, if any, shall be due upon acceptance of order and unless specified on the applicable quotation, the corresponding Annual Fees for renewals thereof shall be due annually with the renewal of the initially-ordered License and Support Subscription (i.e. shall be pro-rated and become co-terminus). If Customer fails to timely pay an Annual Fee, all Software licenses and Software Support Services will automatically terminate.

3.3. **Other Services**. Amounts due for other Services shall be billed upon the earlier to occur of one or more of the following: first election in which the Professional Services are used; receipt of Services acceptance; not later than sixty (60) days after the date of Customer's first election in which any portion of the Hardware and/or Software is used, and shall be due within thirty (30) days of receipt of invoice.

DEFENDANTS001547

3.4. **Payment Mechanics**. Customer will pay all amounts due under this Agreement in U.S. Dollars. All payments are to be made to Hart at its principal office in Austin, Texas, as set forth on the signature page or to such other location as may be designated by Hart in a notice to Customer. Hart reserves the right to require C.O.D. payment, a letter of credit, or other security for payment if it determines that such terms are required to assure payment. Customer shall promptly notify Hart in writing of any change to Customer's name, address, or billing information.

3.5. **Late Fees**. Hart may impose interest at the lower of: (1) one and one-half percent (1½%) per month, or (2) the highest rate of interest then permitted by applicable law for all past due balances, compounded monthly and rounded to the next highest whole month. Customer also agrees to pay or reimburse all fees and expenses reasonably incurred by Hart in collecting any amounts due under this Agreement, including, but not limited to, all attorneys' fees associated therewith. Hart shall have the right, in addition to any and all other rights and remedies available at law or in equity, to delay or cancel any deliveries, to reduce or cancel any or all quantity discounts extended to Customer, and/or to suspend the provision of Services if Customer is in default of payments or any other material term of this Agreement.

3.6. **Billing Disputes**. If any dispute exists between the parties concerning the amount due or due date of any payment, Customer shall promptly pay the undisputed portion. Such payment will not constitute a waiver by Customer or Hart of any of their respective legal rights and remedies against each other. Customer has no right of set-off.

4.    **HARDWARE SPECIFIC TERMS**

4.1. **Delivery**. Hart will provide estimated shipment dates upon acceptance of Customer's signed quotation. Shipment dates on Hart quotations are approximate only and Hart will not be subject to liability for late or delayed shipment. In the event Customer is unable to receive the Hardware Products at the time of delivery Hart, at its sole option and convenience, may deliver such products to storage at any suitable location including Hart's facilities. All costs incurred by Hart for the transportation, storage, and insurance of such Hardware Products shall be borne by Customer.

4.2. **Hart Voting System Equipment Pick-Up**. If Customer has legacy Hart Voting System (HVS) equipment, Hart will pick up and salvage all HVS voting devices, computers, and peripherals at no cost to Customer. Customer may retain databases and reports stored on such equipment solely to comply with record retention policies. Customer may retain minimal necessary computers and copies of legacy software for access to records retention databases. Customer agrees to remove all HVS software from all retained computers at the close of the records retention period. Upon request, Customer will provide Hart with written certification that such software has been deleted.

4.3. **Acceptance**. Customer shall examine all Hardware Products promptly upon receipt thereof. Within ten (10) business days of such receipt, Customer shall notify Hart in writing of any manner in which Customer claims that the Hardware Products fail to conform to their applicable specification, or as to any claimed shortages, or shipments errors. If no written notification is received by Hart within such period, the Hardware Products delivered hereunder shall be deemed accepted by Customer ("**Hardware Acceptance**"). Hardware Product will be deemed conforming if it meets Hart's published specification for such Product, and any specifications identified on the applicable quotation. Upon Customer's Acceptance, any defects in material or workmanship shall be addressed pursuant to the warranty in Section 9 below.

4.4. **Installation** A Hart representative may install the Hardware Products at the Customer's site on a mutually agreed upon date during Hart's normal working hours, within ten (10) business days of delivery, or as soon as is practicable for both parties. Billing will occur on the date the Hardware is shipped to the Customer's site, per Section 3.1 If additional labor and rigging or Customer-specified customization is required for installation due to Customer's special site requirements, Customer will pay those costs including costs to meet union or local law requirements.

4.5. **Title and Transportation**. Hardware Products are shipped Ex Works (Incoterms 2010) from Hart's designated shipping point. Title transfer and transfer of risk of loss  or damage shall be deemed to occur upon Hart making such Hardware Products available to the carrier at Hart's designated shipping point.  Hart reserves the right to select the method and routing of transportation and the right to make delivery in installments unless otherwise specified at the time of quotation acceptance by Hart but in no event will the carrier be deemed the agent of Hart. Notwithstanding the foregoing, if customer chooses a financing option offered by Hart, then title to hardware will pass to Customer according to the terms of the finance agreement.

4.6. **Rescheduling and Cancellation**.  Except in the event of unreasonable delays beyond the quoted delivery dates or an uncured default of a material term of this Agreement by Hart, Customer shall not have the right to change, cancel, or reschedule an accepted quotation in whole or in part without the prior consent of Hart. In the event Customer requests a rescheduling of any Hardware Product and such request is accepted by Hart, Customer agrees to promptly pay Hart's standard reschedule charge. Hart may not cancel a quotation after it has accepted Customer's signed submission thereof.  Customer may not cancel an order after submission to Hart of a signed quotation.  Any cancellations following such times will be at the non-cancelling party's sole discretion and upon terms dictated by the non-cancelling party.

5.    **SOFTWARE SPECIFIC TERMS**

DEFENDANTS001548

5.1.  **License**. Subject to the terms and conditions of this Agreement and for so long as Customer has a current License and Support Subscription in effect, Hart grants to Customer (i) a personal, nonexclusive, nontransferable, and limited license to use the Hart Proprietary Software (which includes Firmware, meaning the Hart Proprietary Software embedded in any Verity system device that allows execution of the software functions) and (ii) a personal, nonexclusive, nontransferable, and limited sublicense to use the Sublicensed Software, if applicable. With this right to use, Hart will provide Customer, and Customer will be permitted to use, only the run-time executable code and associated support files of the Software for Customer's internal data processing requirements as part of the Verity system. The Software may be used only at the Licensed Location specified as the jurisdiction on the signature page of this Agreement and only on the hardware or other computer systems authorized by Hart in writing. Customer's use of the Software will be limited to the number of licenses specified in the applicable quotation. Only Customer and its authorized employees, agents or contractors may use or access the Software. For applicable components, Voters are also authorized to interact with the Software, in a manner consistent with user instructions, for the sole purpose of producing a Cast Vote Record during the course of an election. To the extent Hart Proprietary Software contains embedded third party software, third party licenses may apply. More information concerning embedded third party software can be found in the application's "Help->About" and is available upon written request. Such embedded third party software is distinguished from "Sublicensed Software" which is stand-alone software not part of Hart Proprietary Software that may be included under this Agreement. See **Exhibit D** for a listing of Hart Proprietary Software and Sublicensed Software.

