

# EXHIBIT M



# U. S. Department of Justice

Civil Rights Division

---

*Office of the Assistant Attorney General*

*Washington, D.C. 20035*

June 21, 2002

Denise Nance Pierce, Esq.
Bickerstaff, Heath, Smiley,
   Pollan, Kever & McDaniel
816 Congress Avenue, Suite 1700
Austin, Texas  78701-2443

Dear Ms. Pierce:

This letter is in reference to the 2001 redistricting plans for the commissioners court, justice of the peace, and constable districts; the renumbering and realignment of voting precincts; two polling place changes; the elimination and renaming of polling places; and the temporary additional early voting locations and their hours for Waller County, Texas, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c.  We received your responses to our February 6, 2002, request for additional information through June 10, 2002.

We have considered carefully the information you have provided, as well as census data, comments from interested parties, and other information, including the county's previous submissions.  As discussed further below, I cannot conclude that the county's burden under Section 5 has been sustained in this instance.  Therefore, on behalf of the Attorney General, I must object to the 2001 redistricting plans for the commissioners court, justice of the peace, and constable districts.

The 2000 Census indicates that Waller County has a total population of 32,663 persons, of whom 9,565 (29.3%) are black and of whom 6,344 (19.4%) are Hispanic.  The county's voting age population is 24,277, of whom 7,601 (31.3%) are black and 3,871 (15.9%) are Hispanic.

- 2 -

The county is governed by a five-member commissioners court.
Voters elect four commissioners to four-year, staggered terms
from single-member districts, called precincts.  The justice of
the peace and constable districts are coterminous with the
commissioners court districts.  Under the census data above,
there are two districts under the benchmark plan, Precinct 1 and
Precinct 3, in which minority persons are a majority of the
voting age population:  Precinct 1 has a total minority voting
age population of 52.5 percent, while Precinct 3 has a total
minority voting age population of 71.9 percent.

In contrast, the proposed 2001 redistricting plans contain
only one district in which minority persons are a majority of the
voting age population.  According to the information that you
provided, the black percentage of the voting age population in
proposed Precinct 1 voting age population drops to 29.7 percent.
Within the context of electoral behavior in Waller County, the
county has not established that implementation of this plan will
not result in a retrogression in the ability of minority voters
to effectively exercise their electoral franchise.  Moreover, the
viability of alternative plans demonstrates that the potential
retrogression of the proposed plan is avoidable.

Our analysis of county elections shows that minority voters
in Precinct 1 have been electing candidates of choice since 1996,
and that those candidates are elected on the basis of strong,
cohesive black and Hispanic support.  Our statistical analysis
also shows that white voters do not provide significant support
to candidates sponsored by the minority community, and that
interracial elections are closely contested.  For example, the
black candidate for commissioner in Precinct 1 prevailed in the
last election by two votes.  As a result, the proposed reduction
in the minority voting age percentage in Precinct 1 casts
substantial doubt on whether minority voters would retain the
reasonable opportunity to elect their candidate of choice under
the proposed plan, particularly if the current incumbent in
Precinct 1 declines to run for office again.

Our review of the county's benchmark and proposed plans as
well as the alternative plans presented to the county, suggests
that the significant reduction in minority voting age population
percentage in Precinct 1 in the proposed plan, and the likely
resulting retrogressive effect on the ability of minority voters
to elect candidates of choice, was neither inevitable nor
required by any constitutional or legal imperative.  Illustrative
plans demonstrate that it is possible to avoid any retrogression
in Precinct 1, maintain the minority voting strength in Precinct
3, and meet the county's redistricting criteria.  Accordingly, we

- 3 -

are not persuaded by the county's contention that a reduction in
minority voting strength in Precinct 1 was necessary to preserve
the minority voting strength in Precinct 3 if one is to honor the
redistricting criteria used by the county.

Under the Voting Rights Act, a jurisdiction seeking to
implement a proposed change affecting voting, such as a
redistricting plan, must establish that, in comparison with the
status quo, the change does not "lead to a retrogression" in the
position of minority voters with respect to the "effective
exercise of the electoral franchise."  See Beer v. United States,
425 U.S. 130, 141 (1976).  If the proposed plan materially
reduces the ability of minority voters to elect candidates of
their choice to a level less than what they enjoyed under the
benchmark plan, preclearance must be denied.  State of Georgia v.
Ashcroft, C.A. No. 2001-2111 (D.D.C. Apr. 5, 2002), slip op. at
117-18.  In addition, the jurisdiction must establish that the
change was not adopted with an intent to retrogress.  Reno v.
Bossier Parish School Board, 528 U.S. 320, 340 (2000).  Finally,
the submitting authority has the burden of demonstrating that the
proposed change has neither the prohibited purpose nor effect.
Id. at 328; see also Procedures for the Administration of Section
5 (28 C.F.R. 51.52).

In light of the consideration discussed above, I cannot
conclude that your burden of showing that a submitted change does
not have a discriminatory effect has been sustained in this
instance.  Therefore, on behalf of the Attorney General, I must
object to the submitted redistricting plans.

We note that under Section 5 you have the right to seek a
declaratory judgment from the United States District Court for
the District of Columbia that the proposed changes neither have
the purpose nor will have the effect of denying or abridging the
right to vote on account of race, color, or membership in a
language minority group.  See 28 C.F.R. 51.44.  In addition, you
may request that the Attorney General reconsider the objection.
See 28 C.F.R. 51.45.  However, until the objection is withdrawn
or a judgment from the District of Columbia Court is obtained,
the changes continue to be legally unenforceable.  Clark v.
Roemer, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

Please note that the Attorney General will make no
determination regarding the submitted realignment and renumbering
of voting precincts, the polling place changes, the elimination
and renaming of polling places, and the temporary additional
early voting locations and their hours because those changes are
dependent upon the redistricting plan.

- 4 -

Further, in our letter of February 2, 2002, we informed you that, under the Voting Rights Act, changes, such as the county's proposed redistricting plans, are not legally enforceable until the jurisdiction has obtained Section 5 preclearance for those changes.  Clark v. Roemer, 500 U.S. 646 (1991).  However, it is our understanding that on March 12, 2002, Waller County conducted an election, which implemented the proposed plan, without such preclearance.  Please inform us of the action Waller County plans to take  regarding both the objection interposed by this letter as well as the conduct of the March 12 primary election without the requisite preclearance.

If you have any questions on either of these matters, you should call Mr. Timothy Mellett (202-307-6262), an attorney in the Voting Section.  Refer to File Nos. 2001-3951 and 2002-2142 in any response to this letter so that your correspondence will be channeled properly.

Sincerely,

J. Michael Wiggins
Acting Assistant Attorney
General