PLAINTIFF'S
EXHIBIT

147

**POLITICS**

# Fighting for the Right to Vote in a Tiny Texas County

The battle between Prairie View A&M and local election officials over early voting mirrors the struggle for voting rights over the past half century.

**VANN R. NEWKIRK II AND ADAM HARRIS**   NOV 1, 2018



An election official checks a voter's photo identification at an early-voting polling site in Texas.  (ERIC GRAY / AP)

In Waller County, Texas, a 40,000-strong exurb to the northwest of Houston, early voting is simple. Texas law mandates that the county maintain a main voting site, located in the county seat of Hempstead, that is open for at least five hours every day from Monday, October 22, to Friday, November 2.

During those two weeks, satellite centers provide voting hours farther out in the county. Residents in the towns of Brookshire and Waller, two of the larger places in Waller County, have multiple days to cast a ballot in both the first and second week of early voting. As guided by state law, the early-voting plans in Waller County are intended to both maximize a finite pool of resources and ensure that most of the voters in the county have at least some convenient entry points for early voting that can fit into their schedule.

PLS000150

All of that applies so long as you aren't a black college student, according to a lawsuit filed last week in a U.S. district court by the NAACP Legal Defense Fund. The suit, brought on behalf of several students at Prairie View A&M University, alleges that the county shortchanges students with a local early-voting plan that uniquely constrains their choices, offering only three days of on-campus early voting in the second week.*

[ _Read: Voter suppression is warping democracy._ ]

With a week of early voting left, and when early-voting returns have been massive across the board, the legal drama in obscure Waller County might seem insignificant. But in a country where disenfranchisement has become perhaps the dominant theme of the 2018 election cycle, the local battle is both instructive and representative. The fight for the ballot for Prairie View A&M students has mirrored the long saga of voting rights in America. The drama there during this election is both a microcosm of a larger canon of dramas around voter suppression today and a reminder of the history that brought the country to this moment.

The basic demographic problem in Waller County is easy to sum up. Waller County is mostly white. Prairie View is a predominantly black school, founded as the state flagship for black students in 1876. The university has always been a locus of tension for the surrounding community, and even current students attest that those tensions affect the way they are seen and treated any time they step off campus. "Though we are just one campus, the population is big," says Damon Johnson, a sophomore from Houston. "The community is it's own way, and they're kinda predominantly white. And us young black people coming in, I don't feel like we get the same chances. We're not treated the same. The laws are uneven for us."

[ _Read: Sandra Bland and the history of racism in Waller County_ ]

For Johnson, voting provides a chance to challenge that uneven treatment. This year is Johnson's first federal election, but like many other students at Prairie View A&M, he rents an apartment within walking distance from campus, and doesn't have a car. He relies on the campus shuttle for most things outside of walking distance. That means his most viable location for voting early is the one that was originally the most limited in the county: the student center, which offers three eight-hour sessions.

PLS000151

Johnson joined the lawsuit against Waller County, which alleges that the plan in place constitutes intentional suppression of young black voters. It contends that the constriction of early-voting hours in the city of Prairie View—in which Prairie View A&M is located—disproportionately targets the biggest population of black voters in the county (more than half of the black people of age to vote live in the city). The plaintiffs claim the plan to open early voting on campus from 8 a.m. to 5 p.m. on designated days doesn't meet the needs of students, many of whom are in class or otherwise occupied during the workday. They also claim that the county commissioners, a bipartisan group, approved the plan without meaningful input from the Prairie View community.

Waller County election officials have denied these claims. In a statement to *The Atlantic* through a lawyer, Trey Duhon, the Waller County judge, stressed that the county has worked hard to protect student voting rights. "Waller County vehemently denies the allegations that it acted to disenfranchise or limit the opportunities for electoral participation of any of its citizens," Duhon said. "Rather, the county has, at all times, worked to allocate its limited resources in a manner that best provides all voters a fair opportunity to vote early if they so choose." The county also maintains that people with objections to the early-voting plan had opportunities to challenge the plan before the election.

