PLAINTIFF'S
EXHIBIT

165

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAYLA ALLEN, ET AL                )        NO. 4-18-CV-3985
                                  )
                                  )
VS.                               )        Houston, Texas
                                  )         10:00 a.m.
                                  )
JOSHUA MUHAMMAD, ET AL            )        June 5, 2020


*********************************************************

HEARING

BEFORE THE HONORABLE CHARLES ESKRIDGE

UNITED STATES DISTRICT JUDGE

VOLUME 1 OF 1

(HEARING VIA ZOOM)

*********************************************************

APPEARANCES:

FOR THE PLAINTIFFS:

     Ms. Leah Aden
     Mr. John S. Cusick
     Mr. Steven Lance
     NAACP Legal Defense Education Fund, Inc.
     40 Rector Street
     5th Floor
     New York, NY 10006
     Tel:  212-965-2200
     Email: Laden@naacpldf.org
            Jcusick@naacpldf.org


Proceedings recorded by mechanical stenography.

Transcript produced by computer-assisted transcription.

```
 1  APPEARANCES:   (CONTINUED)

 2  FOR THE PLAINTIFFS:

 3        Ms. Julie Goodrich Harrison
          Mr. Tyler Ames
 4        Ms. Nicole Lynn
          Norton Rose Fulbright US LLP
 5        1301 McKinney Street
          Suite 5100
 6        Houston, TX 77010
          Tel:  713-651-5434
 7        Email: Julie.harrison@nortonrosefulbright.com

 8  FOR THE DEFENDANTS:

 9        Mr. Gunnar Peterson Seaquist
          Mr. Bob Heath
10        Bickerstaff Heath Delgado Acosta LLP
          3711 S. Mopac Expressway
11        Building One
          Suite 300
12        Austin, TX 78746
          Tel:  512-472-8021
13        Email: Gseaquist@bickerstaff.com

14        Ms. Elizabeth Anne Dorsey
          Waller County Criminal District Attorney's Office
15        645 12th Street
          Hempstead, TX 77445
16        Tel:  979-826-7718
          Email: E.dorsey@wallercounty.us

17
    ALSO PRESENT:
18
          Mr. Joshua Muhammad,
19
          Ms. Christy Eason,
20        Election administrator
          Waller County
21
    COURT REPORTER:
22
          Ms. Kathleen K. Miller, CSR, RMR, CRR
23        515 Rusk, Room 8004
          Houston, Texas  77002
24        Tel:  713-250-5087

25
```

10:02:47

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

```
 1                    P R O C E E D I N G S

 2                       June 5, 2020

 3               (HEARING VIA ZOOM CONFERENCE.)

 4                  * * * * * * * * * *
```

10:00:56      5            THE COURT:  Okay.  And are we ready to proceed?

        6  And do we have the court reporter on and able to hear

        7  everything.

        8            THE COURT REPORTER:  Yes, Judge.  This is Kathy

        9  Miller.

10:01:09     10            THE COURT:  Okay.  Great.  Hi.  Welcome.  I see

       11  you now.

       12            The Court calls 18-3985, Jayla Allen, et

       13  al vs. Waller County, Texas, et al.

       14            I see that there are a number of

10:01:19     15  participants on the screen.  We are proceeding by a Zoom

       16  video conference for this hearing.

       17            Can I get appearances for counsel for the

       18  parties, and as you do so, can I get an indication who is

       19  going to be arguing for each side today?  Starting with

10:01:42     20  plaintiffs, please.

       21            MS. ADEN:  Good morning, Your Honor.  I am Leah

       22  Aden, counsel for plaintiffs.  I will be speaking today.

       23            I am going to turn to my other co-counsel,

       24  who are joining by audio, but will not be speaking.

10:01:55     25            THE COURT:  Thank you.  And would you like

1  their appearances on the record?

2          MS. ADEN:  I would prefer so, yes, if they

3  don't mind.

4          THE COURT:  I think so.  And, well, we will see

5  if we can -- sometimes we end up speaking over each other,

6  and it is hard to do it on video.  We will see how that

7  goes but, if not, will you, please, make sure that

8  everybody's appearance has been stated so that the court

9  reporter got it?

10          MS. ADEN:  I will do that.  I also don't mind

11 e-mailing it through Ms. Gonzalez, or I can get -- I didn't

12 get Kathy's last name.  I would love to appropriately

13 address her, but we could also e-mail her to make it easy.

14          THE COURT:  Okay.  Thank you.  The case

15 manager, Jenelle Gonzalez, would be great.  Thank you.

16                 Can other counsel state your appearance,

17 please?

18          MR. SEAQUIST:  Good morning, Your Honor.  This

19 is Gunnar Seaquist, and I am joined nearly six feet apart

20 by my partner Bob Heath, and we are here today on behalf of

21 the Defendants.

22                 Also listening in on the call today are

23 Christy Eason, the election administrator for Waller

24 County.  She is named as a defendant in her official

25 capacity, as well as Liz Dorsey, who is with the District

10:02:04 (line 5)
10:02:16 (line 10)
10:02:30 (line 15)
10:02:40 (line 20)
10:02:52 (line 25)

1  Attorney's office for Waller County.  And they will just be

2  appearing -- or, excuse me, they will just be observing.  I

3  will be doing the arguing.

4          THE COURT:  Okay.  Thank you.

10:03:09  5          Ms. Aden, I think you wanted to have --

6  did you want to have your counsel state their appearance or

7  let us know on the record at this point?  Up to you.

8          MS. ADEN:  Why don't I spare them and I will

9  try to get everyone; and if I missed anyone, we will

10:03:22  10  confirm also by e-mail.

11          THE COURT:  Okay.

12          MS. ADEN:  So I have on audio, but not video,

13  are my co-counsel, John Cusick, C-U-S-I-C-K; and Steven

14  Lance, also with plaintiffs and the legal defense fund; my

10:03:37  15  co-counsel, Julie Harrison, Nicole Lynn, and Tyler Ames.

16          And appearing as plaintiffs are Joshua

17  Muhammad on behalf of the Panther party, and Treasure

18  Smith, as an individual plaintiff.

19          THE COURT:  Thank you very much.  Thank you

10:04:02  20  everyone for attending today.

21          It is defendants' motion, so I think

22  obviously defendant will go first.  I have a couple of

23  questions at the outset, just on sort of the state of play

24  for this litigation, and what it might mean for the 2020

10:04:22  25  election that's coming up that's kind of separate than, you

1  know, substantively, what we are going to be talking about

2  today.

3            But I wonder, have the parties been

4  attempting to -- I don't know if it's a settlement, or an

10:04:39  5  accommodation, or something by compromising decision that

6  would be applicable to the 2020 election?

7            Have there been discussions in that

8  regard?  And to the extent that there's not, I know that

9  this action addresses allegations about 2018.

10:05:03  10           I am wondering, I haven't really seen

11  anything, and there haven't been -- hasn't been much put to

12  me by way of emergency motion or anything for a need for

13  resolution before 2020, so I am wondering what the parties'

14  expectations are in that regard.

10:05:18  15           And, Ms. Aden, on that, it might make

16  sense for, perhaps, you to start and have the Defendants

17  respond.

18           MS. ADEN:  Yes.  So there have been some

19  high-level attempts at discussing how we might resolve this

10:05:32  20  case, but they have not been fruitful.

21           As of today, plaintiffs remain completely

22  open to continuing to discuss those, but the relief that we

23  seek has not, for the most part, materially changed, which

24  is two major things:  Equitable access to early voting

10:05:51  25  opportunities for plaintiffs, and people similarly

1  situated, who are some of the highest users of early voting

2  in Waller County, who are the -- who live in a precinct

3  with the highest number of registered voters.

4                    So we are continuing to assert that they

10:06:07  5  are entitled to substantially more early voting; and

6  moreover, they are entitled to a voice in the process for

7  setting early voting.

8                    We are not asking this Court to

9  micromanage how Waller County conducts its early voting,

10:06:20  10  but we are certainly aware that there are flaws in the

11  process, and there are certainly flaws in the outcome, and

12  we think that that occurred in 2018, which is why we seek a

13  declaratory judgment that in and of itself has a

14  prophylactic value.  It tells the county they have done

10:06:38  15  something wrong, and you should not do that again.

16                    You know, there are -- we would like an

17  order that Prairie View students and other members of the

18  Prairie View community are affirmatively part of the

19  process.

10:06:51  20                    It should be noted that the harm continues

21  because in 2019 there was no early voting on the campus of

22  the Memorial Student Center, despite the demand for it, and

23  there similarly was no early voting in 2020.

24                    So, Your Honor's correct that we have not

10:07:07  25  sought emergency relief.  I think the parties are very

1    interested in which claims remain alive and well and worthy

2    of airing at a trial because there is a lot of dispute, but

3    we are certainly, I think, from plaintiffs' perspective,

4    under the assumption that for the claims that survive

10:07:28   5    hopefully from today's hearing, it -- it encourages the

6    county to take seriously plaintiffs' claims in terms of

7    setting the schedule.

8                    And if I may, I know I have gone on, I

9    want to say two more things in light of the current

10:07:39   10   situation that we are in.  We are in a pandemic.  Right now

11   our clients and others are not on campus, but there is an

12   expectation that they will return to campus in the fall.

13                   It is, therefore, very imperative that

14   they have access to equitable early voting because students

10:07:57   15   who are appearing on campus in the fall, they can't take

16   advantage under Texas law of being out of the county on

17   election day.  They can't take advantage, necessarily,

18   given the litigation, of having a disability based on fear

19   of voting in person.  That as of today is not enough.

10:08:14   20                   And so early voting will be very important

21   in terms of providing ample opportunity for plaintiffs to

22   be able to vote, to vote with social distancing, to vote in

23   a safe -- a safe manner.

24                   And my final point is that absentee voting

10:08:31   25   will also not be an option for plaintiffs because, again,

1  they will be in county.  But moreover, the record reflects,

2  and it's disputed that there has been a lot of issue with

3  access to mail, and access to the ability to update voter

4  registration, and forcing plaintiffs and others like them

10:08:47   5  to have to engage in a process of voting by mail will raise

6  a whole host of issues that will harm them in a whole other

7  way.

8                    So having access to ample early voting

9  that is on par with the fact that they are a significant

10:09:03  10  voting block in the county is a live issue.  It is a

11  disputed issue.  And, frankly, it's one that has not been

12  resolved, but that is why we are continuing and forcing

13  this litigation to move forward because of the facts that

14  are at hand.

10:09:16  15                    THE COURT:  Thank you.  And like all good and

16  able counsel, you have succinctly argued your entire case

17  in response to one question, but I appreciate that.  It is

18  a good overview, and it helps me to understand how the

19  table is set at this moment.

10:09:29  20                    I hadn't even thought about the

21  implications of COVID-19 on what might be happening at

22  November.  So I'll be thinking about that.

23                    Mr. Seaquist, can you give me -- I think

24  that you're speaking lead for Defendants -- do you -- a

10:09:46  25  response, generally to that?  Although, at this point

1  everybody is going to have plenty of time to speak.  I

2  guarantee you that.

3                      Right now I was mostly trying to

4  understand what the potential for accommodation, or

10:09:58   5  resolution of this is, and then what might be needed on

6  what time frame before the November 2020 election, if

7  anything.  So can I have the Defendants' position?

8                      MR. SEAQUIST:  Absolutely, Your Honor.  First,

9  may I have the Court's permission -- I am in a table.  I

10:10:14   10  could stand to address the Court.  But may I have

11  permission to remain seated because I got a microphone on

12  here that might makes things a little challenging?

13                      THE COURT:  Absolutely.  And I am also not in a

14  robe, so we are a little more informal today.

10:10:27   15                      MR. SEAQUIST:  Okay.

16                      THE COURT:  So, please, proceed.

17                      MR. SEAQUIST:  Thank you for that, Your Honor.

18                      Your Honor, as you saw in our motion in

19  reply, one of the things that weighs very heavily on the

10:10:36   20  question that you have posed is the recent statute, the

21  adoption of House Bill 1888, which sets a standardized

22  requirement for early voting hours.

23                      So what we have seen since the adoption of

24  that bill is although -- you know, we -- the county had

10:10:52   25  provided ample early voting in Prairie View even before the

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  adoption of that bill.  Since that time the county is

2  required to have every early voting location -- temporary

3  branch voting location, have the same hours as the main

4  voting location, and so early voting takes place for the

10:11:10  5  full two weeks at each location.

6              How the county --

7              THE COURT:  Can I pause you there for just a

8  second?  Maybe that's something that I didn't pick up on in

9  reading the statute.

10:11:19  10              Is it kind of like a most favored nations

11  clause that whatever the main early voting location is,

12  that's going to be the number of hours set at all early

13  voting locations?

14              MR. SEAQUIST:  That is correct, Your Honor,

10:11:32  15  with the exception of weekends.

16              The temporary branch polling locations are

17  required to be open every day that the main early voting --

18  every weekday that the main early voting location is

19  required to be open.

10:11:47  20              THE COURT:  Okay.

21              MR. SEAQUIST:  And, of course, another

22  provision of the election code requires the main early

23  voting branch be open each day of early voting.

24              THE COURT:  Okay.  We don't need to go into

10:11:56  25  further detail on that.  And, obviously, I'll want the

1  Plaintiffs' position on that question, eventually.

2              But, please, go on as to other

3  accommodation issues, and what is necessary for 2020.

4              MR. SEAQUIST:  Yes, Your Honor.  So as a result

10:12:12  5  of that statute, the county has, in fact, opened up the

6  temporary branch locations for the full two weeks of early

7  voting.

8              The -- because there is so much more time

9  at each location, they have had to reduce the number of

10:12:28  10  locations down to one for -- per commissioners court

11  precinct, including one in Prairie View at the Waller

12  County Community Center, which is -- and we will be talking

13  about today -- on the footprint of the Prairie View A&M

14  campus, approximately .28 miles as the crow flies from the

10:12:46  15  student center, maybe close to .35 if you end up walking

16  it, due to some turns.

17              One thing the evidence in this case will

18  show, that even at the time of the events at issue in this

19  lawsuit, there was a sidewalk directly from a parking lot

10:13:00  20  on campus by the football stadium that goes to the post

21  office next door where students could walk to the post

22  office and then across to the community center.

23              Since that time, as a further means of

24  assisting students in voting, the county has worked with

10:13:13  25  Prairie View A&M to actually construct a sidewalk that goes

1    directly to the community center.

2                    So, there will be early voting, or there

3    has been in 2019, and in the primary of this year, early

4    voting -- for the full early voting period at the community

10:13:30    5    center which is accessible and very proximate to Prairie

6    View A&M.

7                    There has not been, obviously, the time to

8    adopt hours for the November election -- or, excuse me, to

9    adopt locations for the November election has not yet come

10:13:43   10    up yet.  That will, as it always is, be a deliberative

11   process; but my suspicion is, or the indications are that

12   that will be the same format that will be used at that time

13   as well.

14                    THE COURT:  Okay.  Thank you very much.

10:13:57   15                    All right.  That gives me some -- some

16   good background here to start, and I am ready to take up

17   the motions -- the motion now.

18                    Defendant would like to start.

19                    Is there anything that the parties needed

10:14:13   20   or discussed bringing to my attention before we started

21   with the argument itself?  Anything else as an initial

22   matter?

23                    MR. SEAQUIST:  Not from Defendants, Your Honor.

24                    MS. ADEN:  Not from Plaintiffs at this time.

10:14:26   25                    THE COURT:  Okay.  Thank you.  Mr. Seaquist,

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  will you proceed, then, please?

2          MR. SEAQUIST:  Thank you, Your Honor.  May it

3  please the Court and opposing counsel.

4              The Defendants are here today seeking

10:14:35  5  summary judgment on all claims because, in short, this is a

6  voter abridgement case for which there is no evidence of an

7  abridgement, and it is an intentional discrimination case

8  for which there is no evidence of intentional

9  discrimination.

10:14:48  10             Important to this motion as a summary

11  judgment motion, the underlying material facts are not in

12  dispute between the parties.  We are generally agreed on

13  what took place.  The questions are really a legal

14  application to those facts.

10:15:01  15             The pertinent facts, if I may just briefly

16  recite them, are for the 2018 general election, the Waller

17  County Commissioners Court, which is the governing body of

18  the county which is charged with setting election schedules

19  under the election -- Texas Elections Code, adopted an

10:15:19  20  early voting schedule that was based on a proposal and

21  agreed to by the party chairs of the Democratic and

22  Republican parties of Waller County.  Those are the two

23  active political parties in Waller County.

24             The early voting schedule was adopted at

10:15:36  25  open meetings.  They were duly noticed in accordance with

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 the Texas Open Meetings Act, and any resident of Waller

2 County was free to appear, provide input, or opposition to

3 what was being proposed.  At the time that the -- the

4 locations and schedules were chosen, however, no one did

10:15:52   5 appear and voice any opposition.

6               The timing of Waller County's adoption of

7 the early voting schedule in 2018, the locations were

8 chosen at a meeting on August 22nd.  There was some new

9 machines in the county, so there were some ongoing training

10:16:11  10 of poll workers.

11               And to wait for that to play out, the

12 locations -- excuse me, the hours were actually chosen two

13 weeks later on September 4th, again, in a public meeting.

14 But the timing of those events is actually consistent with

10:16:24  15 guidance and recommendations issued by the Texas Secretary

16 of State's office.

17               They recommend that counties begin

18 adopting their early voting locations as well as schedule

19 on -- at least in 2018, the date was August 20th of 2018,

10:16:41  20 and that is consistent with when the county began their

21 process.

22               It is important to note in this case, Your

23 Honor, that the schedule adopted by the county, and this is

24 not disputed, did not reduce or eliminate early voting in

10:16:58  25 Prairie View from any -- or from the prior election.  What

1  it did, in fact, is expand and add additional hours of

2  early voting in Prairie View.

3             THE COURT:  Let me ask a question on that.  One

4  thing I have wondered, is there a chart that has been

10:17:15   5  submitted to me that indicates what the early voting hours

6  were in the prior election, which I understand was 2016?

7             And then also, I am looking at page 12 of

8  the amended complaint which was the early voting location

9  hours, I think, as adopted, but then I understand that some

10:17:39  10  hours were added afterwards, I mean, as the election

11  approached.

12             And is there -- I would like to understand

13  actually what -- on -- during early voting, what the facts

14  were, on what days that occurred at each location, you

10:17:58  15  know, which weeks, et cetera.

16             MR. SEAQUIST:  Yes, Your Honor.

17             THE COURT:  Has that been summarized for me

18  somewhere?  It would be very helpful.

19             MR. SEAQUIST:  Your Honor, there is not a

10:18:07  20  specific chart as it relates to 2016.  Since we were agreed

21  and, in fact, Plaintiffs' expert, Dr. Robert Stein, you

22  know, admitted there was no reduction and, in fact, there

23  was an extension, we didn't feel the need to burden the

24  record with additional documentation on that.

10:18:23  25             It just didn't seem like a -- it seemed

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1    like an agreed issue that we didn't produce additional

2    evidence on.

3                    But as it relates to the schedule that

4    you're looking at in the amended complaint, that is the

10:18:35   5    initial schedule that was adopted, the locations on August

6    22nd of 2018, and the times on September 4th of 2018.

7                    That schedule, standing alone, was in

8    itself an expansion.

9                    THE COURT:  Okay.

10:18:51   10                    MR. SEAQUIST:  After this litigation started,

11   there was --

12                    THE COURT:  And when you say an expansion, is

13   that -- are you talking about an expansion at the Memorial

14   Student Center?  Is that what you're referring to?

10:19:03   15                    MR. SEAQUIST:  I am -- it is an expansion in

16   Prairie View generally, Your Honor.  The -- it was probably

17   about the same at the Memorial Student Center.

18                    THE COURT:  Okay.  So it is as to the Memorial

19   Student Center and to the WC Community Center?

10:19:19   20                    MR. SEAQUIST:  Correct, Your Honor.

21                    THE COURT:  Okay.  All right.  And then go

22   ahead.  But what was added to those hours that is not

23   reflected on this chart?

24                    MR. SEAQUIST:  What was added was the

10:19:28   25   Memorial -- the hours at the Memorial Student Center were

1 extended.  They were initially 9:00 to 5:00, I believe, as

2 reflected on the chart.

3         THE COURT:  It says 8:00 to 5:00.

4         MR. SEAQUIST:  Okay.  Then that is correct,

10:19:38  5 Your Honor.  They were initially 8:00 to 5:00.  They were

6 extended on each day at the Memorial Student Center from --

7 excuse me -- from 7:00 to 7:00.

8         THE COURT:  Okay.

9         MR. SEAQUIST:  The full 12-hour days, which is

10:19:51  10 the maximum voting under the Texas Election Code.

11         THE COURT:  Okay.

12         MR. SEAQUIST:  And then the Memorial Student

13 Center -- or, excuse me, the Waller Community Center hours

14 were not changed, but there was an additional addition of

10:20:05  15 hours, which was there were five hours added on Sunday at

16 the Prairie View City Hall, so there was actually --

17         THE COURT:  So a new location, Prairie View

18 City Hall?

19         MR. SEAQUIST:  It was new for this election,

10:20:18  20 Your Honor.  It had been used as a polling location at

21 times in previous elections.

22         THE COURT:  And what day was that?

23         MR. SEAQUIST:  That would have been Sunday, in

24 the middle of the early voting period.

10:20:28  25         THE COURT:  Okay.  So between week one and two?

1          MR. SEAQUIST:  Correct, Your Honor.

2          THE COURT:  And what times?

3          MR. SEAQUIST:  It was, I believe, 12:00 to

4   5:00.

10:20:42   5          THE COURT:  Just for that one day.  Okay.

6   Thank you.

7          MR. SEAQUIST:  Yes, Your Honor.

8          THE COURT:  Okay.  Proceed.  Thank you.

9          MR. SEAQUIST:  All right.  What the county's

10:20:54  10  schedule did, both as it was initially adopted, and in the

11  expanded form, was create three full-time polling locations

12  that are geographically located to serve the entirety of

13  the county.  One is at this -- the county courthouse in

14  Hempstead.  And, again, under the election code, that is

10:21:15  15  designated as the main early voting place.  So the days and

16  hours of that are set by statute.

17          But the other two full-time locations were

18  in the city of Waller, which is on the northern end of

19  Waller County; and in the city of Brookshire, which is on

10:21:30  20  the far southern end of Waller County.

21          And so that basically covered both the

22  northern and southern parts of the county.  And if you --

23  there are some maps of Waller County in our exhibits.  It

24  is kind of a long, narrow county, vertically.

10:21:48  25          THE COURT:  I have got that and have some

1 questions about it.  Go ahead.

2                  MR. SEAQUIST:  Okay.  Of those, Your Honor,

3 two, Hempstead and the city of Brookshire, as alleged in

4 the complaint, have majority African American CVAP, and the

10:22:07  5 city of Waller has a majority Anglo American CVAP.  Each of

6 those three locations, or those areas, have higher numbers

7 of early votes than did the Prairie View area in the 2016

8 election.

9                  In addition, the county also allocated the

10:22:25  10 shorter windows of early voting to disperse early voting to

11 some of the other more rural areas of the county.  Those

12 included in the city of Prairie View, Monaville, Fields

13 Store.

14                  One thing I want to make clear for the

10:22:39  15 record, in the Plaintiffs' complaint they treat Fields

16 Store as being a part of Waller and they allege that

17 Waller, the city of Waller, had two locations.  That is

18 factually incorrect, and the Court can take judicial notice

19 simply of the map.

10:22:52  20                  Fields Store is an area that is nine miles

21 northeast of Waller, effectively.  It is not part of the

22 city of Waller.  And, in fact, Fields Store is further away

23 from the city of Waller than Prairie View is from the city

24 of Waller.  So I just want to be clear on that point.

10:23:10  25                  THE COURT:  Actually, let me go through this

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

 1  just real quick because it is not in -- on the map it

 2  indicates the precincts.  It doesn't indicate -- or at

 3  least it is hard to read what the particular cities are, so

 4  let me just ask.

 5                      The early voting location that's in

 6  Precinct 206, which is that?

 7                      MR. SEAQUIST:  That, Your Honor, would be the

 8  city of Waller.

 9                      THE COURT:  That is Waller.  And that's --

10                      MR. SEAQUIST:  Judge, I apologize, can I get

11  the map out before I start --

12                      THE COURT:  Yeah, please do.

13                      MR. SEAQUIST:  -- shooting from the hip?

14                      THE COURT:  It is Exhibit A to your Exhibit 11,

15  I think.

16                      MR. SEAQUIST:  Okay.  I am glad I looked.  Your

17  Honor, Exhibit 20 -- or the precinct in 206 is Fields

18  Store.

19                      THE COURT:  That is Fields Store.  I am going

20  to write -- hold on one second.  There is eight of them,

21  and I want to write these down.  Fields Store.  And then is

22  the one -- it's at the junction of 101, 102 and 103, is it

23  actually in 102?

24                      MR. SEAQUIST:  I believe -- I think that's

25  right, Your Honor, based on this map.

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1              THE COURT:  And which one is that?

2              MR. SEAQUIST:  That is the city of Hempstead.

3 That is the county courthouse.

4              THE COURT:  That is Hempstead.  Okay.

10:24:36  5              309 is Prairie View A&M Memorial Student

6 Center; is that correct?

7              MR. SEAQUIST:  It would mark both the Memorial

8 Student Center as well as the Waller Community Center.

9              THE COURT:  What is 310?

10:24:53 10              MR. SEAQUIST:  310 is the Prairie View City

11 Hall where the Sunday voting was at.

12              THE COURT:  Okay.  And 208?

13              MR. SEAQUIST:  That is the city of Waller, Your

14 Honor.

10:25:08 15              THE COURT:  That's Waller.  Okay.  And then

16 311?

17              MR. SEAQUIST:  That is Monaville.

18              THE COURT:  And I believe it's 420.

19              MR. SEAQUIST:  That is Katy.  And it serves 419

10:25:28 20 and 420, but that is Katy.

21              THE COURT:  Right.  And then I think it's in

22 417, is the last one.

23              MR. SEAQUIST:  And, Your Honor, that's the city

24 of Brookshire.

10:25:37 25              THE COURT:  That is Brookshire.

1           MR. SEAQUIST:  That is the Waller County

2   Library in Brookshire.

3           THE COURT:  All right.  Thank you.  That's very

4   helpful.

10:25:48   5           And you can continue, please.

6           MR. SEAQUIST:  Thank you, Your Honor.

7   Although, you'll -- Fields Store and Katy are both Anglo

8   majority and have higher greater -- have greater numbers of

9   early voters in the 2016 elections, Prairie View actually

10:26:03   10  out of those, out of the smaller, or the blocks of early

11  voting, received the greatest number of early voting hours.

12           Each of the -- those smaller locations got

13  early voting hours only during one week, not both.  So

14  there's a complaint in this case that Prairie View didn't

10:26:25   15  get early voting both weeks.  That is also true of Fields

16  Store, Katy, and Monaville.

17           THE COURT:  Okay.

18           MR. SEAQUIST:  So under both these plans, the

19  initial plan and the amended plan, Your Honor, the students

10:26:39   20  in Prairie View or voters in Prairie View, have the option

21  to vote at the -- nearby in Waller, which is approximately

22  five and a half miles from Prairie View, or at the

23  courthouse in Hempstead, which is seven miles,

24  approximately, six and a half to seven miles, at any time

10:26:57   25  during the early voting period.

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1                    And given the fact that Waller is a rural

2   vote -- excuse me, a rural county, there is not any

3   evidence in this record that that distance itself is

4   significantly different from the distance traveled by other

10:27:13   5   voters in the county.

6                    But for those Prairie View students who

7   did not have a car, or did not want to travel to one of

8   those other locations, they were able to vote at the

9   Prairie View Student Center which, as the Plaintiffs

10:27:27   10  allege, and I don't think anyone disputes in this case, is

11  a focal location for the daily activities of the students,

12  or at that Waller County Community Center which, again, as

13  the crow flies, Your Honor, is approximately .28 miles from

14  the student center; and if you walk it, it's a little more

10:27:47   15  than that, maybe .35.  In either event it is approximately,

16  you know, four to five city blocks.

17                    THE COURT:  So from the Memorial Student Center

18  to the Waller County Community Center to Prairie View is

19  how far?

10:28:01   20                    MR. SEAQUIST:  If you just draw a line on a

21  satellite map, it comes out to about .28 miles.  That is an

22  exhibit to Dr. Stein's deposition in the summary judgment

23  record.

24                    THE COURT:  Okay.

10:28:19   25                    MR. SEAQUIST:  I believe it's around -- just

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 under 1500 feet, as the crow flies.  And then if you walk

2 through the parking lot to get down to where -- to where it

3 is, that adds a little bit because you have to navigate

4 some sidewalks and things like that.  So it takes it up to

10:28:34  5 about .35.

6          THE COURT:  And that is -- and just to be

7 clear, that's from the student center itself, as opposed to

8 the closest edge of the campus to the community center?

9          MR. SEAQUIST:  That's correct, Your Honor.  I

10:28:48  10 mean, the community center literally sits on the edge of

11 campus.  So --

12          THE COURT:  Okay.

13          MR. SEAQUIST:  There is -- there would be no

14 distance from the edge of campus to the community center.

10:28:58  15 That is from the student center itself.

16          THE COURT:  Okay.  Thank you.

17          MR. SEAQUIST:  And I want to make clear for the

18 record, and this is contained in the deposition testimony

19 of Judge Duhon, which is an exhibit in our motion for

10:29:14  20 summary judgment, it is also -- I discussed it with

21 Mr. Muhammad, whose deposition is in the record.

22          The Plaintiffs state that there wasn't a

23 sidewalk to the community center.  At the time of these

24 events, that was technically accurate; however, there was a

10:29:29  25 sidewalk that went to the post office, which is right next

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  door to the community center, so you could walk that

2  sidewalk to the post office and then walk across either --

3  it's the small median, or just in front of the street, over

4  to the community center.  So it was accessible by walking.

