

PLAINTIFF'S
EXHIBIT

**167**

# EXHIBIT A

# Parties' Admissions of Fact

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| DAMON JOHNSON, TREASURE SMITH, and THE PANTHER PARTY, <br><br> *Plaintiffs*, <br><br> v. <br><br> WALLER COUNTY, TEXAS; THE WALLER COUNTY COMMISSIONERS COURT; JUDGE CARBETT "TREY" J. DUHON III, in his official capacity as the Waller County Judge; CHRISTY A. EASON, in her official capacity as the Waller County Elections Administrator, <br><br> *Defendants*. | Civil Case No. 4:18-cv-03985-CRE |

## PARTIES' PROPOSED STIPULATIONS OF FACT

1

**Plaintiffs**

1.       Each Individual Plaintiff, Mr. Johnson and Ms. Smith, is over 18 years old, a U.S. citizen, and a Texas resident.

2.       Plaintiff Johnson is a Black registered voter and resident of Waller County, and an undergraduate student at Prairie View A&M University ("PVAMU"), who is majoring in architecture. As of November 2018, Mr. Johnson was a nineteen-year-old freshman at PVAMU who lived off campus and did not own a car. Mr. Johnson has served on PVAMU's Student Government Association and is a member of the PV Consulting Association, Chemistry Club, American Institute of Chemical Engineers, Melanin, and Speech and Debate Club. He was also a freshman coach for the step-off and stroll-off competitions. Mr. Johnson voted in the March 2018 primary and the November 2018 general election at the on-campus Memorial Student Center ("MSC") during early voting. He has never been to the off-campus Waller County Community Center ("WCCC").

3.       Plaintiff Smith is a Black registered voter and resident of Waller County, and an undergraduate student at PVAMU, who is majoring in criminal justice. As of November 2018, she was a twenty-year-old sophomore at PVAMU. She worked approximately 20–22 hours per week at an on-campus job and was a member of IGNITE, an organization that seeks to increase women's involvement in politics at PVAMU, as well as PVAMU's speech and debate team. As of November 2018, Ms. Smith lived off campus in the Panther Hill Apartments and did not have a car. As of November 2018, Ms. Smith relied on a PVAMU shuttle or rides from friends to travel to and from campus. Ms.

Smith voted in the March 2018 primary and the November 2018 general election at the on-campus MSC during early voting. She has never been to the off-campus WCCC.

4.     Organizational Plaintiff is The Panther Party ("TPP"). TPP is a student and alumni organization at PVAMU dedicated to addressing and improving the social, political, economic, and historical landscape at PVAMU, and in Prairie View, on behalf of Black and Latino people, as well as anyone who has been oppressed or disadvantaged. Two former PVAMU undergraduate students founded TPP in 2017.

5.     Members of TPP include Black and Latino student voters between the ages of eighteen and twenty-one years old who are registered to vote in the City of Prairie View. Some of these individuals and other TPP members have advocated for the voting rights and political participation of PVAMU students and Prairie View residents, including during the 2018 election season. TPP and its members, including Joshua Muhammad, Kirsten Budwine, and Antonious Brown, have also testified at Commissioners Court hearings, including the October 17, 2018 meeting.

6.     Examples of members of Organizational Plaintiff include:

   a) Jayla Allen is a Black PVAMU alumna who previously served as an individual plaintiff in this suit before voluntarily withdrawing. ECF 79.[1] During the fall of 2018, Jayla was a resident and active registered voter in Waller County, nineteen-years-old, a sophomore at PVAMU, chair of Rock the Vote at PVAMU's campus and a member of IGNITE. Ms. Allen is an alumna member of TPP.

   b) Joshua Muhammad is a Black PVAMU alumnus who previously served as an individual plaintiff in this suit before voluntarily withdrawing. ECF 37. During the fall of 2018, Mr. Muhammad was a resident and active

---

[1] References to page numbers in docket entries refer to ECF file-stamped page numbers.

registered voter in Waller County, and was a PVAMU student who majored in electrical engineering. During his time at PVAMU, Mr. Muhammad was involved in PVAMU's student government and co-founded the Panther Party. Mr. Muhammad remains on the Panther Party's board of directors.

