# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DAMON JOHNSON, TREASURE SMITH, and THE PANTHER PARTY, <br> *Plaintiffs*, <br><br> v. <br><br> WALLER COUNTY, TEXAS; THE WALLER COUNTY COMMISSIONERS COURT; JUDGE CARBETT "TREY" J. DUHON III, in his official capacity as the Waller County Judge; and CHRISTY A. EASON, in her official capacity as the Waller County Elections Administrator, <br> *Defendants*. | § § § § § § § § § § § § § § § § § | Civil Action No. 4:18-cv-3985 |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW

C. ROBERT HEATH
Texas State Bar No. 09347500
Southern District No. 13381
*bheath@bickerstaff.com*

GUNNAR P. SEAQUIST
Texas State Bar No. 24043358
Southern District No: 1140733
*gseaquist@bickerstaff.com*

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

Table of Contents....................................................................................................i

Table of Authorities..............................................................................................ii

I. The Fifth Circuit recently established the standard for adjudicating Twenty-Sixth Amendment claims. ........................................................................ 1

    A. Denial or abridgement of the right to vote is measured against the nature of the right as it existed at the time of the adoption of the Amendment. ............................................................................... 2

    B. Even if one adopts a more expansive view of the scope of the right to vote, it was not abridged when the Fifth Circuit standard is applied to the facts of this case................................................................. 3

II. A Fifth Circuit opinion released near the end of the trial in this cause found that rules that merely made casting a ballot more inconvenient for some voters are not constitutionally suspect..................................................... 6

III. The Fourth Circuit rejected an overemphasis on prior discriminatory acts in determining whether a legislative act was tainted with discriminatory intent. ........ 7

Conclusion ........................................................................................................... 9

Certificate of Word Count ................................................................................. 10

Certificate of Service ......................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
   __U.S.__, 138 S.Ct. 2305 (2018) ................................................................................ 8

*Allen v. Waller County, Texas*,
   472 F.3d 351 (S.D. Tex. 2020) ................................................................................. 1

*McDonald v. Board of Election Commissioners of Chicago*,
   394 U.S. 802 (1969) .................................................................................................. 2

*North Carolina State Conference of the NAACP v. Raymond*,
   981 F.3d 295 (4th Cir. 2020) (*Raymond*) ............................................................. 8, 9

*State Conference of the NAACP v. McCrory*,
   831 F.3d 204 (4th Cir. 2016) .................................................................................... 8

*Texas Democratic Party II. Texas League of United Latin American*
   *Citizens v. Hughs*,
   978 F.3d 136 (5th Cir. 2020) ............................................................................*passim*

*Texas Democratic Party v Abbott*,
   961 F3d 389 (5th Cir 2020) (*Texas Democratic Party I*). Both the
   Memorandum Opinion and the County's ................................................................ 1

*Texas Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020) (*Texas Democratic Party II*) .............................. 1, 2, 5

*Tully v. Okeson*,
   977 F.3d 608 (7th Cir. 2020) .................................................................................... 2

*Veasey v. Abbott*,
   888 F.3d 792 (5th Cir. 2018) .................................................................................... 8

**Statutes**

Tex. Elec. Code § 82.005 ................................................................................................ 3

TO THE HONORABLE CHARLES R. ESKRIDGE, III:

As part of its submission with the pre-trial order, Waller County offered its pre-trial brief on the legal standards applicable to the claims in this case. Dkt. 117. This supplemental brief does not attempt comprehensively to revisit that submission, but, rather, addresses a few cases that were decided after the earlier brief was submitted.

**I.　The Fifth Circuit recently established the standard for adjudicating Twenty-Sixth Amendment claims.**

As this court noted in its Memorandum and Order Denying Moton for Summary Judgment, *Allen v. Waller County, Texas,* 472 F.3d 351, 363-64 (S.D. Tex. 2020); Dkt 104, at 15-17, the Twenty-Sixth Amendment has received limited judicial and academic gloss. At the time of that memorandum opinion, as well as at the time of Waller County's brief submitted with the pre-trial order, the most recent Fifth Circuit case addressing the amendment was *Texas Democratic Party v Abbott*, 961 F3d 389 (5th Cir 2020) (*Texas Democratic Party I*). Both the Memorandum Opinion and the County's brief relied on that case as the most recent Fifth Circuit discussion of that portion of the Constitution. Since that time, however, the Fifth Circuit more completely and more authoritatively addressed the standard to be used in adjudicating Twenty-Sixth Amendment cases. *Texas Democratic Party v. Abbott,* 978 F.3d 168 (5th Cir. 2020) (*Texas Democratic Party II*).[1] That opinion was released the day before the final oral arguments at the close of the trial. Both parties alluded to the case, but, due to its recent nature, neither party addressed it in any detail.