5.2.  **Records and Audit**. Customer shall keep clear, complete and accurate books of account and records with respect to the usage of Software and access to the Software licensed hereunder, including without limitation with respect to access thereto. Licensee shall retain such books and records for a period of five (5) years from the date of cessation of any such usage, notwithstanding any expiration or termination of this Agreement. Customer agrees that during the term of this Agreement and such period, Hart, the licensors of any Sublicensed Software, and their representatives may periodically inspect, conduct, and/or direct an independent accounting firm to conduct an audit, at mutually agreed-upon times during normal business hours, of the computer site, computer systems, and appropriate records of Customer to verify Customer's compliance with the terms of the licenses and sublicenses granted to Customer. If any such examination discloses unauthorized usage, then Customer, in addition to paying such payment then due and without limiting Hart's remedies, shall pay the reasonable fees for the audit.

5.3.  **Restrictions**.

5.3.1.  The Hart Hardware and Hart Proprietary Software are designed to be used only with each other and/or the agreed-upon Sublicensed Software (if any) and Third Party Hardware. To protect the integrity and security of the Verity system, Customer shall comply with the following practices and shall not deviate from them without the express written consent of Hart: (i) Customer shall use the Software and Hardware only in connection with the Verity system, and Customer may only use Hart branded or approved peripherals and consumables with the Verity system.; (ii) Customer shall not install or use other software on or with the Hardware or Software or network the Hardware or Software with any other hardware, software, equipment, or computer systems; and (iii) Customer shall not modify the Hardware or Software. If Customer does not comply with any provisions of this Section 5.3, then (i) the Limited Warranties under Section 9 and the licenses and sublicenses granted under Section 5.1 will automatically terminate; (ii) Hart may terminate its obligation to provide Software Support Services under Section 8; (iii) Hart will have no further installation obligations. Furthermore, if Customer uses the Software and Hardware in combination with other software and equipment (other software or equipment being those not provided by Hart or its designees), and the combination infringes Hart proprietary patent claims outside the scope of the software license granted to Customer under Section 5.1, Hart reserves its rights to enforce its patents with respect to those claims.

5.3.2.  Customer shall not, under any circumstances, cause or permit the adaptation, conversion, reverse engineering, disassembly, or de-compilation of any Software. Customer shall not use any Software for application development, modification, or customization purposes, except through Hart.

5.3.3.  Customer shall not assign, transfer, sublicense, time-share, or rent the Software or use it for facility management or as a service bureau serving others outside of the jurisdiction. This restriction does not preclude or restrict Customer from contracting for election services for other local governments located within Customer's jurisdictional boundaries. Customer shall not modify, copy, or duplicate the Software. All use of software and hardware on which the software resides shall take place and be for activities within Customer's jurisdictional boundaries, except for in cases of joint elections conducted cooperatively with neighboring jurisdictions. All copies of the Software, in whole or in part, must contain all of Hart's or the third-party licensor's titles, trademarks, copyright notices, and other restrictive and proprietary notices and legends (including government-restricted rights) as they appear on the copies of the Software provided to Customer. Customer shall notify Hart of the following: (i) the location of all Software and all copies thereof and (ii) any circumstances known to Customer regarding any unauthorized possession or use of the Software.

5.3.4.  Customer shall not publish any results of benchmark tests run on any Software.

5.3.5.  The Software is not developed or licensed for use in any nuclear, aviation, mass transit, or medical application or in any other inherently dangerous applications. Customer shall not use the Software in any inherently dangerous application and agrees that Hart and any third-party licensor will not be liable for any claims or damages arising from such use.

DEFENDANTS001549

## 6. DOCUMENTATION

Hart will provide Customer with one (1) electronic copy of the standard user-level documentation and operator's manuals and where applicable, environmental specifications for the Product installed at the Customer's location before the first election for which the Product will be used, following installation.

## 7. PROPRIETARY RIGHTS

7.1. **Reservation of Rights.** Customer acknowledges and agrees that the design of the Products, and any and all related patents, copyrights, trademarks, service marks, trade names, documents, logos, software, microcode, firmware, information, ideas, concepts, know-how, data processing techniques, documentation, diagrams, schematics, equipment architecture, improvements, code, updates, trade secrets and material are the property of Hart and its licensors. Customer agrees that the sale of the Hardware and license of the Software does not, other than as expressly set forth herein, grant to or vest in Customer any right, title, or interest in such proprietary property. All patents, trademarks, copyrights, trade secrets, and other intellectual property rights, whether now owned or acquired by Hart with respect to the Products, are the sole and absolute property of Hart and its licensors. Customer shall not, under any circumstances, cause or permit the adaptation, conversion, reverse engineering, disassembly, or de-compilation of any Product(s), or copy, reproduce, modify, sell, license, or otherwise transfer any rights in any proprietary property of Hart. Further Customer shall not remove any trademark, copyright, or other proprietary or restrictive notices contained on any Hart user documentation, operator's manuals, and environmental specifications, and all copies will contain such notices as are on the original electronic media. Intellectual Properties. All ideas, concepts, know-how, data processing techniques, documentation, diagrams, schematics, firmware, equipment architecture, software, improvements, code, updates, and trade secrets developed by Hart personnel (alone or jointly with others, including Customer) in connection with Confidential Information, Verity system, and Hart Proprietary Software will be the exclusive property of Hart.

7.2. **Customer Suggestions and Recommendations.** Customer may propose, suggest, or recommend changes to the Products at any time. Such proposals, suggestions, or recommendations will become Hart's property and are hereby assigned to Hart. Hart may include any such proposals, suggestions, or recommendations, solely at Hart's option, in subsequent periodic Product updates, without restriction or obligation. Hart is under no obligation to change, alter, or otherwise revise the Products according to Customer's proposals, suggestions, or recommendations.

7.3. **License Back** If Customer possesses or comes to possess a licensable or sub-licensable interest in any issued patent with claims that read upon the Verity system, its method of operation, or any component thereof, Customer hereby grants and promises to grant a perpetual, irrevocable, royalty-free, paid-up license, with right to sublicense, of such interest to Hart permitting Hart to make, have made, use, and sell materials or services within the scope of the patent claims.