Even so, facing public pressure, Waller County officials have agreed with at least part of the complaint, and have since expanded options moderately—allowing an extra day of off-campus voting in Prairie View this past Sunday and expanding hours at the on-campus polling location.**

Still, with the general election just a week away and with Texas a key battleground for a critical Senate seat, the plaintiffs think the remedy—with half of the early-voting returns already in—is too little, too late. "The county commissioners put the onus purely on communities' members and students to read a notice and know about this and then weigh in," says Leah Aden, the NAACP Legal Defense Fund's deputy director of litigation, "instead of you doing something proactively because you know the history."

That history is particularly important here. Prairie View has been the center of a long fight over voting rights that stretches back to the Voting Rights Act of 1965 and the expansion of the right to vote to 18-year-olds with the Twenty-Sixth Amendment in 1971. Taken in tandem, the two gave the majority of student bodies

PLS000152

at HBCUs the right to vote, a development that entirely changed the dynamics of the handful of HBCUs located in predominantly white areas. In Waller County, local officials tried their best to keep black students from disrupting white hegemony.

"In 1972, students tried to vote here," says Frank Jackson, a former mayor of Prairie View and now an administrator within the Texas A&M University system. "The county elections administrator said they're not residents of Waller County, so they're not allowed to vote." County officials attempted to force students to meet property-tax requirements in order to vote, and students sued. The case made it all the way to the Supreme Court, and in 1979, in *Symm v. United States*, the Court struck down the county's requirements. Not only did the decision allow Prairie View A&M students the right to vote, it's also the basis for allowing all students to vote where they attend college.

But that wasn't the end of it. The four decades since that decision have been a mess of lawsuits, and of both subtle and more brazen plans to dilute the voting strength of Prairie View's mostly black student body. Even the current early-voting controversy isn't a particularly new one. In 2003, when a student ran for a commissioner's seat, the county responded by curtailing early voting during spring break. In 2008, in defiance of concerns from the Justice Department and citing cost constraints, Waller County cut all of the early-voting sites in and near Prairie View. According to Jackson, the tensions have been fueled both by a state and national directive among conservatives to dilute black votes in majority-white areas and by a saga of local control, with students demanding more resources and more representation.

It's that history that continues to motivate students. And they continue the long-running fight against Waller County with the blessing of their alma mater. "Our ability to fund more aid is not crystal clear," says Tim Sams, Prairie View's vice president for student affairs. "So we have supported their efforts to do this."

For the university, the lawsuit today connects students to a deep history that's a source of pride for alumni. "It's fair to say that our students tend to have some understanding about the history around Prairie View students and voting in general," Sams says. "And that they step into that story—that narrative—as Prairie View students who are part of a long-standing battle to gain equal voting rights and

PLS000153

experiences ... They want, in this moment, not only to continue that legacy, but to bring it to an end such that students in the future don't have to go through this."

Posterity is the word in Prairie View. According to Aden, one of the main goals of the lawsuit isn't just bringing parity to early voting today, but ending the constant tension between the county and the school. "It seeks changes really for the future because these issues keep coming up, and they concede that there's no parity," Aden says. "The lawsuit seeks reform."

For Johnson, one of the plaintiffs in the lawsuit, the long-term hopes are somehow both marginal and meaningful. "My hope is that eventually we'll get to a period to where we're allowed all the days of early voting," Johnson says. "Why not have my voice heard and be a representative for people who aren't having their voice heard?"

*This article originally misstated the number of early-voting days on Prairie View's campus.
**This article originally stated that the extra day of early voting was at the on-campus location. We regret the errors.

We want to hear what you think about this article. Submit a letter to the editor or write to letters@theatlantic.com.

PLS000154

11/19/2018                          Prairie View A&M Students File Suit Over Voting Hours - The Atlantic

PLS000155

PLS000156

PLS000157