10:29:48  5         There was also a Prairie View shuttle

6  bus -- this is something I discussed with Mr. Muhammad --

7  that dropped off in the parking lot that lead to that

8  sidewalk to the post office, so that you -- it didn't go

9  all the way to the community center, but you could take the

10:30:02  10  shuttle over to where the parking lot is to walk over there

11  and significantly shorten the distance.

12         But, again, if the Court is looking at any

13  -- prospectively, since that time, the county has even gone

14  further by working with Prairie View A&M to install a

10:30:18  15  sidewalk that goes directly to the community center.

16         THE COURT:  Okay.

17         MR. SEAQUIST:  Another thing to note, Your

18  Honor, and, again, undisputed, to ensure easy and

19  convenient voting, the county also installed two

10:30:32  20  controllers at the voting locations in Prairie View, both

21  at the student center; and then when voting moved to the

22  community center, there as well.

23         What that does -- there are controllers

24  which then operate the voting machines.  So effectively by

10:30:48  25  putting two controllers, what you do is you double the

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

27

1   number of voting machines that you have, but you also allow

2   for two lines of voting.  And so, effectively, what those

3   polling locations were serving as in terms of capacity was

4   two polling locations in one because they could accommodate

10:31:04   5   twice the traffic in voting as any other voting location in

6   the county.

7           THE COURT:  Now, let me ask you a question on

8   that, and I want counsel for plaintiff also to respond to

9   this eventually.

10:31:17   10          As to the hours that early voting was open

11   at the Memorial Student Center, and at the W -- the Waller

12   County Community Center, at the close of those hours each

13   day, was there ever a line such that voters that were in

14   line to early vote that day were not allowed to vote?

10:31:41   15          MR. SEAQUIST:  Your Honor, there is no evidence

16   that that is the case.  I am not aware that that was ever

17   the case and that's certainly not in the record.  The

18   evidence in the record actually suggests that the wait time

19   that -- that students were experiencing was on the order of

10:31:54   20   five to ten minutes.

21           THE COURT:  Okay.  Thank you.

22           Ms. Aden, actually can you -- do you have

23   that handy right now?  Can you respond?  I am concerned

24   if -- I know the allegation here is, generally speaking,

10:32:09   25   there weren't enough early voting hours, and it should have

1 been spread over a different amount of time.

2          And I know it's a different question than

3 -- you know, you are presenting it as a different question

4 than what specifically happened during those 12 weeks where

10:32:26  5 early voting was allowed.

6          But is there any evidence that there was a

7 line such that someone was waiting to vote, but then was

8 denied the ability to vote?

9          MS. ADEN:  In short, no, Your Honor.  But as

10:32:40 10 you well know, voting rights does not require that people

11 are denied outright their right to vote.  Do they have to

12 jump over extra hurdles?  Do they have to do something

13 different to vote?  That is constitutionally suspect.

14          And I just want to correct, it is not

10:32:55 15 simply -- and I'll get to this -- about the hours.  It is

16 about these are the very -- some of the highest users of

17 early voters, highest registered group of voters, and when

18 you get to the heart of it, you look at the schedule and it

19 doesn't make sense.

10:33:07 20          Who has been demanding early voting?  Who

21 has been demanding it at a particular site?  And then if

22 you look at this schedule, even with the modifications that

23 came only after we filed this lawsuit, this still just

24 simply doesn't make sense and I'll, I'm sure, lead to it --

10:33:19 25          THE COURT:  Okay.

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1           MS. ADEN: -- when it gets to be my time --

2           THE COURT:  Thank you.

3           MS. ADEN:  -- but these are not as articulated

4  by Defendants, in short.

10:33:28    5           THE COURT:  Thank you very much.

6           MR. SEAQUIST:  So I heard the answer to the

7  Court's question to be "no."

8           THE COURT:  Okay.

9           MR. SEAQUIST:  No evidence of any lines that

10:33:35   10  would have burdened the ability of students to -- to be in

11  line and cast a ballot, or to be denied the ability, or

12  even to have to wait an inordinately long time to cast a

13  ballot.

14           Rather, the evidence is -- and when I say

10:33:50   15  the evidence, I mean there are tweets from the Panther

16  party, who is a plaintiff in this case, kind of going out

17  to the student body saying, Come vote, it's only five

18  minutes; Come vote, it is only five minutes.

19           I asked each of the Plaintiffs about their

10:34:01   20  experience voting and each of them said, five to ten

21  minutes.

22           So that's the evidence we have.  We don't

23  have any evidence to suggest -- there are no complaints.

24  There is not even an allegation, frankly, that there was

10:34:13   25  any difficulty in voting beyond that.

1          THE COURT:  Okay.

2          MR. SEAQUIST:  Therefore, Your Honor, under

3  both the initial and the extended plans, Prairie View

4  students had not only the full two-week period where they

10:34:29    5  could avail themselves of the ability to cast an early

6  ballot in either Waller, Hempstead, or one of the other

7  locations, but they also had the added option of five days

8  of early voting either on campus, or on the very edge of

9  it.

10:34:42   10          And, in fact, under that extended plan

11  where the county added additional hours, the hours given to

12  Prairie View, Prairie View had more early morning and

13  evening hours than any other location.  So even when, for

14  example, in Waller or Hempstead polls closed at 5:00, at

10:34:59   15  Prairie View they had additional evening hours, which for

16  students may be significant because it gives them some time

17  after school to go and cast their ballot.  Makes it more

18  convenient that way.

19          THE COURT:  Let me ask a question on the law.

10:35:14   20          *Veasey v. Abbott*, I have read it, all of

21  it.  Very fractured opinion from the en banc Fifth Circuit.

22  Which, to your view, from what can be gleaned from the

23  standards that are being stated in *Veasey v. Abbott*, which

24  of Plaintiffs' claims does it control?

10:35:43   25          I don't understand it to reach everything

1  that's being pleaded here, but which of their claims am I

2  going to then be looking at *Veasey* and saying, Okay, to the

3  extent I discern what the majority view is in *Veasey* as to

4  these issues, it pertains to claims what?

10:36:02  5       MR. SEAQUIST:  Your Honor, I think, although

6  there was not a Twenty-sixth Amendment claim specifically

7  asserted in *Veasey,* to my recollection, I think the opinion

8  there controls all of the claims, and I'll tell you why.

9       First, it very directly controls the

10:36:18  10  voting rights claim.  The Section 2 vote abridgement claim

11  here, which is the claim the Plaintiffs are asserting under

12  the Voting Rights Act, *Veasey* is essentially the framework

13  in the Fifth Circuit for evaluating those claims.

14       We have cited some authorities from the

10:36:33  15  Fourth and Sixth Circuits that we think are instructive and

16  persuasive, but *Veasey* is the standard as it is announced

17  in the Fifth Circuit.

18       THE COURT:  Right.  And the Fifth Circuit is

19  obviously looking at and pulling in a lot of other

10:36:45  20  decisions, but I am going to -- I am going to be looking at

21  the Fifth Circuit's most predominantly here.

22       Okay.  So the first cause of action,

23  second cause of action, Fourteenth and Fifteenth

24  Amendments, intentional racial discrimination.

10:37:00  25       MR. SEAQUIST:  Yes, Your Honor.  And so, you

1  know, obviously *Veasey* dealt with the voter ID law.  So

2  there, there was both a Section 2 claim and an intentional

3  discrimination claim, and so a lot of what that *Veasey*

4  opinion focused its determination on was reviewing the

10:37:16   5  district court's determination on intentional

6  discrimination, including using the *Arlington Heights*

7  factors.

8          So I think it is helpful in that context

9  as well, although it didn't specifically deal with the

10:37:29  10  Twenty-sixth Amendment.  The Fifth Circuit has never really

11  dealt with how an intentional discrimination claim under

12  the Twenty-sixth Amendment is supposed to be analyzed.

13  Some courts in other circuits have used the *Arlington*

14  *Heights* factors, so we went ahead and did that just because

10:37:47  15  at the time there wasn't a lot of contrary authority.

16          There was actually an opinion issued just

17  yesterday by the Fifth Circuit.  I will confess to the

18  Court that I have skimmed it but not had a chance to fully

19  digest it, but there is some indication there or some

10:38:03  20  discussion there about how the Fifth Circuit views the

21  effect of the Twenty-sixth Amendment, and this was in the

22  mail-voting case, Your Honor.

23          THE COURT:  Right.  And what was the -- I am

24  aware -- I actually don't have the caption, but I am aware.

10:38:21  25  I saw press on that decision coming down.

1          MR. SEAQUIST:  It is *Texas Democratic Party v.*
2  *Abbott.*

3          THE COURT:  Okay.

4          MR. SEAQUIST:  And it is Number 20-50407.

10:38:38    5          THE COURT:  20-50 --

6          MR. SEAQUIST:  -- 407.

7          THE COURT:  -- 407.  Okay.  All right.  So
8  that's the third cause of action.

9              The fourth cause of action, actually, is
10:38:55   10  stating claims as to Fourteenth, Fifteenth and Twenty-sixth
11  Amendments together.

12          MR. SEAQUIST:  Your Honor, from our view, there
13  is not really any authority for that type of analysis.  You
14  know, an action either violates the Fourteenth and
10:39:11   15  Fifteenth Amendment, or it doesn't; and it either violates
16  the Twenty-sixth Amendment, or it doesn't.  I have not seen
17  any authority for combining those to create sort of a
18  blended class in that respect.

19              The Plaintiffs, it seems to me, primarily
10:39:26   20  cite the *Symm* case, the *Texas v. Symm* case, which I think
21  is interesting because the -- the opinion I just talked to
22  you about, the Texas Democratic Party, does describe that
23  and says the Courts generally read more into that opinion
24  than is there.

10:39:43   25              But I think, Your Honor, that really, that

1  the appropriate claims, or the viable claims that are

2  potentially asserted here are the Fourteenth and Fifteenth

3  Amendment claims, potential discrimination on the basis of

4  race, or potentially, if there is an abridgement, the age

10:40:01  5  claim.  I don't believe there is any court authority in the

6  Fifth Circuit for creating a blended cause of action under

7  multiple prongs.

8          THE COURT:  Okay.  And then under *Veasey*, one

9  thing that's clear is that the judges there are each taking

10:40:20  10  a very different -- some of them are taking a different

11  view of the facts in evidence that was there, but my point

12  is that all of that followed a bench trial and a review on

13  appeal there that was leading to contentious issues.

14          And that doesn't necessarily -- it is not

10:40:44  15  a comment by me on the quality of Plaintiffs' claims one

16  way or the other; but when I look at *Veasey*, I look at the

17  Fifth Circuit on a lot of the language is on remand about

18  sending it back to Judge Ramos to do a further assessment

19  and a reweighing of -- a reweighing of the actual evidence

10:41:06  20  there.  Something that's very different than what I am able

21  to do on summary judgment.

22          Can you give me your argument or

23  observations on that comment?

24          MR. SEAQUIST:  I can, Your Honor, and I will

10:41:18  25  take it in two parts:  One, I'll address that as it relates

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1   to the Section 2 Claim; and then, two, I'll address it as

2   it relates specifically to the intentional discrimination

3   claim.

4                On the Section 2 claim, I think the

10:41:34   5   important part there and that what the Court noted was in

6   that case there was very clear evidence of a burden that

7   constituted an abridgement of the right to vote.

8                The Court even said, you know, we

9   understand that other courts like the Seventh Circuit in

10:41:46  10   *Walker* have said, you don't have to reach the Senate

11   factors in making this determination.  But in our case

12   there is such clear -- in those cases there wasn't evidence

13   of -- of a burden, and in our case there is very clear

14   evidence of a burden.

10:42:02  15                What our argument is on summary judgment

16   is that this case is unlike *Veasey,* where you had a

17   specific impediment to being able to go and cast a ballot,

18   which was you had to have an I.D. or you did not get to

19   vote.

10:42:14  20                And the evidence was, was that the ability

21   to obtain an I.D. was significantly harder in certain

22   portions of the population, in particular, black voters and

23   other minority voters were faced with specific barriers to

24   being able to obtain that I.D.

10:42:31  25                So the Court said in the context of all of

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1    that, we are going to go forward to the Senate factors.

2    Here, that is not the case, Your Honor.  There was no

3    barrier or impediment to any student, any of the

4    Plaintiffs, any student at Prairie View, or other voters in

10:42:46   5    Prairie View from walking into the early voting locations

6    that were established by the county and casting their early

7    ballot.

8              The Plaintiffs don't even argue that there

9    is one.  Their argument is ultimately that, well, there

10:42:58   10   just should have been more hours.  But no court has held

11   that a mere disparity in hours amounts to a burden.

12             So, on the front end, Your Honor, I think

13   our case is different from that and, frankly, lends itself

14   readily to a summary judgment, and allows the Court to not

10:43:14   15   have to wade into the morass of the factual issues that

16   might be attendant in the Senate factors, based on the fact

17   that there is just not the threshold showing of a burden in

18   this case.

19             THE COURT:  Well, I -- that's interesting.  On,

10:43:34   20   you know, avoiding weighing in -- wading into those

21   factors, you know, as a federal court sitting over this and

22   thinking about it, cutting off, you know, reaching the

23   consideration of this, put aside, you know, which way the

24   Court might come down on them, but cutting off

10:43:59   25   consideration of those factors, I mean, I don't see the

1  Fifth Circuit doing that here in *Veasey*.  But it seems --

2  it's difficult for me, if you're not also then proceeding

3  to say, And here's why there is no problem under each of

4  these factors, even if you get to them.

10:44:20  5           And I think that the Plaintiffs have, you

6  know, things that they want to argue if the Court proceeds

7  on to those, and that perhaps it might shape how the Court

8  is looking at the initial step that you do want me to look

9  at.

10:44:37  10           So I would ask for your response on that.

11  I'm just trying to look at it from the standpoint, one

12  thing I feel certain of is no matter what I do here, the

13  Fifth Circuit's going to be taking a look at my work, and I

14  want to be sure that they have the record that they need

10:44:58  15  when they're looking at these and when you all are arguing

16  before them.

17           And so I am concerned about cutting off

18  anything on the fullness of analysis, when always on these

19  elections, you know, there is always the next deadline of

10:45:12  20  the election and it is better to try to get these things

21  resolved as completely and expeditiously as possible.  Go

22  ahead.

23           MR. SEAQUIST:  Sure, Your Honor.  And it is not

24  that the Defendants are asking you to cut off analysis

10:45:27  25  or -- or ignore factors that are applicable.  What we are

1    saying is, is that those factors don't come into play here.

2    And the reason is, if you look at what *Veasey* said, the

3    second prong of the *Veasey* test, which includes the Senate

4    factors, is a causation problem.

5                     It determines whether the burden that is

6    established under the first cause of action, or excuse me,

7    under the first prong, is actually caused by historical

8    factors of discrimination such that the ultimate result is

9    discrimination on account of race, because Section 2 only

10   gets to discrimination on account of race or other

11   protected category.

12                    So what the Senate factors are is a

13   causation question.  So if I can analogous this, for

14   example, to a tort case, if there is no breach of duty in a

15   Defendant's action, there would be no reason to analyze

16   whether those actions are, in fact, a cause of whatever the

17   Plaintiffs' claimed harm is.

18                    THE COURT:  I understand that.  It would be one

19   thing if the argument was the Court -- you're going on, and

20   it is just an advisory opinion, and it is not something

21   that you need to do.  But even in the circumstance that you

22   have just put out, I mean, the factors are the factors, and

23   it's set out in terms of different -- you know, there is an

24   order that is set out for them.  But the Court's entitled

25   to -- to take them all up and take a look at them.

10:45:44
10:46:02
10:46:17
10:46:31
10:46:47

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1          And, I mean, I -- and I do -- like -- and
2    I'll want to hear Plaintiffs' response on this, but when I
3    look at these, I know there is a dispute about what the
4    *Gingles* factors do or do not apply to, and it does look to
10:47:06  5    me like *Veasey* says that those do apply, and it says that
6    it should be used to examine causality under the second
7    part of a two-part analysis.
8          I mean, I see that and I see where it's
9    stating that those eight or nine factors go towards that,
10:47:25  10    but I am not convinced that it means I shouldn't be
11    addressing those now.
12          And I -- and I don't think that Waller
13    County is -- would be comfortable conceding, While we fail
14    all of the *Gingles* factors, but you can still rule for us
10:47:43  15    and we win on the first part of the analysis.  I am right
16    about that?  You are just not raising a fight about that
17    right now, correct?
18          MR. SEAQUIST:  That is right, Your Honor.  And,
19    of course, what *Veasey* tells us is that Section 2 of the
10:47:57  20    Voting Rights Act only prohibits burdens on minority votes
21    that would disproportionately abridge their ability to
22    participate.
23          So what our position is, if there is not
24    such a burden, and the evidence in this case, we submit,
10:48:08  25    suggests there is not, then, the other -- the Senate

1  factors, although we don't concede they are present,

2  certainly could all be present, but that is not what --

3  what a Section 2 cause of action addresses.  The Section 2

4  cause of action only addresses a burden that abridges the

10:48:25  5  right to vote.

6              And so -- and I think, frankly, the

7  Plaintiffs have tried very hard to focus on those Senate

8  factors, in particular the history, which while we don't

9  concede, we don't feel like we need to dispute here, to

10:48:40  10  sidestep the fact that, in fact, there really is no burden

11  on this voting population.  And if there is not --

12              THE COURT:  Can you give me --

13              MR. SEAQUIST:  -- at the end of the day -- I

14  apologize, Judge.

10:48:49  15              THE COURT:  That is okay.  Can you give me your

16  definition of abridgement, and give me the case that you

17  think I should look at for what the definition for that is?

18              MR. SEAQUIST:  Absolutely, Your Honor.  I think

19  abridgement, you know, it -- well, I will give you the

10:49:06  20  definition that -- that Plaintiffs' expert gave us, which

21  is, is there any impediment to casting a ballot or is any

22  group having to expend greater resources to cast a ballot

23  than another?

24              I think that definition is also consistent

10:49:21  25  with what *Veasey* says.  And then we would also direct the

1  Court to the *Virginia v. Lee* opinion where it talks not as

2  much about what an abridgement is, but goes into some

3  greater -- or not only about what an abridgement is, but

4  goes into some greater detail about what an abridgement is

10:49:39   5  not, which is, you know, some regulation and/or practice

6  that results in less convenience is not an abridgement of

7  the right to vote.  If it were, any -- any election

8  regulation or practice would be undone by Section 2.

9             The Supreme Court and other circuits have

10:49:54  10  said that is not what Section 2 does.  So we really have to

11  look and say, Can you articulate -- it doesn't have to be a

12  denial.  The Defendants have never said that you would have

13  to show that you were outright denied, but can you show

14  that you faced a more difficult time or had to overcome

10:50:10  15  some barrier in casting an early ballot that other voters

16  in the county did not?

17             And here all the Plaintiffs can say is,

18  well, they were different dates.  Well, that is really an

19  issue of convenience.  There is no evidence to suggest that

10:50:22  20  any voter was not able to, with no impediment whatsoever,

21  go into the student center where they spend their day

22  anyway, where they have their lunch, socialize with their

23  peers, go between classes, have course activities; stop in,

24  cast a vote within five to ten minutes and be on their way.

10:50:40  25             So there is just really nothing that the

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  Plaintiffs can point to in this case to say that, You know

2  what, there are other voters in Waller County who didn't

3  have to face the impediments that we had to face.

4              In fact, the opposite is true.  Most

10:50:55   5  voters in Waller County don't have this added benefit of

6  having early voting brought to their, you now, what's

7  functionally the equivalent of their workplace.  They are

8  going to have to leave the activities of their normal daily

9  routine to go seek out a voting location and cast their

10:51:10  10  ballot that way.

11              THE COURT:  Let me -- I have three other

12  questions, and then I am going to let Plaintiffs' counsel

13  take it up.

14              I want to hear a little -- just a little

10:51:21  15  bit more detail on the mootness point that you raised.  I

16  want to hear about the sovereign immunity claim as to the

17  injunctive relief, and what might be, if we had to bring --

18  do we have to bring Prairie View A&M in here?

19              One question I have in *Veasey v. Abbott,*

10:51:43  20  and I don't know what this is referring to because the

21  Fifth Circuit doesn't link it up to anything, but it is

22  language of concern that I see early in the opinion.  It

23  says -- and it's going into the legislative intent

24  question.

10:51:58  25              It says, "For example, in a state with 254

1  counties, we do not find the reprehensible actions of

2  county officials in one county, Waller County, to make

3  voting more difficult for minorities to be probative of the

4  intent of legislators in the Texas legislature which

10:52:15  5  consists of representatives and senators from across a

6  geographically vast, highly populus and very diverse

7  state."

8              What is that comment referring to, and

9  what time frame is it referring to?

10:52:30  10             MR. SEAQUIST:  Your Honor, as best I can read

11  that comment, I think it is a response specifically to the

12  district court because the district court relied on some

13  findings, or evidence from an expert, historical expert,

14  much like this case, might have even been the same one,

10:52:52  15  about the events that -- the same events that the

16  Plaintiffs are talking about here.

17             That language is obviously unfortunate.  I

18  think what is important to note about that is that my

19  client wasn't a party to that case to address those

10:53:05  20  concerns at the time, or to offer context or explanation.

21  And so --

22             THE COURT:  And I understand.  I definitely

23  understand and appreciate that, and I don't bring it up as

24  a source of embarrassment, or that it's something that's,

10:53:19  25  you know, established for purposes of this case.

1                It is -- but it is interesting language in

2    what we're all acknowledging to be, I think, the

3    controlling opinion on a large aspect of this case.

4                MR. SEAQUIST:  I think that is true.  I'm

10:53:36   5    sorry, Your Honor, I didn't mean to interrupt.

6                THE COURT:  No.  That is okay.  I was done.

7                MR. SEAQUIST:  Zoom strikes again.

8                I think -- I think the specific items that

9    the district court referenced were, one, the *Symm* case,

10:53:49   10   which the Fifth Circuit has now shed some additional light

11   on; and two, some allegations that might have drawn an

12   objection from the DOJ in the early 2000s, and where there

13   might have been some litigation that was settled by consent

14   decree but without any particular finding.

10:54:05   15              So, you know, that is, I believe the

16   background of that comment.  I can't, obviously, speak to

17   what the Fifth Circuit was addressing specifically, but

18   that was what was contained in Judge Ramos's opinion out of

19   the Southern District in Corpus Christi, and I suspect that

10:54:17   20   is what is being referenced there as well.

21              THE COURT:  So, now, tell me why on your

22   mootness question, if I agreed with that, does it clear out

23   all of the claims, one; and two, tell me why it's setting a

24   standard that somehow constrains Waller County so that

10:54:39   25   there is not this variation among polling places, which I

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  know is what's of concern to plaintiff, that, you know,

2  if -- tell me why it really is a one size fits all, and not

3  just a -- I don't know, setting a floor rather than a

4  ceiling.

10:54:55  5            I want to make sure on your argument that

6  there is not the ability, if this is what you're asserting,

7  there is not the ability for some polling places to be open

8  different hours.  Although, I did hear you say earlier that

9  it may not apply the same way on the weekends.

10:55:13  10           MR. SEAQUIST:  I think that -- that is correct,

11  Your Honor.  It requires every temporary branch polling

12  location to be open on the same weekdays as the main early

13  voting branch polling location.

14           So in that respect, it not only ensures,

10:55:29  15  you know, a standardization, but it also ensures an

16  extensive number of hours at each of the polling locations.

17           So the question becomes, then, is there

18  any allegation in this case that that set of hours, you

19  know, on the one hand it is a mootness there, and it also,

10:55:46  20  I guess, becomes a ripeness issue, too, which is if the

21  question is, well, could the county still do something?

22  Until they have done it, there is not really a live claim

23  as it relates to that.

24           So from where we stand in this case, which

10:55:57  25  is the Plaintiffs asking the Court to set a standardized

1 schedule going forward, that statute has done that.

2               THE COURT:  Okay.

3               MR. SEAQUIST:  Plaintiff has --

4               THE COURT:  Then as to -- in terms of -- and

10:56:09  5 this is not for me to say how you-all should resolve it,

6 but if all of the early voting locations are going to be

7 the same during the week, it seems to me that the only

8 consideration is what's going to be happening on the

9 weekends.

10:56:28  10               That sounds to me like if both sides are

11 acting in good faith, there is an ability to figure that

12 very narrow issue out, because now you're just -- you are

13 only down to a certain number of hours and amount of

14 resources.

10:56:44  15               Have you all considered it from that

16 perspective?  I mean, maybe y'all disagree about how that

17 law is supposed to apply.

18               MR. SEAQUIST:  Your Honor --

19               THE COURT:  But what is --

10:56:52  20               MR. SEAQUIST:  I'm sorry.

21               THE COURT:  Go ahead.  I was going to say what

22 is your take on that?

23               MR. SEAQUIST:  My answer to that is I think

24 it's resolved itself.  I mean, what we have is the evidence

10:57:00  25 of what has taken place since the adoption of the statute

1 where all of the polling locations, one in each

2 commissioners court precinct, have had the same hours.  And

3 so that's been the course to date.  There is no indication

4 that that is going to change.

10:57:13  5                    So, again, on -- based on what has

6 happened today, there is really no basis to claim that

7 there is going to be any inequity or difference in the

8 hours going forward.

9                    THE COURT:  Then I can't resolve it on -- I

10:57:27  10 mean, yes, the federal court, you know, I am being asked to

11 exercise my federal judicial power, and that's not done on

12 the basis of, Well, it looks like it's going okay, and so,

13 there is nothing for this Court to do in advance of

14 November 2020.

10:57:46  15                    But it is a whole different thing if the

16 parties are agreeing and saying, Here's what we're

17 committing to, and the Court signs off on that, as -- as an

18 enforcement matter.

19                    And I don't know if you all want to work

10:58:01  20 it out in advance.  I'm just saying, it sounds to me like,

21 given a change in state law on that, there is room for

22 reasonable minds in good faith to figure out how to reach

23 something that satisfy both sides.  Because if I am hearing

24 you right, the window of difference has greatly narrowed on

10:58:26  25 what the dispute would be that's available under the way

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 state law requires it to be run at this point.

2           MR. SEAQUIST:  I think that's right.  And I

3 think in practice, it has evaporated altogether.

4           THE COURT:  Okay.  As to the other question is,

10:58:41   5 you know, I know that a lot of the request here is to make

6 sure that there is a polling place that is at the student

7 center on campus at Prairie View.

8                And, again, I look at it as -- as a

9 question of what power the Court has to -- if that's the

10:59:00  10 request that's being -- if that's the request that is being

11 made in Plaintiffs' papers, you know, it is an indication

12 that Prairie View A&M very much, you know, is happy to have

13 that, would welcome that.  But that's a different question

14 than what I am able to order and enforce.

10:59:25  15                Tell me why sovereign immunity is such

16 that I would not be able to order such relief against a

17 state entity when we are talking about the Voting Rights

18 Act and we are talking about making sure that

19 constitutional obligations are observed.

10:59:44  20           MR. SEAQUIST:  Your Honor -- and, of course,

21 you put your finger on what our concern is, which is if we

22 were somehow ordered to hold an event on a piece of

23 property that we do not control, that we could find

24 ourselves in violation of court order through no fault of

10:59:58  25 our own, so that's the concern there, setting aside, you

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1   know, our position on whether any order is produced.

2                   But I think, Your Honor, that the issue is

3   that the remedial provisions of the Voting Rights Act,

4   though broad, allow for remedies against Defendants, and

5   folks who are -- Defendants who -- specifically who have

6   violated the Voting Rights Act.

7                   Since there is no allegation that Texas

8   A&M has done anything wrong, I don't think that they would

9   be subject to an order under a Voting Rights claim, and an

10  action between unrelated parties that control their

11  disposition or allowance of state property.

12                  I have never seen a case that would permit

13  that, and it seems to me to run fairly directly afoul of

14  the Eleventh Amendment.

15          THE COURT:  Let me say this.  It's -- I think

16  that the mootness and the sovereign immunity question -- I

17  don't have a view on how I am going to come down on either

18  of those.  But I think that they present in this context

19  real issues, you know, if this was the class federal

20  courts, it would present more difficult issues there.

21                  And I am not saying that y'all are

22  constrained on your briefing pages, that y'all were cutting

23  to the substance of the actual claims as opposed to some of

24  these procedural things.

25                  I think if I got five to ten pages more

1  from each of you with the ability to give me a little bit

2  more depth on those issues, it would be helpful.

3            And, Ms. Aden, I will take your argument

4  on both of those points right now, obviously, but why don't

11:01:45   5  we say that -- is 14 days enough to give me ten additional

6  pages?  We will just do it simultaneously.  I don't need

7  you all responding to each other, but just -- because you

8  have seen each other's, sort of, positions on this, and so

9  you know what the other side is essentially arguing.

11:02:06   10           Give me ten more pages as to those, just

11  those two issues, within 14 days.  Is that something that

12  is doable?  Do you need more time?

13            MS. ADEN:  That works for Plaintiffs.

14            MR. SEAQUIST:  Defendants as well, Your Honor.

11:02:22   15            THE COURT:  Okay.  Thank you.  In the interest

16  of time, I am going to allow Plaintiffs' counsel to start.

17            Mr. Seaquist, did I cut you off?  Is there

18  anything else that you have a burning need to tell me

19  before we move over to Plaintiffs' counsel?

11:02:37   20            MR. SEAQUIST:  Your Honor, I think the rest of

21  my argument I can probably address as a brief rebuttal.  I

22  would like an opportunity to respond to Plaintiffs'

23  argument just as a movant.

24            THE COURT:  Okay.  I do have -- it is 11:00.  I

11:02:50   25  do have a relatively hard cutoff at noon because I have a

1  teleconference participation that I also need to join onto.