**Defendants**

7.      Defendants are Waller County, Texas; the Waller County Commissioners Court; Judge Carbett "Trey" J. Duhon III, in his official capacity as the Waller County Judge; and Christy A. Eason, in her official capacity as the Waller County Elections Administrator.

8.      Defendant Waller County, Texas, is a political subdivision of the State of Texas.

9.      Defendant Waller County Commissioners Court (the "Commissioners Court") is the governing body for Waller County. The five-member Commissioners Court includes the County Judge, who is elected at-large (i.e., countywide) and four Commissioners, who are elected from four single-member districts. The Commissioners Court has authority over the County's budgetary and administrative decisions, including decisions concerning early voting days, hours, and locations. Four members of the Commissioners Court are white people. The fifth Commissioner, Mr. Jeron Barnett, is Black and is elected from a majority-Black district.

10.     Defendant Judge Carbett Duhon III ("Judge Duhon") is sued in his official capacity as the County Judge and as a representative member of the Commissioners Court.

11.     Defendant Christy Eason ("Elections Administrator Eason") is sued in her official capacity as the Waller County Elections Administrator and the chief elections official in Waller County.

**Procedural History**

12.     Plaintiffs filed this lawsuit on October 22, 2018, asserting several causes of action that are all predicated on Defendants' alleged abridgement of Black voters' and PVAMU students' right to vote because of Defendants' adoption and maintenance of the 2018 early voting plan for Waller County. ECF 1. Specifically, Plaintiffs alleged that Defendants' actions violated the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. Constitution and Section 2 of the Voting Rights Act. *Id*. at ¶¶ 81, 84, 88, 93.

13.     Defendants filed a Rule 12(b)(6) motion to dismiss on January 7, 2019. ECF 34. In their motion, Defendants argued that the 2018 early voting plan did not abridge Plaintiffs' right to vote. *See id.* at 9. Therefore, Defendants claimed, Plaintiffs "failed to plead facts plausibly supporting their claims." *Id.* Plaintiffs filed a response in opposition to Defendants' motion to dismiss. ECF 39. In opposition to Defendants' motion, Plaintiffs argued that the Original Complaint "sufficiently plead[ed] facts to state four claims for declaratory and injunctive relief under the Fourteenth, Fifteenth, and Twenty-Sixth Amendments to the U.S. Constitution and Section 2 of the Voting Rights Act." *Id.* at 1. Defendants then filed a reply on February 7, 2019, in which they maintained that the "Plaintiffs' allegations fail to show that Waller County's 2018 early voting calendar abridged their right to vote on account of their race, age, or status as students, much less that the plan was adopted with that intent." ECF 42 at 19.

14.     On April 26, 2019, Plaintiffs filed an amended complaint, ECF 49, and Defendants renewed their Rule 12(b)(6) motion to dismiss, ECF 51.[2]

15.     On January 24, 2020, Defendants filed a motion for summary judgment. ECF 73. Because Defendants' motion to dismiss was still pending before the Court, on February 26, 2020, the Court ordered Defendants to submit their position as to whether the motion to dismiss was mooted by their motion for summary judgment. ECF 83. Defendants maintained that their motion to dismiss was not moot, ECF 84; on March 13, 2020, the Court denied Defendants' motion to dismiss and set Defendants' motion for summary judgment for oral argument on April 1, 2020, ECF 85, which by the parties' agreement was rescheduled to June 5, 2020. On May 29, 2020, Defendants filed an answer to Plaintiffs' amended complaint. ECF 94.

16.     The Court heard oral argument on Defendants' motion for summary judgment on June 5, 2020. ECF 104 at 5. The Court found disputes of material fact to exist and orally denied the motion with an order to follow. *Id.* The Court further ordered the parties to submit simultaneous briefing on several issues: (1) whether HB1888 mooted the case; (2) whether PVAMU is an indispensable party to the request for injunctive relief; and (3) whether PVAMU would have sovereign immunity regarding the Court's ability to

---

[2] The Court denied Defendants' original Rule 12(b)(6) motion on August 27, 2019. ECF 62. The Court reasoned that Defendants' original motion was moot since Plaintiffs had amended their complaint and Defendants had filed a second Rule 12(b)(6) motion in response to the amended complaint. *Id.*

order relief.[3] The parties filed their supplemental briefs on June 19, 2020. ECF 100, ECF 101. The Court also ordered the parties to attend mediation.