---

[1] The earlier Fifth Circuit opinion in the same case involved a motion to stay the lower court's preliminary injunction. As the later opinion pointed out, decisions by the motions panel are not binding on the merits panel that hears the case. *Texas Democratic Party II*, 978 F.3d at 176. Thus, the latter case is the one that is precedential.

1

### A. Denial or abridgement of the right to vote is measured against the nature of the right as it existed at the time of the adoption of the Amendment.

The Fifth Circuit conducted a two-part analysis In *Texas Democratic Party II*. The Twenty-Sixth Amendment prohibits denial or abridgement "of the right of citizens of the United States who are eighteen years of age or older to vote . . . on account of age." The court first asked what, at the time the Amendment was proposed and ratified in 1971, was encompassed within the right to vote. Since the issue in *Texas Democratic Party II* was whether persons under the age of 65 had a right under the Amendment to vote absentee by mail, the question the court posed was whether absentee voting was part of the right to vote protected by the Amendment. After examining a contemporaneous Supreme Court opinion,[2] federal legislation enacted near the time of the Amendment, and the practices of the states, it concluded that in 1971 absentee voting was generally permitted for persons who would be outside the jurisdiction on election day but was otherwise unavailable. Or, as the court said, "the right to vote in 1971 did not include a right to vote by mail. In-person voting was the rule, absentee voting the exception." *Texas Democratic Party II,* 978 F.3d at 188. That contemporaneous meaning established the baseline for measuring what the right protected by the Amendment was and whether it had been denied or abridged. *Id.,* at 185, 187-88; *see also, Tully v. Okeson*, 977 F.3d 608, 613-14 (7th Cir. 2020).

*Texas Democratic Party II* easily determined that there had been no denial of the right to vote. The plaintiffs there were not prohibited from voting—*i.e.,* denied the right

---

[2] *McDonald v. Board of Election Commissioners of Chicago,* 394 U.S. 802 (1969).

to vote—but instead were unable to use a particular method of voting—voting by absentee, mail-in ballot. In this case, there is similarly no denial of the right to vote but, at most, an inability to utilize a specific method of voting—in person, no excuse, early voting—to the at the particular times and location the plaintiffs would prefer. Not only was there no denial of the right to vote, but, as is discussed in the next section, in person early voting was a method of voting that was not encompassed within the right to vote at the time of the Amendment's adoption. *Id.,* at 188. Under the *Texas Democratic Party II* reasoning, there can be no denial of the right to vote here.

### B. Even if one adopts a more expansive view of the scope of the right to vote, it was not abridged when the Fifth Circuit standard is applied to the facts of this case.

The central question in this case is whether the three full days of in-person early voting at the Memorial Student Center ("MSC"), combined with the two full days for early voting at the Waller County Community Center ("WCCC") a seven-minute walk away, constituted an abridgement. To replicate the *Texas Democratic Party II* Twenty-Sixth Amendment analysis, we first would need to determine if the right to vote protected by that Amendment extends to no-excuse, in-person, early voting. While in-person early voting is relatively common today,[3] the first state to offer no-excuse, in-person, early voting was Texas,[4] and that did not begin until 1987, more than a decade after the adoption of the

---

[3] By 2020, 39 states offered in-person, early voting, and four had all-mail voting. National Conference of State Legislatures, *State Laws Governing Early Voting,* https://www.ncsl.org/research/elections-and-campaigns/early-voting-in-state-elections.aspx.

[4] TIME MAGAZINE, *This Is How Early Voting Became a Thing,* Oct. 25, 2016 (updated on Nov. 6, 2020), https://time.com/4539862/early-voting-history-first-states/, last accessed March 22, 2021; Acts 1987, 70th Legis., R.S., ch. 472, § 19 (quoted section 82.006) (now codified as Tex. Elec.

Twenty-Sixth Amendment. Since the issue in this case relates to the timing and geographical location of in-person, early voting—a means of voting that did not exist to any great extent, if at all, at the time of the adoption and ratification of the Twenty-Sixth Amendment—it cannot be a part of the right to vote protected by that Amendment. *Id.,* at 189 ("The Amendment, though, is a prohibition against adopting rules based on age that deny or abridge the rights voters already have.").