## 8. SOFTWARE SUPPORT SERVICES

8.1. **Description of Software Support Services**. Subject to the terms and conditions of this Agreement and for so long as Customer has the requisite number of License and Support Subscriptions in effect, Hart will provide Customer the Software Support Services described below. Software Support Services under this Section do not cover any of the exclusions from warranty and support coverage as described under Section 9. If Hart, in its discretion, provides Software Support Services in addition to the services described under this Section, Customer will pay Hart for such services on a time-and-materials basis at Hart's then-prevailing rates, plus expenses, and for replacements at Hart's list prices, unless otherwise agreed in writing by Hart and Customer.

8.1.1. *Software Support Services*. Software Support Services will consist of assisting the Customer in the use of software for purposes of election administration, including functions related to pre-election and post-election testing and general operation of the Verity system. Assistance is available via phone and email through the Hart Customer Support Center. See **Exhibit B** for Hart Customer Support contact information and hours.

Software Support Services may consist of periodic updates to Hart Proprietary Software, at Hart's discretion. Because not all errors or defects can or need to be corrected, Hart does not warrant that all errors or defects will be corrected. Software errors or defects must be reported in writing and be accompanied with sufficient detail to enable Hart staff to reproduce the error and provide a remedy or suitable corrective action. The exclusions from warranty coverage under Section 9.5 also are exclusions from Software Support Services under this Section. There may be consumable, shipping and on-site service charges for update releases of software and there may be feature charges for update or enhancement releases of software.

## 9. WARRANTY AND EXTENDED WARRRANTY

9.1. **Certification**. Where applicable, Verity system components that require certification will meet the certification requirements in place on the effective date of the Master Agreement.

9.2. **Hart Hardware Limited Warranty.** Hart warrants that during the warranty period, the Hart Hardware purchased by Customer will be free from defects in materials and workmanship and will substantially conform to the performance specifications stated in the Verity Operator's Manuals for the Hart Hardware applicable at the time of the installation of the Hardware. The warranty

DEFENDANTS001550

period for new Hart Hardware (other than Consumables) is one (1) year, beginning ten (10) days after the shipping date. The warranty period for used and/or refurbished hardware is ninety (90) days, beginning ten (10) days after the shipping date. Consumables are warranted only to be free from manufacturing defects for a period ninety (90) days, beginning ten (10) days after the shipping date. Hart will, at Hart's sole discretion, replace or repair any Hart Hardware that does not comply with this warranty, at no additional charge to Customer. To request warranty service, Customer must contact Hart in writing within the warranty period. Hart may elect to conduct any repairs at Customer's site, Hart's facility, or any other location specified by Hart. Any replacement Hart Hardware provided to Customer under this warranty may be new or reconditioned. Hart may use new and reconditioned parts in performing warranty repairs and building replacement products. If Hart repairs or replaces Hart Hardware, its warranty period is not extended and will terminate upon the end of the warranty period of the replaced or repaired Hart Hardware. Hart owns all replaced Hart Hardware and all parts removed from repaired products. Customer acknowledges and agrees that this warranty is contingent upon and subject to Customer's proper use of the Verity system and the Exclusions from Warranty and Software Support Services set forth in Section 9.5. This warranty does not cover any Hart Hardware that has had the original identification marks and/or numbers removed or altered in any manner. This warranty does not include any type of routine maintenance service or preventative maintenance service. This Hardware Limited Warranty may be extended after the initial period under separate Extended Hardware Warranty agreements, subject to the order process contemplated by Section 1. Extended warranties exclude consumable items, including all types of batteries, vDrives and paper ("Consumables"). Renewal of the annual License and Support Subscription does not, in itself, extend the Hardware Limited Warranty. The remedies set forth in this Section are the full extent of Customer's remedies and Hart's obligations regarding this warranty. If the Hart Hardware is required to be reconfigured, modified, or otherwise changed after its sale to and installation at the Customer's location due to the Customer's or a local, state, or federal government certification change(s) or due to any statutory changes or new requirements, Hart will determine the feasibility and cost of the required changes and advise the Customer of the total amount due for those Hart Hardware changes. Upon written approval to move forward with the changes and receipt from the Customer of the stated fees, Hart will complete the required changes to the Customer's Hart Hardware. THIS LIMITED WARRANTY DOES NOT APPLY TO ANY THIRD PARTY HARDWARE.

9.3. **Hart Proprietary Software Limited Warranty**. Hart warrants that beginning ten (10) days after the shipping of the Hart Proprietary Software and for so long as Customer has the requisite number of License and Support Subscriptions in effect, the Hart Proprietary Software will perform substantially according to the then-current functional specifications described in the applicable software Operators' Manuals accompanying such Hart Proprietary Software. To request warranty service, Customer must contact Hart in writing within the warranty period. Failure to conform to the warranty must be reported in writing and be accompanied with sufficient detail to enable Hart to reproduce the error and provide a remedy or suitable corrective action (a solution that will allow the software to function appropriately). Hart will make commercially reasonable efforts to remedy or provide a suitable workaround for defects, errors, or malfunctions covered by this warranty that have a significant adverse effect upon operation of the Hart Proprietary Software. Because not all errors or defects can or need to be corrected, Hart does not warrant that all errors or defects will be corrected. Customer acknowledges and agrees that this warranty is contingent upon and subject to Customer's proper use of the Verity system and the Exclusions from Warranty and Support Coverage set forth in Section 9.5. The remedies set forth in this Section 9.3 are the full extent of Customer's remedies and Hart's obligations regarding this warranty. THIS LIMITED WARRANTY DOES NOT APPLY TO ANY SUBLICENSED SOFTWARE.

9.4. **Professional Services Warranty**. Hart represents and warrants that any Professional Services shall be performed in a professional and workmanlike manner.