2  I think we will have sufficient time.  If anything has to

3  give, it is going to give a little bit on that end.

4              Ms. Aden, I think we have cleared out a

11:03:10  5  lot.  I hope you appreciate that I have looked at and

6  understand the facts here.  I have looked at it, so I don't

7  know that I need the beginning point of your whole

8  argument.

9              But, obviously, what is critical here is

11:03:24  10  disputes as to material facts, things that you think -- not

11  why you win at this point but why I should be hearing more

12  about it at trial, if you understand what I mean.

13              MS. ADEN:  Yes, Your Honor.

14              THE COURT:  And so with that, why don't you

11:03:39  15  proceed.

16              MS. ADEN:  Yes, Your Honor.

17              So based upon Defendants' motion and their

18  presentation today, Defendants do fail to carry their

19  burden at summary judgment, which is where we are; that

11:03:51  20  there are disputed material facts, particularly as it

21  relates to the intent that is animating the decision-making

22  in Waller County.

23              And this Court has to view the facts in

24  light most favorable to Plaintiffs, and accept Plaintiffs'

11:04:06  25  evidence as true at this stage.

1                    Among this evidence, which I will delve

2    into in more detail, it's the position by Defendants

3    themselves, Defendant Eason and Duhon, that the 2018 early

4    voting plan was inequitable to Prairie View voters, and to

5    the Prairie View A&M student voters within it.

6                    The data, the data also establishes, which

7    is in dispute, that Defendants directed this inequitable

8    treatment at Prairie View, and this is the only area in

9    Waller County with a substantial young and majority black

10   student electorate.

11                   There is probably no other county, no

12   other area in Texas, with the demographics that are present

13   here in Waller County.  There is no other area in Texas

14   with the history that Defendants say they won't contest,

15   but that is as stark and as important to the backdrop of

16   the decisionmaking that is at present in Waller County.

17                   Defendants have tried everything over the

18   course of decades to limit the power of this particular

19   community whose demographics are unique in the county and

20   they're unique in Texas.  These are people who want early

21   voting.  These are people who have demanded early voting.

22                   And as I mentioned before, when you look

23   at the schedule, it simply doesn't make sense if you don't

24   understand the history, and if you don't look at who is

25   trying to be limited in their participation.

```
                     1              All of this may seem trivial.  It may be a
                     2  dispute about where voting locations are situated, how many
                     3  hours, but this all must be seen in students fought to have
                     4  early voting come to their campus.  And ever since it's
          11:05:46   5  come to their campus, the county has tried to limit it.
                     6              In 2016, which has been referenced before,
                     7  they tried to go from eight precincts to two.
                     8              In 2018 when students demanded more early
                     9  voting, they said, Oh, we will give you a few days on
          11:06:00  10  campus.  We will ignore all your reasons why that doesn't
                    11  make sense, and we will give it on the edge of campus, even
                    12  though it is only after this litigation was filed that
                    13  there is all of a sudden a sidewalk, that there all of a
                    14  sudden is these accommodations to allow Prairie View
          11:06:16  15  students to vote on campus.
                    16              So this is the context that I need Your
                    17  Honor to be thinking about when it's reviewing the facts
                    18  that are disputed in this case.
                    19              And so there are -- Defendants focus a lot
          11:06:27  20  on the statutory claims, but as Your Honor has mentioned,
                    21  there are Constitutional claims, and those are live; they
                    22  are contested; and they provide independent bases for this
                    23  Court to deny Defendants' motion.
                    24              The age discrimination claim under the
          11:06:42  25  Twenty-sixth Amendment, yesterday's case, Texas v. Abbott,
```

1  does not change the reality that case is distinguishable.

2  There, Plaintiffs were alleging that the challenge practice

3  places a severe burden on Plaintiffs' right to vote.  Here,

4  as I just mentioned, we're alleging that the county has

11:06:59   5  intentionally targeted this population of young voters, and

6  this population of black young voters, and therefore

7  *Arlington Heights* applies.

8              In any event, we have a claim of race and

9  age discrimination, which violates both the Constitution,

11:07:15   10  the Fourteenth, Fifteenth and Twenty-sixth Amendments, and

11  Section 2's discriminatory purpose prong.  That is a wholly

12  separate claim.  That also is subject to the *Arlington*

13  *Heights* analysis.

14              And, as I mentioned, and the focus of

11:07:31   15  Defendants' claim is on the discriminatory results claim.

16  I can see that the en banc 2016 *Veasey* opinion that does

17  control, that is only speaking to the discriminatory

18  purpose analysis.  It does not speak to the intentional

19  discrimination claims that we have raised separately.

11:07:49   20              I am speaking really fast, and I will try

21  to slow down at this point --

22              THE COURT:  No.  That's okay.

23              MS. ADEN:  -- for this purpose.  We did send a

24  slide over to the Court where we tried to identify very

11:07:59   25  clearly and starkly the independent claims, and I direct

1  your Court's attention to that as relative obviously in our

2  amended complaint.

3          THE COURT:  I'm sorry.  Which slide are you

4  referring to?

11:08:10  5          MS. ADEN:  That should be the second slide

6  after the opening slide which identifies who we are.  The

7  second slide identifies Plaintiffs' independent claims.

8          THE COURT:  Hold on one second.

9          MS. ADEN:  Uh-huh.

11:08:29  10          THE COURT:  Was this -- I'm sorry.  I don't

11  have it that I am aware of.  Is it something that was

12  provided to the case manager?

13          MS. ADEN:  Yes.  But it was around 8:00 or 9:00

14  last night, so I apologize.  We tried to get it in by --

11:08:42  15          THE COURT:  No, I don't mind that at all.

16          Jenelle, do you have something that came

17  in that hasn't been forwarded?

18          THE CASE MANAGER:  I just e-mailed that to you,

19  Judge.  I will print a hard copy.

11:08:53  20          THE COURT:  I see it now.  So seven slides.

21  Okay.  Good.

22          Continue.  I now have the reference you're

23  talking about.

24          MS. ADEN:  Perfect.  So we're looking at the

11:09:03  25  second slide.  Yesterday's age discrimination claim, the

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  first under the Twenty-sixth Amendment, in *Texas v. Abbott,*

2  is distinguishable for all the reasons that I tried to

3  explain.

4           THE COURT:  I'm sorry.  Can I interrupt you

5  just for a second?  Does opposing counsel have this, in

6  fairness?

7           MS. ADEN:  Yes.

8           THE COURT:  If we were in the courtroom, this

9  would be up on screen.  They have got it.  Okay.  Go ahead.

10          MS. ADEN:  And, Gunnar, you can confirm that.

11  I did e-mail everyone.  I just want to make sure they have

12  actually received it.

13          MR. SEAQUIST:  I do have it.  Thank you, Your

14  Honor, and thank you, Ms. Aden.

15          THE COURT:  Thank you.

16          MS. ADEN:  So first claim, age discrimination

17  independent bases under the Twenty-sixth Amendment,

18  yesterday's decision does not disturb that for all the

19  reasons that it's distinguishable.  Therefore, we think

20  *Arlington Heights*, the factors that are articulated in

21  *Arlington Heights*, which are factually intensive, those

22  govern.

23             The second claim is racial discrimination

24  claim, for race, not the intersection of race and age.

25  *Arlington Heights* applies.  *Veasey* is not controlling on

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1    that issue.  The en banc 2016 decision reached affirmative

2    decision on discriminatory results, but it did not affirm

3    one way or the other the district court's finding of

4    Texas's discriminatory intent, so we do not believe that

5    *Veasey* controls on that second claim.  *Arlington Heights*

6    does.

7                        On the third claim *Arlington Heights*

8    applies because we are asking this Court to see the

9    recognition of this unique character of black student

10   voters in Waller County.

11                THE COURT:  So that's -- I'm sorry.  So on

12   the -- your third bullet point, that's going to your fourth

13   cause of action, correct?

14                MS. ADEN:  It should be race and age.  I don't

15   -- I don't want --

16                THE COURT:  And so it's a discrimination

17   against young minority voters, that's the thrust of the

18   claim?

19                MS. ADEN:  Young black voters.  So not

20   minorities.

21                THE COURT:  Okay.  Young black.  Okay.  Thank

22   you.

23                MS. ADEN:  Yes.  Yes.

24                THE COURT:  And what case -- it's interesting.

25   I mean, it's interesting to -- you have got your Fifteenth

1 Amendment.  I understand that very clearly.  And

2 Twenty-sixth Amendment, I understand that very clearly.

3 And then it's zeroed down to it's like, well, the

4 allegation is we're combining the two of those things and

11:11:19   5 it is going against, you know, the young black voters.

6                    Is there a case where that's been raised,

7 and resolved in that way, alleging that?

8                    MS. ADEN:  So our two cases in support are in

9 Doc 77, page 10, or 14 of the ECF pagination.  We refer

11:11:41  10 this Court to the *State v. Texas*, which was narrowly

11 affirmed by the United States in *Symm v. United States*

12 where there was claims that these very students in Waller

13 County were targeted by the county because of their race

14 and age.  That was summarily affirmed.

11:11:58  15                    And there is a persuasive district court

16 decision from the Northern District of Mississippi that has

17 recognized the intersection of race and age.

18                    But this goes to the point I was trying to

19 make at the top which is this is a very unique, splendid

11:12:14  20 community in Waller County with this intersection of race

21 and age and the intersection of this history, which we

22 think the Constitution recognizes and protects.

23                    I would direct the Court to the *Symm's*

24 affirmation by the Supreme Court for more on that.

11:12:32  25                    THE COURT:  If this goes to trial, is it a

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  bench trial?  Am I correct on that?

2          MS. ADEN:  Yes, Your Honor.

3          THE COURT:  Okay.  If this goes to trial, we

4  are going to take a field trip and go take a look at

11:12:44  5  geographic proximity and things like that so -- because I

6  would be interested to -- one thing I learned in practice

7  is, it's one thing to talk about it.  It is another thing

8  to walk around between places and see it.

9          So go ahead.

11:12:58  10         MS. ADEN:  Show the community --

11         THE COURT:  It is just something on my mind.  I

12 haven't visited.  Yeah, you're referring to the splendid

13 community, and I unfortunately have not visited exactly

14 where we're talking about, although I have been in a lot of

11:13:12  15 other places in Waller County in my life.  Okay.  Go ahead.

16         MS. ADEN:  And then the last claim on this

17 slide is the discriminatory results claim.  This is the one

18 that Defendants have spent a lot of time on, and we do

19 think the en banc court in *Veasey* controls.  That court did

11:13:26  20 look at the burden on voters, but it also looked at the

21 totality of the circumstances.

22             The law provides that not all of the

23 *Gingles* factors may be relevant in cases such as these.

24 *Gingles* is a redistricting case, but it has been applied to

11:13:41  25 cases like this alleging denial and abridgement.  And some

1 of the Senate factors are applicable here.  Many we have --

2 believe there is disputed evidence about, or at least

3 Defendants have not addressed that evidence, and that is

4 the proper framework for that.

11:13:56    5                    But all of -- suffice it to say, in short,

6 all of that goes to the point that Your Honor was making

7 which is that it is rare that in cases raising these types

8 of factually complex cases that they are decided at summary

9 judgment.

11:14:09   10                    After more than a year of discovery,

11 Plaintiffs have disclosed six expert reports.  Defendants

12 only one.  Hopefully, Defendants don't even bother to cite

13 their expert in their summary judgment papers.  We have

14 taken 11 depositions.  We have exchanged hundreds of pages

11:14:26   15 of fact discovery ripe for further dispute.

16                    With respect to our Constitutional claims

17 under the Fourteenth, Fifteenth, and Twenty-sixth Amendment

18 claims, I want to impress upon the Court that Plaintiffs

19 show now and we believe that we can show at trial the point

11:14:44   20 I'm trying to make, that there is no other city or area in

21 Waller County that comes close to having the age and racial

22 demographics that are concentrated in Prairie View.

23                    All of the counties, all of the areas that

24 Defendants cite, whether it be Brookshire, or Hempstead, or

11:15:01   25 Katy, or Monaville, none of them have this age and racial

1  makeup, which is unique, and, again, has been subject to

2  the discriminatory treatment decade after decade.

3              It is also important that the stats be

4  lifted up.  54 percent of Prairie View, as shown in the

5  third slide that is before the Court and the Defendants, 54

6  percent of Prairie View is 18 to 20.  No other area in

7  Waller County has more than eight percent of people 18 to

8  20.  So if you look in Prairie View, young people.  You

9  look elsewhere in the county, older people.

10              Students in Prairie View, they're populus

11  enough to be a fourth of the county's total voting age

12  population.  They are a source of voting power.  Prairie

13  View is also the only city, I'll reiterate, where majority

14  of voters are both students and black.  80 percent of

15  Prairie View's citizen voting age population is black.  80

16  percent.

17              By stark contrast in Waller County, as a

18  whole, roughly only 30 percent of the voting age population

19  is black.  They are a minority in other -- in every other

20  area of the county that Defendants point to.

21              Defendants wholly ignore, but it is

22  disputed, that they departed from their own guideline in

23  setting the 2018 early voting.  Had they applied their own

24  guidelines, factors that they said went into their

25  decisionmaking, they -- it should have supported more early

62

1   voting in Prairie View, including on the campus of --
2   including on campus at the Memorial Student Center.  And
3   this is based on data available to them that shows that
4   they are the highest users of early voting in the county.

11:16:48  5              Dr. Stein, Plaintiffs' expert, found that
6   81 percent of Prairie View students who voted early in
7   2018, did so.

8              Prairie View students also live in the
9   Precinct 309, which Your Honor discussed with Defendants.
11:17:06  10  Precinct 309 had the most registered voters in all of
11  Waller County in November 2018.  The most registered voters
12  in all of the county.  And, uniquely, Prairie View
13  students, they lack private transportation, and they have
14  no access to public transportation in the county.

11:17:24  15             This is important because as Plaintiffs'
16  expert, Dr. Stein, reports, transportation access is a best
17  practice in determining the allocation of early voting.

18             You can see from the fourth slide, we
19  tried to set out what was the original early voting
11:17:39  20  schedule.  Defendants walked you through in this slide what
21  was added after we filed a lawsuit, after they were
22  compelled to file -- to add some additional days, one
23  additional day, and some additional hours.

24             I want to note in response to the -- a
11:17:58  25  question this Court raised, and a comment that Defendants

1 made, that it doesn't matter whether or not this schedule

2 was worse than 2016.  It is a matter of how black voters,

3 Prairie View students, were treated in 2018.  You don't

4 have to look -- you have to look backwards to understand

5 context, but the standard is not was this schedule worse

6 than the one before?  Was it discriminatory in 2018?

7           And I should note that we want to talk

8 about 2016.  It was a tough -- a time in the record where

9 Waller County tried to strip Prairie View students and

10 Prairie View voters of having access to eight polling

11 precincts and they went down to two, and they then had to

12 fight to get those restored.

13           So if you look backwards, we are not going

14 to have a lot of good evidence in favor of Waller County.

15           THE COURT:  Is that about 2016, is that in the

16 record that you have submitted?

17           MS. ADEN:  That is in the record.  That should

18 have been documented in the reports of Dr. Peniel Joseph as

19 well as Dr. Henry Flores.

20           THE COURT:  Okay.

21           MS. ADEN:  So the changes that are -- that were

22 made after this litigation was filed, they didn't remedy

23 the harm because, again, the treatment continues, and

24 because students -- because of their treatment, and this is

25 what makes them unique, they then overcome the

1    discrimination and they do vote, which is why *Veasey* orders

2    district courts, directs them not to look at what were the

3    actual turnout numbers.  It is about looking at what the

4    decisionmaking, and access, and the burden that went into

11:19:32    5    it because actual turnout actually overcoming

6    discrimination is not in question.

7              THE COURT:  Let me ask this.  Let me ask this

8    in terms of you had said earlier at the outset, something

9    along the lines of, you know, you are not expecting the

11:19:47    10    Court to micromanage what's -- what went on then, what

11    might be going on in the future.

12              I look at the map of the precincts and it

13    was Exhibit A to Exhibit 11.  It's what I was getting

14    filled in earlier.  And I believe it's 20 precincts, only

11:20:15    15    eight of which had early voting ever even allocated to

16    them.

17              And, you know, just looking at the map,

18    and I know it's -- a lot of it concerns -- obviously, a lot

19    of its concerns are the demographics and what are the

11:20:34    20    challenges that face each demographic.

21              But, I look at it, and there are, you

22    know, large, large distances that, relatively speaking,

23    portions of the populus have to travel and that also

24    determine, you know, whether they had closer voting access

11:21:01    25    in week 1 than in week 2.

1            Because I see the -- so I just -- I see

2 geographic dispersion and disparity of where the voting was

3 allowed, and then also, the hours; and as I am looking at

4 it, from the record, it looks like, you know, when you're

11:21:22   5 looking -- drilling down into the demographics dispersed

6 throughout the community, a lot of things are impacting

7 black and white equally.

8            I hear what you're saying that what's

9 impacting Prairie View A&M differently is that it is also

11:21:39  10 black and young that's being impacted by the decisions

11 being made.  But when I look at eight precincts with voting

12 places and 12 that had none at all, and in the weeks where

13 there were early voting, three of them that were held in

14 week one, not held in week two, and the -- on the other

11:22:09  15 hand, in week two at Prairie View A&M, or the community

16 center, that was held week two but not in week one.

17            I look at all of that and I sort of see --

18 I don't know what to make of that because it doesn't look

19 like something that is really targeting Prairie View A&M,

11:22:27  20 at least just looking at the pieces of evidence here.

21            So, tell me why those are not concerns, or

22 something that I -- I can't take into account that way,

23 when I am looking at just the hours, and where these places

24 are on the map.

11:22:41  25            MS. ADEN:  So with respect to the other areas,

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 none of the other areas have the legally protected groups

2 that we allege are protected by the Constitution, and the

3 Voting Rights Act, so that is what distinguishes them.

4                  As a factual matter, all of the areas, as

11:22:57  5 the data shows, have access to private transportation in a

6 disproportionate manner than those -- than what has been

7 said repeatedly to the commissioners court is absent for

8 Prairie View students, and both black people and Prairie

9 View.

11:23:14  10                 Moreover, the facts also reflect that if

11 you go back and look at the commissioners courts meetings

12 from this -- this 2018 session and before, none of those

13 areas are clamoring for the type of allocation that is

14 reflected in who actually uses early voting, who registers

11:23:31  15 to vote, who actually desires voting.  That distinguishes

16 them.

17                 And if you look at the report of

18 Dr. Stein, and I unfortunately don't have the pin cite, he

19 makes the claim that black voters in other areas of the

11:23:44  20 county overall are the ones who suffer from least access to

21 early voting, though our focus here is on black voters and

22 Prairie View, and particularly black student voters.

23                 I am not going to defend this schedule

24 because I don't think it lines up with who -- with who has

11:24:00  25 asked for early voting and where the use has been, but I --

1  I think that the other communities that Defendants point to

2  are either not legally protected groups, or they are white,

3  older voters who carry the majority, and they have

4  resources that the data reflects are not available to the

11:24:19  5  students in Prairie View, and to the black community in

6  Prairie View, and that is what makes it distinguishable.

7                    All of --

8                    THE COURT:  Let me ask --

9                    MS. ADEN:  -- like Monaville, the precincts

11:24:29  10  they point to, those are majority white, older communities.

11  Katy, most of Katy is outside of Waller County.  Hempstead,

12  Brookshire, about 30 percent of the population is black.

13  It is not 80 or 90 like it is in Prairie View.  It is

14  not -- it does not have the population of black registered

11:24:45  15  voters like in Prairie View.

16                    And so if you look at where the high rates

17  of early voting are, where the concentration of voters are,

18  where the community has fought for early voting, where the

19  community has said I can't access these other sites without

11:25:01  20  being denied voting, or without being forced to expend

21  resources that I don't have to vote, none of that is

22  happening in other parts of the community, or at least the

23  record doesn't reflect that that's happening in other parts

24  of the community.

11:25:16  25                    But it is happening in Prairie View and it

1  has happened in decade after decade, and this

2  decisionmaking is consistent with the practice of the

3  county of not meeting the needs of this particular

4  community that is legally protected.

11:25:35    5          THE COURT:  Okay.

6          MS. ADEN:  You can take my word for it, Your

7  Honor, the Defendants admit the discrimination.  I mean,

8  they gloss over, and this is a disputed fact, defendant --

9  as I mentioned at the top, Defendant Eason admitted during

11:25:45    10  a commissioners court meeting that there is not, quote,

11  equal representation, end quote, concerning the allocation

12  of early voting for Prairie View A&M students.

13          At the same meeting Defendant Duson --

14  Duhon agreed, declaring, quote, I do not think there is

11:26:02    15  an -- I do think there is an inequity, end quote.  They

16  admitted that they were doing something that was not fair

17  to Prairie View and Prairie View A&M students.  Then they

18  considered alternatives, which means they have the

19  resources, which means it wasn't too late for them to do

11:26:17    20  it, and then they still decided -- they threw up their

21  hands and said, I am not going to do anything, or I am

22  going to make these modest changes after the lawsuit was

23  filed.

24          But all of that is to say that their

11:26:28    25  admissions are disputed in terms of what the import of them

1  are, but they're important because there is a recognition

2  at the time that the decision was made, that there was

3  inequity happening, and that inequity forms the basis of

4  many of our claims and is borne out by the data.

11:26:43    5          THE COURT:  One of your requests for ultimate

6  relief is an order providing Defendants, and it says at

7  least parity, standardized, or otherwise adequate early

8  voting hours as compared to other Waller County cities.

9                What does that mean?  How is it achieved?

11:27:06    10          MS. ADEN:  It is achieved by a declaration that

11  what they did in 2018 was discriminatory because a slap on

12  the wrist means don't do it again.

13                It also means under HB 1888, which we

14  think gives the county a lot of discretion to set not

11:27:23    15  necessarily -- it sets the floor for hours, but it does not

16  set the ceiling, and it certainly also doesn't set where

17  those opportunities are provided, and, so there is a lot of

18  discretion about where early voting should take place.  And

19  there is an opportunity for this Court -- for the

11:27:41    20  commissioners court to actually affirmatively engage the

21  community, and not rely on these party chairs in this

22  broken system that they have been relying upon to set their

23  early voting schedule.

24                There can be affirmative steps to include

11:27:57    25  students in the decisionmaking so that the plan reflects

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 where the needs are, and can be balanced against whatever

2 resources and interest the county has.

3                THE COURT:  On the new state law that we were

4 talking about, I had seen in the papers the idea about it

11:28:16   5 sets a floor, not a ceiling, and that if that's so then

6 there can be great disparity at different places as to what

7 the hours are going to be.  That's leaving a lot of

8 discretion.

9                But is it the case that whatever the main

11:28:28  10 polling place is that's set, that's -- that's setting the

11 hours for the other one?  Did I -- what is that state law

12 actually doing in terms of hours?

13                Because I thought I heard from the

14 Defendants that it's, you know, wherever the county is

11:28:44  15 setting the -- is it the main polling facility, and setting

16 the hours there, that has to be set at the others?  Is that

17 not correct?

18                MS. ADEN:  So that is my understanding in terms

19 of the standardization, and sorry if I confused the issue.

11:29:00  20 But there is -- if there is going to be equity in terms of

21 the days and hours, there then is the discretion about

22 where do you site early voting.

23                And there is still a dispute about where

24 that makes sense and where the resources allow the county

11:29:13  25 to provide it, and what we have seen in terms of the

1  capable of repetition, you have abating review standard for

2  being able to provide relief, is that in 2019 early voting

3  was denied on campus at Prairie View, and -- and in 2020

4  during the primary election that the case was the same

5  there.

6                      And so a declaration that what occurred in

7  2018 was discriminatory, and an order that they both

8  provide equitable and early voting that is in tandem with

9  what the needs of the communities are, and that includes

10  the voices of this community member, go a long way in

11  remedying the problems that we have seen.

12                      And that, frankly, Defendants have

13  admitted -- admitted that they needed a standardized

14  system.  Now maybe HB '88 gets them closer to that, but it

15  doesn't resolve that.  They admitted that they don't --

16  yes.

17                      THE COURT:  And so -- and so is the dispute --

18  so the hours -- okay.  So there's the question about, you

19  know, where are the early voting sites going to be located.

20  Great.  But as to the -- wherever they are sited, those

21  hours are basically now set by state law because it has to

22  accord --

23                      MS. ADEN:  As I understand --

24                      THE COURT:  Okay.

25                      MS. ADEN:  -- assuming -- there is lots of

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  litigation, assuming that that doesn't change, that is my

2  understanding.

3            THE COURT:  Exactly.  Okay.  So, then, as to

4  where it's sited, is the dispute then that it's been -- in

11:30:44  5  the most recent elections been sited at the Waller County

6  Community Center as opposed to on campus at the student

7  center?

8            MS. ADEN:  That is one of -- that is a deep

9  concern, in part because of --

11:30:59  10           THE COURT:  No.  No.  My question was

11  factually.  Is that -- I mean, is that where -- it was at

12  the community center --

13           MS. ADEN:  Yes, that is correct.

14           THE COURT:  -- as opposed to on campus at the

11:31:07  15  student center?

16           MS. ADEN:  The community center and other

17  places.  That's correct, yes.

18           THE COURT:  Okay.  This is good.  And it plays

19  into the briefing that I have asked for, then, also.

11:31:18  20                In terms of what I would be able to order,

21  to say, you know, you want an order providing parity,

22  standardized, otherwise adequate, early voting hours.  What

23  I am hearing you say you mean by that is you want it on

24  campus at Prairie View A&M University at the Memorial

11:31:33  25  Student Center.

1            And that may or may not be what is needed

2 here, but I also need to know -- and it's part of the

3 briefing that I have asked for -- I need to know as a

4 federal court that I am able to order Prairie View A&M to

11:31:57   5 accommodate that in a way that I can enforce.  Not based on

6 Prairie View.

7            And I believe that Prairie View would --

8 would want to act in -- you know, with goodwill and host it

9 agreeably.  But that is not the question for me when you're

11:32:12   10 asking for a compulsive order.  I need to know that I can

11 order it; and if they happen to be recalcitrant, I as a

12 federal court am able to make sure that they comply.

13            Do you see what my concern is?

14            MS. ADEN:  I do, Your Honor.  We tried to get

11:32:27   15 to a little of this and we definitely will oblige the Court

16 and brief it to provide more.

17            Prairie View is not -- and defendants

18 haven't satisfied their burden that they are both a

19 necessary and indispensable party.  It's -- as a factual

11:32:40   20 matter, there are many places where Defendants site early

21 voting that they have no control over.

22            So this idea that this Court has to have

23 control over, or as a defendant, the places where early

24 voting is sited is not true of other early voting sites

11:32:55   25 where the --

1           THE COURT:  Well, and I think that you are

2   right to a large extent, but when the overall schedule and

3   sites are being set, it's part of a conversation where, you

4   know, if -- if some site wanted to be disagreeable, you

11:33:11   5   know, it is like, okay, well, we will look at other places.

6   And you're working to find them.  And you're trying to work

7   it out amongst a larger community about where those sites

8   are going to be.

9           I understand all of that.  And that it is

11:33:25   10  being done voluntarily.  But what you're asking for is, you

11  know, for one particular site.  No matter what else

12  happens, it will happen there, and a federal court is going

13  to order it and make sure that that happens.

14          And that's a little different, I think,

11:33:42   15  than working with the community, you know, at large and

16  trying to figure out where the sites are going to be in the

17  first instance.

18          MS. ADEN:  So let me modify my answer and then

19  we will obviously put it in writing.  But it is -- in

11:33:55   20  essence is obviously very important to Plaintiffs because

21  of the center of life which I think Defendants can see

22  because of their transportation issues, because of going

23  into the pan -- because of before and after the spacing

24  issues, and all of the benefits that the student center

11:34:11   25  provides.

1           But we are -- but a site like that or

2 something comparable is something that Plaintiffs are open

3 to.  In addition to the fact that they be involved in that

4 decisionmaking, neither the Court, nor counsel, nor

11:34:26   5 Plaintiffs wants to be involved in telling the county, or

6 people in Waller County, what is best for them.

7           But they should be at the table and part

8 of the voice in terms of making those decisions, and we

9 think that it is fully within the authority of the Court to

11:34:40  10 be able to do that, and we are happy to continue to brief

11 the Court and make that clear.

12           THE COURT:  And let me ask about that.  Again,

13 I think it's on the -- on the relief language that you're

14 asking for, and I -- all of these questions, I understand,

11:34:52  15 are different than the declaratory judgment that you want,

16 and what -- you know, what the conclusions may or may not

17 be as to what happened in the past, you know, the

18 substantive conclusion on your causes of action.

19           But you asked for an order that the

11:35:09  20 Defendants allow a representative of Prairie View A&M

21 students to be involved in the process for setting the

22 early voting schedule.

23           MS. ADEN:  Yes.

24           THE COURT:  And I don't -- I only have seen

11:35:23  25 brief references to it.  Who else, if -- what other

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

76

1  constituent groups have a representative like this?  What

2  does it mean to be a representative?  Is this -- is this

3  something that's set out in the county code and who

4  representatives are, or, you know, what is supposed to

11:35:46  5  exist for that purpose?

6              What I would like to know is, is there --

7  are there some groups that are being allowed in the door,

8  and then the door is closed to Prairie View A&M, or is it

9  just simply something where the students want to -- you

11:36:02  10  have -- you know, have a seat, be in the room where it

11  happens?  I mean, we will go to Hamilton.  But, you know,

12  to have a seat at the table for that where other groups are

13  not currently doing that.

14              What's your thought?

11:36:13  15              MS. ADEN:  So the record reflects that the --

16  essentially the schedule is devised by the election

17  administrator now in her official capacity, Ms. Eason.  It

18  is shared with the two party representatives.  They agree

19  on it and essentially give it to the commissioners court

11:36:31  20  who does make notice of it public.