17.     On July 15, 2020, the Court issued a written opinion denying Defendants' motion for summary judgment. ECF 104. The Court reasoned that the record was inadequate to conclude, as a matter of law, that Defendants neither denied nor abridged Plaintiffs' right to vote. *Id.* at 6.

18.     Following the Court's denial of Defendants' motion for summary judgment, the parties attended a mediation conducted by remote means on July 23, 2020. ECF 105. The Honorable Nancy K. Johnson served as mediator, and the parties engaged in good-faith negotiations. But the case did not settle. *Id.*

19.     On September 28, 2020, the case proceeded to a ___ day bench trial before this Court. The Court, having considered all of the testimony, evidence, and arguments presented by the parties, hereby enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

**Historical Discrimination in Texas**

20.     After the end of the enslavement of Black Americans following the Civil War in the late 1800s, for much of the 20th century, Black Americans were denied the equal opportunity to vote in Texas through the "white primary" system and other policies and practices that unconstitutionally prevented Black Americans from participating in the franchise.

---

[3] The Court's oral order is evident by a June 5, 2020 docket entry between ECF 95 and ECF 96.

21.     Texas's history of racial discrimination in voting is documented and judicially recognized, including by this Court.

22.     One of the relatively early examples of Texas's history of racial discrimination in voting is the 1923 Terrell Law. The 1923 Terrell Law explicitly forbade Black Americans from participating in voting in the Democratic Primary at a time when Texas stood out as virtually a one-party state. In *Nixon vs. Herndon*, 273 U.S. 536 (1927), the U.S. Supreme Court ruled against the Terrell Act and the constitutionality of the white primary system. *Id.*

23.     The Supreme Court's decision in *Smith v. Allwright*, 321 U.S. 649 (1944), began the process of eliminating the white primary. But further obstacles—from poll taxes to violent intimidation—still existed that prevented most Black citizens from exercising their right to vote.

24.     Since the passage of the Voting Rights Act ("VRA") in 1965, Texas and some local officials have adopted and maintained forms of voter suppression.

25.     Between 1975—when Texas and its sub-jurisdictions came to be required to preclear all voting changes with the U.S. Department of Justice or three-judge court federal court in D.C.—and 2006, when Congress most recently reauthorized the VRA, the Department of Justice issued 201 objections to proposed Texas election changes under Section 5 of the VRA.

26.     Some of the state's redistricting plans have been found to be discriminatory because they resulted in Black voters having less opportunity to participate in elections and elect candidates of their choice. A three-judge federal court found that "in every

decade since 1970 Texas has passed one or more redistricting plans after the [decennial] census that have been declared either unconstitutional or violations of the VRA."

27.     Following the 2010 Census, Texas failed to gain approval to enact state house and congressional redistricting plans under Section 5 of the VRA, requiring the State—with guidance from the U.S. Supreme Court in *Perry v. Perez*, 656 U.S. 388 (2012)—to implement remedial plans to address the voting discrimination.

28.     On June 25, 2013, the U.S. Supreme Court issued a decision, *Shelby County, Alabama v. Holder*, 570 U.S. 529 (2013), which invalidated Section 4 of the VRA and thus ended Texas's obligations under Section 5 of the VRA, the provision that had required Texas and its sub-jurisdictions to preclear all voting changes with the federal government since 1975. Thereafter, on June 25, 2018, the U.S. Supreme Court in *Abbott v. Perez*, 138 S. Ct. 2309 (2018) affirmed a federal three-judge court's decision that found the Texas Legislature racially gerrymandered a Latino-majority State House district in Fort Worth. *Id.*

**Historical Discrimination in Waller County**

29.     The majority-Black city of Prairie View and Texas's oldest historically Black university, PVAMU, are located in Waller County, Texas. The City of Prairie View stands on parts of the former Alta Vista plantation that enslaved Black people, operated by Colonel Jared Ellison Kirby, a direct descendent of Jared Ellison Groce, one of the original 300 settlers in what became the state of Texas.