If, as appears to be the case under the court's analysis, the baseline is defined by the right to vote that existed in 1971—*i.e.,* a right that did not include in-person early voting—then the adoption of an early voting schedule or location that the plaintiffs assert is less favorable to 18-20 years old voters cannot constitute a violation of the Twenty-Sixth Amendment.

While the Fifth Circuit opinion in *Texas Democratic Party II* clearly establishes the baseline as of the date of the adoption and ratification of the Twenty-Sixth Amendment, even if we give its holding a broader interpretation and apply it to the procedure in place prior to the one challenged in the litigation, there still is no violation. The plaintiffs challenge the location and hours for early voting in the 2018 general election, contending that there should have been more early voting at the MSC. In 2018, there were 36 hours

---

Code § 82.005); O. Douglas Weeks, HANDBOOK OF TEXAS, *Election Laws,* http://www.thsaonline.org/handbook/entries/election-laws, last accessed March 21, 2021.

of early voting at the MSC.[5]  In the preceding November general election in 2016, there were 18 hours at that location.[6]

In determining if there was an abridgement of the right to vote, the Fifth Circuit concluded in *Texas Democratic Party II* that

> we hold that an election law abridges a person's right to vote for the purposes of the Twenty-Sixth Amendment only if it makes voting *more difficult* for that person than it was before the law was enacted or enforced. . . . Abridgement of the right to vote applies to laws that place a barrier or prerequisite to voting, or otherwise make it more difficult to vote, relative to the baseline.

*Texas Democratic Party II,* 978 F.3d at 190-191.

Plaintiffs' Twenty-Sixth Amendment claim necessarily fails under this standard as Defendants' 2018 election schedule doubled the number of hours and provided extra machines and a controller allowing two lines to process voters more quickly.[7] Moreover, while in the 2016 general election there were additional early voting hours at the St. Frances Episcopal Church, in 2018, the County provided even an even greater number of hours at the Waller County Community Center, which is even closer to campus.[8] Defendants' 2018 schedule, therefore, made voting *easier*, not more difficult, for voters in Prairie View and cannot amount to an abridgement under the holding in *Texas Democratic Party II*.  *Id.*

---

[5] Ds' Ex. 3, Dkt. 136-1, p. 17-18.

[6] *Id.* at 15

[7] Tr., Vol. 6, 276:7-16.

[8] *Compare* Ds' Ex. 3, Dkt 136-1 at pp. 17-18 with pp. 15-16; *See also* Tr. Vol. 8, 82:12-17.

5

**II.    A Fifth Circuit opinion released near the end of the trial in this cause found that rules that merely made casting a ballot more inconvenient for some voters are not constitutionally suspect.**

Another Fifth Circuit opinion involving challenges to voting practices was issued the same week as *Texas Democratic Party II*. *Texas League of United Latin American Citizens v. Hughs,* 978 F.3d 136 (5th Cir. 2020) (*LULAC*). Like *Texas Democratic Party I*, *LULAC* was decided by a motions panel, so its holding may not be as authoritative as the decision in *Texas Democratic Party II*. Nevertheless, it provides insight into how a panel of the Fifth Circuit addressed issues that are like the ones faced by this court.

*LULAC* challenged Governor Abbott's decision to limit mail-in ballot drop-box locations to one per county. As a result of his directive, some voters in large counties such as Harris County would have to travel many more miles to deposit their ballots than would have been required had the directive not been amended to permit only a single location per county. Just as the MSC early-voting hours that are at issue in this case represent a doubling of the hours that were available during the prior general election, the Fifth Circuit recognized that the 2020 drop-box practice, which permitted ballots to be deposited over a 40-day period, was an expansion of the prior practice in which ballots could be hand delivered only to the early voting clerk and only on a single day. The Fifth Circuit concluded that "one strains to see how it burdens voting at all" and noted that" [h]ow this expansion of voting opportunities burdens anyone's right to vote is a mystery." *LULAC,* 978 F.3d at 144 and 145. The *LULAC* court went on to say that even if one ignored the fact that the practice was an expansion of the prior voting opportunities, there would be "no more than a *de minimis* burden on the right to vote." *Id.,* at 145. It further noted that

6

"rules that merely make casting a ballot more inconvenient for some voters are not constitutionally suspect." *Id.,* at 146.

Here, the plaintiffs were able to vote on any day during the early-voting period at multiple locations in the county. On three days, comprising 36 hours of voting, there was a location at a place where they congregate, eat lunch, and otherwise visit—a convenience not enjoyed by most other residents of the county. On two other days, there was a location less than 500 yards away that offered an additional 24 hours of voting. At most, some students may have experienced some inconvenience compared to some other citizens, but that does not result in a denial or abridgement of electoral opportunity and does not rise to constitutional significance. *See, id.,* at 146, 148.