9.5. **Exclusions from Warranty and Software Support Services.** The warranties under this Section and Software Support under Section 8 do not cover defects, errors, or malfunctions that are caused by any external causes, including, but not limited to, any of the following: (a) Customer's failure to follow operational, support, or storage instructions as set forth in applicable documentation; (b) the use of incompatible media, supplies, parts, or components; (c) modification or alteration of the Verity system, or its components, by Customer or third parties not authorized by Hart; (d) use of equipment or software not supplied or authorized by Hart; (e) external factors (including, without limitation, power failure, surges or electrical damage, fire or water damage, air conditioning failure, humidity control failure, or corrosive atmosphere harmful to electronic circuitry); (f) failure to maintain proper site specifications and environmental conditions; (g) negligence, accidents, abuse, neglect, misuse, or tampering; (h) improper or abnormal use or use under abnormal conditions; (i) use in a manner not authorized by this Agreement or use inconsistent with Hart's specifications and instructions; (j) use of software on Equipment that is not in good operating condition; (k) acts of Customer, its agents, servants, employees, or any third party; (l) servicing or support not authorized by Hart; (m) Force Majeure; or (n) Consumables, unless expressly set forth in Section 9.2. In any case where Hart Proprietary Software interfaces with third party software, including but not limited to, the Customer's voter registration system, non-Hart election management system, early voting validation system, non-Hart election systems, absentee envelope management systems, or other like systems, Hart will not be responsible for proper operation of any Software that interfaces with the third party software should such third party software be updated, replaced, modified, or altered in any way. Hart will also not be responsible for the proper operation of any Software running on Customer's computer equipment, should Customer install a new computer operating system on said equipment without advising Hart of such changes and receiving Hart's written approval. Hart will not be responsible for the proper operation of any Software should it be configured or operated in any manner contrary than that described herein. Professional Services and associated costs may be required in those situations where the Customer requests Hart's review and approval of any system changes outside the original system specifications at the time of the original acceptance date of this Agreement. Hart reserves the right to charge for repairs on a time-and-materials basis at Hart's then-prevailing rates, plus expenses, and for replacements at Hart's list prices caused by these exclusions from warranty and support coverage.

DEFENDANTS001551

9.6. **Third Party Hardware and Sublicensed Software Excluded**. HART MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THIRD PARTY HARDWARE AND SUBLICENSED SOFTWARE, IF ANY, PROVIDED BY HART TO CUSTOMER, ALL OF WHICH IS SOLD, LICENSED, OR SUBLICENSED TO CUSTOMER "AS IS," OTHER THAN AS MAY BE PROVIDED IN ANY PASS-THROUGH WARRANTY DESCRIBED BELOW. HART HAS NO RESPONSIBILITY OR LIABILITY FOR THIRD PARTY HARDWARE AND SUBLICENSED SOFTWARE, IF ANY, PROVIDED BY HART'S DISTRIBUTORS OR OTHER THIRD PARTIES TO CUSTOMER. If Hart sells, licenses, or sublicenses any Third Party Hardware or Sublicensed Software to Customer, Hart will pass through to Customer, on a nonexclusive basis and without recourse to Hart, any third-party manufacturer's warranties covering the equipment or software, but only to the extent, if any, permitted by the third-party manufacturer. Customer agrees to look solely to the warranties and remedies, if any, provided by the manufacturer or third-party licensor. For a list of Third Party Hardware, see Exhibit A. For a list of Sublicensed Software, see Exhibit D or the applicable order. The disclaimers in this Section 9.6 are not intended to apply to embedded third party software integrated within the Hart Proprietary Software, contemplated by Section 5.1.

9.7. **Limited Remedies**. HART'S SOLE RESPONSIBILITY FOR MALFUNCTIONS AND DEFECTS IN PRODUCTS AND SERVICES IS LIMITED TO REPAIR AND REPLACEMENT AS SET FORTH IN, AND TO THE EXTENT SET FORTH IN, THIS WARRANTY TERMS SECTION.

## 10. PROFESSIONAL SERVICES

10.1. **Professional Services**. Subject to the terms and conditions of this Agreement, Hart will provide Customer (i) operational training and on-site support at the first election in which the Products are used, and (ii) the Professional Services described in each Hart-accepted, Customer-signed quotation. Professional Service days cannot be exchanged for Product fees, Annual Fees, or fees for other Services. If the Professional Services in an applicable quotation are not used prior to 60 days after the date of the Customer's first election in which any portion of the Product is used, Hart's Professional Services obligations shall expire and unused days will be billed to the Customer without recovery of amounts paid in advance for Professional Services.

## 11. REPRESENTATIONS AND WARRANTIES

11.1. **Due Organization**. Each party represents that it is duly organized, validly existing, and in good standing in the jurisdiction of its organization, and that it has the requisite power and authority to execute and deliver this Agreement and to carry out the transactions contemplated by this Agreement.

11.2. **Conflicting Agreements**. Each party represents and warrants that it has no outstanding agreement or obligation that is in conflict with any of the provisions of this Agreement, or that would preclude it from complying with the provisions hereof.

## 12. CUSTOMER RESPONSIBILITIES

12.1. **Independent Determination**. Customer acknowledges it has independently determined that the Products purchased under this Agreement meet its requirements

12.2. **Cooperation**. Customer agrees to cooperate with Hart and promptly perform Customer's responsibilities hereunder. Customer will (a) provide adequate working and storage space for use by Hart personnel near the applicable Hardware; (b) provide Hart full access to the Hardware and Software and sufficient computer time, subject to Customer's security rules; (c) follow Hart's procedures for placing hardware warranty or software support service requests and determining if warranty remedial service is required; (d) follow Hart's instructions for obtaining hardware and software support and warranty services; (e) provide a memory dump and additional data in machine-readable form if requested; (f) reproduce suspected errors or malfunctions in Software; (g) provide timely access to key Customer personnel and timely respond to Hart's questions; and (h) otherwise cooperate with Hart in its performance under this Agreement.

12.3. **Site Preparation**. Customer shall prepare and maintain the installation site in accordance with instructions provided by Hart. Customer is responsible for environmental requirements, electrical interconnections, and modifications to facilities for proper installation, in accordance with Hart's specifications. Any delays in preparation of the installation site will correspondingly extend Hart's delivery and installation deadlines.

12.4. **Site Maintenance; Proper Storage**. Customer shall maintain the appropriate operating environment, in accordance with Hart's specifications, for the Products and all communications equipment, telephone lines, electric lines, cabling, modems, air conditioning, and all other equipment and utilities necessary for the Products to operate properly. Customer shall properly store the Products when not in use.

12.5. **Use**. Customer is exclusively responsible for supervising, managing, and controlling its use of the Products, including, but not limited to, establishing operating procedures and audit controls, supervising its employees, making timely data backups, inputting data, ensuring the accuracy and security of data input and data output, monitoring the accuracy of information obtained, and managing the use of information and data obtained. Customer will ensure that its personnel are, at all times, educated and trained in the proper use and operation of the Products and that the Hardware and Software are used in accordance with

DEFENDANTS001552

applicable manuals, instructions, and specifications. Customer shall comply with all applicable laws, rules, and regulations with respect to its use of the Products.

12.6. **Backups**. Customer is solely responsible for timely data backups, and Customer will maintain backup data necessary to replace critical Customer data in the event of loss or damage to data from any cause. Hart is not liable for data loss.