21              We don't think that the timing of when

22  they do it, and we think their failure to affirmatively

23  engage people in setting that schedule is a flaw.  But it

24  is essentially rubber stamped by the commissioners court

11:36:46  25  and then put out.  And then what is the problem with that

1 is that Defendant Duhon has admitted, and they have heard

2 testimony that those political party representatives are

3 not -- do not fully represent Prairie View students or

4 black voters in Waller County.

11:37:00  5                    And so what we are asking for is a process

6 where they affirmatively identify members, Plaintiffs'

7 membership organization, or university official, or

8 university group, and bring them to the table because, once

9 again, this is a community that's asked to be a part of the

11:37:17 10 conversation, and they are a significant part of the

11 community, and there has been no affirmative obligation on

12 the part of the county to involve them.  It is a pure

13 reliance on these political parties as they recognize are

14 not reflective of the entire community.

11:37:33 15                    THE COURT:  So as a representative you -- you

16 know, it's just language -- it is not injunctive language

17 that you would be proposing to me.

18                    But you're asking for a representative of

19 Prairie View A&M University students.  I think of -- you

11:37:49 20 know, when I think of representative, I think of someone

21 who has been there like voting and stuff.  That is not what

22 you're asking for, is it?  I mean, it's not someone that

23 would be actually decide -- deciding what has to happen in

24 the county, or is that what you're asking?

11:38:03 25                    MS. ADEN:  No.  They would be part of the

1  conversation that is happening.

2            THE COURT:  Okay.

3            MS. ADEN:  All of the decisionmaking.  We,

4  obviously, don't want other members of the community to get

11:38:11  5  the short end of the stick just as much as we don't want

6  Prairie View students to.  But there needs to be a

7  conversation, and one that the county actually recognizes

8  they need to change the process so that other people are

9  part of the decisionmaking, because they seem to frankly be

11:38:24  10  fed up with all of the confusion and problems that arise

11  when early voting occurs.

12            Some of the commissioners identified

13  during the commissioner courts meeting said, Ever since I

14  have been on this court, when it comes to election time,

11:38:39  15  this same issue comes up every time.

16            THE COURT:  Yeah.

17            MS. ADEN:  Same issue every year.  Every year

18  people ask for parity for Prairie View A&M students.  I

19  don't -- we don't want to be back before this Court or any

11:38:53  20  other asking at election after election for things to be

21  different, and so we think that is incumbent in terms of

22  having representation.

23            We are also happy with our briefing to

24  provide -- I think there are orders where the DOJ, the

11:39:06  25  Department of Justice, and others have been involved where

1 they have this type of relief.

2                  So we don't think -- I may not be

3 articulating it the best that I need to in this moment, but

4 I think that there are examples of the type of relief

5 there.

6                  THE COURT:  No.  I'm sorry, are you there?  Is

7 anybody there?

8                  MR. SEAQUIST:  We're still here, Your Honor.

9                  THE COURT:  Okay.  I think Ms. -- let's just

10 wait for Ms. Aden.  She is frozen.

11                  Ms. Aden, are -- the screen froze for you.

12 Are you back?  Can you hear me?

13                  MS. ADEN:  I can hear and see you okay.

14                  THE COURT:  Okay.  We have got you back now.

15 Okay.  It froze there for a second.

16                  In terms of -- and so the

17 representative -- it's not enough -- it's -- I hear that

18 there is a part of the process where there was an open

19 hearing and -- so, you know, people could give views before

20 the early voting schedule was adopted.

21                  And I take it that you're saying there

22 needs to be something -- someone that's part of the process

23 and heard before the -- sort of the public comments time.

24 Is that right?

25                  MS. ADEN:  So the record reflects that a lot of

1  the decisionmaking is happening in late August, early

2  September where Prairie View students, in particular, are

3  just coming on campus, and a lot of the decisionmaking is

4  happening where they are not involved and no one is

5  affirmatively engaging them.

6            In mid October, after the early voting

7  period was about to start, I think, or had begun, Prairie

8  View students were alerted of this schedule and they came

9  to the commissioners court's meeting, and that is where

10  there was an opportunity for the commissioners court to

11  revise its schedule.

12            They heard the issues about transportation

13  yet once again.  They heard the issues about how the

14  community center wasn't a good alternative because of

15  student life.  They heard that the party chairs didn't come

16  to them and get their opinion about this early voting

17  schedule.  They heard all of the reasons why the county

18  should commit to fix it.

19            So what I am asking -- what Plaintiffs

20  would be asking for is that that process be -- it is

21  conceded to have been broken by people who testified, and

22  even members of the commissioners court, so that process

23  needs to be much more deliberative, much more affirmative,

24  and include more voices in the community.

25            And I believe that there's testimony from

1  Defendant Eason that that is something that they

2  affirmatively want to do.  But to date, that has not

3  happened.

4              THE COURT:  Let me ask -- and I want to be sure

11:41:40  5  what is at issue in your case here.

6                    It's very clearly about early voting and

7  early voting access.  Was there in 2018 -- and I don't know

8  if it varies county by county across the state.

9                    Was there mail-in voting in 2018 in the

11:42:03  10  subject election?

11              MS. ADEN:  Yes, there was.  There are

12  parameters about who can participate in mail-in voting, and

13  a lot of it means you're going to be out of the county on

14  election day.  You have a disability.  A lot of those would

11:42:20  15  not qualify for A&M students to use.

16              THE COURT:  But really my only question about

17  it is to the extent that mail-in voting was allowed, is

18  there a claim or concern that Prairie View A&M students

19  were treated differently as to that?

11:42:38  20              MS. ADEN:  Not directly, but only to the extent

21  that there is issues with mailing in Waller County that

22  have been ongoing where part of the reason why early voting

23  is important to the Prairie View student community beyond

24  election day voting is because there are issues with

11:42:58  25  students receiving their mail on campus, and their ability

1  to update their voter registration status, which has lead

2  to a number of Prairie View students being put on the

3  inactive voter registration list and being purged from the

4  voter rolls.

11:43:13   5        And so early voting allows students to be

6  able to find out if that is an issue in advance.  Well,

7  frankly, they don't have to go to the right precinct on

8  election day, so if you have more early voting, they don't

9  have to deal with the issue of having to make sure that

11:43:24  10  they are at the correct precinct on election day.  But even

11  if that is an issue, they can correct for it before

12  election day.

13        The county, to their credit, has been

14  forced to make corrections on election day, but it is a

11:43:35  15  continual issue.  It is not a direct claim, to answer your

16  question -- Your Honor's question directly.  It is not a

17  direct part of our case, but it is indirectly part of the

18  background for why early voting and early voting on campus

19  is so important to the Plaintiffs.

11:43:48  20        THE COURT:  Okay.  And then for election day

21  itself, I haven't seen it come through in the complaint.  I

22  don't think that I see anything about a grievance, that

23  you're requesting relief as to what's going on, on election

24  day itself.

11:44:08  25        Did I overlook anything?

83

1            MS. ADEN:  Correct.  That's correct.

2            THE COURT:  Okay.  And as to election day,

3 where were the polling places in the Prairie View area, as

4 to on campus, the community center, city hall?  Where was

11:44:23  5 that made available, if you know?

6            MS. ADEN:  In 2018, and in the many years prior

7 to that, it has been on campus on election day at the

8 Memorial Student Center, which Plaintiffs love and the

9 community loves.  The issue with that is that the data

11:44:39  10 reflects that most ballots cast by Prairie View students

11 are early.

12            This is a community that is so amped up to

13 vote that they -- actually most of their voting occurs

14 before election day, but we are not making a claim that

11:44:50  15 they are denied access on election day.

16            THE COURT:  Okay.  And so there -- on election

17 day, there was a voting place at the student center?

18            MS. ADEN:  Yes.  And I would note defendant

19 spent a lot of time talking about the number of machines

11:45:08  20 allocated on election day.  There were multiple machines.

21 And to me that speaks to the fact that they know where the

22 need is, and they know who is there, and they know where

23 the desire is, but that is not borne out in the allocation

24 of early voting at that site.

11:45:21  25            THE COURT:  Okay.  I had asked defense counsel

1  for a definition in the case as to abridgement.

2              Can you give me your competing thought on

3  that?

4              MS. ADEN:  Yes.  So I do think that the *Veasey*

11:45:41    5  en banc decision is controlling.  It makes clear that

6  abridgement is not about absolute denial.  It is not about

7  whether turnout levels reflect the people ultimately

8  depressed in their voting, but it is about burden to vote,

9  and it is about whether people have to take extra steps to

11:46:00   10  vote.  And it is also about the circumstances that would

11  force people to take extra steps.

12              Here, it is the history.  Here, it is the

13  transportation discrepancies.  Here, it is the

14  socioeconomic status of students who don't have gas.  They

11:46:17   15  don't have cars.  They don't have the ability to access the

16  off-campus sites.

17              I also want to make clear, and I don't

18  have it readily available, but there are a number of cases

19  where the Supreme Court and the Fifth Circuit has

11:46:29   20  recognized -- *Dallas County Commissioners Court,* I think

21  it's a Fifth Circuit case -- there is another where even

22  when counties or jurisdictions have provided polling

23  places, or they have provided access to voter registration,

24  if you make people stand in a separate line, or you place a

11:46:47   25  voting site in a way that you know is accessible, even if

1  you're providing them the right, but if you're providing

2  them a right in a way that is different, and, again, and

3  makes them do extra steps, or treats them differently, that

4  is Constitutionally suspect.  That is a -- that is a

11:47:06  5  well-recognized, long-standing principle by the Fifth

6  Circuit and the Supreme Court.

7              So *Veasey* and the *Dallas County*

8  *Commissioners* case from the Fifth Circuit, and there are

9  some others that speak to that, that principle.

11:47:23  10             So we would push back on Defendants'

11  notion that burden is just about the numbers.  Here we have

12  the numbers.  We have Defendants admitting that there is an

13  impact.  Plus we have Dr. Stein's expert report saying that

14  there is an impact.

11:47:36  15             But the impact must be seen in the

16  totality of the circumstances, which is when you look at

17  the Senate factors, and if you look at the factors that

18  are -- that bear more heavily on Prairie View students, and

19  black voters in particular in Prairie View, transportation

11:47:52  20  access, the history, all of those things come to bear in

21  terms of their access to voting.  They're like no other

22  community in Waller County.

23             THE COURT:  Here's where I am on this, and it's

24  not -- it is really not a comment on the strength one way

11:48:11  25  or the other of either parties' case at this point.  I

1  don't know where I would be at the end of the day after I

2  heard all of the evidence.

3              But I do think that I am going to need to

4  hear some actual evidence and argument in a competing way

11:48:29  5  where I am able to judge things like credibility, and also

6  look at it in -- in the way that a judge does at a bench

7  trial, rather than on summary judgment.

8              I don't know at this point what the

9  parameters of the claims are that are going to go forward

11:48:53  10  for trial, but summary judgment at least in some respect is

11  going to be denied.  So I want -- I want the parties to be

12  aware of that, so that you can start planning for that.

13              I don't want to let weeks pass by with you

14  all not knowing what to expect and then suddenly we're

11:49:14  15  in -- you know, we are into July or August and trying to

16  think about a trial.

17              I am -- I have already asked for briefing

18  within 14 days.  You will get some sort of written ruling

19  from me clarifying what it is that remains.  I am uncertain

11:49:34  20  as to that.

21              I am going to require the parties to

22  mediate because I -- as I said already, I think that

23  there's a way to perhaps work this out for the 2020

24  election that might serve as a template for something that

11:49:57  25  goes forward after that.  I could be completely wrong, but

1 with the new state law and what it means, there might be

2 the ability to reach some consensus there.  That may be

3 unsatisfactory to both of you.

4                     As to Plaintiffs' counsel, I would -- I

11:50:16  5 always suggest that on compromise you be happy to accept

6 yes as an answer to the extent that you can get it; and if

7 there are fights that remain for later, then, so be it.

8                     But there is an election coming up that I

9 think is probably of importance to the students, and what

11:50:40  10 this Court is able to do by then and enforce and have

11 appeals, it may be very different than what the parties in

12 a cooperative way could work out.

13                     I would suggest that there be mediation by

14 the end of July.  But on that, on all of this, fourteen

11:50:58  15 days from now, with your ten pages that I have asked for, I

16 would also like, perhaps separately, and it can be

17 different views or a joint view on when it is you think

18 that you can constructively mediate, and when it is that we

19 would set this case for a pretrial and a bench trial along

11:51:19  20 with a number of days that would be needed.

21                     And I don't know what thought -- I -- I

22 don't know.  I would want to hear how much time each side

23 thinks that they need.

24                     I mean, both of y'all have only asked for

11:51:35  25 30 minutes to argue today, and I have given you much more

1  than that.  So let's be realistic about that and whether

2  trial would be in August or September, you all bearing in

3  mind that on a bench trial, there is going to be a lot of

4  work on -- beforehand, proposed findings of fact and

11:51:56   5  conclusions of law, and immediately after the fact letting

6  me know revisions to all of that based on what you think as

7  the evidence came in.

8            Those are my observations, and I invite

9  you all to ask me questions now for clarification, so that

11:52:13  10  I can fashion the appropriate minute order from today.

11            Mr. Seaquist.

12            MR. SEAQUIST:  Your Honor, I think that we

13  understand the instructions from the Court.  I don't feel

14  like I have anything further I need to ask you on that

11:52:27  15  score.

16            If some rebuttal to what Ms. Aden said

17  would help in your determination as to what does and

18  doesn't go forward, I would be happy to offer that.

19            THE COURT:  Yeah, please.  I don't want to cut

11:52:41  20  that off.  Can you give me five minutes?

21            MR. SEAQUIST:  Yes, Your Honor.

22            I think the important thing here that's

23  getting lost is Ms. Aden said students at Prairie View want

24  early voting.  They have demanded early voting.  What she

11:52:54  25  doesn't recognize, or acknowledge, is that they have also

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 been given the most concentrated access to early voting of

2 any voting block in the county.

3                    They have been given early voting in

4 excess of every other smaller area, and they are -- you

5 know, have access to the full-time areas as well.

6                    There is a discussion about it being rare

7 that cases like this are litigated.  That's because there

8 have been no cases litigated as to a mere disparity in the

9 number of early voting hours.

10                    The only cases about early voting that

11 Plaintiffs have cited where any burden was present at all

12 are cases involving Native American reservations where

13 folks have to drive 60 miles round trip, 100 miles round

14 trip, even to cast a ballot.  That wasn't a denial, but it

15 is the type of abridgement that courts have recognized is,

16 in fact, a burden.

17                    We simply don't have that type of burden

18 here.  And, in fact, when Ms. Aden gave her definition of a

19 burden, you know, she talked about a separate line, some

20 other impediment.  But what she didn't do is identify any

21 specific impediment in this case for Prairie View voters

22 going and casting an early ballot in the hours allotted by

23 the county.

24                    There was a lot of discussion about

25 vehicles, financial resources.  But what is getting ignored

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  and lost is that no one needs a vehicle to go vote at the

2  Student Center or at Memorial Community Center.  No one

3  needs particular financial resources to go vote at the

4  Memorial Student Center, or at the -- at the Community

11:54:22  5  Center.

6  I want to talk about, you know, this

7  discussion of -- and I think the Court raised it and made a

8  great point in terms of there is a public process for

9  involvement in this decision.  There is a hearing held.

11:54:37  10  The entire community has the same opportunity and

11  responsibility to go and give their opinion if they have

12  one on it.

13  What the Plaintiffs are really asking for

14  in this case is specialized access that nobody else in a

11:54:51  15  county gets.  Obviously, the chair of the Republican and

16  the Democrat party, because those are the two primary

17  parties, have some input; but anyone else is also free to

18  contact the election administrator's office and give that

19  same input.

11:55:05  20  So the fact or the idea that there is

21  somehow a block or an inability for anyone in the county,

22  Prairie View students included, to provide input into the

23  decision, have their voice heard, the county may not go

24  with it.  I mean, ultimately, a lot of what Ms. Aden has

11:55:21  25  talked about are political deliberations that the county is

1   tasked with making, and the Court's generally show

2   deference to that.

3                    The -- the Voting Rights Act and the

4   Fifteenth, Fourteenth and Twenty-sixth Amendment only serve

11:55:40   5   to stop discrimination.  It doesn't serve to fix broken

6   political systems.  It doesn't serve to change the way a

7   county deliberative body values one factor over another.

8   It is only to root out a burden or abridgement caused on

9   account of discrimination, and that burden or abridgement

11:55:59   10  is not here.

11                   And the final thing I want to say is:

12  Your Honor, when Ms. Aden reformed her -- or asked as it

13  relates to the location, she said, well, another acceptable

14  location.  The Waller County Community Center is literally

11:56:13   15  the closest location off campus that's not subject to the

16  control of A&M that the county could have located or have

17  provided and that is exactly what it did.

18                   And, in fact, that building was provided

19  to the county specifically for the purpose of holding

11:56:28   20  community events and bringing the Prairie View A&M student

21  community together with the folks who live in the city

22  outside of Prairie View A&M as well.

23                   So that's exactly what this building was

24  donated to the county for.  That is exactly what this

11:56:42   25  building is being used for.  And when we get down to

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  talking about, you know, what is the correct location, I

2  think it is just important to bear in mind that we are now

3  arguing over less than half a mile.

4                There is no authority in any case anywhere

11:56:55  5  that suggests that .35 miles amounts to any kind of an

6  actionable burden, or disparate impact as it relates to

7  either Section 2 of the Voting Rights Act or the

8  intentional plans that have been asserted.  And so --

9                THE COURT:  Thank you.  And I do -- I

11:57:13  10  understand and appreciate that.  And I think -- there is

11  obviously a dispute about what that distance means, and

12  then also in terms of where the intensity of the view is,

13  and where persons want to do their voting.

14                I will be able to make a determination

11:57:37  15  about that after I hear --

16                MR. SEAQUIST:  Yeah.

17                THE COURT:  -- the competing evidence, but I do

18  note that argument.  And as both of you saw, I mean, I am

19  looking at the map, and I am looking at the hours, and

11:57:48  20  those types of things also do matter.

21                I want to really highly compliment the

22  strength of the advocacy on this hearing on both sides.  It

23  is really quite excellent.  The briefs are good.  I look

24  forward to the further briefing, and I will -- once I

11:58:07  25  receive that, I'll have an order out as promptly as I can,

1  so that you can see it.

2            Let me know how you proceed on all the

3  other issues.  You know, sometimes, especially on something

4  like this, I certainly understand if a voluntary compromise

11:58:25  5  can't be reached, but I do urge the parties to try.  Okay?

6  Thank you very much.

7            MS. ADEN:  Thank you, Your Honor.

8            THE COURT:  We are adjourned.

9            MR. SEAQUIST:  Thank you, Your Honor.

11:58:35  10           MS. ADEN:  Thank you, Your Honor.

11           MR. SEAQUIST:  Thank you for hearing us

12  remotely today.

13           THE COURT:  Absolutely.  It was my pleasure.

14  (Concluded at 11:58 a.m.)

15           COURT REPORTER'S CERTIFICATE

16

17      I, Kathleen K. Miller, certify that the foregoing is a

18  correct transcript from the record of proceedings in the

19  above-entitled matter.

20

21  DATE: June 12, 2020      /s/   _Kathleen K. Miller_

22                           Kathleen K. Miller, RPR, RMR, CRR

23

24

25

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

'

**'88** [1] - 71:14

---

**/**

**/s** [1] - 93:21

---

**1**

**1** [3] - 1:12, 64:25
**10** [1] - 58:9
**100** [1] - 89:13
**10006** [1] - 1:21
**101** [1] - 21:22
**102** [2] - 21:22, 21:23
**103** [1] - 21:22
**10:00** [1] - 1:5
**11** [3] - 21:14, 60:14, 64:13
**11:00** [1] - 50:24
**11:58** [1] - 93:14
**12** [4] - 16:7, 28:4, 65:12, 93:21
**12-hour** [1] - 18:9
**12:00** [1] - 19:3
**12th** [1] - 2:15
**1301** [1] - 2:5
**14** [4] - 50:5, 50:11, 58:9, 86:18
**1500** [1] - 25:1
**18** [2] - 61:6, 61:7
**18-3985** [1] - 3:12
**1888** [2] - 10:21, 69:13

---

**2**

**2** [12] - 31:10, 32:2, 35:1, 35:4, 38:9, 39:19, 40:3, 41:8, 41:10, 64:25, 92:7
**2's** [1] - 54:11
**20** [5] - 3:2, 21:17, 61:6, 61:8, 64:14
**20-50** [1] - 33:5
**20-50407** [1] - 33:4
**2000s** [1] - 44:12
**2016** [10] - 16:6, 16:20, 20:7, 23:9, 53:6, 54:16, 57:1, 63:2, 63:8, 63:15
**2018** [21] - 6:9, 7:12, 14:16, 15:7, 15:19, 17:6, 52:3, 53:8, 61:23, 62:7, 62:11, 63:3, 63:6, 66:12, 69:11, 71:7, 81:7, 81:9, 83:6
**2019** [3] - 7:21, 13:3, 71:2
**2020** [12] - 1:6, 3:2, 5:24, 6:6, 6:13, 7:23, 10:6, 12:3, 47:14, 71:3, 86:23, 93:21
**206** [2] - 21:6, 21:17
**208** [1] - 22:12
**20th** [1] - 15:19

---

**212-965-2200** [1] - 1:21
**22nd** [2] - 15:8, 17:6
**254** [1] - 42:25
**28** [3] - 12:14, 24:13, 24:21

---

**3**

**30** [3] - 61:18, 67:12, 87:25
**300** [1] - 2:11
**309** [3] - 22:5, 62:9, 62:10
**310** [2] - 22:9, 22:10
**311** [1] - 22:16
**35** [4] - 12:15, 24:15, 25:5, 92:5
**3711** [1] - 2:10

---

**4**

**4-18-CV-3985** [1] - 1:3
**40** [1] - 1:20
**407** [2] - 33:6, 33:7
**417** [1] - 22:22
**419** [1] - 22:19
**420** [2] - 22:18, 22:20
**4th** [2] - 15:13, 17:6

---

**5**

**5** [1] - 1:6
**5100** [1] - 2:5
**512-472-8021** [1] - 2:12
**515** [1] - 2:23
**54** [2] - 61:4, 61:5
**5:00** [5] - 18:1, 18:3, 18:5, 19:4, 30:14
**5th** [1] - 1:20

---

**6**

**60** [1] - 89:13
**645** [1] - 2:15

---

**7**

**713-250-5087** [1] - 2:24
**713-651-5434** [1] - 2:6
**77** [1] - 58:9
**77002** [1] - 2:23
**77010** [1] - 2:6
**77445** [1] - 2:15
**78746** [1] - 2:12
**7:00** [2] - 18:7

---

**8**

**80** [3] - 61:14, 61:15, 67:13
**8004** [1] - 2:23
**81** [1] - 62:6
**8:00** [3] - 18:3, 18:5, 55:13

---

**9**

**90** [1] - 67:13
**979-826-7718** [1] - 2:16
**9:00** [2] - 18:1, 55:13

---

**A**

**A&M** [25] - 12:13, 12:25, 13:6, 22:5, 26:14, 42:18, 48:12, 49:8, 52:5, 65:9, 65:15, 65:19, 68:12, 68:17, 72:24, 73:4, 75:20, 76:8, 77:19, 78:18, 81:15, 81:18, 91:16, 91:20, 91:22
**a.m** [2] - 1:5, 93:14
**abating** [1] - 71:1
**Abbot** [6] - 30:20, 30:23, 33:2, 42:19, 53:25, 56:1
**ability** [14] - 9:3, 28:8, 29:10, 29:11, 30:5, 35:20, 39:21, 45:6, 45:7, 46:11, 50:1, 81:25, 84:15, 87:2
**able** [19] - 3:6, 8:22, 9:16, 24:8, 34:20, 35:17, 35:24, 41:20, 48:14, 48:16, 71:2, 72:20, 73:4, 73:12, 75:10, 82:6, 86:5, 87:10, 92:14
**above-entitled** [1] - 93:19
**abridge** [1] - 39:21
**abridgement** [17] - 14:6, 14:7, 31:10, 34:4, 35:7, 40:16, 40:19, 41:2, 41:3, 41:4, 41:6, 59:25, 84:1, 84:6, 89:15, 91:8, 91:9
**abridges** [1] - 40:4
**absent** [1] - 66:7
**absentee** [1] - 8:24
**absolute** [1] - 84:6
**absolutely** [4] - 10:8, 10:13, 40:18, 93:13
**accept** [1] - 51:24, 87:5
**acceptable** [1] - 91:13
**access** [22] - 6:24, 8:14, 9:3, 9:8, 62:14, 62:16, 63:10, 64:4, 64:24, 66:5, 66:20, 67:19, 81:7, 83:15, 84:15, 84:23, 85:20, 85:21, 89:1, 89:5, 90:14
**accessible** [3] - 13:5, 26:4, 84:25
**accommodate** [2] - 27:4, 73:5
**accommodation** [3] - 6:5, 10:4, 12:3
**accommodations** [1] - 53:14
**accord** [1] - 71:22
**accordance** [1] - 14:25
**account** [4] - 38:9, 38:10, 65:22, 91:9

---

**accurate** [1] - 25:24
**achieved** [2] - 69:9, 69:10
**acknowledge** [1] - 88:25
**acknowledging** [1] - 44:2
**Acosta** [1] - 2:10
**Act** [9] - 15:1, 31:12, 39:20, 48:18, 49:3, 49:6, 66:3, 91:3, 92:7
**act** [1] - 73:8
**acting** [1] - 46:11
**action** [14] - 6:9, 31:22, 31:23, 33:8, 33:9, 33:14, 34:6, 38:6, 38:15, 40:3, 40:4, 49:10, 57:13, 75:18
**actionable** [1] - 92:6
**actions** [2] - 38:16, 43:1
**active** [1] - 14:23
**activities** [3] - 24:11, 41:23, 42:8
**actual** [5] - 34:19, 49:23, 64:3, 64:5, 86:4
**add** [2] - 16:1, 62:22
**added** [8] - 16:10, 17:22, 17:24, 18:15, 30:7, 30:11, 42:5, 62:21
**addition** [3] - 18:14, 20:9, 75:3
**additional** [11] - 16:1, 16:24, 17:1, 18:14, 30:11, 30:15, 44:10, 50:5, 62:22, 62:23
**address** [6] - 4:13, 10:10, 34:25, 35:1, 43:19, 50:21
**addressed** [1] - 60:3
**addresses** [3] - 6:9, 40:3, 40:4
**addressing** [2] - 39:11, 44:17
**adds** [1] - 25:3
**ADEN** [57] - 3:21, 4:2, 4:10, 5:8, 5:12, 6:18, 13:24, 28:9, 29:1, 29:3, 50:13, 51:13, 51:16, 54:23, 55:5, 55:9, 55:13, 55:24, 56:7, 56:10, 56:16, 57:14, 57:19, 57:23, 58:8, 59:2, 59:10, 59:16, 63:17, 63:21, 65:25, 67:9, 68:6, 69:10, 70:18, 71:23, 71:25, 72:8, 72:13, 72:16, 73:14, 74:18, 75:23, 76:15, 77:25, 78:3, 78:17, 79:13, 79:25, 81:11, 81:20, 83:1, 83:6, 83:18, 84:4, 93:7, 93:10
**Aden** [15] - 1:18, 3:22, 5:5, 6:15, 27:22, 50:3, 51:4, 56:14, 79:10, 79:11, 88:16, 88:23, 89:18, 90:24, 91:12
**adequate** [2] - 69:7, 72:22
**adjourned** [1] - 93:8
**administrator** [3] - 2:20,

4:23, 76:17
**administrator's** [1] - 90:18
**admissions** [1] - 68:25
**admit** [1] - 68:7
**admitted** [7] - 16:22, 68:9, 68:16, 71:13, 71:15, 77:1
**admitting** [1] - 85:12
**adopt** [2] - 13:8, 13:9
**adopted** [7] - 14:19, 14:24, 15:23, 16:9, 17:5, 19:10, 79:20
**adopting** [1] - 15:18
**adoption** [5] - 10:21, 10:23, 11:1, 15:6, 46:25
**advance** [3] - 47:13, 47:20, 82:6
**advantage** [2] - 8:16, 8:17
**advisory** [1] - 38:20
**advocacy** [1] - 92:22
**affirm** [1] - 57:2
**affirmation** [1] - 58:24
**affirmatively** [6] - 7:18, 69:20, 76:22, 77:6, 80:5, 81:2
**affirmed** [2] - 58:11, 58:14
**afoul** [1] - 49:13
**African** [1] - 20:4
**afterwards** [1] - 16:10
**age** [15] - 34:4, 53:24, 54:9, 55:25, 56:16, 56:24, 57:14, 58:14, 58:17, 58:21, 60:21, 60:25, 61:11, 61:15, 61:18
**agree** [1] - 76:18
**agreeably** [1] - 73:9
**agreed** [6] - 14:12, 14:21, 16:20, 17:1, 44:22, 68:14
**agreeing** [1] - 47:16
**ahead** [8] - 17:22, 20:1, 32:14, 37:22, 46:21, 56:9, 59:9, 59:15
**airing** [1] - 8:2
**AL** [2] - 1:3, 1:6
**al** [2] - 3:13
**alerted** [1] - 80:8
**alive** [1] - 8:1
**allegation** [5] - 27:24, 29:24, 45:18, 49:7, 58:4
**allegations** [2] - 6:9, 44:11
**allege** [3] - 20:16, 24:10, 66:2
**alleged** [1] - 20:3
**alleging** [4] - 54:2, 54:4, 58:7, 59:25
**Allen** [1] - 3:12
**ALLEN** [1] - 1:3
**allocated** [3] - 20:9, 64:15, 83:20
**allocation** [4] - 62:17, 66:13, 68:11, 83:23