30.     Between 1971 and 1979, the Waller County tax assessor-collector and voting registrar, Leroy Symm, imposed residency requirements on PVAMU students to

prevent them from registering and voting if they could not prove they planned to reside in Waller County after graduation. In 1976, after the Waller County tax assessor-collector and voting registrar required PVAMU students to complete a questionnaire—not required by students attending the predominantly white University of Texas—to register to vote.

31. Thus, even after the passage of the VRA of 1965, the Waller County tax assessor-collector and voting registrar erected barriers to registering that prevented nearly all PVAMU students from voting in the 1972 presidential elections, the 1974 midterm elections, and the bicentennial election of 1976. A three-judge federal district court, in a ruling that was summarily affirmed by the Supreme Court, held that the tax assessor-collector and voting registrar applied an unconstitutional presumption of non-residency on the students and improperly denied Black PVAMU students the right to vote on that basis. *U.S. v. State of Texas,* 445 U.S. 1245, 1262 (S.D. Tex. 1978) (three-judge court), *aff'd sub nom. Symm v. U.S.,* 439 U.S. 1105 (1979).

32. In 1992, the Waller County District Attorney attempted to prosecute PVAMU students for "illegally voting."

33. In 2003, then-Waller County District Attorney Oliver Kitzman, who was not involved in the prior attempted prosecutions in 1992, was understood to have threatened to prosecute PVAMU students who did not meet his definition of being a Waller County resident, which directly contravened *Symm v. United States*, 439 U.S. 1105 (1979). Kitzman denied the allegations but acknowledged in hindsight that some PVAMU students could reasonably perceive that his statements were threatening. At that time,

PVAMU students comprised twenty percent of the voting-age population in Waller County.

34.     Defendant Duhon testified to his general awareness of the historical allegations of voting discrimination directed at Black Waller County voters, including Black PVAMU students.

## Socioeconomic Demographics in Waller County

35.     The City of Prairie View is unique among cities in Waller County in that Prairie View's voting-age population ("VAP") is overwhelmingly Black and predominantly aged 18 through 20.[4] Among Prairie View residents who are at least 18 years old and thus old enough to be eligible to vote, 92% are Black and 54% are aged 18 through 20. No other city in Waller County has a VAP that is more than 8% aged 18 through 20. However, in both the City of Hempstead and Brookshire, Black VAP outnumbers Anglo VAP.

36.     Additionally, as found by Plaintiffs' expert, according to the Census Bureau's 2011-2015 American Community Survey (ACS) data that is reported by Plaintiffs' expert, William Cooper, the CVAP of:

    a.   Prairie View is 5,524 and the CVAP is 79% (4,364) Black.

---

[4] Except where explicitly stated otherwise, all stipulations herein are to demographic figures as contained in the 2010 census or 2013-2017 American Community Surveys (ACS) data. Defendants do not stipulate that these figures represent the specific demographic breakdowns within Waller County or Prairie View in 2018 or since. Further, given the nature of the ACS data, which provides an average over a five-year period, Defendants do not stipulate that the ACS data represents the specific demographic breakdown at any given date within the estimation period.

    b.   Brookshire is 2,702 and the CVAP is 50.9% (1,376) Black, 28.5% (769) Anglo, and 19.7% (533) Latino.

    c.   Hempstead is 3,810, and the CVAP is 65.4% (2,492) Black, 28.9% (1,099) Anglo, and 12.5% (474) Latino.

    d.   Katy is 10,515, and the CVAP is 3.5% (364) Black, 77.1% (8,102) Anglo, and 16.3% (1,712) Latino; and

    e.   Waller is 1,433, and the CVAP is 18.9% (271) Black, 69% (989) Anglo, and 10.7% (153) Latino.

37.     Approximately 83% of the students at PVAMU, which is located entirely in Prairie View, identify as Black.

38.     According to the Census Bureau's ACS data that is reported and contextualized by Plaintiffs' experts: 58.3% of Black residents of Prairie View lived below the poverty line in the last 12 months, as compared to 7.3% of white residents countywide; the per capita income for Black residents of Prairie View was $5,979, as compared to $37,458 for white residents countywide; 19.2% of Black residents of Prairie View between 16-64 years of age were unemployed, as compared to 4.1% of white residents countywide; and 17.5% of Black households in Prairie View participated in SNAP, as compared to 8.4% of white households countywide.