**III. The Fourth Circuit rejected an overemphasis on prior discriminatory acts in determining whether a legislative act was tainted with discriminatory intent.**

As the county has acknowledged, *see. e.g*., Defendants' Memorandum of Law, Dkt. 117, at 9, there are incidents in the past where the actions of officials of the county have had the effect of restricting PVAMU student participation in elections. It is important, though, that those incidents not be given greater weight than the legal standards permit. As discussed in the earlier Memorandum of Law, the challenged actions took place more than a decade ago and as much as half a century in the past. *Id.* No one on the commissioners court that enacted the voting hours being challenged here was on the court at that time or had any connection with those incidents. *Id.*

The Fourth Circuit addressed the relevance of past discriminatory actions in a case where a much more recent action, adopted by largely the same group of legislators, had

7

been judicially found to have been enacted with discriminatory intent. *North Carolina State Conference of the NAACP v. Raymond,* 981 F.3d 295, 299 (4th Cir. 2020) (*Raymond*). The North Carolina General Assembly enacted several restrictions on voting, including a voter-ID law, that was found by the court of appeals to "have been unlawfully enacted with racially discriminatory intent." *State Conference of the NAACP v. McCrory,* 831 F.3d 204, 215 (4th Cir. 2016). Following the Fourth Circuit decision, the North Carolina General Assembly in 2018 enacted a new, somewhat revised, voter-ID law. Relying in large part on the fact that the same legislators who sponsored and voted for the 2018 law had previously sponsored and supported the invalidated 2013 enactment, the district court found that the discriminatory intent of the 2013 General Assembly was effectively dispositive of the intent of the 2018 legislators who passed the new law. *Raymond,* 981 F.3d at 303-04.

The Fourth Circuit, relying largely on Supreme Court authority as well as citing the Fifth Circuit,[9] determined that the lower court erred by attributing the intent of the 2013 General Assembly to the 2018 Assembly. The court of appeals posed the question by stating that "[t]he outcome hinges on the answer to a simple question: How much does the past matter?" *Id.,* at 298. It then answered its question by concluding that ["[a] legislature's past acts do not condemn the acts of a later legislature, which we much presume acts in good faith." *Id.* By attributing the actions of the past General Assembly to the more recent one, the district court failed to afford the legislature the presumption of

---

[9] *Abbott v. Perez,* __U.S.__, 138 S.Ct. 2305 (2018); *Veasey v. Abbott,* 888 F.3d 792, 801 (5th Cir. 2018).

legislative good faith and improperly flipped the burden of proof. *Id.,* at 303, 305. While the Fourth Circuit acknowledged that past actions have their place in the *Arlington Heights* analysis, they do not eliminate or lessen the presumption of good faith that must be afforded to the legislative body. *Id.* at 303.

**Conclusion**

The more recent case law underscores and reinforces the discussion in the defendants' previously filed Memorandum of Law. The actions of Waller County in establishing hours and locations for early voting in the 2018 election did not violate any statutory or constitutional requirement.

Respectfully submitted,

By: */s/ C. Robert Heath*
C. ROBERT HEATH
Texas State Bar No. 09347500
Southern District No. 13381
*bheath@bickerstaff.com*

GUNNAR P. SEAQUIST
Texas State Bar No. 24043358
Southern District No: 1140733
*gseaquist@bickerstaff.com*

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

**ATTORNEYS FOR DEFENDANTS**

# CERTIFICATE OF WORD COUNT

Pursuant to S.D. Tex., Hon. Charles R. Eskridge III, Court Procedures, Rule 18, I certify that this Supplemental Memorandum of Law has been prepared in a conventional typeface no smaller than 13-point for text and 12-point for footnotes. I also certify that this Supplemental Memorandum of Law complies with the word count limitations contained in Rule 18, because, excluding the case caption, table of contents, table of authorities, signature block, and certificates, it contains 2,500 words. I relied on the computer-generated word count of Microsoft Word 2013, which is the software used to prepare this document.

*/s/ C. Robert Heath*
C. Robert Heath

## **CERTIFICATE OF SERVICE**

This is to certify that on March 30, 2021, a true and correct copy of the foregoing document was served on all counsel of record via the electronic case filing system of the United States District Court for the Southern District of Texas.

*/s/ C. Robert Heath*
C. Robert Heath