## 13.    TERM AND TERMINATION

13.1. **Term**.

13.1.1. *Of Agreement.* Unless earlier terminated as set forth herein, the initial term of this Agreement is one (1) year.

13.1.2. *Of License and Support Subscription.* Unless earlier terminated as set forth herein, the initial term of the License and Support Subscriptions is one (1) year. Unless otherwise provided in the applicable quotation subsequently ordered License and Support Subscriptions shall be pro-rated so as to be co-terminus with the initially ordered License and Support Subscriptions.

13.1.3. *Of Hardware Warranty.* Unless earlier terminated as set forth herein, the initial term of new Hardware Warranties is one (1) year.

13.2. **Renewals**.

13.2.1. *Of Agreement.* This Agreement shall automatically renew for successive periods of one (1) year following the initial term unless one party notifies the other of its intent <u>not</u> to renew not less than ninety (90) days prior to the end of the then-current term.

13.2.2. *Of License and Support Subscriptions.* Except as otherwise provided in this Agreement, Customer must renew License and Support Subscriptions before their expiration by paying the Annual Fee invoiced by Hart, as provided in Section 2.2, before the anniversary date immediately following the date of invoice. Each renewal License and Support Subscriptions term will be a one (1) year, commencing on the expiration of the prior term and expiring on the immediately following anniversary date.

13.2.3. *Hardware Warranties.* Hardware warranties may be extended through a separate Extended Hardware Warranty, ordered in accordance with Section 1. Renewal of this Master Agreement and the License and Support Subscription do not, in themselves, extend hardware warranties.

13.3. **Termination**.

13.3.1. *By Hart.* This Agreement and/or all then-current License and Support Subscriptions and Professional Services orders shall automatically terminate or expire as set forth herein and may be terminated by Hart if Customer is in breach of a term hereof and fails to cure such breach within thirty (30) days after written notice of such breach has been given.

13.3.2. *By Customer.* Customer may terminate this Agreement, a Product order, or a License and Support Subscriptions and Professional Services orders issued hereunder if Hart is in breach of a term hereof or thereof, as applicable, and fails to cure such breach within thirty (30) days after written notice of such breach has been given.

13.4. **Effect of Expiration and Termination**. Any termination under Section 13.3.1 shall operate to terminate this Agreement and any then current License and Support Subscriptions and Professional Services orders. Any termination under Section 13.3.2 of a License and Support Subscription or Professional Services order shall operate only upon such subscription or order, and shall have no effect on this Agreement or other subscriptions or orders then in effect. Sections 3, 5.2-5.4, 7, 9.5-9.7, 12, 13.4, and 14-18 shall survive any termination or expiration of this Agreement or the applicable License and Support Subscription and/or Professional Services order. All other rights and obligations shall be of no further force or effect.

## 14.    CONFIDENTIALITY

14.1. **Definition**. "Confidential Information" means any information related to Hart's business or the Verity system, including but not limited to technical data, trade secrets, know-how, research, product plans, products, services, customers, customer lists, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, or other business information. Confidential Information includes, without limitation, all Software, the Documentation and support materials, and the terms and conditions of this Agreement. Confidential and/or Proprietary Documentation from Hart will be marked as such.

14.2. **Non-Use and Non-Disclosure**. Customer will keep in confidence and protect Confidential Information (electronic or hard copy) from disclosure to third parties and restrict its use to uses expressly permitted under this Agreement. Customer shall take all reasonable steps to ensure that the trade secrets and proprietary data contained in the Hardware and Software and the other Confidential Information are not disclosed, copied, duplicated, misappropriated, or used in any manner not expressly permitted by the

DEFENDANTS001553

terms of this Agreement. Customer shall keep the Software and all tapes, diskettes, CDs, and other physical embodiments of them, and all copies thereof, at a secure location and limit access to those employees who must have access to enable Customer to use the Software. Customer acknowledges that unauthorized disclosure of Confidential Information may cause substantial economic loss to Hart or its suppliers and licensors.

14.3. **Return of Confidential Information**. Upon termination or expiration of this Agreement or, if earlier, upon termination of Customer's permitted access to or possession of Confidential Information, Customer shall return to Hart all copies of the Confidential Information in Customer's possession (including Confidential Information incorporated in software or writings, electronic and hard copies). Upon termination of Customer's license or sublicense of Software, Customer shall immediately discontinue all use of the Software and return to Hart or destroy at Hart's option, the Software, including Firmware (and all related Documentation (electronic and hard copy)) and all archival, backup, and other copies of Software, Firmware and Documentation, and provide certification to Hart of such return or destruction. Return or destruction may include hard drives and/or component flash drive devices.

14.4. **Customer Employees, Agents and Contractors**. Customer will inform its employees and other agents and contractors of their obligations under this Section 14 and shall be fully responsible for any breach thereof by such personnel.

## 15. INDEMNIFICATION

15.1. **Indemnity**. Hart, at its own expense, will defend Customer against any claim that the Hart Hardware or Hart Proprietary Software infringes an issued United States patent, registered United States copyright, or misappropriates trade secrets protected under United States law, and shall indemnify Customer against and pay any costs, damages and reasonable attorneys' fees attributable to such claim that are finally awarded against Customer, provided Customer (a) gives Hart prompt written notice of such claims; (b) permits Hart to control the defense and settlement of the claims; and (c) provides all reasonable assistance to Hart in defending or settling the claims.

15.2. **Remedies**. As to Hart Hardware or Hart Proprietary Software that is subject to a claim of infringement or misappropriation, Hart may (a) obtain the right of continued use of the Hart Hardware or Hart Proprietary Software for Customer or (b) replace or modify the Hart Hardware or Hart Proprietary Software to avoid the claim. If neither alternative is available on commercially reasonable terms, then, at the request of Hart, any applicable Software license and its charges will end, Customer will cease using the applicable Hart Hardware and Hart Proprietary Software, Customer will return to Hart all applicable Hart Hardware and return or destroy all copies of the applicable Hart Proprietary Software, and Customer will certify in writing to Hart that such return or destruction has been completed. Upon return and Hart's receipt of certification of destruction, Hart will give Customer a credit for the price paid to Hart for the returned or destroyed Hart Hardware and Hart Proprietary Software, less a reasonable offset for use and obsolescence.

15.3. **Exclusions**. Hart will not defend or indemnify Customer if any claim of infringement or misappropriation (a) is asserted by an affiliate of Customer; (b) results from Customer's design or alteration of any Hardware or Software; (c) results from use of any Hart Hardware or Hart Proprietary Software in combination with any non-Hart product, except to the extent, if any, that such use in combination is restricted to the Verity system designed by Hart; (d) relates to Sublicensed Software or Third Party Hardware alone; or (e) arises from Customer-specified customization work undertaken by Hart or its designees in response to changes in Hart Proprietary Software or Sublicensed Software that are made in response to Customer specifications.