**allotted** [1] - 89:22
**allow** [6] - 27:1, 49:4, 50:16, 53:14, 70:24, 75:20
**allowance** [1] - 49:11
**allowed** [5] - 27:14, 28:5, 65:3, 76:7, 81:17
**allows** [2] - 36:14, 82:5
**alone** [1] - 17:7
**ALSO** [2] - 2:17
**alternative** [1] - 80:14
**alternatives** [1] - 68:18
**altogether** [1] - 48:3
**amended** [4] - 16:8, 17:4, 23:19, 55:2
**Amendment** [15] - 31:6, 32:10, 32:12, 32:21, 33:15, 33:16, 34:3, 49:14, 53:25, 56:1, 56:17, 58:1, 58:2, 60:17, 91:4
**Amendments** [3] - 31:24, 33:11, 54:10
**American** [3] - 20:4, 20:5, 89:12
**Ames** [2] - 2:3, 5:15
**amount** [2] - 28:1, 46:13
**amounts** [2] - 36:11, 92:5
**amped** [1] - 83:12
**ample** [3] - 8:21, 9:8, 10:25
**analogous** [1] - 38:13
**analysis** [7] - 33:13, 37:18, 37:24, 39:7, 39:15, 54:13, 54:18
**analyze** [1] - 38:15
**analyzed** [1] - 32:12
**Anglo** [2] - 20:5, 23:7
**animating** [1] - 51:21
**Anne** [1] - 2:14
**announced** [1] - 31:16
**answer** [5] - 29:6, 46:23, 74:18, 82:15, 87:6
**anyway** [1] - 41:22
**apart** [1] - 4:19
**apologize** [3] - 21:10, 40:14, 55:14
**appeal** [1] - 34:13
**appeals** [1] - 87:11
**appear** [2] - 15:2, 15:5
**appearance** [3] - 4:8, 4:16, 5:6
**appearances** [3] - 2:1, 3:17, 4:1
**APPEARANCES** [1] - 1:16
**appearing** [3] - 5:2, 5:16, 8:15
**applicable** [3] - 6:6, 37:25, 60:1
**application** [1] - 14:14
**applied** [2] - 59:24, 61:23
**applies** [3] - 54:7, 56:25,

57:8
**apply** [4] - 39:4, 39:5, 45:9, 46:17
**appreciate** [4] - 9:17, 43:23, 51:5, 92:10
**approached** [1] - 16:11
**appropriate** [2] - 34:1, 88:10
**appropriately** [1] - 4:12
**area** [10] - 20:7, 20:20, 52:8, 52:12, 52:13, 60:20, 61:6, 61:20, 83:3, 89:4
**areas** [9] - 20:6, 20:11, 60:23, 65:25, 66:1, 66:4, 66:13, 66:19, 89:5
**argue** [3] - 36:8, 37:6, 87:25
**argued** [1] - 9:16
**arguing** [5] - 3:19, 5:3, 37:15, 50:9, 92:3
**argument** [12] - 13:21, 34:22, 35:15, 36:9, 38:19, 45:5, 50:3, 50:21, 50:23, 51:8, 86:4, 92:18
**arise** [1] - 78:10
**Arlington** [9] - 32:6, 32:13, 54:7, 54:12, 56:20, 56:21, 56:25, 57:5, 57:7
**articulate** [1] - 41:11
**articulated** [2] - 29:3, 56:20
**articulating** [1] - 79:3
**aside** [2] - 36:23, 48:25
**aspect** [1] - 44:3
**assert** [1] - 7:4
**asserted** [3] - 31:7, 34:2, 92:8
**asserting** [2] - 31:11, 45:6
**assessment** [1] - 34:18
**assisted** [1] - 1:25
**assisting** [1] - 12:24
**assuming** [2] - 71:25, 72:1
**assumption** [1] - 8:4
**attempting** [1] - 6:4
**attempts** [1] - 6:19
**attendant** [1] - 36:16
**attending** [1] - 5:20
**attention** [2] - 13:20, 55:1
**Attorney's** [2] - 2:14, 5:1
**audio** [1] - 3:24, 5:12
**August** [6] - 15:8, 15:19, 17:5, 80:1, 86:15, 88:2
**Austin** [1] - 2:12
**authorities** [1] - 31:14
**authority** [6] - 32:15, 33:13, 33:17, 34:5, 75:9, 92:4
**avail** [1] - 30:5
**available** [5] - 47:25, 62:3, 67:4, 83:5, 84:18
**avoiding** [1] - 36:20
**aware** [6] - 7:10, 27:16, 32:24, 55:11, 86:12

# B

**backdrop** [1] - 52:15
**background** [3] - 13:16, 44:16, 82:18
**backwards** [2] - 63:4, 63:13
**balanced** [1] - 70:1
**ballot** [12] - 29:11, 29:13, 30:6, 30:17, 35:17, 36:7, 40:21, 40:22, 41:15, 42:10, 89:14, 89:22
**ballots** [1] - 83:10
**banc** [5] - 30:21, 54:16, 57:1, 59:19, 84:5
**barrier** [2] - 36:3, 41:15
**barriers** [1] - 35:23
**based** [9] - 8:18, 14:20, 21:25, 36:16, 47:5, 51:17, 62:3, 73:5, 88:6
**bases** [3] - 53:22, 56:17
**basis** [4] - 34:3, 47:6, 47:12, 69:3
**bear** [3] - 85:18, 85:20, 92:2
**bearing** [1] - 88:2
**becomes** [2] - 45:17, 45:20
**BEFORE** [1] - 1:10
**beforehand** [1] - 88:4
**began** [1] - 15:20
**begin** [1] - 15:17
**beginning** [1] - 51:7
**begun** [1] - 80:7
**behalf** [2] - 4:20, 5:17
**bench** [5] - 34:12, 59:1, 86:6, 87:19, 88:3
**benefit** [1] - 42:5
**benefits** [1] - 74:24
**best** [4] - 43:10, 62:16, 75:6, 79:3
**better** [1] - 37:20
**between** [5] - 14:12, 18:25, 41:23, 49:10, 59:8
**beyond** [2] - 29:25, 81:23
**Bickerstaff** [1] - 2:10
**Bill** [1] - 10:21
**bill** [2] - 10:24, 11:1
**bit** [4] - 25:3, 42:15, 50:1, 51:3
**black** [22] - 35:22, 52:9, 54:6, 57:9, 57:19, 57:21, 58:5, 61:14, 61:15, 61:19, 63:2, 65:7, 65:10, 66:8, 66:19, 66:21, 66:22, 67:5, 67:12, 67:14, 77:4, 85:19
**blended** [2] - 33:18, 34:6
**block** [3] - 9:10, 89:2, 90:21
**blocks** [2] - 23:10, 24:16
**Bob** [2] - 2:9, 4:20
**body** [3] - 14:17, 29:17, 91:7
**borne** [2] - 69:4, 83:23

**bother** [1] - 60:12
**branch** [6] - 11:3, 11:16, 11:23, 12:6, 45:11, 45:13
**breach** [1] - 38:14
**brief** [4] - 50:21, 73:16, 75:10, 75:25
**briefing** [6] - 49:22, 72:19, 73:3, 78:23, 86:17, 92:24
**briefly** [1] - 14:15
**briefs** [1] - 92:23
**bring** [4] - 42:17, 42:18, 43:23, 77:8
**bringing** [2] - 13:20, 91:20
**broad** [1] - 49:4
**broken** [3] - 69:22, 80:21, 91:5
**Brookshire** [7] - 19:19, 20:3, 22:24, 22:25, 23:2, 60:24, 67:12
**brought** [1] - 42:6
**building** [3] - 91:18, 91:23, 91:25
**Building** [1] - 2:11
**bullet** [1] - 57:12
**burden** [24] - 16:23, 35:6, 35:13, 35:14, 36:11, 36:17, 38:5, 39:24, 40:4, 40:10, 51:19, 54:3, 59:20, 64:4, 73:18, 84:8, 85:11, 89:11, 89:16, 89:17, 89:19, 91:8, 91:9, 92:6
**burdened** [1] - 29:10
**burdens** [1] - 39:20
**burning** [1] - 50:18
**bus** [1] - 26:6

**C**

**campus** [29] - 7:21, 8:11, 8:12, 8:15, 12:14, 12:20, 25:8, 25:11, 25:14, 30:8, 48:7, 53:4, 53:5, 53:10, 53:11, 53:15, 62:1, 62:2, 71:3, 72:6, 72:14, 72:24, 80:3, 81:25, 82:18, 83:4, 83:7, 84:16, 91:15
**capable** [1] - 71:1
**capacity** [3] - 4:25, 27:3, 76:17
**caption** [1] - 32:24
**car** [1] - 24:7
**carry** [2] - 51:18, 67:3
**cars** [1] - 84:15
**CASE** [1] - 55:18
**case** [53] - 4:14, 6:20, 9:16, 12:17, 14:6, 14:7, 15:22, 23:14, 24:10, 27:16, 27:17, 29:16, 32:22, 33:20, 35:6, 35:11, 35:13, 35:16, 36:2, 36:13, 36:18, 38:14, 39:24,

40:16, 42:1, 43:14, 43:19, 43:25, 44:3, 44:9, 45:18, 45:24, 49:12, 53:18, 53:25, 54:1, 55:12, 57:24, 58:6, 59:24, 70:9, 71:4, 81:5, 82:17, 84:1, 84:21, 85:8, 85:25, 87:19, 89:21, 90:14, 92:4
**cases** [11] - 35:12, 58:8, 59:23, 59:25, 60:7, 60:8, 84:18, 89:7, 89:8, 89:10, 89:12
**cast** [10] - 29:11, 29:12, 30:5, 30:17, 35:17, 40:22, 41:24, 42:9, 83:10, 89:14
**casting** [4] - 36:6, 40:21, 41:15, 89:22
**category** [1] - 38:11
**causality** [1] - 39:6
**causation** [2] - 38:4, 38:13
**caused** [2] - 38:7, 91:8
**causes** [1] - 75:18
**ceiling** [3] - 45:4, 69:16, 70:5
**Center** [28] - 7:22, 12:12, 17:14, 17:17, 17:19, 17:25, 18:6, 18:13, 22:6, 22:8, 24:9, 24:12, 24:17, 24:18, 27:11, 27:12, 62:2, 72:6, 72:25, 83:8, 90:2, 90:4, 90:5, 91:14
**center** [29] - 12:15, 12:22, 13:1, 13:5, 24:14, 25:7, 25:8, 25:10, 25:14, 25:15, 25:23, 26:1, 26:4, 26:9, 26:15, 26:21, 26:22, 41:21, 48:7, 65:16, 72:7, 72:12, 72:15, 72:16, 74:21, 74:24, 80:14, 83:4, 83:17
**certain** [3] - 35:21, 37:12, 46:13
**certainly** [7] - 7:10, 7:11, 8:3, 27:17, 40:2, 69:16, 93:4
**CERTIFICATE** [1] - 93:15
**certify** [1] - 93:17
**cetera** [1] - 16:15
**chair** [1] - 90:15
**chairs** [3] - 14:21, 69:21, 80:15
**challenge** [1] - 54:2
**challenges** [1] - 64:20
**challenging** [1] - 10:12
**chance** [1] - 32:18
**change** [6] - 47:4, 47:21, 54:1, 72:1, 78:8, 91:6
**changed** [2] - 6:23, 18:14
**changes** [2] - 63:21, 68:22
**character** [1] - 57:9
**charged** [1] - 14:18
**CHARLES** [1] - 1:10
**chart** [4] - 16:4, 16:20, 17:23,

18:2
**chosen** [3] - 15:4, 15:8, 15:12
**Christi** [1] - 44:19
**Christy** [2] - 2:19, 4:23
**Circuit** [18] - 30:21, 31:13, 31:17, 31:18, 32:10, 32:17, 32:20, 34:6, 34:17, 35:9, 37:1, 42:21, 44:10, 44:17, 84:19, 84:21, 85:6, 85:8
**Circuit's** [2] - 31:21, 37:13
**Circuits** [1] - 31:15
**circuits** [2] - 32:13, 41:9
**circumstance** [1] - 38:21
**circumstances** [3] - 59:21, 84:10, 85:16
**cite** [4] - 33:20, 60:12, 60:24, 66:18
**cited** [2] - 31:14, 89:11
**cities** [2] - 21:3, 69:8
**citizen** [1] - 61:15
**City** [3] - 18:16, 18:18, 22:10
**city** [18] - 19:18, 19:19, 20:3, 20:5, 20:12, 20:17, 20:22, 20:23, 21:8, 22:2, 22:13, 22:23, 24:16, 60:20, 61:13, 83:4, 91:21
**claim** [32] - 31:6, 31:10, 31:11, 32:2, 32:3, 32:11, 34:5, 35:3, 35:4, 42:16, 45:22, 47:6, 49:9, 53:24, 54:8, 54:12, 54:15, 55:25, 56:16, 56:23, 56:24, 57:5, 57:7, 57:18, 59:16, 59:17, 66:19, 81:18, 82:15, 83:14
**Claim** [1] - 35:1
**claimed** [1] - 38:17
**claims** [26] - 8:1, 8:4, 8:6, 14:5, 30:24, 31:1, 31:4, 31:8, 31:13, 33:10, 34:1, 34:3, 34:15, 44:23, 49:23, 53:20, 53:21, 54:19, 54:25, 55:7, 58:12, 60:16, 60:18, 69:4, 86:9
**clamoring** [1] - 66:13
**clarification** [1] - 88:9
**clarifying** [1] - 86:19
**class** [2] - 33:18, 49:19
**classes** [1] - 41:23
**clause** [1] - 11:11
**clear** [12] - 20:14, 20:24, 25:7, 25:17, 34:9, 35:6, 35:12, 35:13, 44:22, 75:11, 84:5, 84:17
**cleared** [1] - 51:4
**clearly** [4] - 54:25, 58:1, 58:2, 81:6
**client** [1] - 43:19
**clients** [1] - 8:11
**close** [3] - 12:15, 27:12,

60:21
**closed** [2] - 30:14, 76:8
**closer** [2] - 64:24, 71:14
**closest** [2] - 25:8, 91:15
**co** [3] - 3:23, 5:13, 5:15
**co-counsel** [3] - 3:23, 5:13, 5:15
**Code** [2] - 14:19, 18:10
**code** [3] - 11:22, 19:14, 76:3
**combining** [2] - 33:17, 58:4
**comfortable** [1] - 39:13
**coming** [4] - 5:25, 32:25, 80:3, 87:8
**comment** [7] - 34:15, 34:23, 43:8, 43:11, 44:16, 62:25, 85:24
**comments** [1] - 79:23
**commissioner** [1] - 78:13
**Commissioners** [3] - 14:17, 84:20, 85:8
**commissioners** [12] - 12:10, 47:2, 66:7, 66:11, 68:10, 69:20, 76:19, 76:24, 78:12, 80:9, 80:10, 80:22
**commit** [1] - 80:18
**committing** [1] - 47:17
**communities** [3] - 67:1, 67:10, 71:9
**community** [45] - 7:18, 12:22, 13:1, 13:4, 25:8, 25:10, 25:14, 25:23, 26:1, 26:4, 26:9, 26:15, 26:22, 52:19, 58:20, 59:10, 59:13, 65:6, 65:15, 67:5, 67:18, 67:19, 67:22, 67:24, 68:4, 69:21, 71:10, 72:12, 72:16, 74:7, 74:15, 77:9, 77:11, 77:14, 78:4, 80:14, 80:24, 81:23, 83:4, 83:9, 83:12, 85:22, 90:10, 91:20, 91:21
**Community** [11] - 12:12, 17:19, 18:13, 22:8, 24:12, 24:18, 27:12, 72:6, 90:2, 90:4, 91:14
**comparable** [1] - 75:2
**compared** [1] - 69:8
**compelled** [1] - 62:22
**competing** [3] - 84:2, 86:4, 92:17
**complaint** [7] - 16:8, 17:4, 20:4, 20:15, 23:14, 55:2, 82:21
**complaints** [1] - 29:23
**completely** [3] - 6:21, 37:21, 86:25
**complex** [1] - 60:8
**compliment** [1] - 92:21
**comply** [1] - 73:12
**compromise** [2] - 87:5, 93:4
**compromising** [1] - 6:5

**compulsive** [1] - 73:10
**computer** [1] - 1:25
**computer-assisted** [1] - 1:25
**concede** [2] - 40:1, 40:9
**conceded** [1] - 80:21
**conceding** [1] - 39:13
**concentrated** [2] - 60:22, 89:1
**concentration** [1] - 67:17
**concern** [7] - 42:22, 45:1, 48:21, 48:25, 72:9, 73:13, 81:18
**concerned** [2] - 27:23, 37:17
**concerning** [1] - 68:11
**concerns** [4] - 43:20, 64:18, 64:19, 65:21
**Concluded** [1] - 93:14
**conclusion** [1] - 75:18
**conclusions** [2] - 75:16, 88:5
**conducts** [1] - 7:9
**CONFERENCE** [1] - 3:3
**conference** [1] - 3:16
**confess** [1] - 32:17
**confirm** [2] - 5:10, 56:10
**confused** [1] - 70:19
**confusion** [1] - 78:10
**consensus** [1] - 87:2
**consent** [1] - 44:13
**consideration** [3] - 36:23, 36:25, 46:8
**considered** [2] - 46:15, 68:18
**consistent** [4] - 15:14, 15:20, 40:24, 68:2
**consists** [1] - 43:5
**constituent** [1] - 76:1
**constituted** [1] - 35:7
**Constitution** [3] - 54:9, 58:22, 66:2
**constitutional** [1] - 48:19
**Constitutional** [2] - 53:21, 60:16
**Constitutionally** [1] - 85:4
**constitutionally** [1] - 28:13
**constrained** [1] - 49:22
**constrains** [1] - 44:24
**construct** [1] - 12:25
**constructively** [1] - 87:18
**contact** [1] - 90:18
**contained** [2] - 25:18, 44:18
**contentious** [1] - 34:13
**contest** [1] - 52:14
**contested** [1] - 53:22
**context** [6] - 32:8, 35:25, 43:20, 49:18, 53:16, 63:5
**continual** [1] - 82:15
**continue** [3] - 23:5, 55:22, 75:10
**CONTINUED** [1] - 2:1

**continues** [2] - 7:20, 63:23
**continuing** [3] - 6:22, 7:4, 9:12
**contrary** [1] - 32:15
**contrast** [1] - 61:17
**control** [7] - 30:24, 48:23, 49:10, 54:17, 73:21, 73:23, 91:16
**controllers** [3] - 26:20, 26:23, 26:25
**controlling** [3] - 44:3, 56:25, 84:5
**controls** [4] - 31:8, 31:9, 57:5, 59:19
**convenience** [2] - 41:6, 41:19
**convenient** [2] - 26:19, 30:18
**conversation** [4] - 74:3, 77:10, 78:1, 78:7
**convinced** [1] - 39:10
**cooperative** [1] - 87:12
**copy** [1] - 55:19
**Corpus** [1] - 44:19
**correct** [21] - 7:24, 11:14, 17:20, 18:4, 19:1, 22:6, 25:9, 28:14, 39:17, 45:10, 57:13, 59:1, 70:17, 72:13, 72:17, 82:10, 82:11, 83:1, 92:1, 93:18
**corrections** [1] - 82:14
**counsel** [17] - 3:17, 3:22, 3:23, 4:16, 5:6, 5:13, 5:15, 9:16, 14:3, 27:8, 42:12, 50:16, 50:19, 56:5, 75:4, 83:25, 87:4
**counties** [4] - 15:17, 43:1, 60:23, 84:22
**County** [48] - 2:14, 2:20, 3:13, 4:24, 5:1, 7:2, 7:9, 12:12, 14:17, 14:22, 14:23, 15:2, 19:19, 19:20, 19:23, 23:1, 24:12, 24:18, 27:12, 39:13, 42:2, 42:5, 43:2, 44:24, 51:22, 52:9, 52:13, 52:16, 57:10, 58:13, 58:20, 59:15, 60:21, 61:7, 61:17, 62:11, 63:9, 63:14, 67:11, 69:8, 72:5, 75:6, 77:4, 81:21, 84:20, 85:7, 85:22, 91:14
**county** [68] - 7:14, 8:6, 8:16, 9:1, 9:10, 10:24, 11:1, 11:6, 12:5, 12:24, 14:18, 15:9, 15:20, 15:23, 19:13, 19:22, 19:24, 20:9, 20:11, 22:3, 24:2, 24:5, 26:13, 26:19, 27:6, 30:11, 36:6, 41:16, 43:2, 45:21, 52:11, 52:19, 53:5, 54:4, 58:13, 61:9, 61:20, 62:4, 62:12,

62:14, 66:20, 68:3, 69:14, 70:2, 70:14, 70:24, 75:5, 76:3, 77:12, 77:24, 78:7, 80:17, 81:8, 81:13, 82:13, 89:2, 89:23, 90:15, 90:21, 90:23, 90:25, 91:7, 91:16, 91:19, 91:24
**County's** [1] - 15:6
**county's** [2] - 19:9, 61:11
**couple** [1] - 5:22
**course** [6] - 11:21, 39:19, 41:23, 47:3, 48:20, 52:18
**court** [26] - 3:6, 4:8, 12:10, 34:5, 36:10, 36:21, 43:12, 44:9, 47:2, 47:10, 48:24, 58:15, 59:19, 66:7, 68:10, 69:20, 73:4, 73:12, 74:12, 76:19, 76:24, 78:14, 80:10, 80:22
**COURT** [139] - 1:1, 2:21, 3:5, 3:8, 3:10, 3:25, 4:4, 4:14, 5:4, 5:11, 5:19, 9:15, 10:13, 10:16, 11:7, 11:20, 11:24, 13:14, 13:25, 16:3, 16:17, 17:9, 17:12, 17:18, 17:21, 18:3, 18:8, 18:11, 18:17, 18:22, 18:25, 19:2, 19:5, 19:8, 19:25, 20:25, 21:9, 21:12, 21:14, 21:19, 22:1, 22:4, 22:9, 22:12, 22:15, 22:18, 22:21, 22:25, 23:3, 23:17, 24:17, 24:24, 25:6, 25:12, 25:16, 26:16, 27:7, 27:21, 28:25, 29:2, 29:5, 29:8, 30:1, 30:19, 31:18, 32:23, 33:3, 33:5, 33:7, 34:8, 36:19, 38:18, 40:12, 40:15, 42:11, 43:22, 44:6, 44:21, 46:2, 46:4, 46:19, 46:21, 47:9, 48:4, 49:15, 50:15, 50:24, 51:14, 54:22, 55:3, 55:8, 55:10, 55:15, 55:20, 56:4, 56:8, 56:15, 57:11, 57:16, 57:21, 57:24, 58:25, 59:3, 59:11, 63:15, 63:20, 64:7, 67:8, 68:5, 69:5, 70:3, 71:17, 71:24, 72:3, 72:10, 72:14, 72:18, 74:1, 75:12, 75:24, 77:15, 78:2, 78:16, 79:6, 79:9, 79:14, 81:4, 81:16, 82:20, 83:2, 83:16, 83:25, 85:23, 88:19, 92:9, 92:17, 93:8, 93:13, 93:15
**Court** [46] - 3:12, 7:8, 10:10, 14:3, 14:17, 20:18, 26:12, 32:18, 35:5, 35:8, 35:25, 36:14, 36:24, 37:6, 37:7, 38:19, 41:1, 41:9, 45:25, 47:13, 47:17, 48:9, 51:23,

53:23, 54:24, 57:8, 58:10, 58:23, 58:24, 60:18, 61:5, 62:25, 64:10, 69:19, 73:15, 73:22, 75:4, 75:9, 75:11, 78:19, 84:19, 84:20, 85:6, 87:18, 88:13, 90:7
**Court's** [5] - 10:9, 29:7, 38:24, 55:1, 91:1
**court's** [2] - 32:5, 57:3, 80:9
**courthouse** [3] - 19:13, 22:3, 23:23
**courtroom** [1] - 56:8
**Courts** [1] - 33:23
**courts** [7] - 32:13, 35:9, 49:20, 64:2, 66:11, 78:13, 89:15
**covered** [1] - 19:21
**COVID-19** [1] - 9:21
**create** [2] - 19:11, 33:17
**creating** [1] - 34:6
**credibility** [1] - 86:5
**credit** [1] - 82:13
**Criminal** [1] - 2:14
**critical** [1] - 51:9
**crow** [3] - 12:14, 24:13, 25:1
**CRR** [2] - 2:22, 93:22
**CSR** [1] - 2:22
**current** [1] - 8:9
**Cusick** [2] - 1:18, 5:13
**CUSICK** [1] - 5:13
**cut** [3] - 37:24, 50:17, 88:19
**cutoff** [1] - 50:25
**cutting** [4] - 36:22, 36:24, 37:17, 49:22
**CVAP** [2] - 20:4, 20:5

---

## D

**daily** [2] - 24:11, 42:8
**Dallas** [2] - 84:20, 85:7
**data** [7] - 52:6, 62:3, 66:5, 67:4, 69:4, 83:9
**date** [3] - 15:19, 47:3, 81:2
**DATE** [1] - 93:21
**dates** [1] - 41:18
**days** [12] - 16:14, 18:9, 19:15, 30:7, 50:5, 50:11, 53:9, 62:22, 70:21, 86:18, 87:15, 87:20
**deadline** [1] - 37:19
**deal** [2] - 32:9, 82:9
**dealt** [2] - 32:1, 32:11
**decade** [4] - 61:2, 68:1
**decades** [1] - 52:18
**decide** [1] - 77:23
**decided** [2] - 60:8, 68:20
**deciding** [1] - 77:23
**decision** [11] - 6:5, 32:25, 51:21, 56:18, 57:1, 57:2, 58:16, 69:2, 84:5, 90:9,

90:23
**decision-making** [1] - 51:21
**decisionmaking** [10] - 52:16, 61:25, 64:4, 68:2, 69:25, 75:4, 78:3, 78:9, 80:1, 80:3
**decisions** [3] - 31:20, 65:10, 75:8
**declaration** [2] - 69:10, 71:6
**declaratory** [2] - 7:13, 75:15
**declaring** [1] - 68:14
**decree** [1] - 44:14
**deep** [1] - 72:8
**defend** [1] - 66:23
**Defendant** [5] - 52:3, 68:9, 68:13, 77:1, 81:1
**defendant** [6] - 4:24, 5:22, 13:18, 68:8, 73:23, 83:18
**Defendant's** [1] - 38:15
**DEFENDANTS** [1] - 2:8
**defendants** [1] - 73:17
**Defendants** [37] - 4:21, 6:16, 9:24, 13:23, 14:4, 29:4, 37:24, 41:12, 49:4, 49:5, 50:14, 51:18, 52:2, 52:7, 52:14, 52:17, 53:19, 59:18, 60:3, 60:11, 60:12, 60:24, 61:5, 61:20, 61:21, 62:9, 62:20, 62:25, 67:1, 68:7, 69:6, 70:14, 71:12, 73:20, 74:21, 75:20, 85:12
**defendants'** [1] - 5:21
**Defendants'** [5] - 10:7, 51:17, 53:23, 54:15, 85:10
**defense** [2] - 5:14, 83:25
**Defense** [1] - 1:19
**deference** [1] - 91:2
**definitely** [2] - 43:22, 73:15
**definition** [4] - 40:16, 40:17, 40:20, 40:24, 84:1, 89:18
**Delgado** [1] - 2:10
**deliberations** [1] - 90:25
**deliberative** [3] - 13:10, 80:23, 91:7
**delve** [1] - 52:1
**demand** [1] - 7:22
**demanded** [3] - 52:21, 53:8, 88:24
**demanding** [2] - 28:20, 28:21
**Democrat** [1] - 90:16
**Democratic** [3] - 14:21, 33:1, 33:22
**demographic** [1] - 64:20
**demographics** [5] - 52:12, 52:19, 60:22, 64:19, 65:5
**denial** [4] - 41:12, 59:25, 84:6, 89:14
**denied** [8] - 28:8, 28:11, 29:11, 41:13, 67:20, 71:3, 83:15, 86:11

**deny** [1] - 53:23
**departed** [1] - 61:22
**Department** [1] - 78:25
**deposition** [3] - 24:22, 25:18, 25:21
**depositions** [1] - 60:14
**depressed** [1] - 84:8
**depth** [1] - 50:2
**describe** [1] - 33:22
**designated** [1] - 19:15
**desire** [1] - 83:23
**desires** [1] - 66:15
**despite** [1] - 7:22
**detail** [4] - 11:25, 41:4, 42:15, 52:2
**determination** [5] - 32:4, 32:5, 35:11, 88:17, 92:14
**determine** [1] - 64:24
**determines** [1] - 38:5
**determining** [1] - 62:17
**devised** [1] - 76:16
**difference** [2] - 47:7, 47:24
**different** [21] - 24:4, 28:1, 28:2, 28:3, 28:13, 34:10, 34:20, 36:13, 38:23, 41:18, 45:8, 47:15, 48:13, 70:6, 74:14, 75:15, 78:21, 85:2, 87:11, 87:17
**differently** [3] - 65:9, 81:19, 85:3
**difficult** [4] - 37:2, 41:14, 43:3, 49:20
**difficulty** [1] - 29:25
**digest** [1] - 32:19
**direct** [5] - 40:25, 54:25, 58:23, 82:15, 82:17
**directed** [1] - 52:7
**directly** [7] - 12:19, 13:1, 26:15, 31:9, 49:13, 81:20, 82:16
**directs** [1] - 64:2
**disability** [2] - 8:18, 81:14
**disagree** [1] - 46:16
**disagreeable** [1] - 74:4
**discern** [1] - 31:3
**disclosed** [1] - 60:11
**discovery** [2] - 60:10, 60:15
**discrepancies** [1] - 84:13
**discretion** [4] - 69:14, 69:18, 70:8, 70:21
**discrimination** [23] - 14:7, 14:9, 31:24, 32:3, 32:6, 32:11, 34:3, 35:2, 38:8, 38:9, 38:10, 53:24, 54:9, 54:19, 55:25, 56:16, 56:23, 57:16, 64:1, 64:6, 68:7, 91:5, 91:9
**discriminatory** [10] - 54:11, 54:15, 54:17, 57:2, 57:4, 59:17, 61:2, 63:6, 69:11,