39.     Among individuals who were employed, as Mr. Cooper reported and will testify, over a third (35.7%) of Black workers in Prairie View worked in service positions, as compared to 15.7% of white workers countywide.

40.     2013–2017 ACS data reflects disparities in educational attainment between Black people in Prairie View and white people in Waller County as a whole. Among residents over 25 years old, 17.9% of Black people in Prairie View have less than a high school diploma, as compared to only 9.3% of white people countywide.

41.     Mr. Cooper also reported and will testify that access to private vehicles is lower among Prairie View's Black population than among the white population countywide. Among employed individuals aged 16 and older, 2013–2017 ACS data reflects that fewer than half (46.8%) of Black workers in Prairie View drove to work alone in cars, as compared to 81% of white workers countywide. More than one-fourth (26.7%) of Black workers in Prairie View walked to work, as compared to 2% of white workers countywide.

42.     Among PVAMU students who are employed, nearly half (48%) walked to work.

43.     Defendant Duhon read from the Waller County Comprehensive Plan from 2017, which states "the city of Prairie View has the most [living under poverty] due to the student population."

44.     Defendants' expert Dr. James Gimpel testified that socioeconomic indicators and disparities may be one relevant factor in assessing the impact of laws on voting behaviors.

**Demographics of Waller County**

45.     PVAMU, a historically Black University, was founded in 1876 and is the only university in Waller County. Over 80% of PVAMU's 8,000-plus students are Black

13

people. As of the 2013-2017 ACS estimate, eighty percent of Prairie View's CVAP is Black, and 54% of Prairie View's VAP is 18-20.

46.     Prairie View is the only city in Waller County where a majority of voters are both Black and students, and no city in Waller County has as-high a percentage of Black voters. Nowhere else do voters aged 18-20 constitute more than 8%. As of the 2013-2017 ACS data, including Prairie View, 51.6% of Waller County's CVAP is white, and only 13.6% of its VAP is 18-20.

47.     2013–2017 ACS data further indicates that Black people in Prairie View are socioeconomically disadvantaged, as compared to white people in Waller County and Prairie View, in poverty rates, income, employment rates, transportation access, and educational attainment.

48.     Although Waller County Commissioner Precinct 3, based on its overall population, is an electoral district comprised of a majority of Black residents, the Black population within Precinct 3 is not distributed evenly. Precinct 3 includes five electoral precincts: 309, 310, 311, 312, and 313. These precincts constitute two distinct areas: Precincts 309 and 310 to the north ("the Prairie View precincts"), and Precincts 311, 312, and 313 to the south, ("the Monaville precincts"). Although they constitute one Commissioner Precinct (3), the Prairie View precincts (309 and 310) and the Monaville precincts (311, 312, and 313) are unlike each other in terms of their racial and age-related demographics.

49.     Geographically, Precinct 309 is centered around the PVAMU campus. As of November 6, 2018, Precinct 309 had 4,834 registered voters. Precinct 310 is adjacent

14

to 309 and includes most of the off-campus areas of the City of Prairie View. Precincts 309 and 310, combined, comprise approximately 55% of Precinct 3's overall residents and approximately 60% of Precinct 3's residents of voting age. During elections, these two electoral precincts are generally served by polling locations in the City of Prairie View. Precincts 311, 312, and 313 are relatively distant from the City of Prairie View or the PVAMU campus, and generally are served during elections by polling locations in or around Monaville, an unincorporated area.

50.     Demographically, the Prairie View precincts and the Monaville precincts differ. According to the 2010 census, the Prairie View precincts (Precincts 309 and 310) are home to a VAP that is majority (87%) Black. More than half (52%) of the voting-age residents of these two Prairie View precincts are aged 18, 19, or 20. The Monaville precincts (311, 312, and 313) are home to a VAP that is majority (60%) white. Only a small fraction (6%) of the voting-age residents of these three Monaville precincts are aged 18, 19, or 20.

51.     Since the 2010 Census, as Mr. Cooper reports, Waller County has undergone significant demographic change, mirroring trends in the State of Texas overall. ECF No. 77-1 at 226-27. Among U.S. citizen who are over 18 and thus eligible to vote, the Black and Latino CVAP in Waller County have each increased countywide by about two percentage points at mid-decade, while white CVAP decreased by slightly more than two percentage points, from 54.15% to 51.6%.