15.4. **EXCLUSIVE REMEDIES**. THIS SECTION 15 STATES THE ENTIRE LIABILITY OF HART AND CUSTOMER'S SOLE AND EXCLUSIVE REMEDIES FOR INFRINGEMENT AND TRADE SECRET MISAPPROPRIATION.

## 16. DISCLAIMERS AND LIMITATIONS OF LIABILITY

16.1. **Disclaimer of Warranty**. EXCEPT FOR THE EXPRESS LIMITED WARRANTIES APPLICABLE TO THE PRODUCT(S) AND/OR SERVICES SET FORTH IN SECTION 9, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, (A) THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE UNDER THIS AGREEMENT, AND (B) HART DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, TITLE AND NONINFRINGEMENT FOR ALL HARDWARE, SOFTWARE, AND SERVICES. CUSTOMER IS SOLELY RESPONSIBLE FOR ASSURING AND MAINTAINING THE BACKUP OF ALL CUSTOMER DATA. UNDER NO CIRCUMSTANCES WILL HART BE LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR THE LOSS OF OR DAMAGE TO CUSTOMER DATA THE EXPRESS LIMITED WARRANTIES REFERENCED ABOVE EXTEND SOLELY TO CUSTOMER AND DO NOT INCLUDE ANY TYPE OF ROUTINE MAINTECNANCE SERVICE OR PREVENTATIVE MAINTENANCE SERVICE. SOME STATES (OR JURISDICTIONS) DO NOT ALLOW LIMITATIONS ON IMPLIED WARRANTIES, SO THE ABOVE LIMITATION MAY NOT APPLY.

16.2. **Limitations of Liability** NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, HART WILL NOT BE LIABLE TO CUSTOMER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS) OR FOR LOST DATA SUSTAINED OR INCURRED IN CONNECTION WITH THE HARDWARE, SOFTWARE, SERVICES, OR THIS AGREEMENT,

DEFENDANTS001554

EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, REGARDLESS OF THE FORM OF ACTION AND WHETHER OR NOT SUCH DAMAGES ARE FORESEEABLE. IN ADDITION, HART'S TOTAL LIABILITY TO CUSTOMER FOR DAMAGES ARISING OUT OF OR RELATING TO THE HARDWARE, SOFTWARE, SERVICES, AND THIS AGREEMENT WILL IN NO EVENT EXCEED THE TOTAL AMOUNT ACTUALLY PAID BY CUSTOMER TO HART UNDER THIS AGREEMENT UNDER THE ORDER FOR THE HARDWARE, SOFTWARE OR SERVICE GIVING RISE TO THE APPLICABLE CLAIM. HART IS NOT LIABLE FOR DAMAGES CAUSED IN ANY PART BY CUSTOMER'S NEGLIGENCE OR INTENTIONAL ACTS OR, EXCEPT AS EXPRESSLY SET FORTH HEREIN, FOR ANY CLAIM AGAINST CUSTOMER OR ANYONE ELSE BY ANY THIRD PARTY. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES, SO THE ABOVE EXCLUSIONS AND/OR LIMITATIONS MAY NOT APPLY TO CUSTOMER. THE PARTIES AGREE THAT THE LIABILITY AND WARRANTY LIMITATIONS SET FORTH IN THIS AGREEMENT ARE A REASONABLE ALLOCATION OF RISK AND LIABILITY CONSIDERING THE RESPECTIVE BENEFITS OBTAINED HEREUNDER. THE FOREGOING LIMITATIONS SHALL APPLY NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY HEREIN.

16.3. **Third Party Products, Services and Referrals**. In addition to Third Party Products that may be ordered hereunder, Hart may direct Customer to third parties having products or services that may be of interest to Customer for use in conjunction with the Products or Services. Notwithstanding any Hart recommendation, referral, or introduction, Customer will independently investigate and test non-Hart products and services and will have sole responsibility for determining suitability for use of non-Hart products and services. Hart has no liability with respect to claims relating to or arising from use of non-Hart products and services, including, without limitation, claims arising from failure of non-Hart products to provide proper time and date functionality.

17. **DISPUTE RESOLUTION**

17.1. **Disputes and Demands**. The parties will attempt to resolve any claim or controversy related to or arising out of this Agreement, whether in contract or in tort ("**Dispute**"), on a confidential basis according to the following process, which either party may start by delivering to the other party a written notice describing the dispute and the amount involved ("**Demand**").

17.2. **Negotiation and Mediation**. After receipt of a Demand, authorized representatives of the parties will meet at a mutually agreed-upon time and place to try to resolve the Dispute by negotiation. If the Dispute remains unresolved after this meeting, either party may start mandatory nonbinding mediation under the commercial mediation rules of the American Arbitration Association ("**AAA**") or such other mediation process as is mutually acceptable to the parties.

17.3. **Injunctive Relief**. Notwithstanding the other provisions of this Section 17, if either party seeks injunctive relief, such relief may be sought in a court of competent jurisdiction without complying with the negotiation and mediation provisions of this Section.

17.4. **Time Limit**. Neither mediation under this section nor any legal action, regardless of its form, related to or arising out of this Agreement may be brought more than two (2) years after the cause of action first accrued.

18. **GENERAL PROVISIONS**

18.1. **Entire Agreement**. This Agreement and the Schedules, Attachments, and Exhibits hereto (including Hart-provided quotations signed by Customer and accepted by Hart) are the entire agreement between the parties with respect to the subject matter contemplated herein, and supersede all prior negotiations and oral agreements with respect thereto. Hart makes no representations or warranties with respect to this Agreement or its Products or Services that are not included herein. The use of preprinted Customer forms, such as purchase orders or acknowledgments, in connection with this Agreement is for convenience only and all preprinted terms and conditions stated thereon are void and of no effect. If any conflict exists between this Agreement and any terms and conditions on a Customer purchase order, acknowledgment, or other Customer preprinted form, the terms and conditions of this Agreement will govern and the conflicting terms and conditions in the preprinted form will be void and of no effect. This Agreement may not be amended or waived except in writing signed by an officer of the party to be bound thereby.

18.2. **Interpretation**. This Agreement will be construed according to its fair meaning and not for or against either party. Headings are for reference purposes only and are not to be used in construing the Agreement. All words and phrases in this Agreement are to be construed to include the singular or plural number and the masculine, feminine, or neuter gender as the context requires.