71:7
**discuss** [1] - 6:22
**discussed** [4] - 13:20, 25:20, 26:6, 62:9
**discussing** [1] - 6:19
**discussion** [4] - 32:20, 89:6, 89:24, 90:7
**discussions** [1] - 6:7
**disparate** [1] - 92:6
**disparity** [4] - 36:11, 65:2, 70:6, 89:8
**disperse** [1] - 20:10
**dispersed** [1] - 65:5
**dispersion** [1] - 65:2
**disposition** [1] - 49:11
**disproportionate** [1] - 66:6
**disproportionately** [1] - 39:21
**dispute** [12] - 8:2, 14:12, 39:3, 40:9, 47:25, 52:7, 53:2, 60:15, 70:23, 71:17, 72:4, 92:11
**disputed** [9] - 9:2, 9:11, 15:24, 51:20, 53:18, 60:2, 61:22, 68:8, 68:25
**disputes** [2] - 24:10, 51:10
**distance** [5] - 24:3, 24:4, 25:14, 26:11, 92:11
**distances** [1] - 64:22
**distancing** [1] - 8:22
**distinguishable** [4] - 54:1, 56:2, 56:19, 67:6
**distinguishes** [2] - 66:3, 66:15
**District** [4] - 2:14, 4:25, 44:19, 58:16
**district** [7] - 32:5, 43:12, 44:9, 57:3, 58:15, 64:2
**DISTRICT** [3] - 1:1, 1:1, 1:11
**disturb** [1] - 56:18
**diverse** [1] - 43:6
**DIVISION** [1] - 1:2
**doable** [1] - 50:12
**Doc** [1] - 58:9
**documentation** [1] - 16:24
**documented** [1] - 63:18
**DOJ** [2] - 44:12, 78:24
**donated** [1] - 91:24
**done** [7] - 7:14, 44:6, 45:22, 46:1, 47:11, 49:8, 74:10
**door** [4] - 12:21, 26:1, 76:7, 76:8
**Dorsey** [2] - 2:14, 4:25
**double** [1] - 26:25
**down** [12] - 12:10, 21:21, 25:2, 32:25, 36:24, 46:13, 49:17, 54:21, 58:3, 63:11, 65:5, 91:25
**Dr** [8] - 16:21, 24:22, 62:5, 62:16, 63:18, 63:19, 66:18,

85:13
**draw** [1] - 24:20
**drawn** [1] - 44:11
**drilling** [1] - 65:5
**drive** [1] - 89:13
**dropped** [1] - 26:7
**due** [1] - 12:16
**Duhon** [2] - 25:19, 52:3, 68:14, 77:1
**duly** [1] - 14:25
**during** [8] - 16:13, 23:13, 23:25, 28:4, 46:7, 68:9, 71:4, 78:13
**Duson** [1] - 68:13
**duty** [1] - 38:14

---

# E

**e-mail** [3] - 4:13, 5:10, 56:11
**e-mailed** [1] - 55:18
**e-mailing** [1] - 4:11
**e.dorsey@wallercounty.us** [1] - 2:16
**early** [114] - 6:24, 7:1, 7:5, 7:7, 7:9, 7:21, 7:23, 8:14, 8:20, 9:8, 10:22, 10:25, 11:2, 11:4, 11:11, 11:12, 11:17, 11:18, 11:22, 11:23, 12:6, 13:2, 13:3, 13:4, 14:20, 14:24, 15:7, 15:18, 15:24, 16:2, 16:5, 16:8, 16:13, 18:24, 19:15, 20:7, 20:10, 21:5, 23:9, 23:10, 23:11, 23:13, 23:15, 23:25, 27:10, 27:14, 27:25, 28:5, 28:17, 28:20, 30:5, 30:8, 30:12, 36:5, 36:6, 41:15, 42:6, 42:22, 44:12, 45:12, 46:6, 52:3, 52:20, 52:21, 53:4, 53:8, 61:23, 61:25, 62:4, 62:6, 62:17, 62:19, 64:15, 65:13, 66:14, 66:21, 66:25, 67:17, 67:18, 68:12, 69:7, 69:18, 69:23, 70:22, 71:2, 71:8, 71:19, 72:22, 73:20, 73:23, 73:24, 75:22, 78:11, 79:20, 80:1, 80:6, 80:16, 81:6, 81:7, 81:22, 82:5, 82:8, 82:18, 83:11, 83:24, 88:24, 89:1, 89:3, 89:9, 89:10, 89:22
**Eason** [6] - 2:19, 4:23, 52:3, 68:9, 76:17, 81:1
**easy** [2] - 4:13, 26:18
**ECF** [1] - 58:9
**edge** [5] - 25:8, 25:10, 25:14, 30:8, 53:11
**Education** [1] - 1:19
**effect** [1] - 32:21
**effectively** [3] - 20:21, 26:24,

27:2
**eight** [7] - 21:20, 39:9, 53:7, 61:7, 63:10, 64:15, 65:11
**either** [10] - 24:15, 26:2, 30:6, 30:8, 33:14, 33:15, 49:17, 67:2, 85:25, 92:7
**election** [43] - 2:20, 4:23, 5:25, 6:6, 8:17, 10:6, 11:22, 13:8, 13:9, 14:16, 14:18, 14:19, 15:25, 16:6, 16:10, 18:19, 19:14, 20:8, 37:20, 41:7, 71:4, 76:16, 78:14, 78:20, 81:10, 81:14, 81:24, 82:8, 82:10, 82:12, 82:14, 82:20, 82:23, 83:2, 83:7, 83:14, 83:15, 83:16, 83:20, 86:24, 87:8, 90:18
**Election** [1] - 18:10
**Elections** [1] - 14:19
**elections** [4] - 18:21, 23:9, 37:19, 72:5
**electorate** [1] - 52:10
**Eleventh** [1] - 49:14
**eliminate** [1] - 15:24
**Elizabeth** [1] - 2:14
**elsewhere** [1] - 61:9
**Email** [4] - 1:22, 2:7, 2:13, 2:16
**embarrassment** [1] - 43:24
**emergency** [2] - 6:12, 7:25
**en** [5] - 30:21, 54:16, 57:1, 59:19, 84:5
**encourages** [1] - 8:5
**end** [12] - 4:5, 12:15, 19:18, 19:20, 36:12, 40:13, 51:3, 68:11, 68:15, 78:5, 86:1, 87:14
**enforce** [3] - 48:14, 73:5, 87:10
**enforcement** [1] - 47:18
**engage** [3] - 9:5, 69:20, 76:23
**engaging** [1] - 80:5
**ensure** [1] - 26:18
**ensures** [2] - 45:14, 45:15
**entire** [3] - 9:16, 77:14, 90:10
**entirety** [1] - 19:12
**entitled** [4] - 7:5, 7:6, 38:24, 93:19
**entity** [1] - 48:17
**equal** [1] - 68:11
**equally** [1] - 65:7
**equitable** [3] - 6:24, 8:14, 71:8
**equity** [1] - 70:20
**equivalent** [1] - 42:7
**ESKRIDGE** [1] - 1:10
**especially** [1] - 93:3
**essence** [1] - 74:20
**essentially** [5] - 31:12, 50:9,

76:16, 76:19, 76:24
**established** [3] - 36:6, 38:6, 43:25
**establishes** [1] - 52:6
**ET** [2] - 1:3, 1:6
**et** [3] - 3:12, 3:13, 16:15
**evaluating** [1] - 31:13
**evaporated** [1] - 48:3
**evening** [2] - 30:13, 30:15
**event** [3] - 24:15, 48:22, 54:8
**events** [6] - 12:18, 15:14, 25:24, 43:15, 91:20
**eventually** [2] - 12:1, 27:9
**evidence** [33] - 12:17, 14:6, 14:8, 17:2, 24:3, 27:15, 27:18, 28:6, 29:9, 29:14, 29:15, 29:22, 29:23, 34:11, 34:19, 35:6, 35:12, 35:14, 35:20, 39:24, 41:19, 43:13, 46:24, 51:25, 52:1, 60:2, 60:3, 63:14, 65:20, 86:2, 86:4, 88:7, 92:17
**exactly** [5] - 59:13, 72:3, 91:17, 91:23, 91:24
**examine** [1] - 39:6
**example** [3] - 30:14, 38:14, 42:25
**examples** [1] - 79:4
**excellent** [1] - 92:23
**exception** [1] - 11:15
**excess** [1] - 89:4
**exchanged** [1] - 60:14
**excuse** [7] - 5:2, 13:8, 15:12, 18:7, 18:13, 24:2, 38:6
**exercise** [1] - 47:11
**exhibit** [2] - 24:22, 25:19
**Exhibit** [5] - 21:14, 21:17, 64:13
**exhibits** [1] - 19:23
**exist** [1] - 76:5
**expand** [1] - 16:1
**expanded** [1] - 19:11
**expansion** [4] - 17:8, 17:12, 17:13, 17:15
**expect** [1] - 86:14
**expectation** [1] - 8:12
**expectations** [1] - 6:14
**expecting** [1] - 64:9
**expeditiously** [1] - 37:21
**expend** [2] - 40:22, 67:20
**experience** [1] - 29:20
**experiencing** [1] - 27:19
**expert** [9] - 16:21, 40:20, 43:13, 60:11, 60:13, 62:5, 62:16, 85:13
**explain** [1] - 56:3
**explanation** [1] - 43:20
**Expressway** [1] - 2:10
**extended** [4] - 18:1, 18:6,

30:3, 30:10
**extension** [1] - 16:23
**extensive** [1] - 45:16
**extent** [6] - 6:8, 31:3, 74:2, 81:17, 81:20, 87:6
**extra** [4] - 28:12, 84:9, 84:11, 85:3

# F

**face** [3] - 42:3, 64:20
**faced** [2] - 35:23, 41:14
**facility** [1] - 70:15
**fact** [23] - 9:9, 12:5, 16:1, 16:21, 16:22, 20:22, 24:1, 30:10, 36:16, 38:16, 40:10, 42:4, 60:15, 68:8, 75:3, 83:21, 88:4, 88:5, 89:16, 89:18, 90:20, 91:18
**factor** [1] - 91:7
**factors** [26] - 32:7, 32:14, 35:11, 36:1, 36:16, 36:21, 36:25, 37:4, 37:25, 38:1, 38:4, 38:8, 38:12, 38:22, 39:4, 39:9, 39:14, 40:1, 40:8, 56:20, 59:23, 60:1, 61:24, 85:17
**facts** [12] - 9:13, 14:11, 14:14, 14:15, 16:13, 34:11, 51:6, 51:10, 51:20, 51:23, 53:17, 66:10
**factual** [3] - 36:15, 66:4, 73:19
**factually** [4] - 20:18, 56:21, 60:8, 72:11
**fail** [2] - 39:13, 51:18
**failure** [1] - 76:22
**fair** [1] - 68:16
**fairly** [1] - 49:13
**fairness** [1] - 56:6
**faith** [2] - 46:11, 47:22
**fall** [2] - 8:12, 8:15
**far** [2] - 19:20, 24:19
**fashion** [1] - 88:10
**fast** [1] - 54:20
**fault** [1] - 48:24
**favor** [1] - 63:14
**favorable** [1] - 51:24
**favored** [1] - 11:10
**fear** [1] - 8:18
**fed** [1] - 78:10
**federal** [5] - 36:21, 47:10, 47:11, 49:19, 73:4, 73:12, 74:12
**feet** [2] - 4:19, 25:1
**few** [1] - 53:9
**field** [1] - 59:4
**Fields** [9] - 20:12, 20:15, 20:20, 20:22, 21:17, 21:19, 21:21, 23:7, 23:15

**Fifteenth** [8] - 31:23, 33:10, 33:15, 34:2, 54:10, 57:25, 60:17, 91:4
**Fifth** [19] - 30:21, 31:13, 31:17, 31:18, 31:21, 32:10, 32:17, 32:20, 34:6, 34:17, 37:1, 37:13, 42:21, 44:10, 44:17, 84:19, 84:21, 85:5, 85:8
**fight** [2] - 39:16, 63:12
**fights** [1] - 87:7
**figure** [3] - 46:11, 47:22, 74:16
**file** [1] - 62:22
**filed** [5] - 28:23, 53:12, 62:21, 63:22, 68:23
**filled** [1] - 64:14
**final** [2] - 8:24, 91:11
**financial** [2] - 89:25, 90:3
**findings** [2] - 43:13, 88:4
**finger** [1] - 48:21
**first** [10] - 5:22, 10:8, 31:9, 31:22, 38:6, 38:7, 39:15, 56:1, 56:16, 74:17
**fits** [1] - 45:2
**five** [11] - 18:15, 23:22, 24:16, 27:20, 29:17, 29:18, 29:20, 30:7, 41:24, 49:25, 88:20
**fix** [2] - 80:18, 91:5
**flaw** [1] - 76:23
**flaws** [2] - 7:10, 7:11
**flies** [3] - 12:14, 24:13, 25:1
**floor** [3] - 45:3, 69:15, 70:5
**Floor** [1] - 1:20
**Flores** [1] - 63:19
**focal** [1] - 24:11
**focus** [4] - 40:7, 53:19, 54:14, 66:21
**focused** [1] - 32:4
**folks** [3] - 49:5, 89:13, 91:21
**followed** [1] - 34:12
**football** [1] - 12:20
**footprint** [1] - 12:13
**FOR** [4] - 1:1, 1:17, 2:2, 2:8
**force** [1] - 84:11
**forced** [2] - 67:20, 82:14
**forcing** [2] - 9:4, 9:12
**foregoing** [1] - 93:17
**form** [1] - 19:11
**format** [1] - 13:12
**forms** [1] - 69:3
**forward** [8] - 9:13, 36:1, 46:1, 47:8, 86:9, 86:25, 88:18, 92:24
**forwarded** [1] - 55:17
**fought** [2] - 53:3, 67:18
**four** [1] - 24:16
**fourteen** [1] - 87:14

**Fourteenth** [7] - 31:23, 33:10, 33:14, 34:2, 54:10, 60:17, 91:4
**Fourth** [1] - 31:15
**fourth** [4] - 33:9, 57:12, 61:11, 62:18
**fractured** [1] - 30:21
**frame** [2] - 10:6, 43:9
**framework** [2] - 31:12, 60:4
**frankly** [7] - 9:11, 29:24, 36:13, 40:6, 71:12, 78:9, 82:7
**free** [2] - 15:2, 90:17
**front** [2] - 26:3, 36:12
**froze** [2] - 79:11, 79:15
**frozen** [1] - 79:10
**fruitful** [1] - 6:20
**Fulbright** [1] - 2:4
**full** [8] - 11:5, 12:6, 13:4, 18:9, 19:11, 19:17, 30:4, 89:5
**full-time** [3] - 19:11, 19:17, 89:5
**fullness** [1] - 37:18
**fully** [3] - 32:18, 75:9, 77:3
**functionally** [1] - 42:7
**Fund** [1] - 1:19
**fund** [1] - 5:14
**future** [1] - 64:11

**G**

**gas** [1] - 84:14
**general** [1] - 14:16
**generally** [6] - 9:25, 14:12, 17:16, 27:24, 33:23, 91:1
**geographic** [2] - 59:5, 65:2
**geographically** [2] - 19:12, 43:6
**Gingles** [4] - 39:4, 39:14, 59:23, 59:24
**given** [7] - 8:18, 24:1, 30:11, 47:21, 87:25, 89:1, 89:3
**glad** [1] - 21:16
**gleaned** [1] - 30:22
**gloss** [1] - 68:8
**Gonzalez** [2] - 4:11, 4:15
**Goodrich** [1] - 2:3
**goodwill** [1] - 73:8
**govern** [1] - 56:22
**governing** [1] - 14:17
**great** [4] - 4:15, 70:6, 71:20, 90:8
**Great** [1] - 3:10
**greater** [5] - 23:8, 40:22, 41:3, 41:4
**greatest** [1] - 23:11
**greatly** [1] - 47:24
**grievance** [1] - 82:22
**group** [3] - 28:17, 40:22,

77:8
**groups** [5] - 66:1, 67:2, 76:1, 76:7, 76:12
**gseaquist@bickerstaff.com** [2] - 2:13
**guarantee** [1] - 10:2
**guess** [1] - 45:20
**guidance** [1] - 15:15
**guideline** [1] - 61:22
**guidelines** [1] - 61:24
**Gunnar** [3] - 2:9, 4:19, 56:10

**H**

**half** [3] - 23:22, 23:24, 92:3
**hall** [1] - 83:4
**Hall** [3] - 18:16, 18:18, 22:11
**Hamilton** [1] - 76:11
**hand** [3] - 9:14, 45:19, 65:15
**hands** [1] - 68:21
**handy** [1] - 27:23
**happy** [4] - 48:12, 75:10, 78:23, 87:5, 88:18
**hard** [5] - 4:6, 21:3, 40:7, 50:25, 55:19
**harder** [1] - 35:21
**harm** [4] - 7:20, 9:6, 38:17, 63:23
**Harrison** [2] - 2:3, 5:15
**HB** [2] - 69:13, 71:14
**hear** [12] - 3:6, 39:2, 42:14, 42:16, 45:8, 65:8, 79:12, 79:13, 79:17, 86:4, 87:22, 92:15
**heard** [10] - 29:6, 70:13, 77:1, 79:23, 80:12, 80:13, 80:15, 80:17, 86:2, 90:23
**HEARING** [2] - 1:9, 1:13
**hearing** [10] - 3:3, 3:16, 8:5, 47:23, 51:11, 72:23, 79:19, 90:9, 92:22, 93:11
**heart** [1] - 28:18
**Heath** [3] - 2:9, 2:10, 4:20
**heavily** [2] - 10:19, 85:18
**Heights** [9] - 32:6, 32:14, 54:7, 54:13, 56:20, 56:21, 56:25, 57:5, 57:7
**held** [5] - 36:10, 65:13, 65:14, 65:16, 90:9
**help** [1] - 88:17
**helpful** [4] - 16:18, 23:4, 32:8, 50:2
**helps** [1] - 9:18
**Hempstead** [10] - 2:15, 19:14, 20:3, 22:2, 22:4, 22:23, 30:6, 30:14, 60:24, 67:11
**Henry** [1] - 63:19
**hi** [1] - 3:10
**high** [2] - 6:19, 67:16

**high-level** [1] - 6:19
**higher** [2] - 20:6, 23:8
**highest** [5] - 7:1, 7:3, 28:16, 28:17, 62:4
**highly** [2] - 43:6, 92:21
**hip** [1] - 21:13
**historical** [2] - 38:7, 43:13
**history** [6] - 40:8, 52:14, 52:24, 58:21, 84:12, 85:20
**hold** [3] - 21:20, 48:22, 55:8
**holding** [1] - 91:19
**Honor** [68] - 3:21, 4:18, 10:8, 10:17, 10:18, 11:14, 12:4, 13:23, 14:2, 15:23, 16:16, 16:19, 17:16, 17:20, 18:5, 18:20, 19:1, 19:7, 20:2, 21:7, 21:17, 21:25, 22:14, 22:23, 23:6, 23:19, 24:13, 25:9, 26:18, 27:15, 28:9, 30:2, 31:5, 31:25, 32:22, 33:12, 33:25, 34:24, 36:2, 36:12, 37:23, 39:18, 40:18, 43:10, 44:5, 45:11, 46:18, 48:20, 49:2, 50:14, 50:20, 51:13, 51:16, 53:17, 53:20, 56:14, 59:2, 60:6, 62:9, 68:7, 73:14, 79:8, 88:12, 88:21, 91:12, 93:7, 93:9, 93:10
**Honor's** [2] - 7:24, 82:16
**HONORABLE** [1] - 1:10
**hope** [1] - 51:5
**hopefully** [2] - 8:5, 60:12
**host** [2] - 9:6, 73:8
**hours** [50] - 10:22, 11:3, 11:12, 13:8, 15:12, 16:1, 16:5, 16:9, 16:10, 17:22, 17:25, 18:13, 18:15, 19:16, 23:11, 23:13, 27:10, 27:12, 27:25, 28:15, 30:11, 30:13, 30:15, 36:10, 36:11, 45:8, 45:16, 45:18, 46:13, 47:2, 47:8, 53:3, 62:23, 65:3, 65:23, 69:8, 69:15, 70:7, 70:11, 70:12, 70:16, 70:21, 71:18, 71:21, 72:22, 89:9, 89:22, 92:19
**House** [1] - 10:21
**Houston** [2] - 2:6, 2:23
**HOUSTON** [1] - 1:2
**houston** [1] - 1:4
**hundreds** [1] - 60:14
**hurdles** [1] - 28:12

**I**

**I.D** [3] - 35:18, 35:21, 35:24
**ID** [1] - 32:1
**idea** [3] - 70:4, 73:22, 90:20
**identified** [1] - 78:12

**identifies** [2] - 55:6, 55:7
**identify** [3] - 54:24, 77:6, 89:20
**ignore** [3] - 37:25, 53:10, 61:21
**ignored** [1] - 89:25
**immediately** [1] - 88:5
**immunity** [3] - 42:16, 48:15, 49:16
**impact** [4] - 85:13, 85:14, 85:15, 92:6
**impacted** [1] - 65:10
**impacting** [2] - 65:6, 65:9
**impediment** [6] - 35:17, 36:3, 40:21, 41:20, 89:20, 89:21
**impediments** [1] - 42:3
**imperative** [1] - 8:13
**implications** [1] - 9:21
**import** [1] - 68:25
**importance** [1] - 87:9
**important** [14] - 8:20, 14:10, 15:22, 35:5, 43:18, 52:15, 61:3, 62:15, 69:1, 74:20, 81:23, 82:19, 88:22, 92:2
**impress** [1] - 60:18
**IN** [1] - 1:1
**inability** [1] - 90:21
**inactive** [1] - 82:3
**Inc** [1] - 1:19
**include** [2] - 69:24, 80:24
**included** [2] - 20:12, 90:22
**includes** [2] - 38:3, 71:9
**including** [4] - 12:11, 32:6, 62:1, 62:2
**incorrect** [1] - 20:18
**incumbent** [1] - 78:21
**independent** [4] - 53:22, 54:25, 55:7, 56:17
**indicate** [1] - 21:2
**indicates** [2] - 16:5, 21:2
**indication** [4] - 3:18, 32:19, 47:3, 48:11
**indications** [1] - 13:11
**indirectly** [1] - 82:17
**indispensable** [1] - 73:19
**individual** [1] - 5:18
**inequitable** [2] - 52:4, 52:7
**inequity** [4] - 47:7, 68:15, 69:3
**informal** [1] - 10:14
**initial** [5] - 13:21, 17:5, 23:19, 30:3, 37:8
**injunctive** [2] - 42:17, 77:16
**inordinately** [1] - 29:12
**input** [4] - 15:2, 90:17, 90:19, 90:22
**install** [1] - 26:14
**installed** [1] - 26:19

**instance** [1] - 74:17
**instructions** [1] - 88:13
**instructive** [1] - 31:15
**intensity** [1] - 92:12
**intensive** [1] - 56:21
**intent** [4] - 42:23, 43:4, 51:21, 57:4
**intentional** [9] - 14:7, 14:8, 31:24, 32:2, 32:5, 32:11, 35:2, 54:18, 92:8
**intentionally** [1] - 54:5
**interest** [2] - 50:15, 70:2
**interested** [2] - 8:1, 59:6
**interesting** [5] - 33:21, 36:19, 44:1, 57:24, 57:25
**interrupt** [2] - 44:5, 56:4
**intersection** [4] - 56:24, 58:17, 58:20, 58:21
**invite** [1] - 88:8
**involve** [1] - 77:12
**involved** [5] - 75:3, 75:5, 75:21, 78:25, 80:4
**involvement** [1] - 90:9
**involving** [1] - 89:12
**issue** [19] - 9:2, 9:10, 9:11, 12:18, 17:1, 41:19, 45:20, 46:12, 49:2, 57:1, 70:19, 78:15, 78:17, 81:5, 82:6, 82:9, 82:11, 82:15, 83:9
**issued** [2] - 15:15, 32:16
**issues** [16] - 9:6, 12:3, 31:4, 34:13, 36:15, 49:19, 49:20, 50:2, 50:11, 74:22, 74:24, 80:12, 80:13, 81:21, 81:24, 93:3
**items** [1] - 44:8
**itself** [10] - 7:13, 13:21, 17:8, 24:3, 25:7, 25:15, 36:13, 46:24, 82:21, 82:24

## J

**Jayla** [1] - 3:12
**JAYLA** [1] - 1:3
**jcusick@naacpldf.org** [1] - 1:22
**Jenelle** [2] - 4:15, 55:16
**John** [2] - 1:18, 5:13
**join** [1] - 51:1
**joined** [1] - 4:19
**joining** [1] - 3:24
**joint** [1] - 87:17
**Joseph** [1] - 63:18
**Joshua** [2] - 2:18, 5:16
**JOSHUA** [1] - 1:6
**judge** [2] - 86:5, 86:6
**Judge** [7] - 3:8, 21:10, 25:19, 34:18, 40:14, 44:18, 55:19
**JUDGE** [1] - 1:11
**judges** [1] - 34:9

**judgment** [14] - 7:13, 14:5, 14:11, 24:22, 25:20, 34:21, 35:15, 36:14, 51:19, 60:9, 60:13, 75:15, 86:7, 86:10
**judicial** [2] - 20:18, 47:11
**Julie** [2] - 2:3, 5:15
**julie.harrison@**
   **nortonrosefulbright.com**
   [1] - 2:7
**July** [2] - 86:15, 87:14
**jump** [1] - 28:12
**junction** [1] - 21:22
**june** [1] - 93:21
**June** [2] - 1:6, 3:2
**jurisdictions** [1] - 84:22
**Justice** [1] - 78:25

## K

**Kathleen** [4] - 2:22, 93:17, 93:21, 93:22
**Kathy** [1] - 3:8
**Kathy's** [1] - 4:12
**Katy** [7] - 22:19, 22:20, 23:7, 23:16, 60:25, 67:11
**kind** [5] - 5:25, 11:10, 19:24, 29:16, 92:5
**knowing** [1] - 86:14

## L

**lack** [1] - 62:13
**laden@naacpldf.org** [1] - 1:22
**Lance** [2] - 1:19, 5:14
**language** [7] - 34:17, 42:22, 43:17, 44:1, 75:13, 77:16
**large** [5] - 44:3, 64:22, 74:2, 74:15
**larger** [1] - 74:7
**last** [4] - 4:12, 22:22, 55:14, 59:16
**late** [2] - 68:19, 80:1
**law** [8] - 8:16, 30:19, 32:1, 46:17, 47:21, 48:1, 59:22, 70:3, 70:11, 71:21, 87:1, 88:5
**lawsuit** [4] - 12:19, 28:23, 62:21, 68:22
**lead** [4] - 9:24, 26:7, 28:24, 82:1
**leading** [1] - 34:13
**Leah** [2] - 1:18, 3:21
**learned** [1] - 59:6
**least** [8] - 15:19, 21:3, 60:2, 65:20, 66:20, 67:22, 69:7, 86:10
**leave** [1] - 42:8
**leaving** [1] - 70:7
**Lee** [1] - 41:1

**legal** [2] - 5:14, 14:13
**Legal** [1] - 1:19
**legally** [3] - 66:1, 67:2, 68:4
**legislative** [1] - 42:23
**legislators** [1] - 43:4
**legislature** [1] - 43:4
**lends** [1] - 36:13
**less** [2] - 41:6, 92:3
**letting** [1] - 88:5
**level** [1] - 6:19
**levels** [1] - 84:7
**Library** [1] - 23:2
**life** [3] - 59:15, 74:21, 80:15
**lifted** [1] - 61:4
**light** [3] - 8:9, 44:10, 51:24
**limit** [2] - 52:18, 53:5
**limited** [1] - 52:25
**line** [7] - 24:20, 27:13, 27:14, 28:7, 29:11, 84:24, 89:19
**lines** [4] - 27:2, 29:9, 64:9, 66:24
**link** [1] - 42:21
**list** [1] - 82:3
**listening** [1] - 4:22
**literally** [2] - 25:10, 91:14
**litigated** [2] - 89:7, 89:8
**litigation** [8] - 5:24, 8:18, 9:13, 17:10, 44:13, 53:12, 63:22, 72:1
**live** [6] - 7:2, 9:10, 45:22, 53:21, 62:8, 91:21
**Liz** [1] - 4:25
**LLP** [2] - 2:4, 2:10
**located** [3] - 19:12, 71:19, 91:16
**location** [22] - 11:2, 11:3, 11:4, 11:5, 11:11, 11:18, 12:9, 16:8, 16:14, 18:17, 18:20, 21:5, 24:11, 27:5, 30:13, 42:9, 45:12, 45:13, 91:13, 91:14, 91:15, 92:1
**locations** [25] - 11:13, 11:16, 12:6, 12:10, 13:9, 15:4, 15:7, 15:12, 15:18, 17:5, 19:11, 19:17, 20:6, 20:17, 23:12, 24:8, 26:20, 27:3, 27:4, 30:7, 36:5, 45:16, 46:6, 47:1, 53:2
**long-standing** [1] - 85:5
**look** [37] - 28:18, 28:22, 34:16, 37:8, 37:11, 37:13, 38:2, 38:25, 39:3, 39:4, 40:17, 41:11, 48:8, 52:22, 52:24, 59:4, 59:20, 61:8, 61:9, 63:4, 63:13, 64:2, 64:12, 64:21, 65:11, 65:17, 65:18, 66:11, 66:17, 67:16, 74:5, 85:16, 85:17, 86:6, 92:23
**looked** [2] - 21:16, 51:5,