52.     According to Defendant Duhon, Waller County is one of the fastest growing counties in Texas.

53.     From Spring 2010 to Fall 2018, PVAMU's overall population of enrolled students grew from 8,178 to 9,516.

**The Extent to which Black People Have Been Elected to Public Office in Waller County**

54.     Presently, there are no Black elected officials in positions in Waller County government that are elected countywide.

55.     Defendant Waller County's official canvass results demonstrate that Precinct 3 Commissioner Jeron Barnett, who is Black, was an unsuccessful candidate for the countywide position of Waller County Sheriff in 2008, before running for his current office from a majority-Black district.

**Early Voting in Texas**

56.     In person early voting enables registered voters to cast their ballot in person at a polling location before election day.

57.     For those states that offer in person early voting, the period for voting, including the days and times on which the state offers early voting, varies. At the time of the 2018 election which is the basis of this lawsuit, and prior to the passage of Texas H.B. 1888 in 2019, Texas allowed local election authorities the discretion to offer early voting at temporary polling locations and to set the days and hours at those locations. The Texas Election Code only requires early voting to be held at one location in each county, known as the Main Early Voting Polling Place (MEVPP). Tex. Elec. Code §§ 81.001 and 85.002. In a county such as Waller, in which the county clerk is the early voting clerk, although in Waller county the election duties of the county clerk have been transferred to Eason as

the Elections Administrator, the Main Early Voting Place may be located in any room selected by the clerk that houses the county clerk's main business office. Tex. Elec. Code § 85.002(b); *see also* § 31.043. However, if a county commissioners court determines that the location of the polling place in that building is impracticable, the court may designate a different location in the city in which the clerk's office is located, as near as is practicable to the clerk's business office. *Id*. at § 85.002(b).

58. In Texas, the period for in-person early voting for a general election begins on the 17th day before election day and continues through fourth day before election day. Tex. Elec. Code § 85.001. In a county with a population of less than 100,000, in person early voting at the MEVPP must be conducted on the weekdays of the early voting period and during the regular hours of the main business office of the county clerk (or election administrator). In addition to the required weekday voting, an authority ordering an election also has discretion to conduct voting at the MEVPP on one or more Saturdays or Sundays during the early voting period. The ordering authority also has discretion to determine the times for the conduct of weekend voting, if any.

59. In addition to the MEVPP, the Texas Election Code grants the county commissioners court the discretion to establish "Temporary Branch Polling Places" (TBPPs). Tex. Elec. Code § 85.062 (a). Although the statute has since been amended, at time of events made the basis of this suit, a county with a population of less than 100,000, such as Waller, could conduct early voting at a TBPP on any one or more days and during any hours of the period for early voting by personal appearance. *Id*. at § 85.065 (a) and (b). Prior to 2019, the Election Code also explicitly stated that "the schedules for

17

conducting voting are not required to be uniform among the temporary branch polling places." *Id.* at § 85.065(c). Subject to exceptions not applicable here, eligible voters from anywhere in the county wishing to vote early in person may do so at the MEVPP or at any TBPP within the county. *Id.* at §§ 85.003 and 85.066(a).

**Adoption of the 2018 Early Voting Plan**

60.     As a starting point, during the summer of 2018, Defendant Eason created a draft early voting plan with proposed early voting hours and locations.

61.     According to Defendant Duhon, the criteria for setting early voting hours and locations "was done in conjunction with our attorneys and with Christie Eason" regarding who originally came up with the criteria list. Defendant Duhon also testified that he is unaware of the criteria being memorialized in any written policy.

62.     According to Defendant Eason, the criteria have not been reduced to a written policy in the Elections Administrator's Office. Although not a written policy, Defendant Eason testified that she relied on these factors "every single time" for an election.

63.     Defendants' criteria included several factors: (1) "The population of registered voters in the polling precinct, including the number of those voters whose registration is 'in suspense;'" (2) "Historical turnout in the precinct;" (3) "How heavily contested the election is, as demonstrated by how many opposed races are on the ballot; (4) "Number and availability of poll workers;" (5) "Time required to train poll workers;" (6) "Number of controller and voting units, their distribution across polling locations, and their distribution between early voting and election day voting;" and (7) "Accessibility,

ease of use, parking, and security for various locations." "There is a preference for county-owned and/or controlled locations because the County is able to control access and security to the building. Locations that are not County-owned frequently present issues because the County has to rely on a third party to let election workers into the polling location and to lock up after voting." Defendant Eason also considered expected turnout as another factor, and she testified that transportation concerns factor into her decisions for developing an early voting plan.