18.3. **GOVERNING LAW**. THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PROVISIONS, UNLESS CUSTOMER IS A GOVERNMENTAL SUBDIVISION OF ANOTHER STATE, IN WHICH CASE THE LAWS OF THE STATE IN WHICH CUSTOMER IS A GOVERNMENTAL SUBDIVISION WILL CONTROL.

18.4. **Severability**. Whenever possible, each provision of this Agreement will be interpreted to be effective and valid under applicable law; but if any provision is found to be invalid, illegal, or unenforceable, then such provision or portion thereof will be modified to the extent necessary to render it legal, valid, and enforceable and have the intent and economic effect as close as possible to the invalid, illegal, or unenforceable provision. If it is not possible to modify the provision to render it legal, valid, and enforceable, then the provision will be severed from the rest of the Agreement and ignored. The invalidity, illegality, or unenforceability of any

DEFENDANTS001555

provision will not affect the validity, legality, or enforceability of any other provision of this Agreement, which will remain valid and binding.

18.5. **Force Majeure**. "**Force Majeure**" means a delay encountered by a party in the performance of its obligations under this Agreement that is caused by an event beyond the reasonable control of the party, but does not include any delays in the payment of monies due by either party. Without limiting the generality of the foregoing, "Force Majeure" will include, but is not restricted to, the following types of events: acts of God or public enemy; acts of governmental or regulatory authorities (other than, with respect to Customer's performance, the Customer, and its governing entities); fires, floods, epidemics, or serious accidents; unusually severe weather conditions; failure of third parties to timely provide software, hardware, materials, or labor contemplated herein including by reason of strikes, lockouts, or other labor disputes. If any event constituting Force Majeure occurs, the affected party shall notify the other party in writing, disclosing the estimated length of the delay and the cause of the delay. If a Force Majeure or other such event occurs, the affected party will not be deemed to have violated its obligations under this Agreement, and time for performance of any obligations of that party will be extended by a period of time necessary to overcome the effects of the Force Majeure.

18.6. **Compliance with Laws**. Customer and Hart shall comply with all federal, state, and local laws in the performance of this Agreement, including those governing use of the Products. Products provided under this Agreement may be subject to U.S. and other government export control regulations. Customer shall not export or re-export any Products.

18.7. **Assignment**. Hart may assign this Agreement or its interests herein any including the right to receive payments, without Customer's consent. Customer will be notified in writing if Hart makes an assignment of this Agreement. Customer shall not assign this Agreement or any licenses granted hereunder without the express written consent of Hart, such consent not to be unreasonably withheld.

18.8. **Independent Contractors**. The parties to the Agreement are independent contractors and the Agreement will not establish any relationship of partnership, joint venture, employment, franchise, or agency between the parties. Neither party will have the power to bind the other or incur obligations on the other's behalf without the other's prior written consent. Hart's employees, agents, and subcontractors will not be entitled to any privileges or benefits of Customer employment. Customer's employees, agents, and contractors will not be entitled to any privileges or benefits of Hart employment.

18.9. **Notices**. Any notice required or permitted to be given under this Agreement by one party to the other must be in writing and shall be given and deemed to have been given immediately if delivered in person to the address set forth on the signature page for the party to whom the notice is given, or on the fifth (5th) business day following mailing if placed in the United States Mail, postage prepaid, by registered or certified mail with return receipt requested, addressed to the party at the party's address set forth on the signature page. Each party may change its address for notice by giving written notice of the change to the other party.

18.10. **Trademarks**. Verity Election Office™, Verity Voting™, Verity Scan™, Verity Touch™, Verity Controller™, Verity Access™, Verity vDrive™, Verity Touch Writer™, Verity Ballot™, Verity Layout™, Verity Build™, Verity Count™, Verity Relay™, Verity Key™, and Verity Central™, and such other Product names indicated as trademarked names of Hart are trademarks of Hart.

18.11. **Attorneys' Fees**. In any court action at law or equity which is brought by one of the parties to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees, in addition to any other relief to which that party may be entitled.

18.12. **Equitable Relief**. The parties agree that a material breach of the confidentiality provisions of this Agreement or restrictions set forth herein would cause irreparable injury to Hart for which monetary damages alone would not be an adequate remedy, and therefore Hart shall be entitled to equitable relief in addition to any other remedies it may have hereunder or at law, without the requirement of posting bond or proving actual damages.

18.13. **Government Use**. The use, duplication, reproduction, release, modification, disclosure, or transfer of the Products, no matter how received by the United States Government, is restricted in accordance with the terms and conditions contained herein. All other use is prohibited. Further, the Products were developed at Hart's private expense and are commercial in nature. By using or receiving the Products, the Government user agrees to the terms and conditions contained in this Agreement including the terms and conditions contained in this paragraph.

DEFENDANTS001556

**Exhibit A**

**Schedule A or Customer Signed Quote for Initial Order**

DEFENDANTS001557





| Item | Description | Unit Price | Quantity | Total Price |
| --- | --- | --- | --- | --- |
| Verity Controller | Controller for Verity Touch polling place equipment | $4,650.00 | 38 | $176,700.00 |
| Verity Touch | Electronic voting unit | $4,650.00 | 81 | $376,650.00 |
| Verity Standard Booth | Standard voting booth included with Verity Touch | | 81 | |
| Verity Touch w/ Access | Disabled access voting unit | $5,250.00 | 38 | $199,500.00 |
| Verity Accessible Booth | Wheelchair-accessible voting booth included with Verity Touch w/ Access | | 38 | |
| Verity Scan | Digital ballot scanner | $6,100.00 | 2 | $12,200.00 |
| Verity Ballot Box | Ballot box w/ transport bag and privacy screens included with Verity Scan | | 2 | |
| Verity Ballot Box Lock Kit | Secondary lock kit for Verity Ballot Box | $50.00 | 2 | $100.00 |
| Verity Key | Electronic security token | $109.00 | 3 | $327.00 |
| vDrive | Flash memory card/audio card for use with Verity devices | $66.00 | 50 | $3,300.00 |
| Verity Access | Detachable ATI module for use with Verity tablet | $520.00 | 2 | $1,040.00 |
| Battery Charger, 6 Bay | Battery charger for Verity unit | $540.00 | 2 | $1,080.00 |
| Verity Caddy w/ Casters, 4' Wide | Storage unit for Verity voting devices; assembly required | $740.00 | 20 | $14,800.00 |
| Verity Caddy Cover, 4' Wide | Protective cover for Verity storage caddy | $250.00 | 20 | $5,000.00 |
| Verity Count | Verity Count software license | $12,000.00 | 1 | $12,000.00 |
| Verity Workstation | Workstation for Verity software | $5,900.00 | 1 | $5,900.00 |
| 23" Flat Panel Monitor | Monitor for use with Verity Workstation | | 1 | |
| Okidata B430 Series Printer | Laser printer for report printing | $325.00 | 1 | $325.00 |
| New Implementation Services | Includes training, acceptance testing, project management, and on-site support for the first election on the Verity voting system. Additional services, if required, must be purchased separately. | $24,000.00 | 1 | $24,000.00 |
| Voting Equipment Salvage Services | Salvage of voting equipment and accessories | | 1 | |
| License and Support | Annual license and support fee | $23,823.00 | 1 | $23,823.00 |

| | |
| --- | --- |
| Subtotal | $856,745.00 |
| Shipping and Handling (Estimated) | $2,900.00 |
| Solution Price | $859,645.00 |
| Special Discount | ($109,645.00) |
| Grand Total | $750,000.00 |