51:6, 59:20
**looking** [17] - 16:7, 17:4, 26:12, 31:2, 31:3, 31:19, 31:20, 37:8, 37:15, 55:24, 64:3, 64:17, 65:3, 65:5, 65:20, 65:23, 92:19
**looks** [2] - 47:12, 65:4
**lost** [2] - 88:23, 90:1
**love** [2] - 4:12, 83:8
**loves** [1] - 83:9
**lunch** [1] - 41:22
**Lynn** [2] - 2:4, 5:15

## M

**machines** [5] - 15:9, 26:24, 27:1, 83:19, 83:20
**mail** [10] - 4:13, 5:10, 9:3, 9:5, 32:22, 56:11, 81:9, 81:12, 81:17, 81:25
**mail-in** [3] - 81:9, 81:12, 81:17
**mail-voting** [1] - 32:22
**mailed** [1] - 55:18
**mailing** [2] - 4:11, 81:21
**main** [9] - 11:3, 11:11, 11:17, 11:18, 11:22, 19:15, 45:12, 70:9, 70:15
**major** [1] - 6:24
**majority** [8] - 20:4, 20:5, 23:8, 31:3, 52:9, 61:13, 67:3, 67:10
**makeup** [1] - 61:1
**MANAGER** [1] - 55:18
**manager** [2] - 4:15, 55:12
**manner** [2] - 8:23, 66:6
**map** [9] - 20:19, 21:1, 21:11, 21:25, 24:21, 64:12, 64:17, 65:24, 92:19
**maps** [1] - 19:23
**mark** [1] - 22:7
**material** [3] - 14:11, 51:10, 51:20
**materially** [1] - 6:23
**matter** [10] - 13:22, 37:12, 47:18, 63:1, 63:2, 66:4, 73:20, 74:11, 92:20, 93:19
**maximum** [1] - 18:10
**McKinney** [1] - 2:5
**mean** [24] - 5:24, 16:10, 25:10, 29:15, 36:25, 38:22, 39:1, 39:8, 44:5, 46:16, 46:24, 47:10, 51:12, 57:25, 68:7, 69:9, 72:11, 72:23, 76:2, 76:11, 77:22, 87:24, 90:24, 92:18
**means** [9] - 12:23, 39:10, 68:18, 68:19, 69:12, 69:13, 81:13, 87:1, 92:11
**mechanical** [1] - 1:24

**median** [1] - 26:3
**mediate** [2] - 86:22, 87:18
**mediation** [1] - 87:13
**meeting** [7] - 15:8, 15:13, 68:3, 68:10, 68:13, 78:13, 80:9
**meetings** [2] - 14:25, 66:11
**Meetings** [1] - 15:1
**member** [1] - 71:10
**members** [4] - 7:17, 77:6, 78:4, 80:22
**membership** [1] - 77:7
**Memorial** [17] - 7:22, 17:13, 17:17, 17:18, 17:25, 18:6, 18:12, 22:5, 22:7, 24:17, 27:11, 62:2, 72:24, 83:8, 90:2, 90:4
**mentioned** [5] - 52:22, 53:20, 54:4, 54:14, 68:9
**mere** [2] - 36:11, 89:8
**micromanage** [2] - 7:9, 64:10
**microphone** [1] - 10:11
**mid** [1] - 80:6
**middle** [1] - 18:24
**might** [16] - 5:24, 6:15, 6:19, 9:21, 10:5, 10:12, 36:16, 36:24, 37:7, 42:17, 43:14, 44:11, 44:13, 64:11, 86:24, 87:1
**mile** [1] - 92:3
**miles** [10] - 12:14, 20:20, 23:22, 23:23, 23:24, 24:13, 24:21, 89:13, 92:5
**Miller** [5] - 2:22, 3:9, 93:17, 93:21, 93:22
**mind** [6] - 4:3, 4:10, 55:15, 59:11, 88:3, 92:2
**minds** [1] - 47:22
**minorities** [2] - 43:3, 57:20
**minority** [4] - 35:23, 39:20, 57:17, 61:19
**minute** [1] - 88:10
**minutes** [7] - 27:20, 29:18, 29:21, 41:24, 87:25, 88:20
**missed** [1] - 5:9
**Mississippi** [1] - 58:16
**modest** [1] - 68:22
**modifications** [1] - 28:22
**modify** [1] - 74:18
**moment** [2] - 9:19, 79:3
**Monaville** [5] - 20:12, 22:17, 23:16, 60:25, 67:9
**mootness** [4] - 42:15, 44:22, 45:19, 49:16
**Mopac** [1] - 2:10
**morass** [1] - 36:15
**moreover** [3] - 7:6, 9:1, 66:10
**morning** [3] - 3:21, 4:18,
30:12
**most** [12] - 6:23, 11:10, 31:21, 42:4, 51:24, 62:10, 62:11, 67:11, 72:5, 83:10, 83:13, 89:1
**mostly** [1] - 10:3
**motion** [9] - 5:21, 6:12, 10:18, 13:17, 14:10, 14:11, 25:19, 51:17, 53:23
**motions** [1] - 13:17
**movant** [1] - 50:23
**move** [2] - 9:13, 50:19
**moved** [1] - 26:21
**MR** [80] - 4:18, 10:8, 10:15, 10:17, 11:14, 11:21, 12:4, 13:23, 14:2, 16:16, 16:19, 17:10, 17:15, 17:20, 17:24, 18:4, 18:9, 18:12, 18:19, 18:23, 19:1, 19:3, 19:7, 19:9, 20:2, 21:7, 21:10, 21:13, 21:16, 21:24, 22:2, 22:7, 22:10, 22:13, 22:17, 22:19, 22:23, 23:1, 23:6, 23:18, 24:20, 24:25, 25:9, 25:13, 25:17, 26:17, 27:15, 29:6, 29:9, 30:2, 31:5, 31:25, 33:1, 33:4, 33:6, 33:12, 34:24, 37:23, 39:18, 40:13, 40:18, 43:10, 44:4, 44:7, 45:10, 46:3, 46:18, 46:20, 46:23, 48:2, 48:20, 50:14, 50:20, 56:13, 79:8, 88:12, 88:21, 92:16, 93:9, 93:11
**MS** [57] - 3:21, 4:2, 4:10, 5:8, 5:12, 6:18, 13:24, 28:9, 29:1, 29:3, 50:13, 51:13, 51:16, 54:23, 55:5, 55:9, 55:13, 55:24, 56:7, 56:10, 56:16, 57:14, 57:19, 57:23, 58:8, 59:2, 59:10, 59:16, 63:17, 63:21, 65:25, 67:9, 68:6, 69:10, 70:18, 71:23, 71:25, 72:8, 72:13, 72:16, 73:14, 74:18, 75:23, 76:15, 77:25, 78:3, 78:17, 79:13, 79:25, 81:11, 81:20, 83:1, 83:6, 83:18, 84:4, 93:7, 93:10
**MUHAMMAD** [1] - 1:6
**Muhammad** [4] - 2:18, 5:17, 25:21, 26:6
**multiple** [2] - 34:7, 83:20
**must** [2] - 53:3, 85:15

---

# N

**NAACP** [1] - 1:19
**name** [1] - 4:12
**named** [1] - 4:24

**narrow** [2] - 19:24, 46:12
**narrowed** [1] - 47:24
**narrowly** [1] - 58:10
**nations** [1] - 11:10
**Native** [1] - 89:12
**navigate** [1] - 25:3
**nearby** [1] - 23:21
**nearly** [1] - 4:19
**necessarily** [3] - 8:17, 34:14, 69:15
**necessary** [2] - 12:3, 73:19
**need** [21] - 6:12, 11:24, 16:23, 37:14, 38:21, 40:9, 50:6, 50:12, 50:18, 51:1, 51:7, 53:16, 73:2, 73:3, 73:10, 78:8, 79:3, 83:22, 86:3, 87:23, 88:14
**needed** [5] - 10:5, 13:19, 71:13, 73:1, 87:20
**needs** [8] - 68:3, 70:1, 71:9, 78:6, 79:22, 80:23, 90:1, 90:3
**never** [3] - 32:10, 41:12, 49:12
**new** [5] - 15:8, 18:17, 18:19, 70:3, 87:1
**New** [1] - 1:21
**next** [3] - 12:21, 25:25, 37:19
**Nicole** [2] - 2:4, 5:15
**night** [1] - 55:14
**nine** [2] - 20:20, 39:9
**NO** [1] - 1:3
**nobody** [1] - 90:14
**none** [5] - 60:25, 65:12, 66:1, 66:12, 67:21
**noon** [1] - 50:25
**normal** [1] - 42:8
**northeast** [1] - 20:21
**northern** [2] - 19:18, 19:22
**Northern** [1] - 58:16
**Norton** [1] - 2:4
**note** [7] - 15:22, 26:17, 43:18, 62:24, 63:7, 83:18, 92:18
**noted** [2] - 7:20, 35:5
**nothing** [2] - 41:25, 47:13
**notice** [2] - 20:18, 76:20
**noticed** [1] - 14:25
**notion** [1] - 85:11
**November** [6] - 9:22, 10:6, 13:8, 13:9, 47:14, 62:11
**Number** [1] - 33:4
**number** [13] - 3:14, 7:3, 11:12, 12:9, 23:11, 27:1, 45:16, 46:13, 82:2, 83:19, 84:18, 87:20, 89:9
**numbers** [5] - 20:6, 23:8, 64:3, 85:11, 85:12
**NY** [1] - 1:21

---

# O

**objection** [1] - 44:12
**obligation** [1] - 77:11
**obligations** [1] - 48:19
**oblige** [1] - 73:15
**observations** [2] - 34:23, 88:8
**observed** [1] - 48:19
**observing** [1] - 5:2
**obtain** [2] - 35:21, 35:24
**obviously** [16] - 5:22, 11:25, 13:7, 31:19, 32:1, 43:17, 44:16, 50:4, 51:9, 55:1, 64:18, 74:19, 74:20, 78:4, 90:15, 92:11
**occurred** [3] - 7:12, 16:14, 71:6
**occurs** [2] - 78:11, 83:13
**October** [1] - 80:6
**OF** [2] - 1:1, 1:12
**off-campus** [1] - 84:16
**offer** [2] - 43:20, 88:18
**Office** [1] - 2:14
**office** [8] - 5:1, 12:21, 12:22, 15:16, 25:25, 26:2, 26:8, 90:18
**official** [3] - 4:24, 76:17, 77:7
**officials** [1] - 43:2
**older** [3] - 61:9, 67:3, 67:10
**once** [3] - 77:8, 80:13, 92:24
**one** [55] - 9:11, 9:17, 10:19, 12:10, 12:11, 12:17, 15:4, 16:3, 18:25, 19:5, 19:13, 20:14, 21:20, 21:22, 22:1, 22:22, 23:13, 24:7, 27:4, 30:6, 34:8, 34:15, 34:25, 36:9, 37:11, 38:18, 42:19, 43:2, 43:14, 44:9, 44:23, 45:2, 45:19, 47:1, 55:8, 57:3, 59:6, 59:7, 59:17, 60:12, 62:22, 63:6, 65:14, 65:16, 69:5, 70:11, 72:8, 74:11, 78:7, 80:4, 85:24, 90:1, 90:2, 90:12, 91:7
**One** [1] - 2:11
**ones** [1] - 66:20
**ongoing** [2] - 15:9, 81:22
**open** [10] - 6:22, 11:17, 11:19, 11:23, 14:25, 27:10, 45:7, 45:12, 75:2, 79:18
**Open** [1] - 15:1
**opened** [1] - 12:5
**opening** [1] - 55:6
**operate** [1] - 26:24
**opinion** [14] - 30:21, 31:7, 32:4, 32:16, 33:21, 33:23, 38:20, 41:1, 42:22, 44:3, 44:18, 54:16, 80:16, 90:11
**opportunities** [2] - 6:25,

69:17
**opportunity** [5] - 8:21, 50:22, 69:19, 80:10, 90:10
**opposed** [4] - 25:7, 49:23, 72:6, 72:14
**opposing** [2] - 14:3, 56:5
**opposite** [1] - 42:4
**opposition** [2] - 15:2, 15:5
**option** [3] - 8:25, 23:20, 30:7
**order** [19] - 7:17, 27:19, 38:24, 48:14, 48:16, 48:24, 49:1, 49:9, 69:6, 71:7, 72:20, 72:21, 73:4, 73:10, 73:11, 74:13, 75:19, 88:10, 92:25
**ordered** [1] - 48:22
**orders** [2] - 64:1, 78:24
**organization** [1] - 77:7
**original** [1] - 62:19
**otherwise** [2] - 69:7, 72:22
**ourselves** [1] - 48:24
**outcome** [1] - 7:11
**outright** [2] - 28:11, 41:13
**outset** [2] - 5:23, 64:8
**outside** [2] - 67:11, 91:22
**overall** [2] - 66:20, 74:2
**overcome** [2] - 41:14, 63:25
**overcoming** [1] - 64:5
**overlook** [1] - 82:25
**overview** [1] - 9:18
**own** [3] - 48:25, 61:22, 61:23

**P**

**page** [2] - 16:7, 58:9
**pages** [6] - 49:22, 49:25, 50:6, 50:10, 60:14, 87:15
**pagination** [1] - 58:9
**pan** [1] - 74:23
**pandemic** [1] - 8:10
**Panther** [2] - 5:17, 29:15
**papers** [3] - 48:11, 60:13, 70:4
**par** [1] - 9:9
**parameters** [2] - 81:12, 86:9
**parity** [3] - 69:7, 72:21, 78:18
**parking** [4] - 12:19, 25:2, 26:7, 26:10
**part** [22] - 6:23, 7:18, 20:16, 20:21, 35:5, 39:7, 39:15, 72:9, 73:2, 74:3, 75:7, 77:9, 77:10, 77:12, 77:25, 78:9, 79:18, 79:22, 81:22, 82:17
**participants** [1] - 3:15
**participate** [2] - 39:22, 81:12
**participation** [2] - 51:1, 52:25
**particular** [11] - 21:3, 28:21, 35:22, 40:8, 44:14, 52:18,

68:3, 74:11, 80:2, 85:19, 90:3
**particularly** [2] - 51:20, 66:22
**parties** [15] - 3:18, 6:3, 7:25, 13:19, 14:12, 14:22, 14:23, 47:16, 49:10, 77:13, 86:11, 86:21, 87:11, 90:17, 93:5
**parties'** [2] - 6:13, 85:25
**partner** [1] - 4:20
**parts** [4] - 19:22, 34:25, 67:22, 67:23
**Party** [2] - 33:1, 33:22
**party** [10] - 5:17, 14:21, 29:16, 43:19, 69:21, 73:19, 76:18, 77:2, 80:15, 90:16
**pass** [1] - 86:13
**past** [1] - 75:17
**pause** [1] - 11:7
**peers** [1] - 41:23
**Peniel** [1] - 63:18
**people** [18] - 6:25, 28:10, 52:20, 52:21, 61:7, 61:8, 61:9, 66:8, 75:6, 76:23, 78:8, 78:18, 79:19, 80:21, 84:7, 84:9, 84:11, 84:24
**per** [1] - 12:10
**percent** [8] - 61:4, 61:6, 61:7, 61:14, 61:16, 61:18, 62:6, 67:12
**Perfect** [1] - 55:24
**perhaps** [4] - 6:16, 37:7, 86:23, 87:16
**period** [5] - 13:4, 18:24, 23:25, 30:4, 80:7
**permission** [2] - 10:9, 10:11
**permit** [1] - 49:12
**person** [1] - 8:19
**persons** [1] - 92:13
**perspective** [2] - 8:3, 46:16
**persuasive** [2] - 31:16, 58:15
**pertains** [1] - 31:4
**pertinent** [1] - 14:15
**Peterson** [1] - 2:9
**pick** [1] - 11:8
**piece** [1] - 48:22
**pieces** [1] - 65:20
**pin** [1] - 66:18
**place** [5] - 11:4, 14:13, 19:15, 46:25, 48:6, 69:18, 70:10, 83:17, 84:24
**places** [14] - 44:25, 45:7, 54:3, 59:8, 59:15, 65:12, 65:23, 70:6, 72:17, 73:20, 73:23, 74:5, 83:3, 84:23
**plaintiff** [5] - 5:18, 27:8, 29:16, 45:1, 46:3
**PLAINTIFFS** [2] - 1:17, 2:2
**plaintiffs** [9] - 3:20, 3:22, 5:14, 5:16, 6:21, 6:25,

8:21, 8:25, 9:4
**Plaintiffs** [27] - 13:24, 24:9, 25:22, 29:19, 31:11, 33:19, 36:4, 36:8, 37:5, 40:7, 41:17, 42:1, 43:16, 45:25, 50:13, 51:24, 54:2, 60:11, 60:18, 74:20, 75:2, 75:5, 80:19, 82:19, 83:8, 89:11, 90:13
**plaintiffs'** [2] - 8:3, 8:6
**Plaintiffs'** [20] - 12:1, 16:21, 20:15, 30:24, 34:15, 38:17, 39:2, 40:20, 42:12, 48:11, 50:16, 50:19, 50:22, 51:24, 54:3, 55:7, 62:5, 62:15, 77:6, 87:4
**plan** [5] - 23:19, 30:10, 52:4, 69:25
**planning** [1] - 86:12
**plans** [3] - 23:18, 30:3, 92:8
**play** [3] - 5:23, 15:11, 38:1
**plays** [1] - 72:18
**pleaded** [1] - 31:1
**pleasure** [1] - 93:13
**plenty** [1] - 10:1
**plus** [1] - 85:13
**point** [21] - 5:7, 8:24, 9:25, 20:24, 34:11, 42:1, 42:15, 48:1, 51:7, 51:11, 54:21, 57:12, 58:18, 60:6, 60:19, 61:20, 67:1, 67:10, 85:25, 86:8, 90:8
**points** [1] - 50:4
**political** [5] - 14:23, 77:2, 77:13, 90:25, 91:6
**poll** [1] - 15:10
**polling** [17] - 11:16, 18:20, 19:11, 27:3, 27:4, 44:25, 45:7, 45:11, 45:13, 45:16, 47:1, 48:6, 63:10, 70:10, 70:15, 83:3, 84:22
**polls** [1] - 30:14
**population** [9] - 35:22, 40:11, 54:5, 54:6, 61:12, 61:15, 61:18, 67:12, 67:14
**populus** [2] - 43:6, 61:10, 64:23
**portions** [2] - 35:22, 64:23
**posed** [1] - 10:20
**position** [5] - 10:7, 12:1, 39:23, 49:1, 52:2
**positions** [1] - 50:8
**possible** [1] - 37:21
**post** [5] - 12:20, 12:21, 25:25, 26:2, 26:8
**potential** [2] - 10:4, 34:3
**potentially** [2] - 34:2, 34:4
**power** [4] - 47:11, 48:9, 52:18, 61:12
**practice** [2] - 41:5, 41:8,

48:3, 54:2, 59:6, 62:17, 68:2
**Prairie** [95] - 7:17, 7:18, 10:25, 12:11, 12:13, 12:25, 13:5, 15:25, 16:2, 17:16, 18:16, 18:17, 20:7, 20:12, 20:23, 22:5, 22:10, 23:9, 23:14, 23:20, 23:22, 24:6, 24:9, 24:18, 26:5, 26:14, 26:20, 30:3, 30:12, 30:15, 36:4, 36:5, 42:18, 48:7, 48:12, 52:4, 52:5, 52:8, 53:14, 60:22, 61:4, 61:6, 61:8, 61:10, 61:12, 61:15, 62:1, 62:6, 62:8, 62:12, 63:3, 63:9, 63:10, 65:9, 65:15, 65:19, 66:8, 66:22, 67:5, 67:6, 67:13, 67:15, 67:25, 68:12, 68:17, 71:3, 72:24, 73:4, 73:6, 73:7, 73:17, 75:20, 76:8, 77:3, 77:19, 78:6, 78:18, 80:2, 80:7, 81:18, 81:23, 82:2, 83:3, 83:10, 85:18, 85:19, 88:23, 89:21, 90:22, 91:20, 91:22
**Precinct** [2] - 21:6, 62:9
**precinct** [7] - 7:2, 12:11, 21:17, 47:2, 62:10, 82:7, 82:10
**precincts** [7] - 21:2, 53:7, 63:11, 64:12, 64:14, 65:11, 67:9
**predominantly** [1] - 31:21
**prefer** [1] - 4:2
**PRESENT** [1] - 2:17
**present** [7] - 40:1, 40:2, 49:18, 49:20, 52:12, 52:16, 89:11
**presentation** [1] - 51:18
**presenting** [1] - 28:3
**press** [1] - 32:25
**pretrial** [1] - 87:19
**previous** [1] - 18:21
**primarily** [1] - 33:19
**primary** [3] - 13:3, 71:4, 90:16
**principle** [2] - 85:5, 85:9
**print** [1] - 55:19
**private** [2] - 62:13, 66:5
**probative** [1] - 43:3
**problem** [3] - 37:3, 38:4, 76:25
**problems** [2] - 71:11, 78:10
**procedural** [1] - 49:24
**proceed** [6] - 3:5, 10:16, 14:1, 19:8, 51:15, 93:2
**proceeding** [2] - 3:15, 37:2
**proceedings** [2] - 1:24, 93:18

**proceeds** [1] - 37:6
**process** [14] - 7:6, 7:11, 7:19, 9:5, 13:11, 15:21, 75:21, 77:5, 78:8, 79:18, 79:22, 80:20, 80:22, 90:8
**produce** [1] - 17:1
**produced** [2] - 1:25, 49:1
**prohibits** [1] - 39:20
**promptly** [1] - 92:25
**prong** [3] - 38:3, 38:7, 54:11
**prongs** [1] - 34:7
**proper** [1] - 60:4
**property** [2] - 48:23, 49:11
**prophylactic** [1] - 7:14
**proposal** [1] - 14:20
**proposed** [2] - 15:3, 88:4
**proposing** [1] - 77:17
**prospectively** [1] - 26:13
**protected** [5] - 38:11, 66:1, 66:2, 67:2, 68:4
**protects** [1] - 58:22
**provide** [8] - 15:2, 53:22, 70:25, 71:2, 71:8, 73:16, 78:24, 90:22
**provided** [7] - 10:25, 55:12, 69:17, 84:22, 84:23, 91:17, 91:18
**provides** [2] - 59:22, 74:25
**providing** [5] - 8:21, 69:6, 72:21, 85:1
**provision** [1] - 11:22
**provisions** [1] - 49:3
**proximate** [1] - 13:5
**proximity** [1] - 59:5
**public** [5] - 15:13, 62:14, 76:20, 79:23, 90:8
**pulling** [1] - 31:19
**pure** [1] - 77:12
**purged** [1] - 82:3
**purpose** [5] - 54:11, 54:18, 54:23, 76:5, 91:19
**purposes** [1] - 43:25
**push** [1] - 85:10
**put** [7] - 6:11, 36:23, 38:22, 48:21, 74:19, 76:25, 82:2
**putting** [1] - 26:25

## Q

**qualify** [1] - 81:15
**quality** [1] - 34:15
**questions** [6] - 5:23, 14:13, 20:1, 42:12, 75:14, 88:9
**quick** [1] - 21:1
**quite** [1] - 92:23
**quote** [4] - 68:10, 68:11, 68:14, 68:15

## R

**race** [10] - 34:4, 38:9, 38:10, 54:8, 56:24, 57:14, 58:13, 58:17, 58:20
**racial** [4] - 31:24, 56:23, 60:21, 60:25
**raise** [1] - 9:5
**raised** [5] - 42:15, 54:19, 58:6, 62:25, 90:7
**raising** [2] - 39:16, 60:7
**Ramos** [1] - 34:18
**Ramos's** [1] - 44:18
**rare** [2] - 60:7, 89:6
**rates** [1] - 67:16
**rather** [3] - 29:14, 45:3, 86:7
**reach** [4] - 30:25, 35:10, 47:22, 87:2
**reached** [2] - 57:1, 93:5
**reaching** [1] - 36:22
**read** [4] - 21:3, 30:20, 33:23, 43:10
**readily** [2] - 36:14, 84:18
**reading** [1] - 11:9
**ready** [2] - 3:5, 13:16
**real** [2] - 21:1, 49:19
**realistic** [1] - 88:1
**reality** [1] - 54:1
**really** [19] - 6:10, 14:13, 32:10, 33:13, 33:25, 40:10, 41:10, 41:18, 41:25, 45:2, 45:22, 47:6, 54:20, 65:19, 81:16, 85:24, 90:13, 92:21, 92:23
**reason** [3] - 38:2, 38:15, 81:22
**reasonable** [1] - 47:22
**reasons** [4] - 53:10, 56:2, 56:19, 80:17
**rebuttal** [2] - 50:21, 88:16
**recalcitrant** [1] - 73:11
**receive** [1] - 92:25
**received** [2] - 23:11, 56:12
**receiving** [1] - 81:25
**recent** [2] - 10:20, 72:5
**recite** [1] - 14:16
**recognition** [2] - 57:9, 69:1
**recognize** [2] - 77:13, 88:25
**recognized** [4] - 58:17, 84:20, 85:5, 89:15
**recognizes** [2] - 58:22, 78:7
**recollection** [1] - 31:7
**recommend** [1] - 15:17
**recommendations** [1] - 15:15
**record** [20] - 4:1, 5:7, 9:1, 16:24, 20:15, 24:3, 24:23, 25:18, 25:21, 27:17, 27:18, 37:14, 63:8, 63:16, 63:17,

65:4, 67:23, 76:15, 79:25, 93:18
**recorded** [1] - 1:24
**Rector** [1] - 1:20
**redistricting** [1] - 59:24
**reduce** [2] - 12:9, 15:24
**reduction** [1] - 16:22
**refer** [1] - 58:9
**reference** [1] - 55:22
**referenced** [3] - 44:9, 44:20, 53:6
**references** [1] - 75:25
**referring** [6] - 17:14, 42:20, 43:8, 43:9, 55:4, 59:12
**reflect** [3] - 66:10, 67:23, 84:7
**reflected** [3] - 17:23, 18:2, 66:14
**reflective** [1] - 77:14
**reflects** [6] - 9:1, 67:4, 69:25, 76:15, 79:25, 83:10
**reformed** [1] - 91:12
**regard** [2] - 6:8, 6:14
**registered** [5] - 7:3, 28:17, 62:10, 62:11, 67:14
**registers** [1] - 66:14
**registration** [4] - 9:4, 82:1, 82:3, 84:23
**regulation** [2] - 41:5, 41:8
**reiterate** [1] - 61:13
**relates** [6] - 16:20, 17:3, 34:25, 35:2, 45:23, 51:21, 91:13, 92:6
**relative** [1] - 55:1
**relatively** [2] - 50:25, 64:22
**relevant** [1] - 59:23
**reliance** [1] - 77:13
**relied** [1] - 43:12
**relief** [10] - 6:22, 7:25, 42:17, 48:16, 69:6, 71:2, 75:13, 79:1, 79:4, 82:23
**rely** [1] - 69:21
**relying** [1] - 69:22
**remain** [4] - 6:21, 8:1, 10:11, 87:7
**remains** [1] - 86:19
**remand** [1] - 34:17
**remedial** [1] - 49:3
**remedies** [1] - 49:4
**remedy** [1] - 63:22
**remedying** [1] - 71:11
**remotely** [1] - 93:12
**repeatedly** [1] - 66:7
**repetition** [1] - 71:1
**reply** [1] - 10:19
**report** [2] - 66:17, 85:13
**REPORTER** [2] - 2:21, 3:8
**reporter** [2] - 3:6, 4:9
**REPORTER'S** [1] - 93:15

**reports** [3] - 60:11, 62:16, 63:18
**reprehensible** [1] - 43:1
**represent** [1] - 77:3
**representation** [2] - 68:11, 78:22
**representative** [7] - 75:20, 76:1, 76:2, 77:15, 77:18, 77:20, 79:17
**representatives** [4] - 43:5, 76:4, 76:18, 77:2
**Republican** [2] - 14:22, 90:15
**request** [3] - 48:5, 48:10
**requesting** [1] - 82:23
**requests** [1] - 69:5
**require** [2] - 28:10, 86:21
**required** [3] - 11:2, 11:17, 11:19
**requirement** [1] - 10:22
**requires** [3] - 11:22, 45:11, 48:1
**reservations** [1] - 89:12
**resident** [1] - 15:1
**resolution** [2] - 6:13, 10:5
**resolve** [4] - 6:19, 46:5, 47:9, 71:15
**resolved** [4] - 9:12, 37:21, 46:24, 58:7
**resources** [9] - 40:22, 46:14, 67:4, 67:21, 68:19, 70:2, 70:24, 89:25, 90:3
**respect** [5] - 33:18, 45:14, 60:16, 65:25, 86:10
**respond** [4] - 6:17, 27:8, 27:23, 50:22
**responding** [1] - 50:7
**response** [6] - 9:17, 9:25, 37:10, 39:2, 43:11, 62:24
**responsibility** [1] - 90:11
**rest** [1] - 50:20
**restored** [1] - 63:12
**result** [2] - 12:4, 38:8
**results** [4] - 41:6, 54:15, 57:2, 59:17
**return** [1] - 8:12
**review** [2] - 34:12, 71:1
**reviewing** [2] - 32:4, 53:17
**revise** [1] - 80:11
**revisions** [1] - 88:6
**reweighing** [1] - 34:19
**Rights** [9] - 31:12, 39:20, 48:17, 49:3, 49:6, 49:9, 66:3, 91:3, 92:7
**rights** [2] - 28:10, 31:10
**ripe** [1] - 60:15
**ripeness** [1] - 45:20
**RMR** [2] - 2:22, 93:22
**robe** [1] - 10:14