64.     After Defendant Eason created an initial draft of the early voting plan, she shared the draft with the Waller County Democratic and Republic party chairs for exclusive input and approval at some point in late summer before she submitted her recommendations for early voting locations to Defendant Commissioners Court.

65.     In 2018, Rosa Harris served as the Waller County Democratic party chair.

66.     In 2018, David Luther served as the Waller County Republican party chair.

67.     After input and approval from the party chairs, Defendant Eason proposed an early voting plan with locations only to Defendant Commissioners Court for approval at least three days before Defendant Commissioners Court's August 22, 2018 meeting.

68.     The proposed early voting hours were published on August 31, 2018 in advance of Defendant Commissioners Court's meeting on September 5, 2018.

69.     At that September 5 meeting, no one spoke in opposition to or in support of the proposed plan. Defendant Commissioners Court approved the recommended early voting hours for each location unanimously with no discussion or comment from any Commissioner.

*Original Early Voting Plan*

70.     The parties stipulate that the video recording made of the September 5, 2018 meeting of the Waller County Commissioners Court fairly and accurately reflects the statements and proceedings therein.

71.     The schedule adopted by the Waller County Commissioners Court on September 5, 2018 was the following:

| 2018 GENERAL ELECTION WALLER COUNTY AND ROYAL ISD | EARLY VOTING LOCATIONS | |
| --- | --- | --- |
| DURING EARLY VOTING ALL PRECINCTS AND ENTITIES CAN VOTE AT ANY LOCATION | | |
| **WEEK ONE** | | |
| MONDAY – FRIDAY<br>October 22 – 26, 2018<br>SATURDAY<br>October 27, 2018<br>SUNDAY<br>October 28, 2018 | Waller County Courthouse<br>836 Austin St, Hempstead, Tx | 8am – 5pm<br><br>9am – 2pm<br><br>12pm – 5 pm |
| MONDAY – FRIDAY<br>October 22 – 26, 2018<br>SATURDAY<br>October 27, 2018 | Waller ISD Admin Bldg<br>2214 Waller St., Waller, Tx | 8am – 5pm<br><br>9am – 2pm |
| MONDAY – FRIDAY<br>October 22 – 26, 2018<br>SATURDAY<br>October 27, 2018<br>SUNDAY<br>October 28, 2018 | Waller Co Library Brookshire<br>3815 6th St., Brookshire, Tx | 8am – 5pm<br><br>9am – 2pm<br><br>12pm – 5 pm |
| THURSDAY – FRIDAY<br>October 25 – 26, 2018<br>SATURDAY<br>October 27, 2018 | Fieldstore County Bldg, JP 2<br>27388 Fieldstore Rd., Waller, Tx | 8am – 5pm<br><br>9am – 2pm |
| THURSDAY – FRIDAY<br>October 25 – 26, 2018<br>SATURDAY<br>October 27, 2018 | Monaville County Bldg., JP 3<br>12620 FM 1887, Hempstead, Tx | 8am – 5pm<br><br>9am – 2pm |
| MONDAY – WEDNESDAY<br>October 22 – 24, 2018 | Katy VFW<br>6206 George Bush Dr., Katy, Tx | 8am – 5pm |
| **WEEK TWO** | | |
| MONDAY – WEDNESDAY<br>October 29 – 31, 2018<br>THURSDAY - FRIDAY<br>November 1 – 2, 2018 | Waller Co Courthouse<br>836 Austin St, Hempstead, Tx | 8am – 5pm<br><br>7am – 7pm |
| MONDAY – WEDNESDAY<br>October 29 – 31, 2018<br>THURSDAY - FRIDAY<br>November 1 – 2, 2018 | Waller ISD Admin Bldg<br>2214 Waller St., Waller, Tx | 8am – 5pm<br><br>7am – 7pm |
| MONDAY – WEDNESDAY<br>October 29 – 31, 2018<br>THURSDAY - FRIDAY<br>November 1 – 2, 2018 | Waller Co Library Brookshire<br>3815 6th St., Brookshire, Tx | 8am – 5pm<br><br>7am – 7pm |
| MONDAY – WEDNESDAY<br>October 29 – 31, 2018 | Memorial Student Center<br>PVAMU , Prairie View, Tx | 8am – 5pm |
| THURSDAY – FRIDAY<br>November 1 – 2, 2018 | WC Community Center – PV<br>FM 1098, Prairie View, Tx | 7am – 7pm |