Confidential - Not for Redistribution



| | Quote Number | 00003623 |
| | Account Name | Waller County, TX |
| | Grand Total | $750,000.00 |

| Bill To | 816 Wilkins St.<br>Hempstead, TX 77445 | Ship To | 816 Wilkins St.<br>Hempstead, TX 77445 |

### Customer Contact

| Contact Name | Christy Eason | Email | c.eason@wallercounty.us |
| | | Phone | (979) 826-7643 |

### General Information

| Expiration Date | 1/31/2018 | Instructions | Please fax with signature to (512) 252-6923 or scan and email to ktrethewey@hartic.com to order. |
| Payment Terms | Net 30 | | |

### Terms and Conditions

Quote must be signed and returned to Hart no later than January 31, 2018 for this offer to be valid.
Contract must be executed no later than 2 weeks after quote signature date for this offer to be valid.
Waller County agrees to accept delivery of the equipment quoted above no later than March 31, 2018.
Hart agrees to program the first 3 elections held on the Verity system at no extra charge.
Hart agrees to provide Election Day Support for the second and third elections held on the Verity system at no extra charge.
Subsequent License and Support will be billed annually per contract terms.
Delivery includes removal and salvage of customer's existing voting system at no extra charge.
Pricing subject to inventory availability at time of quote execution and acceptance.
Taxes will be calculated in conjunction with the Customer based on the final approved price list.

### Hart Approval

| Prepared By | Ken Trethewey | Title | Director of Sales |
| Signature | *Ken Trethewey* | | |

### Customer Approval

| Name: | | Title: | County Judge |
| Customer Approval: | Carbett "Trey" J. Duhon III | Date: | JAN 3 1 2018 |

Confidential - Not for Redistribution

DEFENDANTS001559

**Exhibit B**

**Hart Customer Support Contact Information and Hours**


The following contact information is to be used by Customer for submitting Support requests to Hart InterCivic, Inc.:

| | |
|---|---|
| Customer Support Center | 1-866-275-4278 (1-866-ASK-HART) |
| Customer Support Center Fax | 1-512-252-6925 or 1-800-831-1485 |
| E-mail Address | hartsupport@hartic.com |
| | |
| Hart InterCivic, Inc. Switchboard | 1-800-223-HART (4278) |
| Hours of Operation | 7AM-6PM Central Time, M-F |
| After Hours | Leave Voicemail with contact information for return call |


*(The rest of this page has been intentionally left blank.)*

DEFENDANTS001560

**Exhibit C**

**Definitions**

"*Hart*" means Hart InterCivic, Inc., a Texas corporation.

"*Verity Access™*" means the audio tactile interface (ATI) controller created by Hart as an add-on component to a Verity Touch™ that facilitates the performance of voting activities by disabled voters, for example, by providing an audio ballot presentation and/or accepting inputs from adaptive switch mechanisms that facilitate interaction with disabled voters, as needed.

"*Verity Print™*" means the device created by Hart for purposes of on-demand ballot printing; this device creates a blank paper ballot from the poll worker's selection of the voter's ballot style or precinct on the Verity Print interface.

"*Verity Controller*™" is a polling place management console capable of interacting with one or more Verity Touch™ devices by transmitting and receiving signals that manage an election, e.g., by opening and closing the polls, providing or recording an audit trail of system events during an election, storing cast ballot data, and applying data security and integrity algorithms.

"*Verity Scan™*" means the Verity Scan™ device created by Hart, consisting of an in-person digital ballot imaging device. The single-feed scanner transports and scans both sides of a ballot simultaneously, and it is securely attached to a ballot box that provides for secure ballot storage and transport.

"*Verity Election Office*" means Hart InterCivic's software platform that can accommodate a variety of election administration applications and is designed for interoperability with Verity Voting Hardware and Software.

"*Verity Touch™*" means the Verity Touch™ electronic voting device created by Hart. Verity Touch devices consist of hardware including an electronically configurable voting station that permits a voter to cast votes by direct interaction, which voting station in its present configuration created by Hart comprises an electronically configurable touchscreen liquid crystal display (LCD) panel for use in displaying ballot images, and options for tactile input buttons that facilitate voter options for selecting ballot choices and casting a ballot.

"*Verity Touch Writer™*" means the device created by Hart for ballot-marking functions. Touch Writer creates a paper marked ballot from the voter's selections on the electronic interface or the Verity Access ATI controller.

"*Verity Voting*" means Hart InterCivic's family of voting system components designed to conform to federal voting system standards.

*(The rest of this page has been intentionally left blank.)*

DEFENDANTS001561

**HART PROPRIETARY SOFTWARE AND SUBLICENSED SOFTWARE**

Hart Proprietary Software Licensed to Customer via annual subscription may include the following. Actual software and firmware licensed is indicated in the quote or response associated with this Agreement:

| SOFTWARE/FIRMWARE NAME | VERSION NUMBER |
|---|---|
| Verity Count | 2.0.2 |
| Verity User Management | 2.0.2 |
| Verity Election Management | 2.0.2 |
| Verity Desktop | 2.0.2 |
| Verity Controller | 2.0.3 |
| Verity Touch | 2.0.3 |
| Verity Touch w/ Access | 2.0.3 |
| Verity Scan | 2.0.3 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Licensed Location is the jurisdiction named on the signature page of this Agreement. Any future releases or updates to the software versions listed above will be documented in Hart Release Notes and Version Verification documents. Such releases and updates shall be considered Hart Proprietary Software licensed under this Agreement.


Software Sublicensed to Customer via annual subscription:

*None*


***(The rest of this page has been intentionally left blank.)***

DEFENDANTS001562