**Robert** [1] - 16:21
**rolls** [1] - 82:4
**Room** [1] - 2:23
**room** [2] - 47:21, 76:10
**root** [1] - 91:8
**Rose** [1] - 2:4
**roughly** [1] - 61:18
**round** [2] - 89:13
**routine** [1] - 42:9
**RPR** [1] - 93:22
**rubber** [1] - 76:24
**rule** [1] - 39:14
**ruling** [1] - 86:18
**run** [2] - 48:1, 49:13
**rural** [3] - 20:11, 24:1, 24:2
**Rusk** [1] - 2:23

## S

**safe** [2] - 8:23
**satellite** [1] - 24:21
**satisfied** [1] - 73:18
**satisfy** [1] - 47:23
**saw** [3] - 10:18, 32:25, 92:18
**schedule** [27] - 8:7, 14:20,
    14:24, 15:7, 15:18, 15:23,
    17:3, 17:5, 17:7, 19:10,
    28:18, 28:22, 46:1, 52:23,
    62:20, 63:1, 63:5, 66:23,
    69:23, 74:2, 75:22, 76:16,
    76:23, 79:20, 80:8, 80:11,
    80:17
**schedules** [2] - 14:18, 15:4
**school** [1] - 30:17
**score** [1] - 88:15
**screen** [3] - 3:15, 56:9, 79:11
**SEAQUIST** [80] - 4:18, 10:8,
    10:15, 10:17, 11:14, 11:21,
    12:4, 13:23, 14:2, 16:16,
    16:19, 17:10, 17:15, 17:20,
    17:24, 18:4, 18:9, 18:12,
    18:19, 18:23, 19:1, 19:3,
    19:7, 19:9, 20:2, 21:7,
    21:10, 21:13, 21:16, 21:24,
    22:2, 22:7, 22:10, 22:13,
    22:17, 22:19, 22:23, 23:1,
    23:6, 23:18, 24:20, 24:25,
    25:9, 25:13, 25:17, 26:17,
    27:15, 29:6, 29:9, 30:2,
    31:5, 31:25, 33:1, 33:4,
    33:6, 33:12, 34:24, 37:23,
    39:18, 40:13, 40:18, 43:10,
    44:4, 44:7, 45:10, 46:3,
    46:18, 46:20, 46:23, 48:2,
    48:20, 50:14, 50:20, 56:13,
    79:8, 88:12, 88:21, 92:16,
    93:9, 93:11
**Seaquist** [6] - 2:9, 4:19, 9:23,
    13:25, 50:17, 88:11
**seat** [2] - 76:10, 76:12

**seated** [1] - 10:11
**second** [13] - 11:8, 21:20,
    31:23, 38:3, 39:6, 55:5,
    55:7, 55:8, 55:25, 56:5,
    56:23, 57:5, 79:15
**Secretary** [1] - 15:15
**Section** [12] - 31:10, 32:2,
    35:1, 35:4, 38:9, 39:19,
    40:3, 41:8, 41:10, 54:11,
    92:7
**see** [2] - 3:10, 3:14, 4:4, 4:6,
    36:25, 39:8, 42:22, 54:16,
    55:20, 57:8, 59:8, 62:18,
    65:1, 65:17, 73:13, 74:21,
    79:13, 82:22, 93:1
**seek** [3] - 6:23, 7:12, 42:9
**seeking** [1] - 14:4
**seem** [3] - 16:25, 53:1, 78:9
**Senate** [9] - 35:10, 36:1,
    36:16, 38:3, 38:12, 39:25,
    40:7, 60:1, 85:17
**senators** [1] - 43:5
**send** [1] - 54:23
**sending** [1] - 34:18
**sense** [6] - 6:16, 28:19,
    28:24, 52:23, 53:11, 70:24
**separate** [4] - 5:25, 54:12,
    84:24, 89:19
**separately** [2] - 54:19, 87:16
**September** [4] - 15:13, 17:6,
    80:2, 88:2
**seriously** [1] - 8:6
**serve** [5] - 19:12, 86:24,
    91:4, 91:5, 91:6
**serves** [1] - 22:19
**serving** [1] - 27:3
**session** [1] - 66:12
**set** [18] - 9:19, 11:12, 19:16,
    38:23, 38:24, 45:18, 45:25,
    62:19, 69:14, 69:16, 69:22,
    70:10, 70:16, 71:21, 74:3,
    76:3, 87:19
**sets** [3] - 10:21, 69:15, 70:5
**setting** [12] - 7:7, 8:7, 14:18,
    44:23, 45:3, 48:25, 61:23,
    70:10, 70:15, 75:21, 76:23
**settled** [1] - 44:13
**settlement** [1] - 6:4
**seven** [3] - 23:23, 23:24,
    55:20
**Seventh** [1] - 35:9
**severe** [1] - 54:3
**shape** [1] - 37:7
**shared** [1] - 76:18
**shed** [1] - 44:10
**shooting** [1] - 21:13
**short** [5] - 14:5, 28:9, 29:4,
    60:5, 78:5
**shorten** [1] - 26:11
**shorter** [1] - 20:10

**Show** [1] - 59:10
**show** [6] - 12:18, 41:13,
    60:19, 91:1
**showing** [1] - 36:17
**shown** [1] - 61:4
**shows** [2] - 62:3, 66:5
**shuttle** [2] - 26:5, 26:10
**side** [3] - 3:19, 50:9, 87:22
**sides** [3] - 46:10, 47:23,
    92:22
**sidestep** [1] - 40:10
**sidewalk** [8] - 12:19, 12:25,
    25:23, 25:25, 26:2, 26:8,
    26:15, 53:13
**sidewalks** [1] - 25:4
**significant** [3] - 9:9, 30:16,
    77:10
**significantly** [3] - 24:4,
    26:11, 35:21
**signs** [1] - 47:17
**similarly** [2] - 6:25, 7:23
**simply** [6] - 20:19, 28:15,
    28:24, 52:23, 76:9, 89:17
**simultaneously** [1] - 50:6
**site** [8] - 28:21, 70:22, 73:20,
    74:4, 74:11, 75:1, 83:24,
    84:25
**sited** [4] - 71:20, 72:4, 72:5,
    73:24
**sites** [7] - 67:19, 71:19,
    73:24, 74:3, 74:7, 74:16,
    84:16
**sits** [1] - 25:10
**sitting** [1] - 36:21
**situated** [2] - 7:1, 53:2
**situation** [1] - 8:10
**six** [3] - 4:19, 23:24, 60:11
**sixth** [13] - 31:6, 32:10,
    32:12, 32:21, 33:10, 33:16,
    53:25, 54:10, 56:1, 56:17,
    58:2, 60:17, 91:4
**Sixth** [1] - 31:15
**size** [1] - 45:2
**skimmed** [1] - 32:18
**slap** [1] - 69:11
**slide** [10] - 54:24, 55:3, 55:5,
    55:6, 55:7, 55:25, 59:17,
    61:5, 62:18, 62:20
**slides** [1] - 55:20
**slow** [1] - 54:21
**small** [1] - 26:3
**smaller** [3] - 23:10, 23:12,
    89:4
**Smith** [1] - 5:18
**social** [1] - 8:22
**socialize** [1] - 41:22
**socioeconomic** [1] - 84:14
**someone** [4] - 28:7, 77:20,
    77:22, 79:22

**sometimes** [2] - 4:5, 93:3
**somewhere** [1] - 16:18
**sorry** [8] - 44:5, 46:20, 55:3,
    55:10, 56:4, 57:11, 70:19,
    79:6
**sort** [6] - 5:23, 33:17, 50:8,
    65:17, 79:23, 86:18
**sought** [1] - 7:25
**sounds** [2] - 46:10, 47:20
**source** [2] - 43:24, 61:12
**SOUTHERN** [1] - 1:1
**southern** [2] - 19:20, 19:22
**Southern** [1] - 44:19
**sovereign** [3] - 42:16, 48:15,
    49:16
**spacing** [1] - 74:23
**spare** [1] - 5:8
**speaking** [8] - 3:22, 3:24,
    4:5, 9:24, 27:24, 54:17,
    54:20, 64:22
**speaks** [1] - 83:21
**specialized** [1] - 90:14
**specific** [5] - 16:20, 35:17,
    35:23, 44:8, 89:21
**specifically** [8] - 28:4, 31:6,
    32:9, 35:2, 43:11, 44:17,
    49:5, 91:19
**spend** [1] - 41:21
**spent** [2] - 59:18, 83:19
**splendid** [2] - 58:19, 59:12
**spread** [1] - 28:1
**stadium** [1] - 12:20
**stage** [1] - 51:25
**stamped** [1] - 76:24
**stand** [3] - 10:10, 45:24,
    84:24
**standard** [4] - 31:16, 44:24,
    63:5, 71:1
**standardization** [2] - 45:15,
    70:19
**standardized** [5] - 10:21,
    45:25, 69:7, 71:13, 72:22
**standards** [1] - 30:23
**standing** [2] - 17:7, 85:5
**standpoint** [1] - 37:11
**stark** [2] - 52:15, 61:17
**starkly** [1] - 54:25
**start** [7] - 6:16, 13:16, 13:18,
    21:11, 50:16, 80:7, 86:12
**started** [2] - 13:20, 17:10
**starting** [1] - 3:19
**State** [1] - 58:10
**state** [15] - 4:16, 5:6, 5:23,
    25:22, 42:25, 43:7, 47:21,
    48:1, 48:17, 49:11, 70:3,
    70:11, 71:21, 81:8, 87:1
**State's** [1] - 15:16
**STATES** [2] - 1:1, 1:11
**States** [2] - 58:11

**stating** [2] - 33:10, 39:9
**stats** [1] - 61:3
**status** [2] - 82:1, 84:14
**statute** [6] - 10:20, 11:9, 12:5, 19:16, 46:1, 46:25
**statutory** [1] - 53:20
**Stein** [4] - 16:21, 62:5, 62:16, 66:18
**Stein's** [2] - 24:22, 85:13
**stenography** [1] - 1:24
**step** [1] - 37:8
**steps** [4] - 69:24, 84:9, 84:11, 85:3
**Steven** [2] - 1:19, 5:13
**stick** [1] - 78:5
**still** [6] - 28:23, 39:14, 45:21, 68:20, 70:23, 79:8
**stop** [2] - 41:23, 91:5
**Store** [9] - 20:13, 20:16, 20:20, 20:22, 21:18, 21:19, 21:21, 23:7, 23:16
**street** [1] - 26:3
**Street** [3] - 1:20, 2:5, 2:15
**strength** [2] - 85:24, 92:22
**strikes** [1] - 44:7
**strip** [1] - 63:9
**Student** [17] - 7:22, 17:14, 17:17, 17:19, 17:25, 18:6, 18:12, 22:5, 22:8, 24:9, 24:17, 27:11, 62:2, 72:25, 83:8, 90:2, 90:4
**student** [21] - 12:15, 24:14, 25:7, 25:15, 26:21, 29:17, 36:3, 36:4, 41:21, 48:6, 52:5, 52:10, 57:9, 66:22, 72:6, 72:15, 74:24, 80:15, 81:23, 83:17, 91:20
**students** [47] - 7:17, 8:14, 12:21, 12:24, 23:19, 24:6, 24:11, 27:19, 29:10, 30:4, 30:16, 53:3, 53:8, 53:15, 58:12, 61:10, 61:14, 62:6, 62:8, 62:13, 63:3, 63:9, 63:24, 66:8, 67:5, 68:12, 68:17, 69:25, 75:21, 76:9, 77:3, 77:19, 78:6, 78:18, 80:2, 80:8, 81:15, 81:18, 81:25, 82:2, 82:5, 83:10, 84:14, 85:18, 87:9, 88:23, 90:22
**stuff** [1] - 77:21
**subject** [5] - 49:9, 54:12, 61:1, 81:10, 91:15
**submit** [1] - 39:24
**submitted** [2] - 16:5, 63:16
**substance** [1] - 49:23
**substantial** [1] - 52:9
**substantially** [1] - 7:5
**substantive** [1] - 75:18
**substantively** [1] - 6:1

**succinctly** [1] - 9:16
**sudden** [2] - 53:13, 53:14
**suddenly** [1] - 86:14
**suffer** [1] - 66:20
**suffice** [1] - 60:5
**sufficient** [1] - 51:2
**suggest** [4] - 29:23, 41:19, 87:5, 87:13
**suggests** [3] - 27:18, 39:25, 92:5
**Suite** [2] - 2:5, 2:11
**summarily** [1] - 58:14
**summarized** [1] - 16:17
**summary** [12] - 14:5, 14:10, 24:22, 25:20, 34:21, 35:15, 36:14, 51:19, 60:8, 60:13, 86:7, 86:10
**Sunday** [3] - 18:15, 18:23, 22:11
**support** [1] - 58:8
**supported** [1] - 61:25
**supposed** [2] - 32:12, 46:17, 76:4
**Supreme** [4] - 41:9, 58:24, 84:19, 85:6
**survive** [1] - 8:4
**suspect** [3] - 28:13, 44:19, 85:4
**suspicion** [1] - 13:11
**Symm** [4] - 33:20, 44:9, 58:11
**Symm's** [1] - 58:23
**system** [2] - 69:22, 71:14
**systems** [1] - 91:6

## T

**table** [5] - 9:19, 10:9, 75:7, 76:12, 77:8
**talks** [1] - 41:1
**tandem** [1] - 71:8
**targeted** [2] - 54:5, 58:13
**targeting** [1] - 65:19
**tasked** [1] - 91:1
**technically** [1] - 25:24
**Tel** [5] - 1:21, 2:6, 2:12, 2:16, 2:24
**teleconference** [1] - 51:1
**template** [1] - 86:24
**temporary** [4] - 11:2, 11:16, 12:6, 45:11
**ten** [7] - 27:20, 29:20, 41:24, 49:25, 50:5, 50:10, 87:15
**terms** [18] - 8:6, 8:21, 27:3, 38:23, 46:4, 64:8, 68:25, 70:12, 70:18, 70:20, 70:25, 72:20, 75:8, 78:21, 79:16, 85:21, 90:8, 92:12
**test** [1] - 38:3
**testified** [1] - 80:21

**testimony** [3] - 25:18, 77:2, 80:25
**TEXAS** [1] - 1:1
**Texas** [19] - 1:4, 2:23, 3:13, 8:16, 14:19, 15:1, 15:15, 18:10, 33:1, 33:20, 33:22, 43:4, 49:7, 52:12, 52:13, 52:20, 53:25, 56:1, 58:10
**Texas's** [1] - 57:4
**THE** [143] - 1:1, 1:1, 1:10, 1:17, 2:2, 2:8, 3:5, 3:8, 3:10, 3:25, 4:4, 4:14, 5:4, 5:11, 5:19, 9:15, 10:13, 10:16, 11:7, 11:20, 11:24, 13:14, 13:25, 16:3, 16:17, 17:9, 17:12, 17:18, 17:21, 18:3, 18:8, 18:11, 18:17, 18:22, 18:25, 19:2, 19:5, 19:8, 19:25, 20:25, 21:9, 21:12, 21:14, 21:19, 22:1, 22:4, 22:9, 22:12, 22:15, 22:18, 22:21, 22:25, 23:3, 23:17, 24:17, 24:24, 25:6, 25:12, 25:16, 26:16, 27:7, 27:21, 28:25, 29:2, 29:5, 29:8, 30:1, 30:19, 31:18, 32:23, 33:3, 33:5, 33:7, 34:8, 36:19, 38:18, 40:12, 40:15, 42:11, 43:22, 44:6, 44:21, 46:2, 46:4, 46:19, 46:21, 47:9, 48:4, 49:15, 50:15, 50:24, 51:14, 54:22, 55:3, 55:8, 55:10, 55:15, 55:18, 55:20, 56:4, 56:8, 56:15, 57:11, 57:16, 57:21, 57:24, 58:25, 59:3, 59:11, 63:15, 63:20, 64:7, 67:8, 68:5, 69:5, 70:3, 71:17, 71:24, 72:3, 72:10, 72:14, 72:18, 74:1, 75:12, 75:24, 77:15, 78:2, 78:16, 79:6, 79:9, 79:14, 81:4, 81:16, 82:20, 83:2, 83:16, 83:25, 85:23, 88:19, 92:9, 92:17, 93:8, 93:13
**themselves** [2] - 30:5, 52:3
**therefore** [4] - 8:13, 30:2, 54:6, 56:19
**thinking** [3] - 9:22, 36:22, 53:17
**thinks** [1] - 87:23
**third** [4] - 33:8, 57:7, 57:12, 61:5
**three** [4] - 19:11, 20:6, 42:11, 65:13
**threshold** [1] - 36:17
**threw** [1] - 68:20
**throughout** [1] - 65:6
**thrust** [1] - 57:17
**timing** [3] - 15:6, 15:14,

76:21
**today** [16] - 3:19, 3:22, 4:20, 4:22, 5:20, 6:2, 6:21, 8:19, 10:14, 12:13, 14:4, 47:6, 51:18, 87:25, 88:10, 93:12
**today's** [1] - 8:5
**together** [2] - 33:11, 91:21
**took** [1] - 14:13
**top** [2] - 58:19, 68:9
**tort** [1] - 38:14
**total** [1] - 61:11
**totality** [2] - 59:21, 85:16
**tough** [1] - 63:8
**towards** [1] - 39:9
**traffic** [1] - 27:5
**training** [1] - 15:9
**transcript** [1] - 93:18
**Transcript** [1] - 1:25
**transcription** [1] - 1:25
**transportation** [8] - 62:13, 62:14, 62:16, 66:5, 74:22, 80:12, 84:13, 85:19
**travel** [2] - 24:7, 64:23
**traveled** [1] - 24:4
**Treasure** [1] - 5:17
**treat** [1] - 20:15
**treated** [2] - 63:3, 81:19
**treatment** [4] - 52:8, 61:2, 63:23, 63:24
**treats** [1] - 85:3
**trial** [13] - 8:2, 34:12, 51:12, 58:25, 59:1, 59:3, 60:19, 86:7, 86:10, 86:16, 87:19, 88:2, 88:3
**tried** [10] - 40:7, 52:17, 53:5, 53:7, 54:24, 55:14, 56:2, 62:19, 63:9, 73:14
**trip** [3] - 59:4, 89:13, 89:14
**trivial** [1] - 53:1
**true** [5] - 23:15, 42:4, 44:4, 51:25, 73:24
**try** [4] - 5:9, 37:20, 54:20, 93:5
**trying** [8] - 10:3, 37:11, 52:25, 58:18, 60:20, 74:6, 74:16, 86:15
**turn** [1] - 3:23
**turnout** [3] - 64:3, 64:5, 84:7
**turns** [1] - 12:16
**tweets** [1] - 29:15
**Twenty** [13] - 31:6, 32:10, 32:12, 32:21, 33:10, 33:16, 33:25, 54:10, 56:1, 56:17, 58:2, 60:17, 91:4
**Twenty-sixth** [13] - 31:6, 32:10, 32:12, 32:21, 33:10, 33:16, 33:25, 54:10, 56:1, 56:17, 58:2, 60:17, 91:4
**twice** [1] - 27:5
**two** [30] - 6:24, 8:9, 11:5,

12:6, 14:22, 15:12, 18:25,
19:17, 20:3, 20:17, 26:19,
26:25, 27:2, 27:4, 30:4,
34:25, 35:1, 39:7, 44:11,
44:23, 50:11, 53:7, 58:4,
58:8, 63:11, 65:14, 65:15,
65:16, 76:18, 90:16
**two-part** [1] - 39:7
**two-week** [1] - 30:4
**TX** [3] - 2:6, 2:12, 2:15
**Tyler** [2] - 2:3, 5:15
**type** [6] - 33:13, 66:13, 79:1,
79:4, 89:15, 89:17
**types** [2] - 60:7, 92:20

## U

**ultimate** [2] - 38:8, 69:5
**ultimately** [3] - 36:9, 84:7,
90:24
**uncertain** [1] - 86:19
**under** [24] - 8:4, 8:16, 14:19,
18:10, 19:14, 23:18, 25:1,
30:2, 30:10, 31:11, 32:11,
34:6, 34:8, 37:3, 38:6,
38:7, 39:6, 47:25, 49:9,
53:24, 56:1, 56:17, 60:17,
69:13
**underlying** [1] - 14:11
**undisputed** [1] - 26:18
**undone** [1] - 41:8
**unfortunate** [1] - 43:17
**unfortunately** [2] - 59:13,
66:18
**unique** [6] - 52:19, 52:20,
57:9, 58:19, 61:1, 63:25
**uniquely** [1] - 62:12
**UNITED** [2] - 1:1, 1:11
**United** [2] - 58:11
**University** [2] - 72:24, 77:19
**university** [2] - 77:7, 77:8
**unlike** [1] - 35:16
**unrelated** [1] - 49:10
**unsatisfactory** [1] - 87:3
**up** [21] - 4:5, 5:7, 5:25, 11:8,
12:5, 12:15, 13:10, 13:16,
25:4, 38:25, 42:13, 42:21,
43:23, 56:9, 61:4, 66:24,
68:20, 78:10, 78:15, 83:12,
87:8
**update** [2] - 9:3, 82:1
**urge** [1] - 93:5
**US** [1] - 2:4
**users** [3] - 7:1, 28:16, 32:11
**uses** [1] - 66:14

## V

**value** [1] - 7:14
**values** [1] - 91:7

**variation** [1] - 44:25
**varies** [1] - 81:8
**vast** [1] - 43:6
**Veasey** [26] - 30:20, 30:23,
31:2, 31:3, 31:7, 31:12,
31:16, 32:1, 32:3, 34:8,
34:16, 35:16, 37:1, 38:2,
38:3, 39:5, 39:19, 40:25,
42:19, 54:16, 56:25, 57:5,
59:19, 64:1, 84:4, 85:7
**vehicle** [1] - 90:1
**vehicles** [1] - 89:25
**vertically** [1] - 19:24
**VIA** [2] - 1:13, 3:3
**viable** [1] - 34:1
**video** [3] - 3:16, 4:6, 5:12
**View** [94] - 7:17, 7:18, 10:25,
12:11, 12:13, 12:25, 13:6,
15:25, 16:2, 17:16, 18:16,
18:17, 20:7, 20:12, 20:23,
22:5, 22:10, 23:9, 23:14,
23:20, 23:22, 24:6, 24:9,
24:18, 26:5, 26:14, 26:20,
30:3, 30:12, 30:15, 36:4,
36:5, 42:18, 48:7, 48:12,
52:4, 52:5, 52:8, 53:14,
60:22, 61:4, 61:6, 61:8,
61:10, 61:13, 62:1, 62:6,
62:8, 62:12, 63:3, 63:9,
63:10, 65:9, 65:15, 65:19,
66:8, 66:9, 66:22, 67:5,
67:6, 67:13, 67:15, 67:25,
68:12, 68:17, 71:3, 72:24,
73:4, 73:6, 73:7, 73:17,
75:20, 76:8, 77:3, 77:19,
78:6, 78:18, 80:2, 80:8,
81:18, 81:23, 82:2, 83:3,
83:10, 85:18, 85:19, 88:23,
89:21, 90:22, 91:20, 91:22
**view** [8] - 30:22, 31:3, 33:12,
34:11, 49:17, 51:23, 87:17,
92:12
**View's** [1] - 61:15
**views** [3] - 32:20, 79:19,
87:17
**violated** [1] - 49:6
**violates** [3] - 33:14, 33:15,
54:9
**violation** [1] - 48:24
**Virginia** [1] - 41:1
**visited** [2] - 59:12, 59:13
**voice** [4] - 7:6, 15:5, 75:8,
90:23
**voices** [2] - 71:10, 80:24
**VOLUME** [1] - 1:12
**voluntarily** [1] - 74:10
**voluntary** [1] - 93:4
**vote** [30] - 8:22, 23:21, 24:2,
24:8, 27:14, 28:7, 28:8,
28:11, 28:13, 29:17, 29:18,

31:10, 35:7, 35:19, 40:5,
41:7, 41:24, 53:15, 54:3,
64:1, 66:15, 67:21, 83:13,
84:8, 84:10, 90:1, 90:3
**voted** [1] - 62:6
**voter** [8] - 9:3, 14:6, 32:1,
41:20, 82:1, 82:3, 82:4,
84:23
**voters** [36] - 7:3, 23:9, 23:20,
24:5, 27:13, 28:17, 35:22,
35:23, 36:4, 41:15, 42:2,
42:5, 52:4, 52:5, 54:5,
54:6, 57:10, 57:17, 57:19,
58:5, 59:20, 61:14, 62:10,
62:11, 63:2, 63:10, 66:19,
66:21, 66:22, 67:3, 67:15,
67:17, 77:4, 85:19, 89:21
**votes** [2] - 20:7, 39:20
**Voting** [9] - 31:12, 39:20,
48:17, 49:3, 49:6, 49:9,
66:3, 91:3, 92:7
**voting** [147] - 6:24, 7:1, 7:5,
7:7, 7:9, 7:21, 7:23, 8:14,
8:19, 8:20, 8:24, 9:5, 9:8,
9:10, 10:22, 10:25, 11:2,
11:3, 11:4, 11:11, 11:13,
11:17, 11:18, 11:23, 12:7,
12:24, 13:2, 13:4, 14:20,
14:24, 15:7, 15:18, 15:24,
16:2, 16:5, 16:8, 16:13,
18:10, 18:24, 19:15, 20:10,
21:5, 22:11, 23:11, 23:13,
23:15, 23:25, 26:19, 26:20,
26:21, 26:24, 27:1, 27:2,
27:5, 27:10, 27:25, 28:5,
28:10, 28:20, 29:20, 29:25,
30:8, 31:10, 32:22, 36:5,
40:11, 42:6, 42:9, 43:3,
45:13, 46:6, 52:4, 52:21,
53:2, 53:4, 53:9, 61:11,
61:12, 61:15, 61:18, 61:23,
62:1, 62:4, 62:17, 62:19,
64:15, 64:24, 65:2, 65:11,
65:13, 66:14, 66:15, 66:21,
66:25, 67:17, 67:18, 67:20,
68:12, 69:8, 69:18, 69:23,
70:22, 71:2, 71:8, 71:19,
72:22, 73:21, 73:24, 75:22,
77:21, 78:11, 79:20, 80:6,
80:16, 81:6, 81:7, 81:9,
81:12, 81:17, 81:22, 81:24,
82:5, 82:8, 82:18, 83:13,
83:17, 83:24, 84:8, 84:25,
85:21, 88:24, 89:1, 89:2,
89:3, 89:9, 89:10, 92:13
**VS** [1] - 1:4
**vs** [1] - 3:13

## W

**wade** [1] - 36:15
**wading** [1] - 36:20
**wait** [4] - 15:11, 27:18, 29:12,
79:10
**waiting** [1] - 28:7
**walk** [7] - 12:21, 24:14, 25:1,
26:1, 26:2, 26:10, 59:8
**walked** [1] - 62:20
**Walker** [1] - 35:10
**walking** [3] - 12:15, 26:4,
36:5
**Waller** [66] - 2:14, 2:20, 3:13,
4:23, 5:1, 7:2, 7:9, 12:11,
14:16, 14:22, 14:23, 15:1,
15:6, 18:13, 19:18, 19:19,
19:20, 19:23, 20:5, 20:16,
20:17, 20:21, 20:22, 20:23,
20:24, 21:8, 21:9, 22:8,
22:13, 22:15, 23:1, 23:21,
24:1, 24:12, 24:18, 27:11,
30:6, 30:14, 39:12, 42:2,
42:5, 43:2, 44:24, 51:22,
52:9, 52:13, 52:16, 57:10,
58:12, 58:20, 59:15, 60:21,
61:7, 61:17, 62:11, 63:9,
63:14, 67:11, 69:8, 72:5,
75:6, 77:4, 81:21, 85:22,
91:14
**wants** [1] - 75:5
**WC** [1] - 17:19
**week** [11] - 18:25, 23:13,
30:4, 46:7, 64:25, 65:14,
65:15, 65:16
**weekday** [1] - 11:18
**weekdays** [1] - 45:12
**weekends** [3] - 11:15, 45:9,
46:9
**weeks** [8] - 11:5, 12:6, 15:13,
16:15, 23:15, 28:4, 65:12,
86:13
**weighing** [1] - 36:20
**weighs** [1] - 10:19
**welcome** [2] - 3:10, 48:13
**well-recognized** [1] - 85:5
**whatsoever** [1] - 41:20
**white** [3] - 65:7, 67:2, 67:10
**whole** [5] - 9:6, 47:15, 51:7,
61:18
**wholly** [2] - 54:11, 61:21
**win** [2] - 39:15, 51:11
**window** [1] - 47:24
**windows** [1] - 20:10
**wonder** [1] - 6:3
**wondered** [1] - 16:4
**wondering** [2] - 6:10, 6:13
**word** [1] - 68:6
**workers** [1] - 15:10
**workplace** [1] - 42:7

**works** [1] - 50:13
**worse** [2] - 63:2, 63:5
**worthy** [1] - 8:1
**wrist** [1] - 69:12
**write** [2] - 21:20, 21:21
**writing** [1] - 74:19
**written** [1] - 86:18

## Y

**y'all** [4] - 46:16, 49:21, 49:22, 87:24
**year** [4] - 13:3, 60:10, 78:17
**years** [1] - 83:6
**yesterday** [1] - 32:17
**yesterday's** [3] - 53:25, 55:25, 56:18
**York** [1] - 1:21
**you-all** [1] - 46:5
**young** [9] - 52:9, 54:5, 54:6, 57:17, 57:19, 57:21, 58:5, 61:8, 65:10

## Z

**zeroed** [1] - 58:3
**ZOOM** [2] - 1:13, 3:3
**Zoom** [2] - 3:15, 44:7