72.     During the <u>second week</u> of the early voting period, under the original plan, three days of early voting (Monday-Wednesday, from 8:00 a.m. to 5:00 p.m.) were scheduled to take place at the on-campus polling site at PVAMU (MSC), for a total of 27 hours. The off-campus WCCC in Prairie View was allocated 24 hours of early voting on the final two days of the early voting period, including extended evening hours from 7:00 a.m. until 7:00 p.m.

73.     During the <u>second week</u>, the Commissioners provided Waller, Brookshire, and Hempstead with five days of early voting, totaling 51 hours, including two days of extended evening hours up until 7:00 p.m.

74.     By contrast, both locations in Prairie View received, in total, 51 hours of early voting, all of which was in the second week, under the original plan.

75.     On October 10, 2018, in response to a citizen petition made pursuant to the Texas Election Code, Defendant Eason proposed additional voting hours on the last Sunday of early voting, which was October 28, 2018, from 12:00 p.m. to 5:00 p.m., at the early voting locations at the Waller County Courthouse and at the Brookshire Library, which was unanimously approved by Defendant Commissioners Court. Based on the original early voting plan, Defendants provided fewer hours during the second week of early voting to locations in Prairie View compared to what they provided in other urban areas of Waller County like the Cities of Waller and Brookshire.

**Voting Equipment**

76. In advance of the 2018 election, Waller County expended resources to update its voting system through the purchase and implementation of the Hart Verity electronic voting system.

77. The Hart system purchased by the County consists of a centralized Verity Controller, Verity Touch Screen tablets, and Verity Access units, which are special voting machines that allow for voting by individuals with certain disabilities, but that can be used by anyone to cast a ballot. The Verity Controller is operated by a poll worker and, among other things, controls each of the Verity Touch Screen tablets and Access units that voters use to cast their ballot. Accordingly, each voter must stop at the Verity Controller to be issued an access code, which then allows them to vote on the Verity Touch Screen tablet or Access unit. A polling location with an additional controller can run two voting lines.

78. In the 2018 general election, the County had a total of 31 controllers, 81 Touch Screen tablets, and 38 Access machines (two of which are used for backup).

79. During the course of the 2018 general election early voting period, Election Administrator Christy Eason allocated 10 Verity Controllers, 31 Verity Touch Screen tablets, and 14 Verity Access units for early voting use. She allocated 20 Verity Controllers, 50 Verity Touch Screen tablets, and 21 Verity Access units for election day. That left a reserve of 1 Verity Controller, and 3 Verity Access units as backups to replace any malfunctioning machines.

80. The following table reflects the allocation of early voting machines during early voting in the 2018 general election:

22



| Equipment Assignment | Controller | Access | Touch |
|---|---|---|---|
| Early Voting | | | |
| Courthouse | 1 | 3 | 6 |
| WISD Admin | 1 | 1 | 3 |
| Brookshire Library | 1 | 1 | 4 |
| Katy VFW | 1 | 1 | 3 |
| JP 3 | 1 | 1 | 2 |
| JP 2 | 1 | 1 | 3 |
| PVAMU Student Ctr | 2 | 3 | 7 |
| PV Community Center | 1 | 1 | 2 |
| PV City Hall | 1 | 2 | 1 |
| | 10 | 14 | 31 |

*October 17, 2018 Commissioners Court Meeting*

81.     The parties stipulate that the video recording made of the October 17, 2018 meeting of the Waller County Commissioners Court fairly and accurately reflects the statement and proceedings therein.

*October 24, 2018 Commissioners Court Meeting*

82.     The parties stipulate that the video recording made of the October 24, 2018 meeting of the Waller County Commissioners Court fairly and accurately reflects the statements and proceedings therein.